**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ROSEMARY C. RILEY,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) **CASE NO: 2:08-cv-00132-MHT-CSC** |
| | ) |
| **NATIONSCREDIT FINANCIAL SERVICES** | ) |
| **CORPORATION, et al.** | ) |
| | ) |
|    **Defendant.** | ) |

<u>**SELECT PORTFOLIO SERVICING, INC.'S BRIEF IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**</u>

Thomas W. Thagard, III
John David Collins
Josh B. Baker

Attorneys for Defendant Select Portfolio Servicing, Inc.

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone: 205-254-1000
Facsimile: 205-254-1999

01629323.4

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................... 3

III. SUMMARY JUDGMENT STANDARD .......................................................... 10

IV. LAW AND ARGUMENT .................................................................................. 10

    A.    Plaintiff Is Judicially Estopped From Pursuing The Claims Asserted in This Lawsuit .......................................................................................... 10

        1.    Plaintiff Took an Inconsistent Position Under Oath in a Prior Proceeding ..................................................................................... 13

        2.    Plaintiff's Inconsistencies Were Calculated to Make a Mockery of the Judicial System. ................................................................. 13

    B.    Plaintiff's State Law Claims Fail As A Matter of Law For Multiple Reasons. ....................................................................................... 14

        1.    Plaintiff's Fraud, Negligence and Unjust Enrichment Claims Are Time Barred. ........................................................................... 16

        2.    Plaintiff's Fraud Claim Fails For Lack of Reasonable Reliance, Because the Alleged Representations Were True, and Because the Allegations of Fraud are Based Entirely Upon Promises Contained in the Parties' Contract ................................... 18

        3.    Plaintiff Has Not Been Damaged And There is No Evidence That Her Alleged Damages Were Proximately Caused by SPS's Actions. .......................................................................................... 22

        4.    Plaintiff's Breach of Contract Claim is Barred by Her Own Lack of Performance. .................................................................... 24

        5.    Plaintiff's Unjust Enrichment Claim is Frivolous. ................... 25

    C.    SPS is Entitled to Summary Judgment on Its Counterclaim for Declaratory Judgment. ............................................................................ 26

IV. CONCLUSION ................................................................................................... 26

01629323.4

<u>**SELECT PORTFOLIO SERVICING, INC.'S BRIEF IN SUPPORT**</u>
<u>**OF MOTION FOR SUMMARY JUDGMENT**</u>

Defendant/Counterclaim Plaintiff, Select Portfolio Servicing, Inc.,[1] hereby submits the following brief in support of its Motion for Summary Judgment, which is being filed contemporaneously herewith, and moves this Honorable Court to enter summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. SPS seeks summary judgment on both Plaintiff's claims and on its counterclaim. Based upon the undisputed material evidence and for the reasons stated below, no genuine issue of material fact exists and SPS is entitled to judgment as a matter of law.

## I.    INTRODUCTION

This is the third lawsuit filed by Plaintiff alleging errors and inaccuracies in connection with the origination and/or servicing of her home mortgage loan. The first lawsuit, filed against NationsCredit Financial Services Corporation of Alabama ("NationsCredit"), was ultimately resolved by the parties through a settlement agreement which required, among other things, material modifications to the promissory note securing the mortgage. While Plaintiff and NationsCredit were in the process of negotiating the settlement, NationsCredit transferred the servicing rights to Plaintiff's loan (along with thousands of other loans) to SPS.

The second lawsuit, filed against SPS, as amended, asserted four state law claims (breach of contract, negligence, fraud and unjust enrichment) arising out of SPS's posting of monthly payments, assessment of fees and charges, and reporting to credit agencies during the first three or four months SPS serviced Plaintiff's mortgage loan. After completion of discovery, SPS moved for summary judgment as to all claims asserted in Plaintiff's Complaint. Magistrate Judge Susan Russ Walker entered a Report and Recommendation that SPS's motion for

---

[1] Select Portfolio Servicing, Inc. was formerly known as Fairbanks Capital Corp. This was a name change only and does not reflect a change to the corporate attribute.

summary judgment be granted in all respects.    Plaintiff objected to the Report and Recommendation and her objection was considered an overruled by District Judge W. Keith Watkins.

Plaintiff appealed the dismissal of her second lawsuit to the Eleventh Circuit Court of Appeals.  The Eleventh Circuit did not consider the merits of the Plaintiff's claims, instead ruling that the District Court lacked original jurisdiction over the case because Plaintiff had "abandoned" her federal claims during the early states of the litigation.  The Eleventh Circuit ordered the Middle District to dismiss Plaintiff's lawsuit without prejudice, and she later filed the instant action in Montgomery County Circuit Court.  Defendants timely removed the lawsuit to this Court.

This lawsuit asserts the same four state law claims (breach of contract, negligence, fraud and unjust enrichment) which were originally disposed of on summary judgment over two years ago.  There have been no material changes between the filing of Plaintiff's second and third lawsuits.  To this end, it is still **undisputed** that, to the extent any payments were applied incorrectly, those payment were reviewed, analyzed and corrected to Plaintiff's satisfaction over four year prior to the date this lawsuit was commenced.  This entire dispute, therefore, boils down to a single issue -- whether SPS mistakenly furnished erroneous information regarding Plaintiff's mortgage loan to credit bureaus resulting in a "missed opportunity" for Plaintiff to obtain refinancing from a third-party lender.  Plaintiff, however, cannot produce a shred of evidence establishing that the hypothetical denial resulted from any act or omission on the part of SPS, much less demonstrate any damages as a result thereof.   Indeed, if any party to this action has been damaged, it is SPS -- as Plaintiff has lived in her home without remitting a single monthly mortgage payment in almost **five years**.

As an initial matter, this entire action should be summarily dismissed on judicial estoppel grounds because Plaintiff failed to disclose her claims against SPS either before, during or after her Chapter 13 Bankruptcy. Plaintiff's conduct is particularly egregious given that she undisputedly retained litigation counsel to bring suit against SPS only months before filing for bankruptcy, did not disclose these claims in her bankruptcy schedules, only to assert those same claims in her second lawsuit (which was filed within two weeks after the Trustee moved to dismiss her bankruptcy) and again in the instant lawsuit.

Even if Plaintiff could somehow circumvent application of principles of judicial estoppel, her claims nevertheless fail for a host of reasons. She cannot prove any damages proximately resulting from the acts or omissions of SPS; her negligence, fraud and unjust enrichment claims are time barred; her fraud claim alternatively fails for lack of reasonable reliance; her breach of contract claim is alternatively barred by her own failure to perform; and her unjust enrichment claim alternatively fails because it is barred by the existence of a written contract.

For all of these reasons, and as stated in further detail below, SPS is, once again, entitled to summary judgment on all of Plaintiff's claims.

## II.    FACTUAL BACKGROUND

Rosemary C. Riley ("Plaintiff") originally obtained the loan (the "Loan") at issue in this case from NationsCredit Financial Services Corporation of Alabama ("NationsCredit") on or about October 20, 1999. See Weinberger Aff. at ¶ 2 and Ex. A thereto. At that time, she executed a note (the "Note") in favor of NationsCredit in an original principal amount of $98,957.00. See Weinberger Aff. at ¶ 3 and Ex. A thereto. The Note was secured by a mortgage (the "Mortgage") executed by Plaintiff in favor of NationsCredit. Id. The Mortgage granted

NationsCredit a first priority interest in the home owned by Plaintiff and located in Montgomery County, Alabama. Id.

A dispute arose between Plaintiff and NationsCredit. This dispute ultimately resulted in litigation between Plaintiff and NationsCredit ("Riley I"). See Affidavit of Diane Wienberger ("Wienberger Aff.") at ¶ 4. After mediation, a settlement between the parties was reached in April of 2002. See Weinberger Aff. at ¶ 5 and Ex. B thereto. The Settlement Agreement provided for the following modifications to the Note: (1) principal balance reduced from $98,957.00 to $98,402.85; (2) interest rate reduced from 10.99% to 8.00%; (3) 360 successive monthly installments at $722.05 each, beginning with her May 25, 2002 payment; and (4) final payment of $722.05 to be due on April 25, 2032. Id. The Settlement Agreement and Loan Modification Agreement were executed by all parties on June 24, 2002, and the modifications were completed on June 28, 2004. See Weinberger Aff. at ¶ 5 and Ex. A and B thereto.

On April 1, 2002, during the pendency of settlement negotiations between NationsCredit and Plaintiff, the servicing rights to Plaintiff's loan transferred from NationsCredit to SPS. See Weinberger Aff. at ¶ 6. As part and parcel of this transfer, NationsCredit transferred Plaintiff's Loan to SPS in a large group of loans (possibly thousands) along with generic loan information, i.e., payment amount, payment due date, total outstanding. Id. SPS began servicing Plaintiff's Loan (sending monthly payment notices, receiving payments, etc.) based upon the information provided by NationsCredit. Id. at ¶ 7.

The generic information concerning Plaintiff's Loan supplied by NationsCredit did not discuss the details of any lawsuit, and this unrelated transaction between NationsCredit and SPS had nothing to do with Plaintiff or her Loan. Id. at ¶ 8. Prior to this time, SPS had no connection to Plaintiff, her Loan, or the litigation with NationsCredit. SPS was not a party and

was not initially informed as to the details of the litigation or any settlement discussions. <u>Id</u>. at ¶ 9. In fact, even after the servicing rights were transferred to SPS, SPS was not informed of the details of the litigation or any ongoing settlement negotiations. <u>See</u> Weinberger Aff. at ¶ 10.

Pursuant to the terms of the Settlement Agreement that was reached between Plaintiff and NationsCredit, Plaintiff was to submit her first payment to SPS on May 25, 2002. SPS did not receive this payment until June 19, 2002, at which time this amount was initially posted as delinquent (since it was delinquent), and placed in unapplied funds. <u>Id</u>. at ¶ 11. Plaintiff's payments for July and August of 2002 were similarly placed in unapplied funds (since the entire loan was delinquent). <u>Id</u>.

On August 22, 2002, SPS first received a signed copy of the Loan Modification Agreement that was part of the settlement reached between Plaintiff and NationsCredit. <u>Id</u>. at ¶ 12. A few days thereafter, on August 28, 2002, SPS became aware of the fact that the payments had been placed in unapplied funds and that SPS had not yet waived the late fees as provided for in the Loan Modification Agreement. <u>Id</u>. In order to resolve these problems, SPS reversed the three prior posted payments and reposted them as timely made on May 2002, June 2002 and July 2002 payments. <u>See</u> Weinberger Aff. at ¶ 13. SPS also waived late fees totaling $1,221.96 on August 29, 2002 as provided for in the Loan Modification Agreement. <u>Id</u>.

On September 13, 2002, SPS received a payment of $722.05, which it posted as Plaintiff's August 25, 2002 payment. <u>Id</u>. at ¶ 14. A few months later, in December of 2002, NationsCredit contacted SPS and requested that Plaintiff's payments be "rolled" forward one month. In other words, because the Settlement Agreement with NationsCredit was not signed until June of 2002 (which SPS played no role in), it was determined by NationsCredit that Plaintiff should not have been required to make her May 2002 payment as the settlement

documents provided to SPS required. Id. at ¶ 15.    The due dates for all of the payments were therefore rolled forward, leaving Plaintiff due for her December 25, 2002 payment, rather than her November 25, 2002 payment. Id.  Plaintiff's maturity date did not change as a result of this action, and her final monthly payment is still due on April 25, 2032. See Weinberger Aff. at ¶ 16.

On December 24, 2002, Plaintiff contacted SPS and requested that a payoff quote for the Loan be provided to CitiFinancial. Id. at ¶ 17.  SPS issued the payoff quote to CitiFinancial by facsimile on January 15, 2003. Id.  Shortly thereafter, by letter dated February 6, 2003, SPS wrote to Plaintiff to explain the recent adjustments to her account. See Weinberger Aff. at ¶ 17 and Ex. D thereto.  That letter states, in pertinent part, as follows:

> After reviewing our records, we have found that your account has been adjusted. As of today your principal balance is $98,003.13, you interest rate is 8.0%, there are no legal fees, and your payments have been adjusted.  As of today you account is due for December 25, 2002.

Id.  The letter also advised Plaintiff that she had an outstanding escrow balance for force placed insurance, but that those amounts would be promptly adjusted and reversed if she simply provided proof of insurance as required by the terms of the Mortgage. Id.

Plaintiff failed to make her January and February mortgage payments. See Weinberger Aff. at ¶ 18; Riley Depo. at pp. 175, 182.  Accordingly, as of March 5, 2003, Plaintiff's account was two months delinquent, and due for her January 25, 2003 payment. Id. at ¶ 19.  SPS sent Plaintiff a demand letter on March 5, 2003, requesting all payments in arrears and informing her of possible foreclosure unless she submitted the requested funds or contacted SPS about a repayment plan. Id.  Plaintiff did not contact SPS or submit the requested funds during March or April. Id.  Then, without warning or explanation, on May 6, 2003, Plaintiff submitted a payment in the amount of $722.05. See Weinberger Aff. at ¶ 20.  This payment was returned pursuant to

SPS's operating procedures because the payment was less than the total amount necessary to reinstate her loan. Id.  SPS does not accept payments that are less than the total reinstatement amount, unless the customer has previously made repayment arrangements. Id.

By letter dated August 6, 2003, in response to a complaint Plaintiff filed with the Alabama Attorney General's Office ("AG"), SPS explained the problems associated with the consummation of the Settlement Agreement, the company's efforts to correctly apply her payments, the basis for referring the loan to foreclosure, the grounds for assessment of fees and charges to her account, and the history of reporting to credit agencies. See Ex. 9 to Riley Depo. Although the letter encouraged Plaintiff to send in copies of any checks the she believed to be incorrectly posted, and urged her to contact the company to establish a repayment plan to allow her to keep her home, Plaintiff declined to do so. See Weinberger Aff. at ¶ 22.  However, at Plaintiff's insistence, SPS requested, in August of 2003, that all credit reporting agencies to which the company reports correct Plaintiff's credit report to reflect "good standing" from the months of June 2002 through August 2002. See Weinberger Aff. at ¶ 20.  Plaintiff **admits** that all problems with respect to payment posting and credit reporting **had been corrected** as of August of 2003. See Riley Depo. at pp. 176-77.

In August or September of 2003, Plaintiff retained litigation counsel to represent her in a potential lawsuit against SPS. See Riley Depo. at pp. 175-76.  A few months later, on November 14, 2003, Plaintiff petitioned for bankruptcy protection under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Alabama, styled In re Rosemary Riley, Case No. 03-33526-DHW (the "Bankruptcy"). See Plaintiff/Debtor's Chapter 13 Bankruptcy Petition.  In her "Voluntary Petition for Bankruptcy" (the "Petition"), Plaintiff scheduled various assets and

liabilities (the "Schedules"), including, but not limited to, creditors holding secured claims, creditors holding unsecured priority and nonpriority claims, and her current income and expenditures. Id.  In Schedule A, "Real Property", Plaintiff listed a homestead located at 901 Brookland Curve, Montgomery, Alabama, with a Mortgage as a secured claim attached to the real property in the amount of $102,000.00. Id.  In Schedule D, "Creditors Holding Secured Claims", Plaintiff listed the Mortgage held by NationsCredit in the amount $102,546.00. Id.  She did not list the Mortgage as "Contingent," "Unliquidated", or "Disputed." See Ex. 13 to Riley Depo.  Even though Plaintiff had **already retained** litigation counsel to initiate a lawsuit against SPS (who withdrew the representation due to the bankruptcy filing), nowhere in her schedules did she list any claim or cause of action against SPS. See Riley Depo. at p. 209 and Ex. 13 thereto.  Plaintiff attested, under penalty of perjury, that the Petition and Schedules were true and correct to the best of her knowledge.  Id.  The Bankruptcy was dismissed on September 3, 2004, upon motion of the Trustee because Plaintiff's actions "caused unreasonable delay" which prejudiced creditors. Id.

On August 25, 2004, **during the pendency of the Bankruptcy**, Ms. Riley commenced her first action against SPS in the United States District Court for the Middle District of Alabama, styled Rosemary C. Riley v. Fairbanks Capital Corp., CV-04-797-A ("Riley II"). Plaintiff's Complaint, as amended, asserted four state law claims (breach of contract, negligence, fraud and unjust enrichment) -- all stemming from alleged errors and inaccuracies in connection with the servicing of her home mortgage loan. Id.  After the completion of discovery, SPS filed a motion for summary judgment as to all claims asserted against it in Riley II.  The Honorable Magistrate Judge Susan Russ Walker, who the case had been assigned for all pre-trial matters, entered a Report and Recommendation that SPS's motion for summary judgment be granted in

all respects. See Report and Recommendation. Plaintiff filed an objection to the Report and Recommendation and her objection was considered and overruled by District Judge W. Keith Watkins, who entered summary judgment in favor of SPS on all counts. See Order Adopting Report and Recommendation.

On April 11, 2006, Plaintiff filed a notice of appeal to the Eleventh Circuit. Without considering the merits of the claims presented in Riley II, the Eleventh Circuit ruled that the District Court lacked jurisdiction over the case because Plaintiff abandoned her federal claims during the early states of the litigation. See Rosemary C. Riley v. Fairbanks Capital Corp., No. 06-12311 (11th Cir., March 16, 2007). The Eleventh Circuit reached this conclusion despite the fact that complete diversity of citizenship existed between the parties, the fact that Plaintiff claimed in her Complaint that her damages were "sufficient to invoke the minimum jurisdiction of the court," and the fact that the Plaintiff's Rule 26 initial disclosures claimed damages in excess of $150,000.[2]

Plaintiff filed the instant action on February 22, 2008 ("Riley III"), asserting the very same four state law claims (breach of contract, negligence, fraud and unjust enrichment) which were considered and addressed by Judge Walker in Riley II. See generally Complaint, filed February 22, 2008. Other than Plaintiff's account now being more than **fifty-seven (57) months** delinquent, there have been no substantial changes in this case. See Weinberger Aff. at ¶ 23.

---

[2] The Eleventh Circuit's determination that the District Court lacked jurisdiction in Riley II was presumably based on the fact that the Magistrate's Report and Recommendation did not expressly indicate that the Court enjoyed diversity jurisdiction. Plaintiff has confirmed through her discovery responses that she is in fact seeking in excess of $75,000, and thus this Court's jurisdiction over Riley III is undisputed.

9

### III.    SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment when the pleadings and supporting materials demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Summary judgment is appropriate when plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which plaintiff will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  A plaintiff cannot defeat a properly supported motion for summary judgment without an affirmative presentation of specific facts showing a genuine issue, and may not merely rely on the general allegations of the pleadings. See Anderson, 477 U.S. at 248.  A mere "scintilla" of evidence supporting plaintiff's position is not enough to survive summary judgment; plaintiff must produce evidence so a jury could reasonably find for him.  See Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson, 477 U.S. at 242).

### IV.    LAW AND ARGUMENT

#### A.    Plaintiff Is Judicially Estopped From Pursuing The Claims Asserted in This Lawsuit.

Judicial estoppel is an equitable doctrine that is designed to prevent the judicial process from being improperly used.  "The doctrine exists 'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" Barger v. City of Cartersville, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001)).  The doctrine is applicable where (1) a party has taken an inconsistent position under oath in a prior proceeding and (2) the inconsistencies can be shown to "make a mockery of the judicial system." Id. (quoting Salomon Smith Barney,

Inc. v. Harvey, M.D., 260 F.3d 1302, 1308 (11th Cir. 2001).  See also Burns v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002); De Leon v. Comcar Industries, Inc., 321 F.3d 1289 (11th Cir. 2003) (per curiam).

The Eleventh Circuit in Burns v. Pemco Aeroplex, Inc. affirmed the district Court's determination that a plaintiff/debtor was judicially estopped from pursuing an employment discrimination action due to the debtor's failure to disclose the potential claim in his prior Chapter 7 bankruptcy proceedings. Burns, 291 F.3d at 1287-88.  In dismissing the debtor's claim for monetary damages, the Eleventh Circuit held that detrimental reliance by the defendant was not an element since it is the integrity of the judicial process that is being protected, and that the debtor's attempt to reopen the case was evidence of bad faith since it was only done upon being discovered by the adversary. Id. at 1288.  More recently, in De Leon v. Comcar Industries, Inc., the Eleventh Circuit held that the distinction between a Chapter 7 Bankruptcy Case and a Chapter 13 Bankruptcy Case is immaterial when applying the judicial estoppel analysis established in Burns.

In De Leon, the debtor filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 2, 1999.  On November 7, 2000, the debtor filed for Chapter 13 bankruptcy.  The EEOC issued the debtor a right-to-sue letter on April 19, 2001.  The debtor filed a discrimination suit in federal district court against his employer on May 14, 2001, but never amended his bankruptcy filing to add his lawsuit as a potential asset.  The federal district court entered summary judgment in favor of the defendant/employer on the grounds that judicial estoppel barred the debtor's claims because he failed to disclose those claims in his bankruptcy filings.  The debtor appealed. De Leon, 321 F.3d at 1291.

11

The Eleventh Circuit in <u>De Leon</u> began its discussion by observing that, in May 2002, it had affirmed the application of judicial estoppel in a Chapter 7 bankruptcy case in <u>Burns</u>.  <u>Id</u>. Rejecting the debtor's effort to draw a distinction between a Chapter 7 and Chapter 13 bankruptcy, the Eleventh Circuit explained that a financial motive to secrete assets exists in both situations because the hiding of assets affects the amount to be discounted and repaid. <u>Id</u>.  Since the debtor knew about his claim and possessed a motive to conceal it because the amount of repayment would be lessened, the Eleventh Circuit held that it would infer from the record his intent to "make a mockery of the judicial system." <u>Id</u>. (quoting <u>Burns</u>, 291 F.3d at 1285-87).

The judicial estoppel analysis establish in <u>Burns</u> and extended in <u>De Leon</u> was reaffirmed by the Eleventh Circuit in <u>Barger v. City of Cartersville</u>, 348 F.3d 1289, 1296 (11th Cir. 2003) ("In light of <u>Burns</u> and <u>De Leon</u>, it is difficult to argue that Barger should not be judicially estopped from asserting the discrimination claims she failed to disclose in her bankruptcy petition.") and more recently in <u>Hardin v. Dolgencorp, Inc.</u>, No. 03-15697 (11th Cir. April 5, 2005) (District Court abused its discretion by denying defendant's motion for judicial estoppel against plaintiff who failed to disclose lawsuit in her bankruptcy petition).[3]

---

[3]  The Eleventh Circuit in <u>Parker v. Wendy's International, Inc.</u>, 2004 U.S. App. LEXIS 7559 (11th Cir. 2004) questioned (in dicta) whether the doctrine of judicial estoppel was correctly applied in <u>Burns</u>, a case involving a Chapter 7 Bankruptcy.  <u>Parker</u>, however, is not controlling for two reasons.  First, the reasoning in <u>Parker</u> clearly does not extend to Chapter 13 Bankruptcy cases.  <u>Parker</u> stands for the proposition that a Chapter 7 debtor's pre-petition cause of action was the property of the Chapter 7 bankruptcy estate, and that the trustee in bankruptcy was the real party in interest with "exclusive standing" to pursue that cause of action.  <u>Parker</u>, 365 at 1272.  The Eleventh Circuit's decision in <u>Parker</u> is wholly inapplicable to the instant case insofar as a Chapter 13 debtor, not the trustee, is vested with the property of the bankruptcy estate.  <u>See In Re Tippins</u>, 221 B.R. 11, 17 (Bankr. N.D. Ala. 1998); <u>In Re Griner</u>, 240 B.R. 432 (Bankr. S.D. Ala. 1999) (both comparing debtor-standing issues in Chapter 7 and Chapter 13 cases).  Second, the Eleventh Circuit has explained that, unless and until the holding of a prior decision of the Eleventh Circuit is overruled by the Supreme Court or by the Eleventh Circuit sitting <u>en banc</u>, that holding is the law of this Circuit regardless of what might have happened had other arguments been made to the panel that decided the issue first.  <u>Saxton v. ACF Industries, Inc.</u>, 239 F.3d 1209 (11th Cir. 2001); <u>United States v. Steele</u>, 147 F.3d 1316, 1317-18 (11th Cir.1998) (en banc); <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1076 (11th Cir. 2000).  The Eleventh Circuit in <u>Burns</u>, <u>De Leon</u> and <u>Barger</u> clearly held that the doctrine of judicial estoppel is applicable where, as here, a debtor fails to disclose potential causes of action in her bankruptcy filings.  Those decisions have not been overruled by the Supreme Court or the Eleventh Circuit sitting <u>en banc</u>, and therefore constitute controlling

12

1.      **Plaintiff Took an Inconsistent Position Under Oath in a Prior Proceeding.**

Plaintiff executed and filed her Schedules in the Bankruptcy under penalty of perjury. See 18 U.S.C. §§ 152, 3571. Even though she had retained litigation counsel to bring an action against SPS prior to submitting her Bankruptcy petition, and frankly alleges in her Complaint that SPS's actions "caused" her to seek Bankruptcy protection, there was no indication in Plaintiff's schedules that the Mortgage was contingent, disputed or that she was otherwise had a potential claim against SPS. Based on Plaintiff's own allegations in her Complaint (¶ 17), and her deposition testimony (Riley Depo. at pp. 209-213), it is undisputed that she had **actual knowledge** of her claims against SPS both before and during the Bankruptcy. Indeed, she filed Riley II a mere **two weeks** after the Trustee moved to dismiss the Bankruptcy.

2.      **Plaintiff's Inconsistencies Were Calculated to Make a Mockery of the Judicial System.**

As stated previously, Plaintiff unquestionably had a duty to disclose her potential claims against SPS in the Bankruptcy, but failed to do so. Her motive to conceal these claims can be inferred from the record. For instance, although the Plan called for 100% payment to both secured and unsecured creditors, the unsecured creditors in this case could have objected to the Plan if Debtor had any right of set-off or damages against SPS, thus providing more money into the bankruptcy estate to pay their claims sooner, or with interest. See 11 U.S.C. § 1329; see also In re Roper, 203 B.R. 326, 332-33 (Bankr. N.D. Ala. 1996) (granting motion to remand as to debtor who paid 100% of unsecured claims plus interest, since cause of action would have no impact on the estate, while denying motion to remand as to debtor who paid 100% of unsecured claims with no interest, since cause of action would entitle creditor to additional proceeds).

authority. Indeed, they were recently reaffirmed by the Eleventh Circuit's very recent opinion in Hardin v. Dolgencorp, Inc., No. 03-15697 (11th Cir. April 5, 2005).

13

In addition to the time value of money, another adverse result of Plaintiff's nondisclosure that may be inferred is the failure of many unsecured debtors listed in the Schedules to file proofs of claim.  While the basis for those creditors' decisions may not be known, it may be inferred that the low amount of the creditors' claims, as well as the duration of the Chapter 13 plan, may have made those claims cost prohibitive for the unsecured creditors to pursue, thus allowing Plaintiff to purposefully elude those debts while retaining the instant cause of action. Judicial estoppel's purpose is to prevent debtors from jettisoning creditors while shielding assets. The Eleventh Circuit clearly has no tolerance for parties, such as Plaintiff here, who withhold for strategic purposes claims of which they are clearly aware.

**B.    Plaintiff's State Law Claims Fail As A Matter of Law For Multiple Reasons.**

Even if the Court chooses to reach the merits of Plaintiff's claims (which it should not), those claims fail as a matter of law for a multitude of reasons.  Plaintiff's Complaint alleges claims for breach of contract, fraud and suppression, negligence and unjust enrichment. See Complaint, Counts I-IV.  Each of these Counts are premised upon identical factual allegations, namely, that SPS sought to collect fees and charges that were not owing, misapplied monthly payments, and furnished inaccurate information to credit bureaus.

In evaluating Plaintiff's claims against SPS, it is important to consider the context in which those claims arose.  It simply cannot be overemphasized that this lawsuit is a direct result of Plaintiff's earlier litigation and settlement with NationsCredit in Riley I and, in particular, the delay (on the part of either Plaintiff or NationsCredit) in finalizing the settlement and providing the terms of the Loan Modification Agreement to SPS.  Indeed, Plaintiff acknowledges that the Loan was transferred to SPS well before her settlement with NationsCredit was finally

14

consummated.[4]  Riley Depo. at pp. 90, 264-265; Complaint at ¶¶ 8, 14.  It is also undisputed that,

in addition having no control (much less responsibility) over the finalization and implementation

of Plaintiff's settlement with NationsCredit, SPS **corrected** all misapplied payments and

**reversed** all late fees/charges consistent with terms of the Loan Modification Agreement **over**

**one year prior to the date Riley II was commenced**.  See Riley Depo. at pp. 120, 176-177, 199.

Nevertheless, even after these adjustments were made, Plaintiff by her own admission was still

two months behind on her payments:

> Q:    Okay.  Let me look at this first paragraph.  "After reviewing our
> records, we have found that your account has been adjusted.  As of today,
> your principal balance is $98,003.13, your interest rate is 8 percent, there
> are no legal fees, and your payments have been adjusted.  As of today,
> your account is due for December 25, 2002."  Do you see that?
>
> A:    I see that.
>
> Q:    Okay.  That reflects that your are – after the adjustments were
> made that you are two – essentially two payments behind?
>
> A:    Exactly.  And then I did make a payment that was sent back to me.
>
> Q:    Okay.  But you don't dispute that you were two months behind at
> that point.
>
> A:    **I don't dispute that I was two months behind and did send a**
> **payment, and that it was sent back to me.**

Riley Depo. at p. 120 at Ex. 6 thereto (emphasis added).

It is therefore absolutely undisputed that the only act or omission that could even

theoretically give rise to liability on the part of SPS is the furnishing of allegedly inaccurate

---

[4] For instance, when questioned about the obvious discrepancy between the date her first payment was due under the
Loan Modification Agreement (May 25, 2002) and the date the Loan Modification Agreement was finally executed
by all parties (June, 28, 2002), Plaintiff explained:

> I noticed the modification that was drawn up was not carried out.  And there was numerous
> complaints on my part, and I was not given any real explanation other than **that's when I found**
> **out that your company had bought it out -- and they had to get access to it.**

Riley Depo. at p. 90 (emphasis added).

information to credit bureaus in the three to four months following the April 2002 Loan transfer and prior to SPS's "correction" pursuant to the Loan Modification Agreement, which purportedly resulted in a "missed opportunity" for Plaintiff to obtain refinancing. Plaintiff's "missed opportunity" theory, however, has no basis in fact or law, and the claims that it purportedly supports are due to be dismissed as a matter of law.[5]

As described in further detail below, Plaintiff's state law claims are due to be dismissed because: (1) she has not proven any damages proximately resulting from the acts or omissions of SPS; (2) her negligence, fraud and unjust enrichment claims are time barred; (3) her fraud claim alternatively fails for lack of reasonable reliance; (4) her breach of contract is alternatively barred by her own failure to perform; and (5) her unjust enrichment claim alternatively fails because it is barred by the existence of a written contract.

### 1.    Plaintiff's Fraud, Negligence and Unjust Enrichment Claims Are Time Barred.

Plaintiff's Complaint purports to state claims for fraud and suppression (Count II), negligence (Count III), and unjust enrichment (Count IV). The statute of limitations for these claims is two years from the date of accrual. See Ala. Code § 6-2-38.[6] Plaintiff filed Riley II on August 25, 2004. Assuming her claims were tolled from August 25, 2004 through the date of the

---

[5] Even if Plaintiff's state law claim could survive summary judgment, those claims are nevertheless preempted and barred by the Fair Credit Reporting Act ("FCRA") and, pursuant to protections afforded to furnishers of credit information under that statute, Plaintiff has no claim that can result in an award of damages in this case. See 15 U.S.C. § 1681h(e) and § 1681t.

[6] With respect to Plaintiff's equitable claim for unjust enrichment, Alabama law makes clear that if an alleged wrong "springs from a breach of duty either growing out of the relationship of the parties, or imposed by law, the claim is ex delicto," and not ex contractu. Jefferson County v. Reach, 368 So. 2d 250, 252 (Ala. 1978). See also, e.g., Brooks v. Hill, 717 So. 2d 759, 763 (Ala. 1998) (cause of action arising from of extra-contractual duty is ex delicto). Non-specific, non-contractual actions for injury are governed by Alabama's "catch-all" two-year statute of limitations. See Ala. Code § 6-2-38(1) (1993). Therefore, Plaintiff's claim of unjust enrichment is also governed by the two year catch-all provision in Ala. Code § 6-2-38(e).

16

District Court's Amended Final Judgment dismissing Riley II without prejudice (June 19, 2007), Plaintiff's claims are time barred if they accrued before <u>November 8, 2002</u>.

Under Alabama law, "A party has a cause of action, and the statute of limitations begins to run, on the date of the first legal injury....whether or not the full amount of damages is apparent." <u>Smith v. Medtronic, Inc.</u>, 607 So.2d 156, 159 (Ala. 1992)(citations omitted); <u>Kelly v. Shropshire</u>, 75 So. 291 ("If the act … is of itself a legal injury to plaintiff, a completed wrong, the cause of action and the statute beings to run from the time the act is committed."). Viewing the evidence in a light most favorable to the Plaintiff, in the present case, Plaintiff's negligence and unjust enrichment claims accrued on **<u>April 16, 2002</u>** -- when she reviewed her mortgage loan statement, determined that the figures contained therein were inaccurate, and delivered the mortgage loan statement to her attorney so that he could contact SPS. Riley Depo. at pp. 101-102 and Ex. 4 thereto. Because Plaintiff's claims of negligence and unjust enrichment have been brought approximately <u>seven months</u> after the expiration of the applicable statute of limitations, those claims are clearly time-barred.

With respect to plaintiff's fraud claim, the two-year period begins to run as soon as the person claiming the fraud: (1) actually discovers the fraud; or (2) receives a document alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document but chose to ignore its written terms. <u>See</u> <u>Auto-Owners Insurance Company v. Abston</u>, 822 So. 2d 1187, 1195 (Ala. 2001) (fraud claims must be brought within two years after the person claiming the fraud actually discovers the fraud or "becomes privy to facts which would provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the "fraud" – often called "inquiry notice").

Here, Plaintiff alleges that SPS misrepresented and/or suppressed the fact that it was entitled to collect certain fees and charges, and that her monthly payments were untimely. Complaint at ¶¶ 28-29. It cannot be genuinely disputed, however, that Plaintiff had **actual knowledge** of these alleged claims prior to November 8, 2002. This is evidenced not only by the April 16, 2002 mortgage statement referenced above, but also by Plaintiff's own admission that she learned of the incorrect posting and credit reporting **during** the time she was negotiating the modification with NationsCredit. Riley Depo. at pp. 48-49. By letter dated August 28, 2002, Plaintiff formally threatened litigation against SPS: "I have yet to receive any proof of documentation, monthly statements reflecting corrections, or any follow-up that reflects the Agreed Modification Terms ….. [and intend] to hold you responsible for all actual and consequential damages arising from your breach." Riley Depo. at 152-53 and Ex. 7 thereto (SPS/Riley 0094). Clearly, Plaintiff had actual knowledge of the alleged "fraud" more than two years prior to November 8, 2004. Accordingly, any claims arising out of representations as to fees, charges and the timeliness of payments are time-barred.

      **2.**      **Plaintiff's Fraud Claim Fails For Lack of Reasonable Reliance, Because the Alleged Representations Were True, and Because the Allegations of Fraud are Based Entirely Upon Promises Contained in the Parties' Contract.**

Plaintiff has attempted to allege that SPS misrepresented and/or suppressed that it was collecting fees and charges not owing on the loan, misapplied monthly payments, and furnished inaccurate information to credit bureaus. Based on the undisputed facts before the Court, however, these allegations cannot serve as the basis for fraud type claims under Alabama law.

In order to prove fraud under Alabama law, a plaintiff must prove (1) that the defendant intentionally misrepresented (2) a material fact (3) on which the plaintiff reasonably relied (4) and, as a result of this reliance, suffered damages. Waddell & Reed, Inc. v. United Investors Life

Ins. Co., 875 So. 2d 1143, 1160 (Ala. 2003), citing Padgett v. Hughes, 535 So. 2d 140, 142 (Ala. 1988).  Therefore, the Plaintiff here must prove that she accepted SPS's posting of payments, assessment of late fees and charges, and credit reporting as true and, in turn, reasonably relied upon that information to her detriment.  See Liberty Nat'l Life Ins. Co. v. Allen, 699 So. 2d 138 (Ala. 1997).

The Alabama Supreme Court's reasoning in Allen is instructive in light of the present facts.  In Allen, the plaintiff was allegedly misinformed by Liberty National that a change in claims payments under plaintiff's cancer policy was required by a "new law."  After being told that, plaintiff proceeded to write Liberty National and demand meetings with Liberty National to determine exactly what the new law was.  Ultimately, plaintiff learned that there was no new law that required the claims change and filed suit for fraud.

The trial court denied Liberty National's motion for directed verdict, and the Alabama Supreme Court reversed on the basis that the plaintiff could not show reasonable reliance:

> Liberty National contends that Allen did not rely on this representation [concerning the new law], pointing out that the next day he wrote a letter to Liberty National requesting a copy of the new law; that, in addition, when he met with [Liberty National's] claim manager, … Allen asked for a copy of the new law; and that after Allen made this request [the claims manager] informed Allen that the payment procedure was based on an interpretation of a new law.  Liberty National argues that the evidence shows that Allen never believed the alleged representation by the claims representative because, it says, the evidence shows that he constantly questioned the validity of the representation.  **We agree.**

Allen, 699 So. 2d at 141 (emphasis added).

In Smith v. J.H. Berry Realty Co., Inc., 528 So. 2d 314 (Ala. 1988), the Alabama Supreme Court considered the validity of a fraud claim in another case with circumstances similar to those in the case at bar.  In that case, the Smith plaintiffs had purchased a home marketed by defendants.  During the sale, plaintiffs inquired of Berry Realty whether the house

complied with zoning requirements and Berry Realty assured plaintiffs that it did.  After the sale, the house was determined to be in violation of the zoning requirements, and plaintiffs brought suit for fraud.

After consideration of plaintiffs' claims, the Alabama Supreme Court affirmed the trial court's summary judgment for Berry Realty based on a lack of reasonable reliance:

> After reviewing the evidence, we conclude that there was not sufficient reliance on the misrepresentation of Berry Realty to support an action for fraud.  From the outset, Mr. Smith expressed his concern with regard to the positioning of the house relative to the rear lot setback requirements.  In fact, he undertook a rather extensive investigation of his own into the zoning requirements and the compliance or non-compliance of the property.  Mr. Smith evidenced his intention not to rely on the assurances given by the agent of Berry Realty.
>
> To claim reliance upon a misrepresentation, the allegedly deceived party must have believed it to be true.  **If it appears that he was in fact so skeptical as to its truth that he placed no confidence in it, it cannot be viewed as a substantial cause of his conduct. The reliance must be reasonable under all the circumstances of the case.**  The undisputed fact that Mr. Smith was unwilling to accept the statement of the defendant's agent without verification is evidence that he did not rely on it.

J.H. Berry, 528 So. 2d at 316 (emphasis added) (footnotes and citations omitted).  See also Hunt Petroleum Corp. v. State of Alabama, 2004 WL 924138 at *3 (Ala. April 30, 2004) ("An essential element of any fraud claim is that the plaintiff must have reasonably relied upon the alleged misrepresentation.").

At no time was the Plaintiff ever mislead by the actions SPS vis-à-vis the loan.  Like the Allen and J.H. Berry plaintiffs, Ms. Riley immediately ("from the beginning") undertook her own investigation upon receipt of her very first (April 16, 2002) mortgage loan statement.

> A:    When I first received it, I looked over the information; notated the information that was correct, which was the interest rate at 8% and the new principal balance at $98,402.85, which was reflective of the modification

20

agreement.  The incorrect would be the new escrow balance that was showing a negative $2,280.

Q:      Okay.  And this -- is your handwriting on this statement.

A:      Yes, it is.

Q:      Okay.

A:      **And I did take that to Attorney Cason**

Q:      Okay.  This is dated April 16, 2002; correct?

A:      Right

Q:      And do you know when you took it to Attorney Cason?

A:      Probably when I received it, I can't tell you --

                         .        .        .

Q:      Okay.  But it's fair enough to say if it's mailed -- dated April 16, you probably received it sometime in April, maybe the first of May?

A:      Yeah.

Q:      **So when you first received this document, you looked at it, and you knew that it was wrong; correct**?

A:      **Right**

Riley Depo. at pp. 102-104 and Ex. 3 thereto (emphasis added).  Plaintiff also promptly notified the major credit reporting agencies that she disputed the reports of late payments. See Ex. 6 to Riley Depo. (SPS/Riley 0095).  Simply put, Plaintiff neither accepted SPS calculations and reporting as true nor did she rely upon those calculations or reporting to her detriment.  Instead, she requested and received correction or clarification letters from SPS.  Plaintiff, therefore, cannot prove the element of reliance.

Finally, Plaintiff's fraud claim is not based on representations that are independent from those that make up her breach of contract claim.  As explained by the Alabama Supreme Court:

21

> [A] fraud claim cannot be maintained simply because a party . . . did not properly perform a contractual obligation. Additionally, not all "fraudulent" acts, as the term "fraudulent" is broadly understood, give rise to a cause of action for fraud. Fraud, as a cause of action, requires some damage stemming from reliance on a misrepresentation or suppression intended to induce that reliance, i.e., reliance that caused someone to act or to refrain from acting.

Hunt Petroleum Corp. v. State, 901 So. 2d 1, 12-13 (Ala. 2004) (Houston, J., specially concurring). However, the same facts that are the basis of a breach of contract claim cannot also be the basis for a fraud claim. "'Regardless, it is clear that to assert a fraud claim that stems from the same general facts as one's breach-of contract claim, the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud.'" Id. at 10-11 (emphasis removed, emphasis original) (quoting Dickinson v. Land Dev. Constr. Co., 882 So. 2d 291, 304 (Ala. 2003) (Houston, J., specially concurring)). "Simply put, a plaintiff cannot convert the mere failure to perform or to fulfill a contractual promise into a fraud claim." Dickinson, 882 So. 2d at 303 (Houston, J. specially concurring).

Here, Plaintiff failed to allege any representations **independent** of those allegations forming the basis of her breach of contract claim. Indeed, as recognized by the District Court in Riley II, Plaintiff's "factual allegations contained in her claim of fraudulent misrepresentation are the **same claims** she makes in her breach of contract claim, in which she alleged that SPS 'imposed or collected amounts that are not due and owing by contract'." See Report and Recommendation (emphasis added). Accordingly, for the all of the reasons set forth above, Plaintiff's fraud claim fails as a matter of law.

**3.     Plaintiff Has Not Been Damaged And There is No Evidence That Her Alleged Damages Were Proximately Caused by SPS's Actions.**

To prevail on her claims, Plaintiff must demonstrate that she was damaged and that SPS's acts or omissions proximately caused her harm. In Alabama, proximate cause is defined as "an

act or omission that in a natural and continuous sequence, unbroken by any new and independent causes, produces the injury and without which the injury would not have occurred." <u>Crowne Invs. v. Bryant</u>, 638 So. 2d 873, 877-78 (Ala. 1994).  Plaintiff's assertions that SPS's credit reporting "caused" her to lose an opportunity to refinance her mortgage is based on nothing more than rank speculation and conjecture.  Indeed, Plaintiff has provided  absolutely no evidence that her purported "missed opportunity" to refinance was a proximate result of some act or omission on the part of SPS.  Moreover, Plaintiff readily acknowledges that her payment history included multiple delinquent accounts (negative reporting), a vehicle repossession, garnished wages, and she had at least one debt collection suit filed against her.  Riley Depo. at pp. 156, 247, 259, 261.

Significantly, during the very same time Plaintiff claims SPS was incorrectly reporting to the credit bureaus, AmeriQuest was also reporting Plaintiff delinquent on unrelated accounts. Plaintiff readily **acknowledges** that AmeriQuest's reporting contributed to her difficulties in obtaining financing, and testified that she contemplated filing suit against that company as well. Riley Depo. at pp. 200-201.  Clearly, Plaintiff cannot adduce any evidence, much less the required substantial evidence, suggesting that her alleged "missed opportunity" was proximately caused by the action or inaction of SPS.

Furthermore, during discovery in <u>Riley II</u>, SPS subpoenaed the records of HomeOwners Loan, one of the entities that purportedly declined Plaintiff's request for refinancing due to negative credit reporting.  In response to the subpoena,  HomeOwners Loan, though its in-house counsel, has reported that his company "does not possess any records indicating **any application** or a closing of a mortgage transaction" for Plaintiff. <u>See</u> HomeOwners Loan Response to Subpoena (emphasis added).  Plaintiff has simply offered no proof that SPS actions "caused" a missed opportunity to refinance, that financing was not available from other sources, or even

23

demonstrated how she damaged by the conduct alleged.  SPS is entitled to summary judgment on all of Plaintiff's claims on the basis that Plaintiff's alleged damages are too speculative for recovery.

> **4.     Plaintiff's Breach of Contract Claim is Barred by Her Own Lack of Performance.**

It is axiomatic that, in order to prevail on claim for breach of contract, the Plaintiff must prove: (1) the existence of a valid contract between herself and defendant; (2) plaintiff's **own performance** under that contract; (3) defendant's nonperformance under the contract; and (4) damages sustained as a result of the defendant's nonperformance.  See, e.g., State Farm Fire & Cas. Co. v. Slade, 747 Fo.2d 293 (Ala. 1999) (emphasis added).  Plaintiff cannot maintain a claim under the contract as a matter of law, because she has not performed her own basic contract requirement -- to pay the mortgage for the house.

On or about October 20, 1999, Plaintiff granted a Mortgage and executed a Note in favor of NationsCredit in the amount of $98,957.00 in connection with her purchase of her home. See Weinberger Aff. at ¶ 2 and Ex. A thereto.  The Note was later modified by an agreement between Plaintiff and NationsCredit.  See Weinberger Aff. at ¶ 5 and Ex. B thereto.  Paragraph 3 of the Loan Modification Agreement provides, in pertinent part, as follows:

> Payments.  the Note is modified to restate Section 3 "Payments" as follows:
>
> Such principal and interest shall be payable in 360 successive monthly installments with the first such installment in the amount of $722.05 due on the 25th day of May, 2002, and subsequent installments of $722.05 shall be due on the 25th day of each succeeding month thereafter.

Id.  Although Plaintiff's complaint makes reference to an alleged wrongful referral to foreclosure, it is undisputed that she was **two months** behind on her payments when the referral issued, See Weinberger Aff. at ¶ 18; Riley Depo. at pp. 175, 182, which was **over one year**

**before** the first lawsuit was filed. SPS's decision to refer the loan to foreclosure was entirely consistent with the Note (paragraph 6) and Mortgage (paragraph 23), both of which allow acceleration of the debt if the borrower fails to comply with her payment obligations. See Ex. A to Weinberger Aff. Clearly, there is no breach on the part of SPS. Currently, Plaintiff's account is **fifty-seven (57) months** delinquent, being due for her July, 25, 2003 payment. See Weinberger Aff. at ¶ 23. Despite Plaintiff's failure to make a payment in almost five (5) years, SPS has still not foreclosed on her home. Id. at ¶ 24. Plaintiff's breach of contract claim is therefore due to be dismissed as a matter of law.

### 5.     Plaintiff's Unjust Enrichment Claim is Frivolous.

Plaintiff's claim of unjust enrichment is based in quasi-contract and is barred because of the existence of an express contract – i.e., the Plaintiff's Note and Mortgage. See Tyson v. Arrington v. Thompson, 70 So. 2d 649, 651 (Ala. 1915) (Quasi-contract principles will only be applied "in the absence of an express contract … To travel beyond the parties making the contract, in search of implied promise … would introduce new and dangerous principles in implied contracts, the extent of which it is difficult to conjecture."); Kennedy v. Polar-BEK & Baker Wildwood Partnership, 682 Fo.2d 443, 447 (Ala. 1978) ("where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter"); Architectura, Inc. v. Miller, 769 So. 2d 330 (Ala. Civ. App. 2000) (affirming judgment for defendant on unjust enrichment claim where parties had express contract). Accordingly, Plaintiff's unjust enrichment claim is barred by the contract between the parties and by Plaintiff's failure to provide any evidence that SPS was the recipient of an undue benefit. Indeed, if anyone has been unjustly enriched, it is Plaintiff who has lived in her home for nearly five (5) years without making a payment. This claim must be dismissed.

25

01629323.4

**C.    SPS is Entitled to Summary Judgment on Its Counterclaim for Declaratory Judgment.**

Plaintiff's note, as modified, requires her to make monthly mortgage payments in the amount of $722.05.  *See* Weinberger Aff. at ¶ 3-5 and Exhibit A-C thereto.  Although she has enjoyed continuous possession of her home, Plaintiff has not remitted a mortgage payment since **July 25, 2003**.  As a result, Plaintiff's loan is approximately $49,000 in arrears (including late fees, advancements for taxes and insurance, and foreclosure fees).  *See* Dustin Stephenson Aff. at ¶¶ 5-6, attached as Exhibit C to Notice of Removal.

Plaintiff has undisputedly been in default on her mortgage obligations for almost five years – as evidenced by her failure to even respond to SPS' counterclaim.  The mortgage specifically provides that, in the event of default, the lender may invoke the power of sale or any other remedies permitted by applicable law.  *See* Mortgage at ¶ 23, Ex. A to Weinberger Aff. Nevertheless, each time SPS attempts to exercise its rights under the note and mortgage, Plaintiff files a lawsuit to thwart those efforts.

Therefore, in order to make certain that all issues between the parties are fully resolved, and to make certain that the right of the parties to one another and the property are fixed beyond further challenge, SPS requests that the Court enter an Order declaring that: (1) Plaintiff has defaulted on her obligations under the note and mortgage, and (2) SPS is entitled to exercise all remedies available under the note and mortgage, including but not limited to the right to invoke the power of sale.

## IV.    CONCLUSION

For the reasons stated in this brief, Select Portfolio Servicing, Inc. respectfully request that this Court grant its Motion for Summary Judgment in all respects.

01629323.4

/s John David Collins
Thomas W. Thagard III
John David Collins
Josh B. Baker

Attorneys for Defendant Select Portfolio Servicing, Inc.

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone:  205-254-1000
Facsimile:  205-254-1999

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  **John W. Scott and Kimberly W. Geisler.**  Furthermore, I hereby certify that I have mailed by United States Postal Service, first-class postage prepaid, the foregoing to the following non-CM/ECF participant:

Rosemary C. Riley, Pro Se
901 Brookland Curve
Montgomery, Alabama 36117
(334) 273-9119


/s John David Collins
OF COUNSEL