**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ROSEMARY C. RILEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) |
| **v.** | ) **CASE NO: 2:08-cv-00132-MHT-CSC** |
| | ) |
| **NATIONSCREDIT FINANCIAL SERVICES** | ) |
| **CORPORATION, et al.** | ) |
| | ) |
| **Defendant.** | ) |

**NOTICE OF FILING EVIDENTIARY SUBMISSION IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF DEFENDANT
SELECT PORTFOLIO SERVICING, INC.**

Defendant Select Portfolio Servicing, Inc. ("SPS"), by and through its counsel, hereby gives notice of the filing of the following materials in support of its contemporaneously filed motion for summary judgment:

**Exhibit 1:**    Affidavit of Diane Weinberger, including all Exhibits thereto.[1]

**Exhibit 2:**    Deposition of Rosemary C. Riley, including all Exhibits thereto.

**Exhibit 3:**    Plaintiff/Debtor's Voluntary Petition for Chapter 13 Bankruptcy.

**Exhibit 4:**    Documents Produced by HomeOwners Loan in Response to Document Subpoena.

---

[1] I hereby certify I currently hold the original signature page for the affidavit referenced above along with all formalities associated therewith.

01640961.1

/s John David Collins
Thomas W. Thagard III
John David Collins
Josh B. Baker

Attorneys for Defendant
Select Portfolio Servicing, Inc.

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.
2400 Regions/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2618
Telephone: 205-254-1000
Facsimile: 205-254-1999

2

01640961.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 16th day of May, 2008 a copy of the above and foregoing Notice of Filing Evidentiary Submission was placed in the United States mail, postage prepaid, affixed hereto, and served upon the following non-participant in CM/EFC system:

Rosemary C. Riley, Pro Se
901 Brookland Curve
Montgomery, Alabama 36117
(334) 273-9119

John W Scott
Kimberly W. Geisler
SCOTT DUKES & GEISLER PC
2100 Third Avenue North, Suite 700
Birmingham, AL 35203

s/ John David Collins
OF COUNSEL

3

# EXHIBIT
# 1

## AFFIDAVIT OF DIANE WEINBERGER

Before me, the undersigned authority in, and for said County and State, this day personally appeared Diane Weinberger, who, being first duly sworn, deposes and says as follows:

1.    My name is Diane Weinberger, and I am over 21 years of age and am competent to give this affidavit. I am the Director of Select Portfolio Servicing, Inc.'s Customer Assurance Review Department and I have been employed with Select Portfolio Servicing, Inc. ("SPS") since 1999. SPS was formerly known as Fairbanks Capital Corp. Based upon my knowledge and my review of business records generated and maintained in the normal course of SPS' business, I have personal knowledge of the facts set forth herein.

2.    Rosemary C. Riley originally obtained the loan (the "Loan") at issue in this case from NationsCredit Financial Services Corporation of Alabama ("NationsCredit"), on or about October 20, 1999.

3.    At that time, she executed a note (the "Note") in favor of NationsCredit in an original principal amount of $98,957.00. The Note was secured by a mortgage (the "Mortgage") executed by Plaintiff in favor of NationsCredit. The Mortgage granted NationsCredit a first priority interest in the home owned by Plaintiff and located in Montgomery County, Alabama. A true and correct copy of the Note and Mortgage is attached hereto as Exhibit A.

4.    A dispute arose between Ms. Riley and NationsCredit. This dispute ultimately resulted in litigation between Ms. Riley and NationsCredit.

01166509.1

5.      After mediation, a settlement between the parties was reached in April of 2002. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit B. The Settlement Agreement provided for the following modifications to the Note: (1) principal balance reduced from $98, 957.00 to $98,402.85; (2) interest rate reduced from 10.99% to 8.00%; (3) 360 successive monthly installments at $722.05 each, beginning with her May 25, 2002 payment; and (4) final payment of $722.05 to be due on April 25, 2032. The Settlement Agreement and Loan Modification Agreement was executed by all parties on June 24, 2002, and the modifications were completed on June 28, 2004. A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit C.

6.      On April 1, 2002, during the pendency of settlement negotiations between NationsCredit and Ms. Riley, the servicing rights to Ms. Riley's Loan transferred from NationsCredit to SPS. As part and parcel of this transfer, NationsCredit transferred the Riley Loan to SPS in a large group of loans (possibly thousands) along with generic loan information, i.e., payment amount, payment due date, total outstanding.

7.      SPS began servicing Ms. Riley's loan (sending monthly payment notices, receiving payments, etc.) based upon the information provided by NationsCredit.

8.      This generic information concerning Ms. Riley's loan from NationsCredit did not, to my knowledge, discuss the details of any lawsuit, and this unrelated transaction between NationsCredit and SPS had nothing to do with Ms. Riley or her Loan.

9.      Prior to this time, SPS had no connection to Ms. Riley or her loan or the litigation with NationsCredit. SPS was not a party and was not initially informed as to the details of the litigation or any settlement discussions.

2

10.     In fact, even after the servicing rights were transferred to SPS, SPS was not informed of the details of the litigation or any ongoing settlement negotiations.

11.     Pursuant to the terms of the Settlement Agreement that was reached between Ms. Riley and NationsCredit, Ms. Riley was to submit her first payment to SPS on May 25, 2002. SPS did not receive this payment until June 19, 2002, at which time this amount was initially posted as delinquent (since it was delinquent), placed in unapplied funds.   Ms. Riley's payments for July and August of 2002 were similarly placed in unapplied funds.

12.     On August 22, 2002, SPS received a signed copy of the Loan Modification Agreement reached between Ms. Riley and NationsCredit.  A few days thereafter, on August 28, 2002,  SPS became aware of the fact that the payments had been placed in unapplied funds and that SPS had overlooked the waiver of late fees detailed in the Loan Modification Agreement.

13.     In order to resolve these problems, SPS reversed the three prior posted payments, and reposted them as timely made on  May 2002, June 2002 and July 2002 payments.   SPS also waived late fees totaling $1,221.96 on August 29, 2002 as addressed in the Loan Modification Agreement.

14.     On September 13, 2002, SPS received a payment of $722.05, which it posted as Ms. Riley's August 25, 2002 payment.

15.     On December 10, 2002, SPS determined that, based upon the Settlement Agreement reached between Ms. Riley and NationsCredit, Ms. Riley's payments should be "rolled" forward one month.  In other words, because the Settlement Agreement with

NationsCredit was not signed until June of 2002 (which SPS played no role in), SPS determined that Ms. Riley should not have been required to make her May 2002 payment. The due dates for all of the payments were therefore rolled forward, leaving her due for her December 25, 2002 payment, rather than her November 25, 2002 payment.

16.   Ms. Riley's maturity date did not change as a result of this action, and her final monthly payment is still due on April 25, 2032.

17.   On December 24, 2002, Ms. Riley contacted SPS and requested that payoff quote for the loan be provided to CitiFinancial. SPS issued the payoff quote to CitiFinancial by facsimile on January 15, 2003. Soon thereafter, by letter dated February 6, 2003, SPS wrote to Ms. Riley to explain the recent adjustments to her account. A true and correct copy of the February 6, 2003 correspondence is attached hereto as Exhibit D.

18.   Ms. Riley failed to make her January and February mortgage payments.

19.   Accordingly, as of March 5, 2003, Ms. Riley's account was two months delinquent, and due for her January 25, 2003 payment. SPS sent Ms. Riley a demand letter on March 5, 2003, requesting all payments in arrears and informing her of possible foreclosure unless she submitted the requested funds or contacted SPS about a repayment plan. Ms. Riley did not contact SPS or submit the requested funds during March or April.

20.   Then, without warning or explanation, on May 6, 2003, Ms. Riley submitted a payment in the amount of $722.05. This payment was returned pursuant to SPS' operating procedures because the payment was less than the total amount due to reinstate her loan. SPS does not accept payments that are less than the total

4

reinstatement amount, unless the customer has previously made repayment arrangements.

21.     SPS correctly reported Ms. Riley's account status to the credit reporting agencies during the period from September 2002 through the present date. Many of these months reflect delinquencies because Ms. Riley was not making her payments in a timely manner, or not making payments at all. However, despite this payment history, SPS requested, in August of 2003, at Ms. Riley's insistence, that all credit reporting agencies to which the company reports correct Ms. Riley's credit report to reflect "good standing" from the months of June 2002 through August 2002.

22.     By letter dated August 6, 2003, in response to a complaint Ms. Riley filed with the Alabama Attorney General's Office ("AG"), SPS explained the problems associated with the consummation of the Settlement Agreement, the company's efforts to correctly apply her payments, the basis for referring the loan to foreclosure, the explanation for assessment of fees and charges to her account, and the history of reporting to credit agencies. Although the letter encouraged Ms. Riley to send in copies of any checks the she believed to be incorrectly posted, and urged her to contact the company to establish a repayment plan to allow her to keep her home, Ms. Riley declined to do so.

23.     As of today, Ms. Riley's account is Currently, Plaintiff's account is fifty-seven (57) months delinquent, being due for her July, 25, 2003 payment.

24.     Despite this delinquency, SPS has still not foreclosed on Ms. Riley's home.

FURTHER AFFIANT SAYETH NOT.

Executed on this the _____15_____ day of May, 2008.


_Diane Weinberger_
[ Director, ] Review Department
Customer Assurance

Sworn to and subscribed before me on this the ____15th____ day of May 2008.


Notary Public
My commission expires:

NOTARY PUBLIC
KRISTEN M. THOMPSON
3815 So. West Temple
Salt Lake City, Utah 84115
My Commission Expires
March 24, 2010
STATE OF UTAH

6



10/20/1999
(Date)

901 Brookland Curve, Montgomery, AL 36117
(Property Address)

, Alabama

(City)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 98,957.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is NationsCredit Financial Services Corporation of Alabama. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of 10.9900 %.

Interest will be charged on that part of principal which has not been paid 10/25/1999 and continuing until the full amount of principal has been p

Subject to applicable law, the Note Holder shall be entitled to interest at th (amount past due) including, without limitation, circumstances in which a petition in bankruptcy, wage-earner, or other insolvency proceeding is filed designating me as debtor.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(C) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law.

## 3. PAYMENTS

Such principal and interest shall be payable in 360 successive monthly installments with the first such installment in the amount of $ 941.64 due on the 25th day of November, 1999 , and subsequent monthly installments of $ 941.64 shall be due on the 25th day of each succeeding month thereafter. A final payment of $ 949.42 will be due on 10/25/2029 , I will make these payments every month until I have paid all the principal and interest and any other charges, described below, that I may owe under this Note. If, on 10/25/2029 , I still owe amounts under this Note, I will pay all those amounts, in full, on that date. Time is of the essence of this Note.

I will make my monthly payments at P.O. Box 650200, Dallas, TX 75265-0200 , or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment I will tell the Note Holder in writing that I am doing so.

I may make a full or partial prepayment without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If any charge for required insurance is returned to Note Holder, it may be credited to my loan amount or used to buy similar insurance or insurance which covers only the Note Holder's interest in the property securing this loan. Any refund on optional insurance obtained by the Note Holder will be credited to my loan amount. Credits to my loan amount will be applied as partial payments.

## 5. LOAN CHARGES AND FEES

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge For Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of the unpaid amount of my overdue payment of principal and interest; however, the charge will never be less than $10 nor greater than $10. I will pay this late charge promptly but only once on each late payment.

(B) Returned Check Charge

In the event that a check, negotiable order of withdrawal, share draft or other instrument used to make any payment required by this Note is returned unpaid, I agree to pay you a check collection charge of $ 26.00 for your additional costs incurred in processing such check. This charge will be required whether or not the returned check causes my payment to be late.

(C) Default

If I do not pay the full amount of each monthly payment on the date it is due I will be in default.

(D) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered to me or is deposited in the United States mail, postage prepaid, and addressed to me at my last known address as shown on the records of the Note Holder.

(E) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will have the right to do so if I am in default at a later time.

(F) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of not greater than 15% of the unpaid debt after default and referral of the note to an attorney who is not a salaried employee of the Note Holder.

ALO188NC 12/98

Page 1 of 2

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

**8. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. THIS NOTE SECURED BY REAL PROPERTY**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Trust Deed, or Deed to Secure Debt ("Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or an Interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. APPLICABLE LAW**

This Note shall be governed by the laws of the State of Alabama and any applicable federal laws, including federal laws which may preempt portions of state law relating to loan terms, interest rates, and fees. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions of this note will remain fully effective and enforceable.

**12. NO TAX ADVICE**

I agree that it is my responsibility to determine any and all aspects of federal tax considerations related to interest deductibility for my loan. Lender has not provided any tax advice to me.

If the proceeds of this loan are applied in whole or in substantial part to a purchase of goods or services from a seller who referred the Borrower to the Lender and the goods or services are purchased for personal, family or household use, then the following notice is applicable:

NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Caution-it is important that you thoroughly
read the contract before you sign it.

_Foxmins C. Rle_
Borrower

_____
Borrower

_____
Borrower

SPS/RILEY  0208

Record and Return to:
American Closing Services
5821 Fairview Road, Suite 200
Charlotte, NC 28209
Telephone: 888-358-8170

Prepared by:
Randy (Nationscredit)

Space Above Line For Recorder's Use

62653 / 7002274657

# MORTGAGE

THIS MORTGAGE (herein "Security Instrument") is made this 20th day of October, 1999.
The Grantor is, Rose C. Riley, an unmarried woman                                                    (herein
"Borrower"). This Security Instrument is given to NationsCredit Financial Services Corporation of Alabama          , a
corporation organized and existing under the laws of Alabama                              whose address is
2246 Eastern Blvd., , Montgomery, AL 36117                                                    (herein "Lender").

Borrower owes Lender the principal sum of
NINETY EIGHT THOUSAND NINE HUNDRED FIFTY SEVEN and 00/100                                              U.S.
$ 98,957.00                 , which indebtedness is evidenced by Borrower's note dated 10/20/1999           and
extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of
the indebtedness, if not sooner paid, due and payable on 10/25/2029     .

This Security Instrument secures to Lender: (a) The repayment of the indebtedness evidenced by the Note, with interest
thereon and all renewals, extensions and modifications; (b) The payment of all other sums, with interest thereon, advanced in
accordance herewith to protect the security of this Security Instrument; and (c) The performance of the covenants and
agreements of Borrower herein contained. Borrower does hereby mortgage, grant and convey to Lender and Lender's successors
and assigns, with power of sale, the following described property located in the County of     MONTGOMERY    , State of
Alabama:

Lot 11, Block E, according to the map of Dexter Ridge, Plat No. 5, as said Map
appears of record in the Office of the Judge of Probate of Montgomery County,
Alabama, in Plat Book 43, at Page 158.

which has the address of 901 Brookland Curve, Montgomery, AL 36117
                         (Street, City, State, Zip Code)                    (herein "Property Address");

To have and to hold this property unto Lender and Lender's successors and assigns, forever, together with all the
improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which
shall be deemed to be and remain a part of the property covered by this Security Instrument; and of all the foregoing,
together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the
"Property;"

AL0191NC 4/99                                                    Page 1 of 5

Borrower covenants that           over is lawfully seised of the estate hereby c           and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, late charges and other charges due under the Note.

    **2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

    If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

    If the amount of the Funds held by Lender shall exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 23 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

    **3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

    **4. Prior Security Instruments and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property ("Property Taxes") which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. In the event Borrower fails to pay any due and payable Property Taxes, Lender may, in its sole discretion, pay such charges and add the amounts thereof to the principal amount of the loan secured by this Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

    **5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. In the event Borrower fails to maintain hazard insurance (including any required flood insurance) in an amount sufficient to satisfy all indebtedness, fees, and charges owed Lender (in addition to payment of all liens and charges which may have priority over Lender's interest in the property), Lender may, in its sole discretion, obtain such insurance naming Lender as the sole beneficiary (single interest coverage). Lender may add any premiums paid for such insurance to the principal amount of the loan secured by this Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

    The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

    If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

    Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 23 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sum secured by this Security Instrument immediately prior to the acquisition.

    **6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair, shall not destroy or damage the Property, and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture

AL0191NC 4/99

SPS/RILEY 0354

of the property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of Borrower's interest in the Property or other material impairment on the lien created by this Security Instrument or Lender's security interest.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, (including without limitation appearing in bankruptcy, probate or condemnation) then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. In addition, Borrower covenants at all times to do all things necessary to defend the title to all of the said property, but the Lender shall have the right at any time to intervene in any suit affecting such title and to employ independent counsel in connection with any suit to which it may be a party by intervention or otherwise, and upon demand Borrower agrees either (1) to pay Lender all reasonable expenses paid or incurred by it in respect to any such suit affecting title to any such property, or affecting the Lender's liens or rights hereunder, including, reasonable fees to the Lender's attorneys or (2) to permit the addition of such expenses, costs, and attorney's fees to the principal balance of the Note(s) secured by this Security Instrument on which interest shall accrue at the Note rate as additional indebtedness.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Security Instrument Insurance.** If Lender required Security Instrument Insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

9. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or of otherwise afforded by the applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notice.** Except for any notice required under applicable law to be given in another manner, any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

15. **Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. If any provision of this Security Instrument is found to be in violation of any law, rule or regulation which affects the validity and/or enforceability of the Note and/or Security Instrument, that provision shall be deemed modified to comply with applicable law, rule, or regulation.

16. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

AL0191NC 4/99

Page 3 of 5

18. **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

19. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to entry of a judgment enforcing this Security Instrument if Borrower does all of the following: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's remedies as provided in paragraph 23 hereof, including, but not limited to, reasonable attorneys' fees; and court costs; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

20. **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 23 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 23 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. The receiver shall be liable to account only for those rents actually received.

21. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to the Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There may also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

22. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or Hazardous Substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive elements. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

23. **Acceleration; Remedies.** Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Security Instrument, including the covenants to pay when due any sums secured by this Security Instrument, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect in such proceeding all expenses incurred in pursuing the remedies provided in this paragraph 23, including, but not limited to, reasonable attorneys' fees and costs of evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in _____MONTGOMERY_____ County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the county courthouse of this county. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

24. **Release:** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay all costs of recordation, if any.

25. **Waivers:** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Adjustable Rate Rider      ☐ Condominium Rider      ☐ 1-4 Family Rider

☐ Planned Unit Development Rider      ☐ Balloon Rider      ☐ Other(s) (specify):

AL0191NC 4/99 

SPS/RILEY 0356

# B

AUG 20 2002 17:43 FR BANKOFAMERICA LEGAL    214 209 3120 TO 918012933929    P.05/12

*file copy*

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| ROSE RILEY, | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| v. | ) | CV-2000-2931 |
| | ) | |
| NATIONSCREDIT FINANCIAL | ) | |
| SERVICES CORPORATION OF | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made by and binding upon ROSE C. RILEY aka Rosemary C. Riley ("Riley"), on the one hand, and NATIONSCREDIT FINANCIAL SERVICES CORPORATION, on its own behalf and as successor in interest to NationsCredit Financial Services Corporation of Alabama ("NationsCredit"), and RANDY BRYAN ("Bryan") (collectively "Defendants"), on the other hand, and settles and resolves all claims in the above-styled lawsuit.

WHEREAS, Riley filed a lawsuit against Defendants in the Circuit Court of Montgomery County, Alabama, said lawsuit being styled *Rose Riley v. NationsCredit Financial Services Corporation of Alabama, et al.*, CV-2000-2931 (Circuit Court of Montgomery County, Alabama) (the "Riley Litigation");

WHEREAS, Riley entered into a loan transaction with NationsCredit Financial Services Corporation of Alabama, loan no. 7002274657, to refinance her home mortgage loan with non-party Rhodes Construction Company ("Rhodes"), by executing a promissory note on October 20, 1999 in the principal amount of $98,957 (the "Note"). The loan also included a payoff of Riley's car loan with non-party Americredit, a payoff of various credit card bills, settlement charges, and a

SPS/RILEY 0038

AUG 20 2002 17:43 FR BANKOFAMERICA LEGAL  214 209 3120 TO 918012933929    P.06/12

disbursement to Riley. The Note is secured by a mortgage on the property located at 901 Brookland Curve, Montgomery, Alabama. The mortgage is recorded at Book 2047, Page 0999 of the Montgomery County Probate Court (the mortgage is hereafter referred to as the "Security Instrument");

WHEREAS, Riley alleges in the Riley Litigation, *inter alia*, that NationsCredit failed to obtain the correct payoff amount from Rhodes and failed to review adequately the title insurance documentation identifying the liens on Riley's property;

WHEREAS, Riley further alleges in the Riley Litigation that, consequently, the payoff amounts were insufficient to pay off the debts being refinanced, causing Riley to default on her monthly debt obligations;

WHEREAS, Riley further alleges that she has been damaged by these actions; and

WHEREAS, Defendants deny any wrongdoing or liability on their part and deny that Riley has been damaged in any way;

NOW, THEREFORE, for and in consideration of the payments, mutual promises, and obligations set forth herein, the receipt and sufficiency of which is hereby expressly acknowledged by the parties hereto, Riley, on the one hand, and NationsCredit and Bryan, on the other hand, agree as follows::

1.   NationsCredit will pay to Riley the sum of Twenty-Three Thousand and No/100 Dollars ($23,000.00).

2.   Upon execution of the same by Riley, NationsCredit will execute a Modification Agreement, the terms and conditions of which are set forth in Exhibit A hereto (the "Modification Agreement") and which modifies the Note and Security Instrument to (a) change the principal

2

SPS/RILEY 0039

amount of the Note, (b) change the interest rate of the Note, (c) restate the number and amount of the monthly payments of principal and interest under the Note, and (d) make the mortgage assumable.

3.    Effective the date of this Settlement Agreement, Riley now and forever, fully and finally, releases, acquits, and discharges NationsCredit Financial Services Corporation, on its own behalf and as successor in interest to NationsCredit Financial Services Corporation of Alabama, and all of their present and former officers, directors, shareholders, representatives, heirs, assigns, agents, employees, attorneys, predecessors, successors, parent companies and entities, subsidiaries, and affiliated or related companies and entities, and Bryan and all of his representatives, employees, agents, attorneys, heir or assigns, from any and all claims, liability, damages, injuries, causes of action, demands and/or losses, known or unknown, of any kind or character, now accrued or hereafter to accrue, arising out of or related to the facts and claims raised or asserted in the Riley Litigation. Riley hereby acknowledges full, final, and complete accord, settlement, and satisfaction of any and all such claims against NationsCredit and Bryan arising out of or related to the Riley Litigation, specifically including, but not limited to, any and all claims that were asserted or could have been asserted by Riley in the Riley Litigation.

4.    This Settlement Agreement and Release is made for the purpose of compromising disputed claims. It shall not be deemed to be an admission of liability on the part of either NationsCredit or Bryan, such liability expressly being denied.

5.    This Settlement Agreement and Release shall be binding upon, as appropriate, Riley, NationsCredit, and Bryan and their respective representatives, employees, agents, predecessors, successors, heirs, and assigns. The parties further expressly agree, represent, and warrant that all

3

SPS/RILEY 0040

AUG 20 2002 17:44 FR BANKOFAMERICA LEGAL   214 209 3120 TO 918012933929    P.08/12

agreements and understandings relating in any way to the subject matter of this Settlement Agreement and Release are expressed herein, and that there are no oral agreements or understandings of any nature whatsoever which contradict, vary, modify, supplement, or add in any way to the express written terms of this Settlement Agreement and Release. The parties voluntarily enter into this Settlement Agreement and Release for the purpose of making full and final compromise, adjustment, and settlement of the claims as more fully described above.

6.    Should any provision of this Settlement Agreement and Release, including any provision of the Modification Agreement, require interpretation or construction, it is agreed that the Court, administrative body, or other entity interpreting or construing it shall not apply a presumption that the provisions hereof shall be more strictly construed against one party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same, it being agreed that all parties hereto and their respective attorneys and agents have fully participated in the preparation of all provisions of this Settlement Agreement and Release.

7.    The parties and their counsel each covenant and agree that Riley, NationsCredit, and Bryan and their attorneys, agents, or representatives acting on their behalf shall not disclose to any person, organization, governmental or judicial body, any term or condition of this Settlement Agreement and Release, except for the Modification Agreement, without prior written consent of all parties hereto; provided, however, that the parties shall have the right to disclose said terms to (a) their counsel; (b) their accountants; (c) state and federal tax authorities; (d) state and federal banking authorities or regulators; (e) pursuant to any court order or requirement of law; and/or (f) as may be required to enforce the terms hereof. NationsCredit may also disclose the terms of this

4

SPS/RILEY 0041

AUG 20 2002 17:45 FR BANKOFAMERICA LEGAL  214 209 3120 TO 910012933929    P.09/12

Settlement Agreement and Release to any assignee of the loan in order to effectuate the terms of this Settlement Agreement and Release.

8.      Riley expressly agrees that within five (5) business days of the execution of this Settlement Agreement and Release, she will file with the Court a stipulation of dismissal, or other necessary paper, dismissing with prejudice the claims in the Riley Litigation against NationsCredit and Bryan.

9.      In the event any action is taken in connection with the enforcement of this Settlement Agreement and Release, the prevailing party shall be entitled to recover all reasonable costs, expenses, and attorneys' fees, including attorneys' fees and costs incurred by in-house legal counsel. Each party shall bear its own attorneys' fees and costs incurred in connection with this action.

10.     The individual signing this Settlement Agreement and Release on behalf of NationsCredit expressly represents and warrants that he or she is authorized to execute this Settlement Agreement and Release on behalf of NationsCredit and expressly represents and warrants that this Settlement Agreement and Release will be fully binding upon NationsCredit.

11.     Riley represents and warrants that she has not assigned or transferred any alleged claim or cause of action, or any interest in any claim or cause of action, against NationsCredit and/or Bryan to any third party, and that no other party(ies) has an interest in or rights to said claims or causes of action.

12.     The parties further declare that each has read carefully the foregoing Settlement Agreement and Release, that they have been advised by their attorneys regarding the same, that they know and understand its contents and are fully aware of all legal rights, and with full authority they voluntarily sign the same as their own act.

5

SPS/RILEY 0042

AUG 28 2002 17:45 FR BANKOFAMERICA LEGAL   214 209 3120 TO 910012903329    P.10/12

_Rose Riley_
**ROSE RILEY**

STATE OF ALABAMA    )

COUNTY OF Montgomery    )

    Before me personally appeared ROSE RILEY, who is known to me to be the person who executed the foregoing Settlement Agreement and Release and who acknowledged that with full authority to act on her own behalf, she executed the same with full knowledge of the contents thereof.

    SWORN TO AND SUBSCRIBED before me this _21st_ day _May_____, 2002.

[NOTARIAL SEAL]

_Amanda Y Martin_
Notary Public

My Commission Expires: _9-11-03_

6

SPS/RILEY 0043

**NATIONSCREDIT FINANCIAL
SERVICES CORPORATION**

By _Samuel Pascall_

Its _A.V.P._

STATE OF _Texas_ )
COUNTY OF _Dallas_ )

I, the undersigned authority, a Notary Public in and for said County in said State, hereto certify that _Samuel Pascall_ whose name as _AVP_ of NATIONSCREDIT FINANCIAL SERVICES CORPORATION, a North Carolina corporation whose principal place of business is located in Irving, Texas, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the said instrument, s/he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

SWORN TO AND SUBSCRIBED before me this _28th_ day _June_, 2002.

[NOTARIAL SEAL]

_Janice E. McCracken_
Notary Public

My Commission Expires: _1-10-2003_

JANICE MCCRACKEN
Notary Public
State of Texas
My Commission Expires
January 10, 2003



7

SPS/RILEY 0044

AUG 20 2002 17:46 FR BANKOFAMERICA LEGAL   214 209 3120 TO 918012503929     P.12/12

_____
RANDY BRYAN

STATE OF ALABAMA      )
                      :
COUNTY OF _____   )

Before me personally appeared RANDY BRYAN, who is known to me to be the person who executed the foregoing Settlement Agreement and Release and who acknowledged that with full authority to act on his own behalf, he executed the same with full knowledge of the contents thereof.

SWORN TO AND SUBSCRIBED before me this _____ day _____, 2002.

[NOTARIAL SEAL]                    _____
                                   Notary Public

                                   My Commission Expires: _____

17741.1

8

** TOTAL PAGE.12 **

SPS/RILEY  0045

# C

AUG 20 2002 17:42 FR BANKOFAMERICA LEGAL  214 209 3120 TO 919012533929    P.02/12

7002274657

MODIFICATION AGREEMENT

Loan No. 7002274657

**THIS MODIFICATION AGREEMENT**, made this 21st day of _May_, 2002 modifies the Promissory Note (the "Note") and the Mortgage recorded at Book 2047, Page 0899 - Book 2048, Page 0003 of the Montgomery County Probate Court (the "Security Instrument"), each dated October 20, 1999 (collectively, the "Loan Documents"), previously executed by the undersigned Rose C. Riley aka Rosemary C. Riley (the "Borrower") in favor of NationsCredit Financial Services Corporation of Alabama. NationsCredit Financial Services Corporation (the "Lender" or "Note Holder") is the lawful successor in interest to NationsCredit Financial Services Corporation of Alabama. The Loan Documents evidence a loan (the "Loan") in the original principal amount of $98,957.00 (the "Principal Amount") at a yearly interest rate of 10.9500% (the "Interest Rate"). The Loan is secured by a Mortgage on the property located at 901 Brookland Curve, Montgomery, Alabama 36117.

This Modification Agreement modifies the Loan Documents (1) to change the Principal Amount of the Loan, (2) to change the Interest Rate, (3) to restate the number and amount of monthly payments of Principal and Interest under the Note, and (4) to make the Mortgage assumable.

In consideration of the mutual promises and agreements exchanged, with the intent to be legally bound, Borrower and Lender agree as follows:

1.   **Principal.** The Loan is modified to change the Principal Amount from $98,957.00 to $98,402.85.

2.   **Interest.** The Note is modified to restate Section 2 "Interest" as follows:

     I will pay interest at a yearly rate of 8.00%.
     Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning May 1, 2002 and continuing until the full amount of principal has been paid.
     Subject to applicable law, the Note Holder shall be entitled to interest at the yearly rate on any mortgage arrearage (amount past due) including, without limitation, circumstances in which a petition in bankruptcy, wage-earner, or other insolvency proceeding is filed designating me as debtor.
     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(C) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law.

3.   **Payments.** The Note is modified to restate Section 3 "Payments" as follows:

     Such principal and interest shall by payable in 360 successive monthly installments with the first such installment in the amount of $722.05 due on the 25th day of May, 2002, and subsequent installments of $722.05 shall be due on the 25th day of each succeeding month thereafter. A final payment of $722.05 will be due on April 25, 2032. I will make these payments every month until I have paid off the principal and interest and any other charges, described below, that I may owe under this Note. If on April 25, 2032, I still owe amounts under this Note, I will pay all of those amounts, in full, on that date. Time is of the essence of this Note.
     I will make my monthly payments at NationsCredit Corporation, Post Office Box 17285, Baltimore, Maryland 21297-1285 or at a different place if required by the Note Holder.

5.   **Security Instrument.** The Security Instrument is modified as follows:

17629.1

SPS/RILEY 0035

The Security Instrument is hereby amended to reflect that the amount of present obligations secured is NINETY EIGHT THOUSAND, FOUR HUNDRED TWO and 85/100 DOLLARS U.S. ($98,402.85) with the balance of indebtedness, if not sooner paid, due and payable on April 25, 2032.

6.    **Assumption of Mortgage.** The Security Agreement is further modified as follows under "Non-Uniform Covenants:"

27.  **Assumption of the Mortgage.** If Borrower sells or transfers all or part of the Property or any rights in the Property, any person to whom Borrower sells or transfers the Property may take over all of Borrower's rights and obligations under this Security Instrument (known as "assumption of the Mortgage") if (A) Borrower gives Lender written notice of the sale or transfer; (B) Lender agrees that the person's credit is satisfactory; (C) the person agrees to pay interest on the amount owed to the Lender under the Note and under this Security Instrument at the rate indicated in the Modification Agreement and incorporated in the Note; and (D) the person signs an assumption agreement that is acceptable to Lender and that obligates the person to keep all the promises and agreements made in the Note, Security Instrument and Modification Agreement.

7.    **Other Terms Unchanged.** Except as provided in this Modification Agreement, the terms of the Note and Security Agreement remain unchanged and the Borrower and Lender by this Agreement ratify, confirm and agree to the Loan Documents as modified and changed by this Modification Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and/or Security Instrument.

By signing this Modification Agreement, Lender and Borrower agree to all of the above.  This Modification Agreement is not binding, in whole or in part, until executed by Lender and Borrower.

NATIONSCREDIT FINANCIAL SERVICES
CORPORATION, as successor in interest to
NationsCredit Financial Services Corporation
of Alabama

By: _____

NAME: _Susannah Braxell_____

ITS: _A.V.P._____


_Rose C. Riley_____  (Seal)
Name: Rose C. Riley          -Borrower
Address: 901 Brookland Curve
          Montgomery, Alabama 36117

17229.1                          2

SPS/RILEY  0036

AUG 29 2002 17:43 FR BANKOFAMERICA LEGAL  214 209 3120 TO 918012900929        P.04/12

STATE OF _Alabama_ )

COUNTY OF _Montgomery_ )

On this _21st_ day of _May_, 2002, before me the subscriber personally appeared _Rose C. Riley_ to me known and known to me to be the same person described in and who executed the foregoing instrument, and (s)he duly acknowledged to me that (s)he executed the same.

_Amanda Martin_
Notary Public
Name: AMANDA MARTIN
My Commission Expires: 9-11-02

(Seal)

STATE OF _Texas_ )

COUNTY OF _Dallas_ )

On this _24th_ day of _June_, 2002, before me the subscriber personally appeared _Cordell Adams_ to me known and known to me to be the same person described in and who executed the foregoing instrument, and (s)he duly acknowledged to me that (s)he executed the same.

_Cordell Adams_
Notary Public
Name:
My Commission Expires:

(Seal)

CORDELL ADAMS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 01-17-05

PREPARED BY & RETURN TO:
NationsCredit Financial Services Corporation
226 East John Carpenter Freeway
Suite 1000
Irving, Texas 76062

[7129.]                                    3.

# D

# Fairbanks Capital Corp.

February 6, 2003

Rosemary C. Riley
901 Brookland Curve
Montgomery, AL 36117

Re:  Account Number 7002274657

Dear Rosemary C. Riley:

Fairbanks Capital Corp. is in receipt of your inquiry regarding the above referenced account.

After reviewing our records, we have found that your account has been adjusted. As of today your principal balance is $98,003.13, your interest rate is 8.0%, there are no legal fees, and your payments have been adjusted. As of today your account is due for December 25, 2002.

Pursuant to the terms of your mortgage, the borrower is responsible for providing evidence of insurance coverage on an annual basis or as needed/requested from the Lender. If proof of coverage is not received, our Insurance Center will begin the process to secure a policy to protect our interest in the property.

Currently, you have an outstanding balance due in escrow/corporate advance for force placed insurance, in the amount of $1,710.00. This balance corresponds to the periods from November 15, 2000 to November 15, 2001, in the amount of $1,084.00, and from November 15, 2001 to May 25, 2002, in the amount of $626.00.

If you have homeowner's insurance coverage for the time periods above referenced, please fax them to the Insurance Department at 904-470-2348, attention: Sandra. Upon providing proof that you did have insurance coverage, any adjustments necessary to update your account will be made.

We appreciate the opportunity to serve your mortgage needs. If you have any questions, please do not hesitate to call our Customer Service Department at 1(800) 944-1212, Monday through Friday between the hours of 8:00 a.m. and 8:00 p.m., Eastern Standard Time.

Sincerely,
Customer Advocate Unit

**10401 DEERWOOD PARK BLVD**
**P.O. BOX 551170 • JACKSONVILLE, FL 32256**
**TELEPHONE (800) 944-1212**

DEFENDANT'S
EXHIBIT

6

# EXHIBIT 2
# PART 1

**American Court Reporting**
**toll-free (877) 320-1050**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CASE NUMBER
2:04CV797-A

ROSEMARY C. RILEY,
     Plaintiff (s),
vs.
FAIRBANKS CAPITAL CORPORATION,
     Defendant (s).

DEPOSITION TESTIMONY OF:
ROSEMARY RILEY

MARCH 7, 2005
9:45 A.M.

REPORTED BY:  MELISSA S. LEE, CSR

Page 2

---

ACCORDING TO RULES OF CIVIL PROCEDURE, YOU WILL HAVE THIRTY (30) DAYS FROM THE DATE YOU RECEIVE THIS DEPOSITION IN WHICH TO READ, SIGN AND RETURN YOUR DEPOSITION TO THE ABOVE OFFICE.  IF YOU FAIL TO DO SO, YOU AUTOMATICALLY WAIVE YOUR RIGHT TO MAKE ANY CORRECTIONS TO YOUR DEPOSITION.

Page 4

---

INSTRUCTIONS TO THE WITNESS

ROSEMARY RILEY
    PLEASE READ YOUR DEPOSITION OVER CAREFULLY BEFORE YOU SIGN IT. YOU SHOULD MAKE ALL YOUR CHANGES ON THE ATTACHED ERRATA SHEET.  PLEASE DO NOT MARK ON THE ORIGINAL DEPOSITION.
    AFTER MAKING ANY CHANGES WHICH YOU HAVE NOTED ON THE ATTACHED ERRATA SHEET, SIGN YOUR NAME ON THE ERRATA SHEET AND DATE IT.
    THEN SIGN YOUR DEPOSITION AT THE END OF YOUR TESTIMONY IN THE SPACE PROVIDED.  YOU ARE SIGNING IT SUBJECT TO THE CHANGES YOU HAVE MADE ON THE ERRATA SHEET, WHICH WILL BE ATTACHED TO THE DEPOSITION.
    RETURN THE ORIGINAL ERRATA SHEET AND TRANSCRIPT TO AMERICAN COURT REPORTING SERVICE, 2100A SOUTHBRIDGE PARKWAY, SUITE 375 BIRMINGHAM, ALABAMA, 35209.

Page 3

---

ERRATA SHEET

PAGE    LINE      EXPLANATION

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Page 5

1  (Pages 2 to 5)

**American Court Reporting**
**toll-free (877) 320-1050**

| | | | |
|---|---|---|---|
| 1 | SIGNATURE PAGE | 1 | I N D E X |
| 2 | OF | 2 | |
| 3 | ROSEMARY RILEY | 3 | EXAMINATION BY:        PAGE NO: |
| 4 | | 4 | Mr. Collins          9-270 |
| 5 | | 5 | |
| 6 | I HEREBY ACKNOWLEDGE THAT I | 6 | EXHIBITS: |
| 7 | HAVE READ THE FOREGOING DEPOSITION AND | 7 | Defendant's 1          58 |
| 8 | THAT THE SAME IS A TRUE AND CORRECT | 8 | Defendant's 2          84 |
| 9 | TRANSCRIPTION OF THE ANSWERS GIVEN BY | 9 | Defendant's 3          92 |
| 10 | ME TO THE QUESTIONS PROPOUNDED, EXCEPT | 10 | Defendant's 4          100 |
| 11 | FOR THE CHANGES, IF ANY, NOTED ON THE | 11 | Defendant's 5          103 |
| 12 | ATTACHED ERRATA SHEET. | 12 | Defendant's 6          117 |
| 13 | | 13 | Defendant's 7          126 |
| 14 | | 14 | Defendant's 8          129 |
| 15 | | 15 | Defendant's 9          160 |
| 16 | | 16 | Defendant's 10          189 |
| 17 | | 17 | Defendant's 11          190 |
| 18 | | 18 | Defendant's 12          193 |
| 19 | | 19 | Defendant's 13          203 |
| 20 | SIGNATURE:_____ | 20 | Defendant's 14          225 |
| 21 | DATE:      _____ | 21 | Defendant's 15          229 |
| 22 | | 22 | Defendant's 16          236 |
| 23 | | 23 | Defendant's 17          240 |
| | Page 6 | | Page 8 |

| | | | |
|---|---|---|---|
| 1 | S T I P U L A T I O N S | 1 | A P P E A R A N C E S |
| 2 | | 2 | |
| 3 | | 3 | FOR THE PLAINTIFF (S): |
| 4 | IT IS STIPULATED AND AGREED, | 4 | |
| 5 | by and between the parties through their | 5 | Rosemary C. Riley, Pro Se |
| 6 | respective counsel, that the deposition of | 6 | 901 Brookland Curve |
| 7 | ROSEMARY RILEY may be taken before MELISSA S. | 7 | Montgomery, Alabama, 36117 |
| 8 | LEE, CSR, Commissioner  and Notary Public | 8 | |
| 9 | for the State of Alabama At Large, at the law | 9 | |
| 10 | offices of MAYNARD, COOPER & GALE, RSA Tower, | 10 | FOR THE DEFENDANT (S): |
| 11 | 201 Monroe Street, Suite 1650, Montgomery, | 11 | |
| 12 | Alabama, on the 7th day of March, 2005, | 12 | John David Collins, Esq. |
| 13 | commencing  at or about 9:45 a.m. | 13 | MAYNARD, COOPER & GALE |
| 14 | IT IS FURTHER STIPULATED AND | 14 | 2400 AmSouth/Harbert Plaza |
| 15 | AGREED that it shall not be necessary | 15 | 1901 Sixth Avenue North |
| 16 | for any objections to be made by | 16 | Birmingham, Alabama, 35203-2618 |
| 17 | counsel as to any questions except as | 17 | |
| 18 | to form or leading questions, and that | 18 | |
| 19 | counsel for the parties may make | 19 | |
| 20 | objections and assign grounds at the | 20 | |
| 21 | time of trial, or at the time said | 21 | |
| 22 | deposition is offered in evidence, or | 22 | |
| 23 | prior thereto. | 23 | |
| | Page 7 | | Page 9 |

2  (Pages 6 to 9)

**American Court Reporting**
**toll-free (877) 320-1050**

1    I, MELISSA S. LEE, CSR,
2  Court Reporter and Notary Public for
3  the State of Alabama at Large, acting as
4  Commissioner, certify that on this
5  date as provided by Rule 30 of the
6  Alabama Rules of Civil Procedure, and
7  the foregoing stipulations of counsel,
8  there came before me at the law
9  offices of MAYNARD, COOPER & GALE, RSA
10  Tower, 201 Monroe Street, Suite 1650,
11  Montgomery, Alabama, on the 7th day of
12  March, 2005, ROSEMARY RILEY, witness in
13  the above cause, for oral examination,
14  whereupon, the following proceedings
15  were had:
16
17          ROSEMARY RILEY
18  Being first duly sworn, was examined
19  and testified as follows:
20
21  EXAMINATION BY MR. COLLINS:
22    Q    Good morning, Ms. Riley. We
23  previously met. For the record, my name is
                                    Page 10

1  correctly. That's a right you can reserve or
2  you do not have to reserve. It's your
3  choice. What would you like to do?
4    A    I would like to receive a copy.
5    Q    Okay. You would like to read and
6  sign?
7    A    Exactly.
8    Q    Okay. There's a few ground rules
9  essentially, and you may be familiar with
10  this from your prior experience, but it's
11  important that you give audible responses to
12  my questions and don't nod your head or say
13  uh-huh or uh-uh because she won't be able to
14  type that down. Okay?
15    A    Yes.
16    Q    Okay. And you also understand
17  you're under oath; correct?
18    A    Correct.
19    Q    Okay. And your testimony today is
20  just the same as if it was given before a
21  judge and a jury?
22    A    Exactly.
23    Q    Okay. If you, at any time, don't
                                    Page 12

1  John David Collins, and I represent Fairbanks
2  Capital Corp which is now known as Select
3  Portfolio Services. So if I use the names
4  Fairbanks and SPS, I'm talking about the same
5  company. Okay? I'll try to use -- be
6  consistent and use Fairbanks.
7        And it's my understanding that
8  you're pro se today, which means you're not
9  represented by counsel.
10    A    Exactly.
11    Q    Okay. And have you ever had your
12  deposition taken before?
13    A    Yes, sir.
14    Q    Okay. So you're familiar with the
15  process?
16    A    To a certain degree, yes.
17    Q    Okay. We'll talk about those
18  depositions in a minute. But today, for your
19  benefit, there is -- you have a right to read
20  and sign the deposition. And the court
21  reporter will send you a transcript and you
22  can make any -- not substantive changes, but
23  changes if she doesn't take down something
                                    Page 11

1  understand a question I'm asking, if you'll
2  just ask me to rephrase it, I'll be happy to
3  do so. Okay?
4    A    Yes.
5    Q    If you answer the question, I'm
6  going to assume that you understood it.
7  Okay?
8    A    Okay.
9    Q    And if there's any time you want to
10  take a break, just let me know, and I'll be
11  happy to accommodate you. Okay?
12    A    That's fine.
13    Q    Okay. Are you taking any
14  medications today that would affect your
15  ability to testify?
16    A    None today. No. Not today, no.
17    Q    What I want to begin -- and you can
18  tell me the other depositions that you've
19  given. Can you tell me the cases that those
20  were in or the circumstances?
21    A    I would have to refer to my
22  notes --
23    Q    Okay. That's fine.
                                    Page 13

3  (Pages 10 to 13)

1    A  -- because it has been quite some
2  time.
3    Q  That's fine.
4    A  Nations Credit, and that had to do
5  with the fraud that took place in servicing
6  my loan with Nations Credit.
7    Q  And just for clarification, that's
8  the same loan we're talking about today;
9  correct -- or let me rephrase that. Modified
10  loan that we're talking about?
11    A  Correct.
12    Q  Okay. And we'll talk about that in
13  further detail. What was the other case that
14  you were deposed in?
15    A  With -- one moment. I'm sorry.
16    Q  And for the record you're referring
17  to your responses to the interrogatory
18  request that I served?
19    A  That's correct.
20    Q  Okay.
21    A  That was with the case with
22  Consolidated Stores.
23    Q  Okay. And what type of case was

Page 14

1    A  That's correct.
2    Q  Okay.
3    A  Just to refresh my memory.
4    Q  Okay. Thank you. And I would like
5  to now move on and ask you some background
6  information, Ms. Riley. What is your date of
7  birth.
8    A  9/11/53.
9    Q  And your current address?
10    A  901 Brookland Curve.
11    Q  Okay.
12    A  Montgomery, Alabama, 36117.
13    Q  And how long have you lived at 901
14  Brookland Curve?
15    A  Approximately five, six years.
16    Q  Okay. And prior to that time,
17  where did you reside?
18    A  5122 East Linda Circle, Montgomery,
19  Alabama, 36108.
20    Q  Okay. How long did you reside
21  there?
22    A  Approximately -- okay. That I
23  would have to do the math. I've been in

Page 16

1  that?
2    A  That was an employment
3  discrimination case.
4    Q  Okay. And you were deposed by the
5  attorney representing Consolidated, I assume?
6    A  That's correct.
7    Q  And we'll talk about both those
8  cases, particularly the Nations Credit case,
9  later today. What -- any other depositions
10  that you recall?
11    A  Not that I recall.
12    Q  Okay. Ever testified in court?
13    A  No.
14    Q  Okay.
15    A  Not to my recollection.
16    Q  Okay. What did you do to prepare
17  for this deposition today?
18    A  Read my Bible.
19    Q  Okay. Did you read anything else,
20  any of the documents you have? I notice that
21  you brought some documents with you. Are
22  these the documents with you -- are these the
23  documents that you've already given to me?

Page 15

1  Alabama for 25 years.
2    Q  Okay.
3    A  I've lived at Fairbanks -- I mean,
4  in Brookland Curve for at least 5 years, so
5  approximately 20 years. 19 or 20 years.
6    Q  Okay. Thank you.
7    A  And that's an estimate.
8    Q  Okay. That's fine. Who else lives
9  with you at the 901 Brookland -- at your
10  current address, 901 Brookland Curve?
11    A  Joseph Riley.
12    Q  Okay. Now, who is Joseph Riley?
13    A  My son.
14    Q  How old is Joseph?
15    A  23.
16    Q  Okay. And what is his occupation?
17    A  Warehouse employee.
18    Q  Do you know where he works?
19    A  Miller.
20    Q  M-I-L-L-E-R?
21    A  Yes.
22    Q  Okay. What kind of company is
23  that? I'm not familiar with them. Is it --

Page 17

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    A    It's a beer distributor. | 1    A    Classy Riley. |
| 2    Q    Oh, Miller Brewery. Okay. Is | 2    Q    Okay. How old is Classy? |
| 3  Joseph married? | 3    A    21. |
| 4    A    No. He is not. | 4    Q    Okay. And she -- she does not |
| 5    Q    Okay. And are you married? | 5  reside with you, I presume? |
| 6    A    No. I am not. | 6    A    She lives with me on and off. |
| 7    Q    Are you divorced? | 7    Q    Okay. Does she live here in |
| 8    A    Yes, I am. | 8  Montgomery? |
| 9    Q    Okay. And who was your -- what's | 9    A    Yes. |
| 10  your ex-husband's name, please? | 10    Q    Okay. What is her occupation? |
| 11    A    Joe Riley. | 11    A    Student. |
| 12    Q    Okay. And when were you and | 12    Q    And where is she a student? |
| 13  Mr. Riley divorced, what year if you recall? | 13    A    Alabama State University. |
| 14    A    I don't recall the year. But I'm | 14    Q    So she lives probably on campus |
| 15  sure, if you need to have the exact time, I | 15  when she's not living with you. Is that a |
| 16  could refer to some records that I have. | 16  fair statement? |
| 17    Q    Well, if you could, give me an | 17    A    She had an apartment of her own. |
| 18  estimate. Is it five, ten years ago? | 18    Q    Okay. Does she have an apartment |
| 19    A    Well, I would be -- this is a | 19  of her own now? |
| 20  guesstimation. | 20    A    I think she has a roommate. I'm |
| 21    Q    Okay. | 21  not exactly sure. I know -- |
| 22    A    Approximately 15 years ago, I | 22    Q    Okay. |
| 23  imagine. | 23    A    I look up, and she's with me at |
| Page 18 | Page 20 |
| 1    Q    Okay. Did -- did the divorce | 1  some point, and then she's not with me. |
| 2  require any court proceedings, or were you | 2    Q    I understand that. I apologize for |
| 3  represented by an attorney? | 3  asking this question, but it's fairly |
| 4    A    I was represented by an attorney. | 4  standard. Do you have -- have you ever been |
| 5    Q    Okay. And did you -- did that | 5  convicted of a crime or felony? |
| 6  entail any court proceedings in connection | 6    A    No. I have not. |
| 7  with the divorce? | 7    Q    Anything other than a speeding |
| 8    A    We did not appear in court, no. | 8  ticket? |
| 9    Q    Okay. And your husband was | 9    A    No. I have not. |
| 10  represented as well? | 10    Q    Okay. Walk me through, if you |
| 11    A    That's correct. | 11  would, Ms. Riley, your educational |
| 12    Q    Do you remember your attorney's | 12  background. If you would, start with high |
| 13  name? | 13  school and take me through college or any |
| 14    A    You're talking about 15 years ago. | 14  other courses you've attended. |
| 15    Q    I know. I appreciate that. | 15    A    I graduated from Chester High |
| 16    A    No. I -- not offhand. | 16  School in Chester, Pennsylvania with a high |
| 17    Q    And was there a written divorce | 17  school diploma. I went to and graduated from |
| 18  decree or settlement? | 18  West Chester University, West Chester, |
| 19    A    Yes. | 19  Pennsylvania with a BS Degree in education. |
| 20    Q    And in addition to Joseph Riley, | 20    Q    Okay. Let me stop there. When did |
| 21  your son, do you have any other children? | 21  you graduate? If you can, give me a round -- |
| 22    A    Yes. | 22    A    Chester High 1971. |
| 23    Q    Who are they, please? | 23    Q    Okay. And then your BS in |
| Page 19 | Page 21 |

5 (Pages 18 to 21)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1 education?
2     A    1975.
3     Q    Okay. Sorry to interrupt you.
4     A    I attended Troy State University,
5 Montgomery graduate studies in personnel
6 management.
7     Q    Did you receive any type of
8 degree --
9     A    No.
10     Q    -- from Troy State?
11     A    No. I didn't.
12     Q    Okay.
13     A    I went to Keystone Business School
14 in Swarthmore, Pennsylvania for the summer,
15 taking beginning typing, shorthand, and
16 office machines.
17     Q    Okay. Where was Keystone again?
18 I'm sorry.
19     A    Swarthmore, Pennsylvania.
20     Q    And what year would that have been?
21     A    1972 approximately.
22     Q    And Troy State would have preceded
23 that?

Page 22

1     A    Yes. It would have been after my
2 BS Degree.
3     Q    Okay.
4     A    Which was two semesters, I think.
5 And I can probably give you an estimate date
6 by referring to --
7     Q    Okay.
8     A    -- some of my notes. Troy State I
9 didn't put a date.
10     Q    Okay.
11     A    But it was while I was employed at
12 Pizitiz. Pizitiz, P-I-Z-I-T-I-Z. I was
13 working part time and going to school.
14     Q    Used to be -- was that Parisian or
15 Parisian became --
16     A    It was Pizitiz then -- I don't know
17 because they're no longer here in Montgomery.
18     Q    Right.
19     A    I think they're in Mobile. And I
20 would have to refer to my resume --
21     Q    Okay. Now --
22     A    -- to give you that date.
23     Q    But Keystone, you said '72. That

Page 23

1 couldn't be right. It would be -- you went
2 to Keystone after West Chester; correct?
3     A    No.
4     Q    Okay.
5     A    It was during the summer to brush
6 up on typing and shorthand skills for taking
7 notes.
8     Q    Okay. How did you -- and this is a
9 curiosity question -- get from Pennsylvania
10 to Troy State and then -- how did you move
11 down -- come to move to this area of the
12 country?
13     A    I was transferred from a position
14 as manager in training with Rings and Things
15 which was owned by Spencer Gifts.
16     Q    Okay. So it was a job transfer?
17     A    Yes.
18     Q    Okay. And that may lead into any
19 next question. Was the Rings and Things
20 position, was that your first employment
21 after college?
22     A    No. It wasn't.
23     Q    Okay. Well, tell me where you were

Page 24

1 -- your first place of employment after
2 college.
3     A    After college I was employed with
4 -- okay. The telephone company. I'm not
5 sure. It's not BellSouth. Bell of
6 Pennsylvania, I would imagine.
7     Q    Okay.
8     A    As an operator.
9     Q    Okay. And I'm going to ask you a
10 question: What year would that have been in?
11 If you graduated in '75, would that have been
12 around the same time -- '76, '77?
13     A    About -- yeah. '75, '76.
14     Q    Okay. After leaving -- well, first
15 of all, did you leave your employment there?
16     A    They closed the office. I was
17 hired temporarily --
18     Q    Okay.
19     A    -- until the office was closed.
20 And if you don't mind, if I could take a
21 break, I could get my resume because we're
22 talking the '70s.
23     Q    Well, yeah. And I won't ask -- I

Page 25

6  (Pages 22 to 25)

**American Court Reporting**
**toll-free (877) 320-1050**

1  won't get into too many specifics about this.
2  I don't think you'll need your resume. If
3  you don't remember, just tell me you don't
4  remember.
5      A   I know with BellSouth -- not
6  BellSouth. I've been here in the South so
7  long.
8      Q   The telephone company.
9      A   Bell of Pennsylvania. I went with
10  Rings and Things as a manager trainee, and
11  that was in Belford, New Jersey.
12      Q   Okay. And that would have been
13  shortly after leaving the telephone company?
14      A   Exactly.
15      Q   Okay. Do you remember --
16      A   It could have been a year or two
17  because I was looking for employment.
18      Q   Okay. And what was your position
19  with Rings and Things?
20      A   Manager in training.
21      Q   Okay. Do you remember who your
22  supervisor was?
23      A   Not at all. Barbara Rutledge was

Page 26

1  recall?
2      A   Hiring, personnel duties,
3  evaluations, merchandise, replenishment, and
4  bookkeeping responsibilities, cash control,
5  security, maintenance.
6      Q   Did you -- as manager were you able
7  to enter into any contracts or agreements on
8  behalf of Rings and Things?
9      A   No. I didn't have that
10  responsibility.
11      Q   Okay. And what was your reason for
12  separating or leaving Rings and Things?
13      A   I don't recall. I mean that was
14  back in the '70s, early '80s.
15      Q   Early '80s. Have you ever been
16  terminated from a job?
17      A   I'm sure I have. Yes.
18      Q   Okay. But you -- would Rings and
19  Things -- you don't recall?
20      A   It could have been. I'm not sure.
21      Q   Do you recall if you were ever
22  disciplined at Rings and Things?
23      A   I don't recall.

Page 28

1  the district manager.
2      Q   Okay. And then I presume that you
3  were transferred to Montgomery, Alabama?
4      A   Montgomery, Alabama as a store
5  manager.
6      Q   Okay. And, again, I'm going to
7  assume that was in the late '70s; correct?
8      A   Late '70s. I think I moved to
9  Alabama in '79, and that's a guesstimate
10  again.
11      Q   Okay. And the store was here in
12  Montgomery?
13      A   In Montgomery. Eastdale Mall.
14      Q   Do you remember who your supervisor
15  was at Eastdale Mall?
16      A   Barbara Rutledge was my district
17  manager.
18      Q   Okay. How long were you with Rings
19  and Things?
20      A   I would say about two to three
21  years.
22      Q   Okay. And you were the -- what
23  were your job duties as manager if you

Page 27

1      Q   Okay. Fair enough. What about
2  after -- after leaving Rings and Things?
3  This would be around '82, probably.
4      A   I've had several management
5  positions. I would have to refer to my
6  resume for time, order, and sequence because
7  my memory has not been as good as it had
8  been.
9      Q   I understand. And can you give me
10  — can you give me an estimate of how many
11  companies or businesses you would have worked
12  for between the early '80s and the present
13  time?
14      A   I can only guess. And there -- I
15  would probably prefer to refer to my resume.
16      Q   Okay. That's fine. Why don't we
17  come back to this area then.
18      A   Thank you.
19      Q   It's in your car? Is that what you
20  said?
21      A   It's in my documents. I have it
22  here.
23      Q   Oh, okay. When we take a break,

Page 29

7  (Pages 26 to 29)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1   we'll pick back up and go back through this. | 1    A    There is no local store. |
| 2        A    Okay. | 2        Q    Okay.  Do you report to anyone?  Is |
| 3        Q    Where are you currently employed? | 3   there anyone you report to? |
| 4        A    I have three part-time jobs. | 4        A    Me. |
| 5        Q    Okay. | 5        Q    Okay. |
| 6        A    The first being with the Board of | 6        A    And my -- my clients. |
| 7   Education as a substitute teacher. | 7        Q    Right.  How long have you worked |
| 8        Q    Okay. | 8   for Avon as a rep? |
| 9        A    A cashier at Ashley Stewarts. | 9        A    Approximately six months. |
| 10       Q    And that's a store here in | 10       Q    Okay.  And you can guess what my |
| 11  Montgomery? | 11  next question is.  Six months ago where did |
| 12       A    That's correct. | 12  you work? |
| 13       Q    What type of store is Ashley | 13       A    I didn't. |
| 14  stores? | 14       Q    Okay.  And how long were you |
| 15       A    It's a retail dress shop. | 15  unemployed? |
| 16       Q    And you work there part time? | 16       A    A year. |
| 17       A    Yes, I do. | 17       Q    Okay.  And what was the place that |
| 18       Q    Okay.  Who is your supervisor | 18  you worked before you became unemployed? |
| 19  there? | 19       A    OSI. |
| 20       A    Catarina Worthy. | 20       Q    OSI? |
| 21       Q    Okay.  And how long have you worked | 21       A    OSI. |
| 22  part time at this store? | 22       Q    Okay.  What is OSI? |
| 23       A    I would say approximately six | 23       A    Outsourcing Solutions, and it's |
| Page 30 | Page 32 |

| | |
|---|---|
| 1   months. | 1   a -- it's a collections company. |
| 2        Q    Okay.  You ever been disciplined at | 2        Q    Okay. |
| 3   Ashley stores? | 3        A    Outsourcing Service. |
| 4        A    No.  I have not. | 4        Q    And by collections, what do you |
| 5        Q    And the Board of Education, who | 5   mean -- a collections company? |
| 6   would be your supervisor there?  Who do you | 6        A    Collections on accounts for |
| 7   report to? | 7   BellSouth and Direct TV. |
| 8        A    I have no idea. | 8        Q    So accounts receivables.  Y'all |
| 9        Q    Personnel department? | 9   follow up -- |
| 10       A    Personnel department. | 10       A    Account receivables.  Correct. |
| 11       Q    Okay.  And how long have you been a | 11       Q    -- to make sure that people buying |
| 12  substitute teacher? | 12  are making their payments; correct? |
| 13       A    Approximately six months. | 13       A    Correct. |
| 14       Q    Okay.  And your third part-time | 14       Q    Okay.  How long did you work there? |
| 15  job, please? | 15       A    One month shy of three years. |
| 16       A    Independent representative for | 16       Q    Okay.  And who was your supervisor? |
| 17  Avon. | 17       A    Keith Taylor. |
| 18       Q    And I'm not exactly sure what that | 18       Q    Is he still there?  Do you know? |
| 19  is.  Would you explain that to me, what you | 19       A    I think so. |
| 20  do and -- | 20       Q    And did you have a title or -- |
| 21       A    Sell Avon cosmetics. | 21       A    I started out as an account |
| 22       Q    Is there a local store here, or do | 22  representative. |
| 23  you just sell it out of -- out of your home? | 23       Q    Okay. |
| Page 31 | Page 33 |

8  (Pages 30 to 33)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1   A   And was promoted to quality | 1   Q   Okay. Can you tell me why you were |
| 2   assurance specialist. | 2   terminated? |
| 3   Q   Okay. And you were a quality | 3   A   For production. |
| 4   assurance specialist at the time that you | 4   Q   And, if you would, just briefly |
| 5   left the company? | 5   help me understand it. I thought your job |
| 6   A   That's correct. | 6   was monitoring other persons. |
| 7   Q   Okay. And, if you could, just tell | 7   A   Yes. |
| 8   me in a little more detail. What would you | 8   Q   Explain to me how production works |
| 9   do as a quality assurance specialist? | 9   into that equation. |
| 10   A   I would listen and monitor all | 10   A   There were departmental goals as |
| 11   account reps, making sure that they're | 11   far as how many monitors were done on a daily |
| 12   following procedure. | 12   basis, on a weekly basis, a monthly basis. |
| 13   Q   Okay. Was there a written | 13   Q   Okay. And -- |
| 14   procedure that they were supposed to be | 14   A   And I was told that my production |
| 15   following? | 15   was not where it needed to be. |
| 16   A   That's correct. | 16   Q   So you had one, I guess, warning or |
| 17   Q   Okay. Were you ever disciplined | 17   discipline, and the second time you were |
| 18   while you were at OSI? | 18   terminated? |
| 19   A   Yes, I was. | 19   A   It was several -- yeah. The |
| 20   Q   Okay. Could you tell me how that | 20   procedures. |
| 21   arose? | 21   Q   And was Keith -- was he the person |
| 22   A   I became -- began stressed -- | 22   that terminated you, Keith? |
| 23   becoming stressed because of my situation | 23   A   Keith and Adrienne. |
| Page 34 | Page 36 |

| | |
|---|---|
| 1   with the house. And during that period of | 1   Q   Okay. Who was Adrienne? What was |
| 2   time, I was told that my production was not | 2   she? |
| 3   up to par. | 3   A   She was personnel manager. |
| 4   Q   Okay. And you worked there for | 4   Q   Okay. |
| 5   three years, so can you tell me when you | 5   A   And in that process, for my first |
| 6   began working there? | 6   warning, I shared the personnel experiences |
| 7   A   I began working, I would say, a | 7   that I was going through with my legal |
| 8   month before they -- well, a month after they | 8   problems with my house. |
| 9   began operation in Montgomery. So I was part | 9   Q   And -- |
| 10   of the staff that helped to build that | 10   A   And if I could finish the |
| 11   location in Montgomery. | 11   statement. |
| 12   Q   And three and a half years ago it | 12   Q   Sure. I didn't mean to interrupt. |
| 13   would have been? | 13   A   I requested to take advantage of |
| 14   A   2000, I imagine. | 14   our Life Balance program to try to correct |
| 15   Q   Okay. | 15   those problems that I had. |
| 16   A   And, again, I could correct if it's | 16   Q   Okay. |
| 17   wrong -- with my resume. | 17   A   And I think I was given a month of |
| 18   Q   Okay. So sometime the midpart of | 18   my vacation and all my leave and came back |
| 19   2000? Does that sound right? | 19   and tried to do the best that I could, but |
| 20   A   October. | 20   was still told that it did not meet their |
| 21   Q   Okay. Were you terminated from | 21   approval. |
| 22   OSI? | 22   Q   So you took a one month leave of |
| 23   A   Yes, I was. | 23   absence? |
| Page 35 | Page 37 |

9 (Pages 34 to 37)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    A  Approximately. I took all my | 1    Q  Okay. Which -- could you give me |
| 2  leave, and I got the numbers for the Life | 2  those addresses for those properties, please? |
| 3  Balance and tried to seek attorneys to -- | 3    A  Well, I sold the property in |
| 4    Q  Right. | 4  Pennsylvania. |
| 5    A  -- help me with my legal issue. | 5    Q  Okay. What was, if you recall, the |
| 6    Q  Okay. Do you know when that event | 6  address of that property? |
| 7  occurred, when you were disciplined and took | 7    A  922 Pennell, P-E-N-N-E-L-L, Street. |
| 8  a leave for a month? What -- | 8  That's Chester, Pennsylvania. |
| 9    A  I can recall that my house was in | 9    Q  Okay. |
| 10  foreclose and I was getting demand letters. | 10    A  And I took a great loss for selling |
| 11  And I was trying to get resolution and was | 11  that. |
| 12  unable to and had a lot of those issues -- | 12    Q  And when did you sell that house? |
| 13    Q  Right. And we'll -- | 13    A  When I had to file bankruptcy. |
| 14    A  -- to deal with. | 14    Q  Okay. And if you recall, do you |
| 15    Q  -- talk about that. I didn't know | 15  know the amount that the house was sold for? |
| 16  if you -- if you could -- I know you worked | 16    A  All I know is that I received |
| 17  there from 2000 through, I guess, the | 17  $2,000 in cash. |
| 18  beginning of 2004. If you could, give me a | 18    Q  Okay. Was there a mortgage on that |
| 19  time range in there of when these events | 19  house? |
| 20  happened -- when you were first disciplined. | 20    A  No. There wasn't. I owned the |
| 21    A  Again, it was during the same time | 21  house free and clear. |
| 22  that I was getting -- | 22    Q  And you sold it for $2,000? |
| 23    Q  Okay. | 23    A  No. That's what I got after the |
| Page 38 | Page 40 |

| | |
|---|---|
| 1    A  And that was like, I guess, the | 1  bankruptcy. That was what -- and, actually, |
| 2  latter part of my employment with OSI. | 2  because -- I would have lost it because I |
| 3    Q  Okay. It wasn't during the time of | 3  could not maintain the taxes. |
| 4  the Nations Credit modification that y'all | 4    Q  Do you have the -- did you sell it |
| 5  were going through, that litigation? | 5  to an individual? |
| 6    A  No. I didn't get any rep -- no. | 6    A  It went through a realtor. |
| 7  No. | 7    Q  Okay. |
| 8    Q  Okay. And we'll circle back and | 8    A  And it was sold to an individual. |
| 9  fill in the gaps after we look at your | 9    Q  Do you have the closing papers for |
| 10  resume. | 10  that sale? |
| 11    A  Okay. | 11    A  I'm sure I have it somewhere at |
| 12    Q  Okay. In addition to your three | 12  home. |
| 13  part-time jobs, do you have any other income | 13    Q  Okay. |
| 14  from any other source? | 14    A  But my bankruptcy attorney, Sandra |
| 15    A  My children help when they can. | 15  Lewis, has a copy on file. |
| 16    Q  Okay. In looking through some of | 16    Q  Okay. |
| 17  the records that you gave me -- and I gave | 17    A  And I was going to get copies to do |
| 18  you some of the records we have -- at one | 18  my taxes. |
| 19  time you had rental property or other | 19    Q  Okay. Yeah. And I might, if you |
| 20  property you rented? | 20  don't mind, ask you for a copy of that when |
| 21    A  Right. | 21  you get it from her. |
| 22    Q  Do you still have those? | 22    A  That's okay. |
| 23    A  No. It went through foreclosure. | 23    Q  Okay. The other property is the |
| Page 39 | Page 41 |

10 (Pages 38 to 41)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1  5122 East Linda Circle?
2      A    That's correct.
3      Q    Okay. And you mentioned that that
4  property was foreclosed upon?
5      A    Yes, it has been.
6      Q    Has it been sold in foreclosure?
7      A    I'm not sure. I exercised my right
8  to redemption, so I'm not sure.
9      Q    Okay. Yeah. I think you actually
10 -- let's see. You produced a document to me
11 indicating that you exercised your right to
12 redemption, and I'm not sure I can find that
13 sometime today.
14         Who foreclosed? Obviously you had
15 a mortgage. Who held the mortgage?
16     A    Citi Financial.
17     Q    And were you using that property as
18 rental property?
19     A    Yes, I was.
20     Q    And when was that mortgage
21 foreclosed upon?
22     A    January of 2005.
23     Q    Okay. And there's a certain window

Page 42

1      A    That's correct.
2      Q    Okay. Has the mortgage always been
3  with Citi Financial?
4      A    No.
5      Q    Okay.
6      A    Regions.
7      Q    Okay. Is Regions --
8      A    Well, First Alabama. It was First
9  Alabama Bank.
10     Q    They were the original --
11     A    Right.
12     Q    -- lien holder or mortgagee?
13     A    That's correct.
14     Q    And subsequently Citi Financial
15 acquired the mortgage?
16     A    Right. I refinanced with Citi
17 Financial.
18     Q    Okay. Can you tell me about the
19 events that led up to the foreclosure in
20 January of '05?
21     A    I lost my job. I was unable to get
22 a job for an entire year. I was unable to --
23 prior to losing my job, I was unable to cash

Page 44

1  of time for you to exercise the right of
2  redemption. Is that what you were saying?
3      A    To the best of my knowledge, I have
4  a year to redeem the property, which I'm
5  assuming that would be January of 2006.
6      Q    And you've made a demand on
7  Nationwide -- Citi Financial that you intend
8  to redeem?
9      A    I made light that I wish to
10 exercise my right to redemption --
11     Q    Right.
12     A    -- within a year's time.
13     Q    Okay. Have you spoken with anyone
14 at Citi Financial about --
15     A    Other than the documents I
16 submitted, no.
17     Q    Okay. How long have you -- did you
18 own that property at 5122 Linda Circle?
19     A    When I moved to Montgomery,
20 approximately 1979.
21     Q    And then you purchased your current
22 residence and retained the house on Linda
23 Circle to use as rental property?

Page 43

1  any equity out of the property that I owned.
2  I was forced into bankruptcy because my house
3  -- houses were being foreclosed and I had no
4  income. And I was in the process of losing
5  everything and couldn't understand why. I
6  mean I had equity in three homes.
7         I had a degree. I should not have
8  had a problem finding a job. I couldn't get
9  a minimum job because I was in foreclosure, I
10 assume.
11     Q    You're saying you couldn't get a
12 job because you were in foreclosure?
13     A    I don't know what the problem was.
14 I just know that I applied at various jobs --
15 many jobs.
16     Q    Right.
17     A    And was turned down.
18     Q    Okay. How long, if you recall, did
19 Citi Financial hold the mortgage on that
20 property at 5122 Linda Circle?
21     A    I'm not sure. I know they had it
22 before I moved into the Brookland Curve
23 residence.

Page 45

11 (Pages 42 to 45)

**American Court Reporting**
**toll-free (877) 320-1050**

1    Q    Okay.
2    A    So it had to be over six, seven
3  years.
4    Q    Do you have all the, you know,
5  mortgage notes and all the documents in
6  connection with Citi Financial?
7    A    I have no idea where everything is.
8  I'm trying to organize myself --
9    Q    Okay.
10   A    -- to get all these documents.  But
11  in the process of moving and -- I'm not sure
12  where anything is right now.
13   Q    Okay.  But Citi Financial would
14  obviously bill you for the mortgage payment
15  while you were residing at your current
16  address; right?
17   A    Yes.
18   Q    Were you -- I guess the foreclosure
19  speaks for itself, but were you in default
20  under that note and mortgage?
21   A    Yes, I was.
22   Q    Okay.  When did you first -- the
23  first time in the history of the loan,

Page 46

1  the January 2005 foreclosure?
2    A    I can recall that Citi Financial
3  was -- did refinance the house after
4  modification and -- because the modification
5  was not fulfilled, they normally would not
6  have refinanced it because of the false
7  credit reporting that was on my account.
8    Q    Let me -- we're talking about the
9  Citi --
10   A    Right.  So I'm saying it had to be
11  in good standing for them to refinance my
12  house.  So I mean --
13   Q    And when did Citi --
14   A    During the modification.  I had
15  went to them to ask them to refinance my
16  house to give me a lower interest rate and
17  for them to refinance the Brookland Curve
18  house.  And it was when the manager called
19  and told me that my credit was reported that
20  I was in foreclosure and that they couldn't
21  possibly do it even though she knew what I
22  was going through with my litigation
23  problems.

Page 48

1  whether First Alabama, Regions, or Citi
2  Financial, become in default under the loan?
3    A    I can -- I can't recall.
4    Q    Okay.  Can you give me a time?
5  Would it have been five years ago, ten years
6  ago?
7    A    Well, I know when I filed
8  bankruptcy.
9    Q    Right.  Right.
10   A    Which was a couple years ago.
11   Q    But you can't recall, but you may
12  have been in default even before the
13  bankruptcy -- even before 2000?
14   A    I don't remember.
15   Q    Okay.  And you don't have those
16  documents?
17   A    Not to my knowledge, no.
18   Q    Okay.  And you don't recall when
19  you first became in default on the Citi
20  Financial mortgage?
21   A    No.
22   Q    Okay.  Had this mortgage ever been
23  referred to foreclosure with the exception of

Page 47

1    And so that's when she told me to
2  contact my attorney, to contact Nations
3  Credit's attorney because all they had to do
4  was call their client and pick up the phone
5  and call the credit bureau to correct it.
6    Q    Let me stop you because I'm
7  confused because you told me that Citi
8  Financial held the mortgage -- held the
9  mortgage on the 5122 Linda Circle house --
10   A    Exactly.
11   Q    -- before you even moved to your
12  new residence at --
13   A    Exactly.
14   Q    Okay.  Are you saying you tried to
15  refinance through someone other than Citi
16  Financial again in --
17   A    No.
18   Q    -- 2000?
19   A    Citi Financial had me at a higher
20  interest rate.  The purpose of the
21  modification agreement was to improve my
22  credit and to put me in a better standing.
23   Q    Okay.

Page 49

12  (Pages 46 to 49)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1    A   Citi Financial was willing to give
2  me a lower interest rate after the
3  modification was completed.  And they were
4  also going to refinance my home at Brookland
5  Curve to give me a lower interest rate.
6    Q   Okay.
7    A   And because -- I was not even aware
8  my credit was being reported to that status
9  until the manager calls me.  And she says,
10  well, Rose, it's not corrected.  You know, we
11  can't give you a lower interest rate and --
12  because you're showing that you're in
13  foreclosure.
14    Q   Right.
15    A   And she called my attorney, John
16  Cason, and he didn't return her call.  So she
17  told me to contact my attorney, to call
18  Nations Credit's attorney and all they had to
19  do was call the credit bureau, pick up the
20  phone, and correct it, and they could give me
21  a lower interest rate.
22    Q   Okay.  Let me --
23    A   And that never happened.

Page 50

1  one that when we called Fairbanks to
2  refinance Brookland Curve, we were on a
3  three-way conference to get -- she requested
4  the payoff balance for the Brookland Curve.
5    Q   Okay.
6    A   And they gave the wrong total --
7  payoff figure.  And I requested for them to
8  change it based on the modification
9  agreement.  And it took a while to do it, but
10  I was unable to get the refinancing through
11  Nations -- I mean, through Citi Financial.
12    Q   Okay.  And we'll talk about the
13  modification agreement, and that will
14  probably clarify a lot of this.  But Marlena
15  Young here at the Perry Hill location of Citi
16  Financial, that's who you spoke with?
17    A   Exactly.  She was the one that was
18  on a three-way conference request.  I was
19  told through Fairbanks that it would cost me
20  to get a payoff figure, but it would not cost
21  the mortgage company.  So I called her, and
22  she verbally put in a request for the payoff
23  because they were interested in refinancing

Page 52

1    Q   So this would have been right at
2  the time of the -- around the time of the
3  modification of the loan we're here about
4  today took place?
5    A   The settlement with --
6    Q   With Nations Credit.
7    A   -- with Nations Credit that
8  modified everything that would have --
9    Q   Right.  And you understand,
10  Ms. Riley, that Fairbanks, SPS, is not
11  Nations Credit?
12    A   I understand that.  But you're
13  asking me, and I'm recalling based on the
14  events that took place.
15    Q   And I appreciate that.  I think I
16  understand -- I understand a lot clearer now.
17  Who did you talk with at Citi Financial
18  regarding this refinance?
19    A   I think the manager, Marlena.  And
20  I'm thinking her last name is Young.
21    Q   Marlena Young?
22    A   The manager at the Perry Hill
23  location.  As a matter of fact, she was the

Page 51

1  the home.
2    Q   Okay.  Did Marlena Young or anyone
3  at Citi Financial provide you with anything
4  in writing about what they could provide you?
5  Did they provide you anything in writing that
6  they declined your loan?  Or did like --
7    A   I'm sure they did.
8    Q   Do you have a copy of it?
9    A   No.  But I think I saw something in
10  the package that you sent me --
11    Q   Right.
12    A   -- that addressed that issue.  And
13  I have to review it.
14    Q   And we'll go through that.  I think
15  that was actually something you sent me that
16  I sent back.
17    A   Okay.
18    Q   Okay.  But you don't -- I haven't
19  seen -- I'll say this:  I haven't seen any
20  documents from Citi Financial or Marlena
21  Young related to the refinance of any of
22  these houses.  So if you have any of those, I
23  would appreciate if you would let me look at

Page 53

13  (Pages 50 to 53)

**American Court Reporting**
**toll-free (877) 320-1050**

1  them.
2      A   Exactly.  And I'm only going on --
3  based on what I experienced.  And, you know,
4  my documentation is scattered.
5      Q   Okay.  Well, if you would, look.
6  And if you find any of that stuff, I would
7  appreciate it if you would give it to me?
8      A   And if not, I'm sure they could
9  reproduce it.
10     Q   Okay.  But ultimately that property
11  was foreclosed upon in January of '05?
12     A   (Witness nods head.)
13     Q   Do you know -- I'm assuming Citi
14  Financial sent you notices of foreclosure,
15  and your right to redeem, and the date the
16  property would be sold, and advertisements in
17  the paper, and so on and so forth.  Did you
18  keep any of that documentation?
19     A   I think what I had, I sent to you.
20     Q   Okay.
21     A   I'm sure at some point I had
22  something in the house.
23     Q   Okay.

Page 54

1      Q   I guess just, for the record, I
2  have to explain that it was a tremendous
3  setback to go through the experience that I
4  went through.  I'm sorry.
5      Q   That's okay.  If you need to take a
6  break, we can do that.
7      A   I probably do.  But I watched my
8  life being destroyed that year.  I -- that I
9  built.  I mean, I went to college, worked
10  hard all my life.  And at 50 years old, I
11  mean, owned three homes:  One free and clear.
12  And in that year's time, I almost lost
13  everything.  And, I mean --
14     Q   And we're going to get back to the
15  modification, but you're saying all that is a
16  result of what Fairbanks has done?  You're
17  not saying all that is --
18     A   No.  I'm just saying that I could
19  not believe that this would happen.
20     Q   Right.  I know what you're saying.
21  A number of bad things happened in one year
22  as far as job and work and mortgaging and
23  refinancing.

Page 55

1      A   It was just hard to understand.  I
2  mean, I was told -- and I couldn't understand
3  how that I could have a $50,000 home in
4  Pennsylvania, equity in a home that I was
5  living in, and equity in a home across town
6  and could not liquidate any of it because of
7  the credit reporting and then ultimately lose
8  it all by having to file bankruptcy and not
9  being able to get a job.
10     Q   Right.
11     A   I mean, not at Wal-Mart.  You know,
12  I mean, I -- if anyone would have told me
13  this would have happened to me, I would not
14  have been able to believe it.
15     Q   What -- we'll talk about the
16  bankruptcy as well.  Would your attorney have
17  any of these Citi Financial mortgage
18  documents?
19     A   I don't know what Ms. Lewis has.  I
20  was going to go and speak with her.  I did
21  mention to her that she was on my witness
22  list.
23     Q   Okay.

Page 56

1      A   And so her documents should be made
2  available.  She's aware of that.  I did not
3  speak to her personally, but I left it with
4  her secretary.
5      Q   What was the monthly rent that you
6  charged tenants on both of those properties,
7  most recently?
8      A   I think it could have been four
9  seventy-five.
10     Q   For each?  For both?
11     A   Well, the one in Pennsylvania was
12  not occupied.
13     Q   Okay.  Was not occupied at the time
14  you sold it?
15     A   No.
16     Q   You couldn't get a tenant or --
17     A   I did have a tenant.  At some point
18  that tenant moved out.
19     Q   Okay.  Did you ever have to evict
20  any of your tenants?
21     A   I didn't have to go through the
22  process -- the legal process.
23     Q   But you provided them notice that

Page 57

14  (Pages 54 to 57)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  they hadn't paid and demanded that they
2  remove themselves from your house?  Is that
3  what you're talking about?
4      A    And I'm not sure if it was done in
5  that form or manner, but I did notify the
6  tenants.
7      Q    Right.  You didn't have to get an
8  attorney and go through a legal process to
9  get them to --
10     A    No.
11     Q    Okay.  And did you have an attorney
12  draft up your rental agreements?
13     A    No.
14     Q    Did you draft those yourself?
15     A    Standard form.
16     Q    Okay.  Is there any other income
17  that we haven't already discussed, either
18  from your job or from rental property, that
19  you previously owned?
20     A    You're talking about now or --
21     Q    Yeah.  Well, any time during the
22  course -- I guess the --
23     A    Unemployment comp.

Page 58

1      Q    Okay.  Unemployment comp.  And that
2  was for the year you were unemployed?
3      A    Well, actually six months.
4      Q    Okay.
5      A    The final six months I did not.
6  They would not extend it.
7      Q    Okay.  And we talked about document
8  retention, and you've said that you may have
9  misplaced or lost some of these documents in
10  the move and you just don't know?
11     A    Well, I got to the point where I
12  was -- I had almost literally gave up.  I
13  mean, I would not go out of my house.  I was
14  depressed.  I didn't care what I looked like.
15  I mean, my house was in disarrays.  I mean, I
16  was a wreck.  I was a total wreck.
17         MR. COLLINS:  Off the record for a
18     second.
19         (Off the record.)
20         (WHEREUPON, Defendant's Exhibit 1
21         was marked for identification.
22         A copy is attached.)
23     Q    Shortly before we went off the

Page 59

1  record we -- when we left off, we were
2  talking about the Nations Credit transaction,
3  I believe.  And I want to go ahead and give
4  you what I've marked as Defendant's Exhibit
5  Number 1.
6      A    Okay.
7      Q    And tell me if you recognize that
8  document.  And it's actually two documents
9  stapled together for convenience.
10     A    I do recognize it.
11     Q    Okay.  And is this the October 20,
12  1999 mortgage and note entered into by and
13  between you and Nations Credit Financial
14  Services Corporation of Alabama?
15     A    As I review the document, it is
16  dated October 20, 1999.
17     Q    Okay.  And if you'll look on page
18  five of the mortgage, it appears to be your
19  signature; is that correct?
20     A    That's correct.
21     Q    And you don't have any reason to
22  believe you didn't sign it?
23     A    That's my signature.

Page 60

1      Q    And the same, Ms. Riley, while
2  you've got the document, if you'll turn to
3  the note that's attached as well.  And on the
4  very last page it says, caution:  It is
5  important that you thoroughly read this
6  contract before you sign it.  And it has your
7  signature again.
8          Is that your signature?
9      A    That's correct.
10     Q    Okay.  Now, tell me, Ms. Riley,
11  this mortgage and note covers the property at
12  nine -- is it 901 Brookland Circle?
13     A    Brookland Curve.
14     Q    Brookland Curve.
15     A    That's correct.
16     Q    Okay.  Who was the prior mortgage
17  owner on this property?
18     A    The builder.
19     Q    Okay.  The builder.  Who is the
20  builder?
21     A    Frank Rhodes.
22     Q    And Frank Rhodes -- I assume he's a
23  contractor?

Page 61

15  (Pages 58 to 61)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    A   Yes. | 1   you one year to secure financing for the |
| 2    Q   Okay. He built this house, and you | 2   house? |
| 3   purchased it from him? | 3    A   Yes. |
| 4    A   Yes. | 4    Q   How did you end up selecting |
| 5    Q   New? | 5   Nations Credit Financial Services? And I'm |
| 6    A   Yes. | 6   just going to refer to them as Nations Credit |
| 7    Q   Okay. Do you know what year | 7   for simplicity. |
| 8   Mr. Rhodes completed the house and you | 8    A   I guess to make me make my final |
| 9   purchased it from him? | 9   decision, they were here locally in |
| 10    A   I would imagine a year prior, so it | 10   Montgomery, and I could make my payments |
| 11   would have been 1998. | 11   locally. |
| 12    Q   Okay. What type of transaction did | 12    Q   Do you remember shopping around and |
| 13   you enter into with Mr. Rhodes? Did he have | 13   looking for someone else other than Nations |
| 14   an actual mortgage and note, or was there | 14   Credit? |
| 15   just a land sell agreement? | 15    A   I'm sure I did. |
| 16    A   I recall making 12 post-dated | 16    Q   You did? |
| 17   checks and assigning them to Aliant Bank. | 17    A   As a matter of fact, there was a |
| 18    Q   Okay. I mean you were -- did you | 18   company in California -- I can't recall the |
| 19   own the house, or were you renting it from | 19   name -- that I initiated. And there was a |
| 20   him? Or how did that transaction work? | 20   firm in Birmingham that I can't recall the |
| 21    A   I was purchasing the house. | 21   name. |
| 22    Q   And you signed some type of | 22    Q   Okay. Did any of those other |
| 23   agreement with Mr. Rhodes or his company; | 23   companies deny your request for refinance? |
| Page 62 | Page 64 |

| | |
|---|---|
| 1   correct? | 1    A   No. |
| 2    A   Yes. | 2    Q   Okay. How did you end up selecting |
| 3    Q   Do you have a copy of that in your | 3   Nations Credit? |
| 4   records? | 4    A   Because Randy told me that he could |
| 5    A   Not that I can recall offhand. | 5   expedite the process, whereas with the other |
| 6    Q   Okay. And then in October of '99 | 6   two firms, I had -- well, with Birmingham I |
| 7   you obtained a mortgage. I almost called it | 7   had difficulty catching up with them to |
| 8   a refinance, but I guess it is not a | 8   follow through. |
| 9   refinance, but a mortgage with Nations | 9    Q   Okay. Who is Randy? |
| 10   Credit? | 10    A   He was the manager of Nations |
| 11    A   Well, actually I thought it was a | 11   Credit here in Montgomery. |
| 12   refinance. | 12    Q   Okay. And he's the person that you |
| 13    Q   Well, it may very well -- may very | 13   dealt with in negotiating what the interest |
| 14   well be depending on what your first | 14   rate would be and what the terms would be; |
| 15   transaction was. | 15   correct? |
| 16    A   Okay. | 16    A   Yes. |
| 17    Q   With Nations Credit -- why did you | 17    Q   Okay. And if you'll look on the |
| 18   decide to enter into the mortgage and note | 18   first page with me, it states that the |
| 19   with Nations Credit? | 19   principal amount -- the principal sum of |
| 20    A   Because I had a year to secure | 20   $98,957.00. Did I read that correctly? |
| 21   financing which was the terms of the | 21    A   Ninety-eight thousand nine hundred |
| 22   agreement with Rhodes. | 22   and seventy -- fifty-seven dollars -- |
| 23    Q   Okay. So Rhodes Construction gave | 23    Q   Correct. |
| Page 63 | Page 65 |

16  (Pages 62 to 65)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1    A    -- is listed here, yeah, on this
2    document.
3    Q    Okay. And we've already talked
4    earlier. You're college educated. And I'm
5    assuming with important documents like this,
6    you read them before you sign; correct?
7    A    If you're referring to my degree in
8    education, yes, I'm familiar with the --
9    Q    Well, I mean --
10    A    -- processes of education.
11    Q    No. I guess what I'm asking is you
12    can -- you can obviously read this document
13    and understand it; correct?
14    A    Well, I can read it. There's a lot
15    of legal terminology I may not be familiar
16    with because I'm not -- I'm not versed with
17    the legal terminology, but I mean I can read
18    and write.
19    Q    Yeah. Fair enough. I'm just
20    asking if you're signing a document like a
21    mortgage or a note that you would read the
22    document before you signed your name to it;
23    correct? Is that your ordinary, common
Page 66

1    practice that you do?
2    A    I would read and sign.
3    Q    Okay. Fair enough. And I just
4    want to go over a few of the provisions in it
5    quickly. If you'll turn the page. And if
6    you'll look at the bottom, Ms. Riley, I've
7    labeled these SFS, slash, Riley. 0203 is the
8    page I'm looking. So if I'm referring to
9    Bates stamp numbers -- so you'll understand
10    what I'm referring to, I'm talking about the
11    little stamp at the bottom. Okay?
12    A    I see it.
13    Q    Okay. Now, I'm on 0203, which is
14    the second page in your stack.
15    A    Okay.
16    Q    Paragraph number five of the
17    convenance states "hazard insurance." I'm
18    just going to read part of that quickly.
19    Borrower shall keep the improvements now
20    existing or hereafter erected on the property
21    insured against fire, comma, hazards included
22    within the term, quote, extended coverage and
23    such other hazards as lender may require and
Page 67

1    in amounts and for such a period as Lender
2    may require.
3        In the event borrower fails to
4    maintain hazard insurance, including any
5    required flood insurance, in the amount
6    sufficient to satisfy all indebtedness, fees,
7    and charges owed, lender may, at its sole
8    discretion, obtain such insurance naming
9    lender as the sole beneficiary.
10        You can take a second to read that.
11    Did I read that correctly?
12    A    To my knowledge, yes.
13    Q    Okay. And you understood that this
14    note, mortgage, was not -- this mortgage was
15    not escrowed; correct? In other words, you
16    were responsible for paying your own
17    insurance on the property?
18    A    That's correct.
19    Q    Okay. Who was your insurance
20    carrier at the time you entered into this
21    mortgage?
22    A    It could have been Nationwide
23    Insurance. I'm not sure.
Page 68

1    Q    Let's go about it this way: Who
2    was your current insurance carrier on the
3    property at 901 Brookland Circle?
4    A    I currently don't have insurance.
5    Q    Okay. Other than Nationwide, can
6    you think of any other insurance companies
7    that you may have had coverage from either
8    the inception of this note through the
9    current date?
10    A    I forgot the name of the insurance
11    company, but there was another one.
12    Q    Okay. Do you have any of the
13    declaration pages or any of the documents
14    related to insurance?
15    A    I think I probably sent --
16    Q    Okay.
17    A    -- something in here -- in the
18    disclosures.
19    Q    Okay. And I recall seeing a
20    one-page document, but do you know if you
21    would have documents that would cover the
22    entire period in which -- from the inception
23    of this note and mortgage to the present?
Page 69

17    (Pages 66 to 69)

1    A    They're somewhere.
2    Q    Okay. Well, again, I would ask you
3    if you'd look for them and find them. I
4    would appreciate a copy.
5    A    I will do the best that I can.
6    Q    I understand. Okay. In paragraph
7    21 of this same document, the mortgage. And
8    it's Bates stamped 0205. It just has a
9    provision that states sale of note; change of
10   loan servicer.
11   A    I'm sorry. What was that again?
12   Q    It's on -- if you look at Bates
13   stamp numbers, it's 0205.
14   A    I have 0205.
15   Q    Okay. Paragraph 21.
16   A    Okay.
17   Q    Okay? And it states, sale of note,
18   semicolon, change of loan servicer. And I'll
19   just partially read some of this provision.
20   If you will, follow along with me. The note
21   or a partial interest in the note together
22   with this security interest may be sold one
23   or more times without prior notice to the

Page 70

1    borrower. A sale may result in a change in
2    the entity known as the loan servicer that
3    collects monthly payments due under the note
4    and the security agreement.
5        Did I read that correctly?
6    A    To my knowledge.
7    Q    Okay. And is it your understanding
8    as we sit here today that my client,
9    Fairbanks, SPS, is a servicer that acquired
10   the servicing rights to this mortgage that
11   we're talking about?
12   A    I --
13   Q    Okay.
14   A    I eventually found out.
15   Q    Okay. And we'll talk more about
16   that in a minute. If you'll turn with me
17   now, Ms. Riley, to the note which is attached
18   -- yeah -- beginning with the bottom. 0207
19   is the Bates number. It has the interest
20   rate, paragraph two, 10.99 percent; correct?
21   Do you see that?
22   A    Am I looking at the -- okay. At
23   the top.

Page 71

1    Q    Yeah. Paragraph two.
2    A    Right.
3    Q    Then it's got under paragraph three
4    the payments, how many payments you're
5    supposed to make and the amount of the
6    payments. And it also states that you'll
7    make the payments to a P. O. Box in Dallas,
8    Texas; correct?
9    A    Yes.
10   Q    And that's where you remitted your
11   payments?
12   A    Yes.
13   Q    And, finally, if you'll look down
14   with me to paragraph number six, which is
15   entitled borrower's failure to pay as
16   required. It has provisions -- and I'm not
17   going to read them all, but it has provisions
18   that address a grace period for payments.
19   And then after the grace period has expired,
20   a 5 percent charge on the unpaid amount will
21   be assessed as a late fee --
22   A    Yes.
23   Q    -- correct? Okay. And it also

Page 72

1    has, under paragraph D -- subparagraph D,
2    notice of default. And it simply says, if I
3    am in default, the note holder may send me a
4    written notice telling me that if I do not
5    pay the overdue amount by a certain date, the
6    note holder may require me to pay immediately
7    the full amount of principal which has not
8    been paid and all the interest that I owe on
9    that amount.
10       Did I read that sentence correctly?
11   A    I would imagine so.
12   Q    Okay. And I read it correctly.
13   But feel free to look along and read it with
14   me.
15   A    Okay.
16   Q    Okay. And, again, the last page,
17   we've already discussed. It's your
18   signature; correct?
19   A    Yes.
20   Q    Okay. Now, again, you dealt with
21   Randy. What was his last name? I apologize.
22   Randy at Citi -- at Nations Credit?
23   A    I'm not sure.

Page 73

18  (Pages 70 to 73)

**American Court Reporting**
**toll-free (877) 320-1050**

1    Q    Okay.
2    A    It's in some document --
3    Q    Okay.
4    A    -- that I submitted to you. It
5    could be Bryant.
6    Q    Okay. He was the manager here at
7    the Nations Credit office?
8    A    Yes.
9    Q    Do you remember about what time you
10   approached him to do this refinance?
11   A    Not offhand. No.
12   Q    Did you go -- did you go to his
13   office?
14   A    I did.
15   Q    Was that sometime around this
16   October 20 date?
17   A    Possibly.
18   Q    Okay. Did the closing and
19   everything take place in his office?
20   A    No.
21   Q    Okay. Where did the closing take
22   place?
23   A    On Fieldcrest at an attorney's

Page 74

1    office, and I'm not sure exactly who -- which
2    attorney.
3    Q    You don't remember the attorney?
4    A    No.
5    Q    Okay. It's my understanding,
6    Ms. Riley, that the dispute that we're here
7    about today can really be traced back to this
8    document, this mortgaging note that we just
9    went through -- that the genesis of what
10   we're talking about today can be traced back
11   to this.
12   A    And I guess it's my understanding
13   that a lot of my damages took place when my
14   credit report was falsely corrected (sic).
15   And I did everything in my power to have it
16   corrected.
17   Q    Okay. And I hear you, and that's a
18   fair statement. And we'll discuss that
19   further in a minute, but I guess my point is
20   only this, there is no other mortgage. This
21   is the same mortgage we're talking about
22   today. We're going to talk about the
23   modification, but the mortgage you took out

Page 75

1    has been assigned to my client but is still
2    the same mortgage that you entered into in
3    October 20 of 1999; correct?
4    A    If I'm understanding your compound
5    question.
6    Q    It's a very poor question. Let me
7    rephrase it. You haven't refinanced? You
8    haven't refinanced your mortgage since you
9    entered into this mortgage in 1999; correct?
10   A    Okay. Let me share my truth of the
11   experience. That in the process of
12   litigation with Nations Credit, I was not
13   told until after it was modified that your
14   company acquired it.
15   Q    Let's talk about that right now.
16   Let's see. I am looking at -- and I don't
17   think I need to make this an exhibit, but it
18   is a settlement agreement and release. And
19   I'll give it to you in one second, and it
20   actually refers to a Randy Bryant.
21   A    Okay. The name was correct.
22   Q    Why don't you tell me, Ms. Riley,
23   what led up to your disagreement or dispute

Page 76

1    with Nations Credit that ultimately ended up
2    in litigation and a settlement? Just take me
3    through it step by step: When you realized
4    there was a potential credit and how you went
5    about addressing it and how we got from point
6    A, the mortgage note that we just looked at,
7    to point B, which is the settlement entered
8    into in two thousand -- June of 2002, I
9    believe.
10   A    Okay. I filed an application to
11   refinance my home with Nations Credit. I
12   submitted everything that I had to secure the
13   loan. I was told by Randy Bryant to get a
14   payoff figure. I made my payments to Aliant
15   Bank, so I went to Aliant Bank to get a
16   payoff figure. They gave me the payoff
17   figure.
18      I went back to Randy who said that
19   I had to place -- in order to get
20   refinancing, I had to place a car that I had
21   purchased with Americredit and Nations Credit
22   combined in order for them to refinance the
23   loan.

Page 77

19   (Pages 74 to 77)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1    Q    Did he explain to you why you had
2    to do that?
3    A    Some type of debt ratio. I have no
4    idea.
5    Q    Okay. Sorry to interrupt. Go
6    ahead.
7    A    Okay. So the loan was made. We
8    had -- we signed all the documents in
9    closing.
10   Q    Okay.
11   A    Checks were mailed out.
12   Q    Okay.
13   A    I was told by the builder that
14   there was an incorrect payoff figure.
15   Q    Okay. So let me interrupt. You're
16   paying off Rhodes Construction through your
17   finance or refinance with Nations Credit.
18   When the disbursements were made to Rhodes
19   Construction, he looked at his check and said
20   this is not the full amount you owed me to
21   pay off the house; correct?
22   A    Right. He called -- his lawyer
23   called.

Page 78

1    Q    Okay. Do you remember his lawyer?
2    A    No.
3    Q    Okay.
4    A    His lawyer called me on my job to
5    say this is not enough and you're not going
6    to get your home. So the next day I went to
7    Randy and said there's a problem. Well,
8    actually, I went to the attorney with -- that
9    did the closing, who referred me back to
10   Randy. And Randy was like, well, I'll take
11   care of it. And he took care of it. I mean
12   he put a stop payment on the sixteen (sic)
13   dollar check that was mailed to Americredit.
14   Q    Let me stop you. Why did he put
15   a --
16   A    Because that was his process of
17   taking care of it. There was a $20,000
18   deficiency. And he took it upon hisself to
19   take the Americredit check and put a stop
20   payment for 16,000 and told me I had to come
21   up with 4,000 and he would give me a month to
22   do that to secure the $20,000 that -- to give
23   to Mr. Rhodes.

Page 79

1    Q    Okay. So -- okay. I think I
2    follow you.
3    A    And instead of paying nine
4    forty-one, which would have made my payments
5    lower with a nine hundred dollar -- well, a
6    seven hundred dollar house payment, close to
7    eight, and a four hundred dollar car payment,
8    I would have been paying nine forty-one -- or
9    whatever the amount was for both.
10        And what in actuality happened, I
11   was paying nine forty-one, plus four hundred
12   dollars, which that is not what I contracted
13   to do, and as a result went to court.
14   Q    Okay. So in essence -- I'm just
15   going to summarize. The payoff to the
16   builder was insufficient. So the individual
17   at Nations Credit cancelled or put a stop
18   payment on your car and applied those funds
19   to paying off Mr. Rhodes?
20   A    (Witness nods head.)
21   Q    Did you pay the other 4,000 as he
22   requested?
23   A    (Witness nods head.)

Page 80

1    Q    And then you were in the process of
2    paying the nine hundred and some odd dollars
3    for your mortgage and also paying for your
4    car because it had not been paid for?
5    A    Exactly. And in the process, they
6    had mailed me the title to my car and
7    paid-in-full document. And I could not
8    understand why I was paying for something I
9    already had and for something that I had
10   contracted with Nations Credit.
11   Q    Okay.
12   A    And I was doing something that I
13   did not contract to do, and it was not my
14   fault.
15   Q    Okay. How long -- if you'll take
16   me through it. Over what period of time are
17   we talking about? You --
18   A    Okay.
19   Q    You gave the mortgage in October of
20   1999. How much transpired between the time
21   you first noticed the problem and it was --
22   you tried to remedy it by paying the $4,000?
23   Do you know how much time elapsed? Or a

Page 81

20  (Pages 78 to 81)

**American Court Reporting**
**toll-free (877) 320-1050**

1 better way to say it may be how much time
2 elapsed between the time you entered into the
3 note and mortgage and filed legal action
4 against Nations Credit?
5     A    After it wiped out my savings.  I
6 mean, I did not contract to pay nine hundred
7 plus four hundred a month, and it depleted
8 all I had.
9     Q    Did you get behind in trying to
10 make those payments pursuant to the revised,
11 I guess, numbers?
12     A    I can't recall if I got behind.  I
13 can recall that everything that I had in
14 savings was being wiped out.
15     Q    Right.
16     A    And it was not my fault, and I did
17 not contract to do -- to pay that amount.
18 But that's what I was paying.
19     Q    Okay.  And I'm just looking at your
20 -- at this settlement agreement.  It has some
21 of what you just told me.  And part of it
22 says, Riley alleges in the litigation that
23 the payoff amounts were insufficient to pay

Page 82

1 off the debts being refinanced causing Riley
2 to default on her monthly debt obligations.
3     A    Well, ultimately, I'm sure that did
4 happen.
5     Q    Okay.  And tell me what -- I'm
6 looking at the settlement.  I'll give it to
7 you if it will refresh your memory.  How did
8 that resolve itself?  What were the terms of
9 the settlement?
10     A    Well, if you would like me to read
11 it, it says, Nations Credit will pay Riley
12 the sum of $23,000.
13     Q    Okay?
14     A    Upon executing the same, Riley --
15 Nations Credit will execute a modification
16 agreement, the terms and conditions which are
17 set forth in the modification agreement.
18         And -- I mean did you want me to
19 go --
20     Q    No.  No, no, no.
21     A    Okay.
22     Q    I just want to make sure that we're
23 consistent and that's your understanding, is

Page 83

1 that -- is that you entered into a settlement
2 agreement along those lines and they paid you
3 $23,000?
4     A    Well, they didn't pay me $23,000.
5 That included the attorney fees and court
6 cases -- court fees.
7     Q    And while we're on that subject,
8 who did you hire to represent you?
9     A    John Cason.
10     Q    Okay.  Is John Cason here in
11 Montgomery?
12     A    Yes.
13     Q    And where did he file suit, if --
14 was it in Federal court or State court?
15     A    If I can refer to --
16     Q    Sure.
17     A    -- this document here?  It was
18 filed in the circuit court -- no.  I'm sorry.
19 It was filed in the Circuit Court of
20 Montgomery.
21     Q    Okay.  And did y'all have a
22 mediation?
23     A    We did.

Page 84

1     Q    Okay.  Where all attorneys and the
2 parties come into a room and negotiate and
3 try to work out some agreement?
4     A    That's correct.
5     Q    Okay.  In addition to the
6 settlement that we just looked at, part of
7 the settlement included a modification of the
8 note; correct?
9     A    Yes.
10     Q    Okay.  And let me go ahead and mark
11 as Exhibit Number 2 -- and I apologize.  This
12 is not a great copy, so it may stress your
13 eyes, but I --
14     A    Okay.
15         (WHEREUPON, Defendant's Exhibit 2
16         was marked for identification.
17         A copy is attached.)
18     Q    If you'll take a look at that,
19 please.  And if you'll just identify that for
20 the record, please.
21     A    Modification agreement.
22     Q    Okay.  And it states that it's made
23 this 21st day of May, 2002; correct?

Page 85

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

```
 1      A   Yes.
 2      Q   And the modification agreement is
 3  between yourself and Nations Credit Financial
 4  Services; correct?
 5      A   Correct.
 6      Q   Okay.  And the modification
 7  agreement notes that the loan is secured by a
 8  mortgage on property located at 901 Brookland
 9  Curve; correct?
10      A   Correct.
11      Q   Okay.  And I'm just going to read a
12  little bit of the beginning of this for the
13  record.  The modification agreement modifies
14  the loan documents, number one, to change the
15  principal amount of the loan; two, to change
16  the interest rate; three, to restate the
17  number and amount of monthly payments of
18  principal and interest under the note; and
19  four, to make the mortgage assumable.
20          Do you see that?
21      A   Yes.
22      Q   Okay.  And below that it has the
23  numbers that are modified.  And the principal
                                        Page 86
```

```
 1      A   To a certain extent.  That it would
 2  initially be to a P. O. Box.  And because
 3  Fairbanks bought the mortgage, that it would
 4  be modified, corrected, and I would be
 5  getting statements from Fairbanks with
 6  corrected figures.
 7      Q   Okay.  Let's -- let's turn to the
 8  next page of the document.  And is that your
 9  signature, Ms. Riley?
10      A   Yes, it is.
11      Q   Okay.  And if you'll turn to the
12  next day -- next page, it reflects that it
13  was executed by Mr. Samuel Boswell who is a
14  representative of Nations Credit.  He
15  executed the document on June 24, 2002;
16  correct?
17      A   Yeah.  That's what it states.
18      Q   Okay.  And right above it, it has
19  your signature and states that you signed the
20  document on May 21 -- correct -- 2002?
21      A   Well, it looks like that's what it
22  says.
23      Q   Okay.
                                        Page 88
```

```
 1  amount, if you'll look at paragraph number
 2  one -- the loan is modified to change the
 3  principal amount from $98,957 to
 4  $98,402.85 --
 5      A   Correct.
 6      Q   -- correct?  Okay.  And below that,
 7  the interest rate was modified from ten point
 8  -- I think it was 10.99 percent to a flat fee
 9  percentage interest rate; correct?
10      A   Correct.
11      Q   And then, if you'll look at the
12  paragraph three, it states that such
13  principal and interest shall be payable in
14  360 successive monthly installments with the
15  first such installment in the amount of
16  722.05 due on the 25th day of May, 2002.  And
17  that sentence goes on.
18          Did I read that correctly?
19      A   Yes.
20      Q   Okay.  And then at the bottom of
21  that same provision, it states that you'll
22  make your payments to Post Office Box 17285,
23  which is in Baltimore, Maryland; correct?
                                        Page 87
```

```
 1      A   But I don't think that's my
 2  signature, but --
 3      Q   Right there it doesn't look like
 4  your signature?
 5      A   It doesn't look like it, but --
 6      Q   Okay.  But the page before does;
 7  correct?
 8      A   Yeah.  They're quite different if
 9  you look at the page before it.
10      Q   Okay.  All the terms --
11      A   Yeah.  I mean --
12      Q   All the terms are on the first two
13  pages.
14      A   You're asking me?
15      Q   You're right.  I am asking.  Let's
16  see.  Okay.  Ms. Riley, do you know why --
17  you know, we just read paragraph three of
18  this agreement which states that your
19  payments are due -- first payment is due on
20  May 25, 2002 -- why this document is not
21  finally executed until one month later, in
22  June of '02?
23      A   I don't.
                                        Page 89
```

22   (Pages 86 to 89)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    Q    Have you ever noticed that before? | 1    A    I don't know offhand. |
| 2    A    I noticed the modification that was | 2    Q    Okay. Did a representative come |
| 3  drawn up was not carried out. And there was | 3  down to the mediation and meet with you from |
| 4  numerous complaints on my part, and I was not | 4  Nations Credit? |
| 5  given any real explanation other than that's | 5    A    We met in Birmingham at the law |
| 6  when I found out that your company had bought | 6  firm. And I'm thinking it's probably Sirote, |
| 7  it out -- | 7  Permutt. Sirote and -- |
| 8    Q    Okay. | 8    Q    Okay. Sirote, Permutt. |
| 9    A    -- and that they had to get access | 9    A    Yeah. |
| 10 to it. | 10   Q    Okay. |
| 11   Q    Okay. And we'll talk about that in | 11   A    Sorry. Thanks for your help. |
| 12 a second. I just wanted to bring that to | 12   Q    Was someone from Nations Credit |
| 13 your attention. And did you know that at the | 13 there, a representative? |
| 14 time? Did someone -- did you have a final | 14   A    I'm certain there was. |
| 15 copy of this? | 15   Q    Okay. Did you -- do you know who |
| 16   A    I'm sure I got a copy of this. | 16 that was? |
| 17   Q    Okay. | 17   A    No. |
| 18   A    But like I said, I know there was | 18   Q    Was it Mr. Boswell who signed this? |
| 19 problems all through. | 19 Do you know? |
| 20   Q    And when you say problems, when | 20   A    I have no idea. |
| 21 y'all were negotiating this and getting it | 21   Q    Okay. Fair enough. This is, |
| 22 signed, it mean it appears to me that there | 22 again, a document with poor print, but I ask |
| 23 was some delay on the part of Nations Credit | 23 you to please take a look and let me know if |
| Page 90 | Page 92 |

| | |
|---|---|
| 1  in getting this thing finally executed -- | 1  you've -- if you've ever seen that |
| 2    A    Exactly. | 2  document -- |
| 3    Q    -- correct? And getting it in | 3    A    No. |
| 4  place? | 4    Q    If you recognize it. |
| 5    A    Exactly. | 5       (WHEREUPON, Defendant's Exhibit 3 |
| 6    Q    Okay. And I think that's born out | 6  was marked for identification. |
| 7  by the date of the representative from | 7  A copy is attached.) |
| 8  Nations Credit on the signature page attached | 8    A    I don't recognize it at all. |
| 9  to this agreement. | 9    Q    Okay. Hold on one second. You |
| 10      Okay. And we were talking about a | 10 ready? |
| 11 minute ago -- and you already know this -- | 11   A    Yeah. |
| 12 that at some point in time, servicing rights | 12   Q    Okay. If you're taking medicine -- |
| 13 transferred from Nations Credit to Fairbanks | 13   A    I just -- |
| 14 Capital; correct? | 14   Q    I didn't want to interrupt you. |
| 15   A    Right. | 15   A    Find what it was. |
| 16   Q    Okay. Let me show you what I'm | 16   Q    All right. I'm just going to read |
| 17 going to mark as Exhibit Number 3, Ms. Riley. | 17 the heading of the document: Notice of |
| 18 And before I do that, let me back up. In the | 18 assignment, sale, or transfer of servicing |
| 19 mediation, Nations Credit was obviously | 19 rights. Do you see that at the very top? |
| 20 represented by counsel as well; correct? | 20   A    Yes. |
| 21   A    Correct. | 21   Q    And above that it has Nations |
| 22   Q    Do you remember who their attorney | 22 Credit on the left, and on the right ride it |
| 23 was? | 23 has Fairbanks Capital Corp. |
| Page 91 | Page 93 |

23  (Pages 90 to 93)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1     A    Okay.
2     Q    Okay.  And the letter is dated
3   January -- excuse me -- March 11, 2002;
4   correct?
5     A    Okay.  I see the date.
6     Q    And it has your address,
7   Rosemary C. Riley, 901 Brookland Curve,
8   Montgomery, Alabama, 3 -- it looks like --
9   6117.
10    A    Okay.
11    Q    Do you see that?
12    A    Right.
13    Q    Is that your correct address?
14    A    Yes.
15    Q    That's where you were residing in
16  March of 2002?
17    A    Correct.
18    Q    And, again, you don't recall
19  receiving this document?
20    A    No.  And I guess --
21    Q    Is it possible you got it and don't
22  remember?
23    A    I have no knowledge.  I did receive

Page 94

1   the first and only statement that mentioned
2   the Fairbanks.
3     Q    Right.
4     A    And it had the corrected, I think,
5   interest rate, but it had the principal
6   amount incorrect and something else.  And I
7   took it back to Attorney Cason to let them
8   know that I did receive something from
9   Fairbanks and it needed to be corrected.
10    Q    Okay.  Well, let's stay on this
11  document.  Are you saying that you did not
12  receive this, or you may have received it and
13  don't remember?
14    A    There's a possibility.  I just
15  don't -- I'm not familiar with it.
16    Q    Right.  Fair enough.  I mean, we're
17  talking about two years ago.
18    A    And, actually, if this was
19  received, that would be incorrect because
20  it's showing a payment coupon with nine
21  hundred payment amount, in excess of the
22  modification.
23    Q    Right.

Page 95

1     A    And it's showing December 25th,
2   2000 as the payment date which --
3     Q    It's showing the date that -- that
4   a payment was due on that date, and it's
5   obviously rep -- reflecting that a payment is
6   past due.  And that's fair enough.
7          Talking about this document, I want
8   to go over a few provisions.  It says, you
9   are hereby notified that the servicing of
10  your mortgage loan -- that is, the right to
11  collect payments from you -- is being
12  assigned, sold, transferred from Nations
13  Credit Corporation to Fairbanks Capital Corp
14  effective April 1, 2002.
15         I know the writing's tiny, but do
16  you see that?
17    A    Yes.
18    Q    And we talked earlier that your
19  note and mortgage allowed transfer of
20  servicing rights; correct?
21    A    Yes.
22    Q    Okay.  Was there any discussion
23  with your attorney about -- or with Nations

Page 96

1   Credit at the mediation about the transfer of
2   servicing rights?
3     A    No.  There was not.
4     Q    And you'll agree with me that this
5   letter was dated May 11, 2002, which is
6   approximately two months before you entered
7   into the settlement agreement with Nations
8   Credit; correct?
9     A    No.  I'm not showing May.
10    Q    Top -- top -- I'm showing March.
11    A    I'm showing March.
12    Q    Yeah.  March 11, 2002; correct?
13    A    I see the date.  Yes.
14    Q    Okay.  A couple months before your
15  agreement with Nations Credit was reached;
16  correct?
17    A    Well, evidently, I didn't see it
18  because I had no knowledge my account was
19  being serviced by -- I did not get that until
20  the modification agreement was held up, so I
21  did not get to me.
22    Q    Okay.  You're saying this did not
23  get to you?

Page 97

24  (Pages 94 to 97)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1    A    It had not -- it must not have
2  gotten to me because, as I mentioned, the
3  first time I became aware that I was being
4  serviced by another company was because I was
5  told in the delay of the modification. And
6  that's when Mr. Cason told me that it was
7  purchased by somebody else.
8    Q    That's fair enough. I want to read
9  a couple more provisions, and we'll talk
10  about some other documents and statements
11  that you got which may clarify.
12        It says in this letter that your
13  present servicer is Nations Credit
14  Corporation. If you have any questions
15  relating to the transfer of servicing from
16  your prior servicer, call 1-800-944-1212, and
17  it's got the times to call.
18        And it also states your new
19  servicer will be Fairbanks Capital Corp.
20  The -- and I can't -- the business address
21  for your new servicer is -- and it has
22  Fairbanks Capital Corps business address and
23  also has Fairbanks' 1-800 number for

Page 98

1    A    I see that.
2    Q    And the P. O. is in Phoenix,
3  Arizona; correct?
4    A    Okay.
5    Q    All right. And you mentioned that
6  the number in the payment coupon -- you said
7  they're incorrect because you were in the
8  process of negotiating with Nations Credit;
9  correct?
10    A    Well, actually, I'm looking at it.
11  It says December 25th, 2000, and the document
12  is dated March 11, 2002.
13    Q    Right.
14    A    And they conflict. I don't know
15  why.
16    Q    Right. And it may be reflecting --
17  you know, we may need to look at all the
18  documents to interpret it, but it may be
19  reflecting the date that you -- at some
20  point, I assume, you stopped making payments
21  to Nations Credit during your dispute with
22  them.
23    A    Okay. Okay.

Page 100

1  questions.
2        Do you see all that?
3    A    I see that.
4    Q    Okay. It also states in here the
5  date your present servicer, which would be
6  Nations Credit, will stop -- will stop
7  accepting payments from you will be March 31,
8  2002?
9    A    It looks like 2022. I'm sorry.
10    Q    Which couldn't be right. The date
11  that your new servicer will stop -- your
12  new -- excuse me. Strike that. This thing
13  is difficult to read.
14        The date that your new servicer
15  will start accepting payments from you is
16  April 1, 2002; correct?
17    A    That's what it says. Correct.
18    Q    Okay. Send all payments due on or
19  after that date to your new servicer. And at
20  the bottom left-hand corner, it's got an
21  address for remittance to Fairbanks Capital,
22  and it's also a P. O. Box.
23        Did you see that?

Page 99

1    Q    And it may very well be reflecting
2  the date that a last payment was made?
3    A    Okay.
4        (WHEREUPON, Defendant's Exhibit 4
5        was marked for identification.
6        A copy is attached.)
7    Q    Okay. I'm going to show you what
8  I'm marking as Defendant's Exhibit Number 4,
9  please. And if you'll look at this document
10  and please identify it for me. And I'll
11  represent to you that this is one of the
12  documents that you sent me.
13    A    And that's the statement I got.
14    Q    And it doesn't have a Bates stamp
15  number. That's how we know it's your
16  document.
17    A    Okay.
18    Q    Okay. Why don't you just tell --
19  look at this document, and tell me what it
20  is.
21    A    It's a mortgage loan statement by
22  Fairbanks Capital.
23    Q    Okay.

Page 101

25  (Pages 98 to 101)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1     A   This is the statement that I | 1   still sending it to Mr. Cason, so he was |
| 2   received and mentioned -- the only statement | 2   obviously still helping you with Nations |
| 3   that I can ever recall receiving. | 3   Credit? |
| 4     Q   Okay. | 4     A   Exactly. |
| 5     A   When I first received it, I looked | 5     Q   So when you first received this |
| 6   over the information; notated the information | 6   document, you looked at it, and you knew that |
| 7   that was correct, which was the interest rate | 7   that was wrong; correct? |
| 8   at 8 percent and the new principal balance at | 8     A   Right. |
| 9   $98,402.85, which was reflective of the | 9     Q   And you got it and took it to |
| 10   modification agreement. The incorrect would | 10   Mr. Cason or mailed it to Mr. Cason directly? |
| 11   be the new escrow balance that was showing a | 11     A   I took it. |
| 12   negative $2,280. | 12     Q   And you said this is not right, |
| 13     Q   Okay. And this -- so this is your | 13   this is not what -- |
| 14   handwriting on this statement? | 14     A   Right. And he can tell you what he |
| 15     A   Yes, it is. | 15   did after that. |
| 16     Q   Okay. | 16     Q   Okay. I think we got some |
| 17     A   And I did take that to Attorney | 17   documents that you actually gave me that can |
| 18   Cason. | 18   tell us what he did. |
| 19     Q   Okay. This is dated April 16, | 19     (WHEREUPON, a break was taken to |
| 20   2002; correct? | 20     allow the court reporter to change |
| 21     A   Right. | 21     out supplies.) |
| 22     Q   And do you know when you took it to | 22     (WHEREUPON, Defendant's Exhibit 5 |
| 23   Attorney Cason? | 23     was marked for identification. |
|                 Page 102 |                 Page 104 |
| 1     A   Probably when I received it, and I | 1     A copy is attached.) |
| 2   can't tell you -- | 2     Q   Defendant's Exhibit Number 5, if |
| 3     Q   Okay. Sometime in -- | 3   you will, take a look at that and tell me |
| 4     A   -- because of the mail -- | 4   what that is, please. |
| 5     Q   Right. | 5     A   Okay. |
| 6     A   -- when I received it. | 6     Q   And, again, this is a document that |
| 7     Q   Okay. But it's fair enough to say | 7   you provided to me. |
| 8   if it's mailed -- dated April 16, you | 8     A   Okay. |
| 9   probably received it sometime in April, maybe | 9     Q   Okay. This appears to be a fax |
| 10   the first of May? | 10   from your attorney to John Scott who, I |
| 11     A   Yeah. | 11   assume, is an attorney for Nations Credit -- |
| 12     Q   In any event, it was before your | 12     A   That's correct. |
| 13   agreement with Nations Credit was finalized? | 13     Q   -- correct? And it's dated |
| 14     A   I would imagine. | 14   May 13th, 2002; correct? |
| 15     Q   Well, you don't -- | 15     A   Correct. |
| 16     A   Okay. I'm not sure of the dates. | 16     Q   And it states that there are three |
| 17   I guess it says April -- | 17   pages including the cover. And the message |
| 18     Q   I think we just -- | 18   -- and I'll essentially summarize -- is he's |
| 19     A   May. | 19   attaching documents that you received as to |
| 20     Q   We had just said -- | 20   her -- as to Ms. Riley's new house payment. |
| 21     A   May. | 21   Please note the negative escrow needs to be |
| 22     Q   -- said it was assigned by Nations | 22   deleted as agreed. Also, since it is so late |
| 23   Credit in June. But in any event, you were | 23   in May and the modification has not been |
|                 Page 103 |                 Page 105 |

26 (Pages 102 to 105)

**www.AmericanCourtReporting.com**
**March 7, 2005**

---

**Page 106**

```
 1    settled, please establish the payment date to
 2    commence now on June 25, 2002.
 3        A   Okay.
 4        Q   Did I read that correctly?
 5        A   That's correct.
 6        Q   Okay.  And I don't want you to make
 7    any assumption, but could it be that the last
 8    exhibit, 4, that we looked at was a document
 9    that he faxed or something similar to that?
10        A   That, again, you would need to get
11    from the attorney.  I can't tell you what it
12    is.
13        Q   Well, it says the following
14    attachments were received by Rose Riley, and
15    I hadn't seen it.
16        A   This is -- yeah.  This is what I
17    took --
18        Q   In all likelihood --
19        A   -- to him.
20        Q   In all likelihood, that probably
21    was the document he faxed?
22        A   Right.
23        Q   And, again, this is May 13.  And
```

---

**Page 107**

```
 1    the modification agreement appeared -- well,
 2    was executed by Nations Credit in late June.
 3    I want to say June 21, but we can look at the
 4    document.  And it appears that your attorney
 5    is asking that you not be owing for the May
 6    payment, but the first payment date to
 7    commence on June 25, 2002; correct?
 8        A   Because the settlement had not been
 9    completed.
10        Q   Okay.  Exactly.  And based on the
11    documents we just looked at, this loan had
12    already been transferred to Fairbanks;
13    correct?
14        A   Like I said, that was what was told
15    to me because of the delay.  And I did not
16    find that out until --
17        Q   Okay.  And you don't -- and I know
18    -- looking at the front of this, at this
19    document -- and I know you don't know what
20    was all attached, but it does appear that
21    Fairbanks was copied on this correspondence,
22    doesn't it?
23        A   I don't understand the question.
```

---

**Page 108**

```
 1        Q   It says to John Scott from John
 2    Cason.  I'm asking, does -- looking on here
 3    do you see any indication that it was sent to
 4    Fairbanks?
 5        A   No.
 6        Q   Do you know if Mr. Cason contacted
 7    Fairbanks?
 8        A   You would have to contact
 9    Mr. Cason.  I have no idea who he contacted.
10        Q   Okay.  And when did you remit your
11    first check on the modified note?
12        A   Within the grace period allowed.
13        Q   Okay.  You submitted it before
14    June 25?
15        A   I can't give you the exact date
16    from memory, but I did submit it within the
17    grace period allowed.
18        Q   Okay.  The grace period allowed in
19    May, or the grace period allowed in June?
20        A   Whatever the grace period it was
21    for that particular payment that was due
22    based on the modification.
23        Q   Right.  It sounds like Mr. Cason is
```

---

**Page 109**

```
 1    saying that the first payment should be due
 2    in June --
 3        A   Okay.
 4        Q   -- instead of May?  Okay.  So this
 5    letter is May 13.  And approximately a couple
 6    weeks later, you signed both the modification
 7    and the settlement agreement; correct?
 8        A   Eventually I did sign the
 9    modification settlement agreement.  Yes.
10        Q   Okay.  And then explain to me how
11    you understood that was going to work.  Did
12    mister -- let me back up.  Did Mr. Cason or
13    anyone tell you about -- when was the first
14    you heard about Fairbanks Capital?  Was it
15    when you took -- when you took this to Mr.
16    Cason, Exhibit Number 4?
17        A   Again, I think I mentioned earlier
18    that I was told that the delay of the
19    modification agreement was due to the fact
20    that your company had purchased Nations
21    Credit and they did not have my file.
22        Q   Okay.
23        A   And that was to my recollection the
```

27  (Pages 106 to 109)

**American Court Reporting**
**toll-free (877) 320-1050**

1  first time I even knew that it was even being
2  serviced because I could not understand why
3  Nations Credit drew up an agreement and
4  wouldn't even honor their own agreement.
5      Q    Okay. So your understanding was
6  that Fairbanks was acquiring the servicing
7  rights to your loan and that was holding --
8  or had acquired it and that was holding up
9  the finalization of --
10     A    Towards the end I was told that.
11  During the first part, I was just kind of
12  left in the dark.
13     Q    Okay.
14     A    As a matter of fact, Nations Credit
15  was not even responding. They would not --
16     Q    So Mr. Cason?
17     A    Uh-huh. That's what he said.
18     Q    Okay. Tell me what happened. The
19  agreement is put in place. It's finally
20  signed in June. Where did you remit your
21  first payment.
22     A    I was instructed to send it to
23  Nations Credit to a P. O. Box until Fairbanks

Page 110

1  Box and nothing's ever been modified or
2  corrected.
3      Q    Okay. And I don't want to know
4  about any of your, you know, discussions with
5  Mr. Cason.
6      A    Okay.
7      Q    You know, and I don't think you
8  told me any of those, but that would still be
9  protected by the --
10     A    Okay.
11     Q    -- privilege.
12     A    Okay.
13     Q    And you haven't -- I don't think --
14  divulged anything, but I wanted to remind you
15  if I ask a question that calls for you to
16  talk about your strategy with them or your
17  discussions with them -- but I'm just trying
18  to get the facts of this settlement which is,
19  you know, on the table without going into
20  exactly what you and he discussed. Okay?
21     A    Well, I was just -- based on my
22  experience, what was told me --
23     Q    Right.

Page 112

1  could correct all the modified information,
2  and they would be sending me statements.
3      Q    Okay. So your first statement went
4  to a P. O. Box?
5      A    To Nations Credit.
6      Q    Do you know where that P. O. Box
7  was?
8      A    No. But I'm sure I have something
9  that has that address, but I was told that
10  until I heard otherwise, I was to continue to
11  send those to a P. O. Box addressed to
12  Nations Credit.
13     Q    Okay. And that was told to you
14  from Mr. Cason through his conversations
15  with --
16     A    Yes.
17     Q    Okay.
18     A    And it never got corrected. It
19  never -- the statements never came. I was
20  still sending to a P. O. Box that after years
21  nobody had any interest anymore. Nobody
22  cared. I was like how do I know where my
23  payments are going if it's going to a P. O.

Page 111

1      A    -- what I was instructed to do.
2      Q    Okay. And have you always sent
3  payments to that same P. O. Box?
4      A    Until instructed otherwise. As a
5  matter of fact, I went back to him to say why
6  hasn't an update been sent and why are my
7  payments not being -- I'm not getting any
8  statement or evidence that anybody is
9  receiving my payments and why has not
10  Fairbanks given me a statement and
11  everything's been transferred over to the new
12  servicer.
13     Q    Okay.
14     A    And nobody could give me an answer.
15     Q    Have you always sent your payment
16  to the same P. O.?
17     A    Again, I was told until instructed
18  otherwise. I followed the direction that was
19  given to me based on the modification
20  agreement.
21     Q    Okay. And you sent your first
22  payment in, didn't you, according to the
23  agreement? You don't recall exactly when;

Page 113

28 (Pages 110 to 113)

1  correct?
2      A  I have it.  I have a receipt
3  somewhere --
4      Q  Okay.
5      A  -- from the post office, the date
6  it was sent.
7      Q  Okay.
8      A  And the money order -- I think I
9  attached the money order, when it was sent.
10  And it was sent to a P. O. Box -- Nations
11  Credit to a P. O. Box.
12      Q  Now, what happened when you sent
13  that payment in?
14      A  I don't know.  I was sending them
15  in.  I don't know.  Nobody told me whether
16  they received them.  Nobody told me where
17  they were going, what was posted, but I did
18  eventually get a statement saying that I was
19  in default when I knew I was making payments.
20      Q  Okay.  And when did you get the
21  notice that you were in default?
22      A  I think it's in one of the
23  documents.  Let me see.  I might have it in

Page  114

1  initially -- well, I eventually wrote the --
2  well, I wrote John Cason to share with
3  Nations Credit that they breached the
4  contract, that it's not been updated or
5  corrected.
6      Q  Right.  And I think you attached
7  that, and we'll talk about that in a minute.
8      A  And then I went to the credit
9  bureau and sent letters to all the credit
10  bureaus letting them know that my account was
11  not in default, that it was current.
12      Q  Okay.
13      A  And I think sent -- gave you a copy
14  of the request to the credit bureaus to
15  correct it.  And I think the only credit
16  bureau that responded -- and I'm not sure if
17  it was Equifax -- well, it was only one of
18  the major ones that did respond.  And they
19  did their investigation and said that
20  Fairbanks said that it was corrected as is
21  and did not correct it.
22      Q  Okay.  We'll get there.  I'm more
23  interested in the time period right after

Page  116

1  my initial disclosures.  Right here.  There
2  was one of 2002.
3      Q  Yeah.  You're referencing an
4  October 2002 demand letter notice of default;
5  correct?
6      A  Yes.
7      Q  Okay.  So did you receive any
8  notices of default prior to that time; this
9  is, before October?  Or do you know?  Could
10  have; don't recall?
11      A  I don't recall.  I remember
12  receiving this.
13      Q  Okay.  Tell me, Ms. Riley --
14      A  Said that I was owing $3,259.10.
15  That was not correct.
16      Q  And what did you do when you got
17  that document?
18      A  I went to my attorney and requested
19  them to do something about it.
20      Q  Okay.  And what did -- what did he
21  do?
22      A  I have no idea what he did, but
23  evidently nobody did anything.  So I

Page  115

1  this transaction closed -- the settlement
2  closed and you began remitting your payments.
3  And then the next thing you know, at some
4  point in time, you get a notice of default;
5  right?
6      A  Yes.
7      Q  Correct?
8      A  Yes.
9      Q  Okay.  You took that to your
10  attorney?
11      A  Yes.
12      Q  Okay.  Did you make any calls to
13  Fairbanks?  Did you call anyone on --
14      A  I would not call Fairbanks because
15  my attorney at that time said that they
16  were --
17      Q  I don't want to know what he told
18  you.
19      A  Okay.  Well, I was just saying that
20  they was supposed to have corrected it, so I
21  went directly to him to see if somebody could
22  correct it, and nobody did.  So after I
23  reported -- had written to the credit bureaus

Page  117

29  (Pages  114 to  117)

1   and that didn't work, I wrote the attorney
2   general's office.
3       Q.   Did you ever -- before you wrote
4   the attorney general's office, did you ever
5   write or call Fairbanks?
6       A   I don't think I did.
7       Q   Okay.
8       A   I'm not sure.
9       Q   Okay.  And let's -- I want to mark
10  as, let's see, Exhibit Number 6, a letter
11  from Fairbanks to you.
12          (WHEREUPON, Defendant's Exhibit 6
13          was marked for identification.
14          A copy is attached.)
15      Q   If you will, take a look at that
16  document.  And I think you actually produced
17  the same document back to me.  Do you
18  recognize that letter?
19      A   Right.
20      Q   Okay.  And, Ms. Riley, this is a
21  letter dated February 6th, 2003 from
22  Fairbanks to you.  And you recognize this
23  letter; correct?

                                    Page 118

1       A   Uh-huh.
2       Q   And Fairbanks Capital -- it states
3   Fairbanks Capital Corp is in receipt of your
4   inquiry regarding the above-referenced
5   account.
6           Now, you don't know whether if you
7   called or if Mr. Cason or somebody --
8       A   Well, I know at some point I
9   contacted Fairbanks, and this was prior to
10  the payoff that Citi Financial was going to
11  refinance.  And Fairbanks gave Citi Financial
12  and gave me the wrong payoff.
13      Q   Okay.  They were giving you numbers
14  that were consistent with the demand letter
15  that we just showed you?
16      A   Exactly.  And at some point I did
17  -- I imagine I had to contact Fairbanks
18  because Citi Financial told me to get it
19  correct and they would do it, but as it stood
20  with that amount, they could not refinance
21  with my credit showing like it was; that my
22  payments would be in excess of what I was
23  paying based on the balance that was given

                                    Page 119

1   and the credit reporting.
2       Q   Okay.  Let me look at this first
3   paragraph.  After reviewing our records, we
4   have found that your account has been
5   adjusted.  As of today, your principal
6   balance is $98,003.13, your interest rate is
7   8 percent, there are no legal fees, and your
8   payments have been adjusted.  As of today
9   your account is due for December 25, 2002.
10          Do you see that?
11      A   I see that.
12      Q   Okay.  That reflects that you are
13  -- after the adjustment that were made that
14  you are two -- essentially two payments
15  behind?
16      A   Exactly.  And then I did make a
17  payment that was sent back to me.
18      Q   Okay.  But you don't dispute that
19  you were two months behind at that point?
20      A   I don't dispute that I was two
21  months behind and did send a payment, and it
22  was sent back to me.
23      Q   And do you know the date -- when

                                    Page 120

1   you say you sent the payment, do you know
2   what date that would have been?
3       A   Not -- to the best of my
4   recollection, no.
5       Q   And that would have been obviously
6   -- strike that.
7           And was there any -- any
8   correspondence with the check that was sent
9   back to you?
10      A   Yes.  They had told me that I had
11  to pay my account in full, it was in default,
12  and they were going through foreclosure
13  proceedings.
14      Q   They couldn't accept less than the
15  full amount owed; correct?
16      A   Right.
17      Q   Is that what you're saying?  Do you
18  have a copy of that correspondence letter?
19      A   Not in hand.
20      Q   And also it references the
21  insurance that you're required to have on the
22  property.  It states that certain amounts
23  were assessed for insurance and that if you

                                    Page 121

30  (Pages 118 to 121)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1  provide proof of insurance, those amounts | 1  could. |
| 2  would be credited to your account. | 2      MR. COLLINS: Can we go off the |
| 3      Do you see that paragraph? | 3  record? |
| 4    A  I see that paragraph. | 4      (Off the record.) |
| 5    Q  Did you provide any proof of | 5    Q  When we left off, Ms. Riley, we |
| 6  insurance for that period? | 6  were talking about a February 6, 2003 |
| 7    A  There had to be insurance when we | 7  correspondence. And I think you mentioned |
| 8  did the modification. And I think there's a | 8  that you do not recall, to your recollection, |
| 9  letter from my attorney that shows that -- it | 9  calling Fairbanks directly in response to |
| 10  was Amica. That was the name of the | 10  this letter; correct? |
| 11  insurance. | 11    A  I think I went to -- okay. Let me |
| 12    Q  Did you provide that -- did you | 12  make reference to this letter. |
| 13  respond -- did you respond to this letter | 13    Q  Defendant's Exhibit 6? |
| 14  about providing anything? | 14    A  Okay. At some point prior to, I |
| 15    A  I went to my attorney. | 15  had to contact Fairbanks to correct the |
| 16    Q  Okay. | 16  payoff figure. |
| 17    A  Who I think is -- I'm not sure of | 17    Q  Okay. Do you know about what time |
| 18  any disclosures. He supplied that | 18  -- what period of time that would have been? |
| 19  information. | 19    A  It would be during the time I was |
| 20    Q  He supplied information in response | 20  turned down by the Citi Financial |
| 21  to this letter? | 21  refinancing. |
| 22    A  He was -- he -- again, I would have | 22    Q  Okay. And do you know when that |
| 23  to go through what was sent to you. And I | 23  was? |
| Page 122 | Page 124 |

| | |
|---|---|
| 1  can do that, but it makes reference that the | 1    A  No. But I know -- I know that in |
| 2  house was being insured. | 2  your records, the documents you submitted to |
| 3    Q  Okay. As we sit here today, would | 3  me -- |
| 4  you have documentation of insurance during | 4    Q  Okay. |
| 5  the periods outlined in this paragraph? | 5    A  -- it has the date and time that I |
| 6    A  I'm sure I have somewhere. | 6  had Citi Financial request the payoff. |
| 7    Q  Okay. | 7    Q  Okay. So that's in the documents? |
| 8    A  I'm not -- | 8    A  Yeah. That I received Saturday |
| 9    Q  And, again, it's November 15th, | 9  from you. |
| 10  2000 through November of 2001, and then 2001 | 10    Q  Okay. Well, I'll take a look at |
| 11  of November through 2002 of May. | 11  those, and we'll see if we can find that |
| 12    A  I'm sorry. Was that a question? | 12  date. But around that date would have been |
| 13    Q  Yeah. I was just reading the time | 13  the first time you contacted Fairbanks; |
| 14  periods -- | 14  correct? |
| 15    A  Oh. | 15    A  Right. To let them know that -- |
| 16    Q  -- in which we're stating there was | 16  because I had to find out who had the |
| 17  insurance -- evidence of insurance in place | 17  mortgage and to get the payoff figure. And |
| 18  and was asking if you ever submitted those | 18  then, when I got the Fairbanks number to call |
| 19  documents yourself to Fairbanks. | 19  for a payoff, I called the manager from Citi |
| 20    A  I'm looking for what was sent to my | 20  Financial. And all three of us was on the |
| 21  attorney to give information -- | 21  line. |
| 22    Q  Okay. | 22    Q  Okay. Did you get a payoff from |
| 23    A  -- that was -- if you don't mind, I | 23  Fairbanks? |
| Page 123 | Page 125 |

31 (Pages 122 to 125)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    A    It was incorrect. So at that time,<br>2  I had to let Fairbanks know that the<br>3  modification should have reflected the<br>4  correct payoff.<br>5    Q    Right. But do you have a copy of<br>6  the payoff that was provided to you?<br>7    A    Not with me, no. No.<br>8    Q    Okay. Do you have it at home?<br>9  You've given me everything that you have;<br>10  right?<br>11    A    That I had access to at that time.<br>12    Q    Okay. And before that time, you<br>13  just provided these documents to your<br>14  attorney and let him deal with the situation;<br>15  correct?<br>16    A    At some point, I did contact Cason<br>17  to help me to correct my situation.<br>18    Q    Okay.<br>19    A    And when all that failed, I<br>20  contacted the attorney general.<br>21    Q    Okay. And Mr. Cason, again, just<br>22  to be clear, he is not representing you in<br>23  this case?<br>Page 126 | 1    was marked for identification.<br>2    A copy is attached.)<br>3    Q    Could you identify that for me,<br>4  please?<br>5    A    State of Alabama Office of the<br>6  Attorney General Consumer Affairs Section,<br>7  Consumer Complaint Form.<br>8    Q    Okay. Now, before this was<br>9  submitted, you -- and I don't want to put<br>10  words in your mouth, but you got a payoff<br>11  quote and some information from Fairbanks.<br>12  You made a call, and you had a three-way call<br>13  with a potential lender; correct?<br>14    A    (Witness nods head.)<br>15    Q    And after the information was --<br>16  you say was incorrect in the payoff, did you<br>17  then write this letter? Did you call<br>18  Fairbanks before you wrote the letter? Can<br>19  you please tell me how we got from --<br>20    A    Point A?<br>21    Q    Point A to point B, yeah. That<br>22  would be great.<br>23    A    Okay. I got to point A as far as<br>Page 128 |
| 1    A    No, he's not.<br>2    Q    Have you consulted with him about<br>3  this case?<br>4    A    Only to review documents.<br>5    Q    Okay. And I don't want to know any<br>6  of your conversations, but he is currently<br>7  not representing you in this case; correct?<br>8    A    I am representing myself.<br>9    Q    Right. I just wanted to be clear.<br>10    A    Okay.<br>11    Q    And you mentioned that at some<br>12  point you contacted the attorney general's<br>13  office; correct?<br>14    A    That's correct.<br>15    Q    And this would have been after the<br>16  refinance with Citi Financial took place,<br>17  'correct?<br>18    A    Yes.<br>19    Q    I'm going to mark as Defendant's<br>20  Exhibit Number 7 your consumer complaint<br>21  form.<br>22    A    Okay.<br>23    (WHEREUPON, Defendant's Exhibit 7<br>Page 127 | 1  making attempts to correct the misinformation<br>2  that was on my credit --<br>3    Q    Okay.<br>4    A    -- and contacting the credit<br>5  bureaus and not getting the updated --<br>6    Q    Okay.<br>7    A    -- current balance on my account<br>8  showing that my account was in foreclosure.<br>9  That's when I wrote the attorney general.<br>10    Q    Okay. Did you -- did you call<br>11  Fairbanks directly or write them a letter? I<br>12  know you produced to me a letter to credit<br>13  bureaus referencing what you claim to be an<br>14  incorrect reporting.<br>15    Did you write a letter to Fairbanks<br>16  independent of this letter?<br>17    A    I can't recall.<br>18    Q    I mean I haven't seen one, so if<br>19  you --<br>20    A    I can't recall. Again, I went to<br>21  my attorney. That did not do any good. I<br>22  wrote the credit bureaus. As a matter of<br>23  fact, I think -- and I don't know if I'm<br>Page 129 |

32 (Pages 126 to 129)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1   willing to say it or not -- that I was told I
2   needed to go to the credit bureaus to correct
3   it.
4       Q    Okay.
5       A    And I went to the credit bureaus.
6   And the only one that responded was the one
7   that said their client, Fairbanks, said that
8   it was corrected as is and it remained.
9       Q    Okay. Do you have that response?
10  Let me stop real fast and see if I can find
11  what you're talking about, and we can mark it
12  as an exhibit.
13      A    I submitted it to you. I'm sure I
14  can get it to you if I don't have it with me
15  today, but I thought that was part of what I
16  submitted in the disclosures.
17      Q    Okay. I'm going to mark as Defense
18  Exhibit 8 --
19          (WHEREUPON, Defendant's Exhibit 8
20          was marked for identification.
21          A copy is attached.)
22      A    Yeah. That's it.
23      Q    This is a document, again, you

Page 130

1   produced to me, and I marked it as Defense
2   Exhibit 8. Could you identify that, please?
3       A    Yes. It's a correction summary
4   from Experian.
5       Q    Okay. And what is that document?
6       A    As a result of the investigation
7   where I put them on notice that my credit
8   with Fairbanks was incorrect.
9       Q    Okay.
10      A    Fairbanks and Americredit was
11  incorrect.
12      Q    Okay. Let me see this. And
13  there's one credit item on this report. And
14  it states Fairbanks Capital Corp, and it
15  states "remains"; correct?
16      A    Right.
17      Q    Okay. And this report is dated
18  October 22, 2002.
19      A    Let me refer to mine.
20      Q    Is this -- is this the -- is this
21  the negative report that we're talking about
22  today?
23      A    Yes.

Page 131

1       Q    And this is the negative report
2   that you say impeded your ability to get
3   refinancing?
4       A    Yes.
5       Q    And you wrote a letter to all three
6   credit reporting agencies?
7       A    Yes. And that's the only one that
8   responded.
9       Q    Okay. Do you know why the other
10  two did not respond?
11      A    No, I don't.
12      Q    Have you checked the other credit
13  bureaus to see if this same report was on
14  there, or did they just not pick it up?
15      A    Well, actually I submitted, at that
16  time, several certified letters, and it was
17  costing me each time I certified them. And
18  by being discouraged because, even with the
19  information that was submitted, it was not
20  corrected, my frustration led me to write the
21  attorney general to seek additional help to
22  help me correct these issues.
23      Q    Okay. Now, you say that they

Page 132

1   responded and provided -- Fairbanks stated
2   that the information would remain. Where is
3   that letter back to you? This looks just
4   like a credit report that was printed out.
5       A    They submitted the credit
6   information.
7       Q    Right. And you --
8       A    And that's page one of two. And I
9   may have the second page somewhere.
10      Q    Okay.
11      A    Well, I'm sure I do.
12      Q    Well, it's my understanding that
13  the credit bureaus write you a letter setting
14  out the results of their investigation. Did
15  you have a letter from them setting out the
16  results of this investigation?
17      A    From my recollection, page one and
18  page two is what I got. And then I got the
19  -- I got a copy of my credit report stating
20  the way they're reporting it. And -- which
21  meant there was no incorrect information
22  because they contacted -- as a matter of
23  fact, I called them over the phone. And they

Page 133

33 (Pages 130 to 133)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1   said that their client said that it was not
2   going to be corrected, it was to remain
3   because -- well, I guess Fairbanks refused to
4   correct it.
5       Q   Okay.  But is there any other
6   negative reporting you're aware of other than
7   this one-sheet document?
8       A   Well, the Americredit.
9       Q   Right.  Americredit.  But that has
10  nothing to do with --
11      A   Right.  Exactly.  But those -- it's
12  still reflected on my credit report that my
13  payments were in default.
14      Q   Okay.  Now, I'm just going to put
15  this aside, and we'll get back to Number 7.
16  Do you still have Defense Exhibit 7?
17      A   Yes, I do.
18      Q   Okay.  So after you received this
19  information, the credit report, Defense
20  Exhibit 8 --
21      A   Right.
22      Q   -- and you had your telephone
23  conversation with Fairbanks and Citi

Page 134

1   sixteen -- six one five, forty-seven.  And by
2   me complaining about that, I got an
3   adjustment.
4       Q   Okay.  So you would agree with me
5   that Fairbanks --
6       A   Initially.
7       Q   -- at some point in time
8   adjusted --
9       A   Adjusted.  But it was too late.
10  The loan was already --
11      Q   Okay.
12      A   They told me at that balance and
13  the credit the way it was reported, my
14  payments would have been over a thousand
15  dollars a month, so they couldn't --
16      Q   Okay.  Well, let's look at this
17  document.  Let's turn to -- and I think --
18  you know, this document speaks for itself,
19  but looking at the second page, it kind of
20  summarizes what we talked about earlier.  You
21  described your refinance with Nations Credit,
22  and you describe different complications and
23  hardships that developed during the entire

Page 136

1   Financial --
2       A   Right.
3       Q   -- and your loan was declined --
4       A   Right.
5       Q   -- you wrote a letter to the
6   Alabama Attorney General; correct?
7       A   Correct.
8       Q   Okay.  And that's Defense Exhibit
9   7; correct?
10      A   Yes.
11      Q   Okay.  And I'm not sure if all
12  these documents -- I've stapled all these
13  together because it looks like the package
14  that you sent to the --
15      A   And it could have been.
16      Q   Okay.  And it states on this first
17  page the number of dollars involved or
18  estimate, 103,615.47.  Where did you come up
19  with that number?
20      A   That was what they said the payoff
21  was.  So I guess this is what was corrected
22  as a result of -- this was the payoff that
23  was given to Citi Financial.  One-o-three

Page 135

1   mediation process causing a breach of the
2   agreement.
3           Would you elaborate on that?  Are
4   you talking about at the time the agreement
5   was entered into?
6       A   That the mediation that was drawn
7   up was not even -- it was -- it didn't take
8   effect when it was supposed to have taken
9   effect.  And then --
10      Q   Okay.  Let me stop you.  When was
11  this supposed to have taken effect?
12      A   Well, as we looked at the documents
13  that you asked me about prior to, it was
14  signed a month or two after it was drawn up.
15      Q   Okay.  And you're not saying that's
16  something my client did, are you?
17      A   No.  I mean, I don't know.  I don't
18  know.
19      Q   You would agree that --
20      A   I wasn't in the --
21      Q   Right.
22      A   -- boardroom when all this was
23  occurring.  I was just given verbal

Page 137

34  (Pages 134 to 137)

```
 1   explanations, so I can't say who's at fault
 2   because I wasn't there.  I don't know.
 3       Q    Right.  But you would agree with me
 4   that that document is signed by someone from
 5   Nations Credit; correct?
 6       A   Well, this document, the
 7   modification, yeah, is signed.
 8       Q    Okay.  And you also mentioned here
 9   Nations Credit controlled the entire
10   mediation process with unethical and
11   discriminatory practices.  What are you
12   referring to there?
13       A   Because when my attorney tried to
14   reach them to find out what was the delay,
15   what was the problems, what was the
16   complications, out of, if not just common
17   courtesy, you know, to call or respond rather
18   than being ignored.  And to me, I felt I was
19   being discriminatory -- discriminated against
20   because, you know, they were discounting that
21   I even existed.  Nobody could give me an
22   explanation.  Nobody cared to.  And -- which
23   meant that, you know, I had no control
                                    Page 138
```

```
 1   the delay.
 2       Q    Okay.  And it also references
 3   inaccurate reporting, and that's what we
 4   just --
 5       A    Credit reporting.
 6       Q    That's what we just talked about;
 7   correct?
 8       A    Yes.
 9       Q    Okay.  And then you say comments
10   were made by an attorney that they anticipate
11   foreclosure and never changed status to
12   updated.
13           Obviously, those -- that would not
14   be a Fairbanks --
15       A    That was my commentary at the time
16   I wrote this -- this document.
17       Q    Okay.  And you're thinking back to
18   the time y'all were mediating and coming to
19   this agreement; correct?
20       A    I can't tell you where my state of
21   mind was, but I can tell you that, when I
22   wrote this document, I was -- I was in pain.
23   I was hurting.
                                    Page 140
```

```
 1   whatsoever.  I mean, they were controlling
 2   everything and caused hardships.
 3       Q    And in this sentence you're
 4   referring to -- you know, obviously my client
 5   was involved in the mediation process.  So
 6   you're referring to Nations Credit?
 7       A    Okay.  You're asking me to
 8   differentiate.  I mean, I can only say that,
 9   directly, Nations Credit gave me
10   complications.  Indirectly, I can't say what
11   their excuse was because they pointed the
12   finger at you.  I mean --
13       Q    Do you have any correspondence from
14   Nations Credit saying that --
15       A    No.  It's just my opinion of what
16   was told to me, and that was my --
17       Q    And that was from your attorney?
18       A    That was my assumption.
19       Q    Okay.  Your assumption was that
20   Fairbanks was the holdup in getting
21   everything corrected?
22       A    Again, I was told that Fairbanks
23   bought my account and that was the purpose of
                                    Page 139
```

```
 1       Q    And you would -- and I think this
 2   is reflected in this document.  You would
 3   agree that the problems that we're talking
 4   about today kind of grew out of or arose from
 5   this modification that we talked about
 6   earlier in the day, the modification --
 7       A    I guess --
 8       Q    -- the change in the terms of the
 9   note and the payments?
10       A    With my complaint being focussed
11   that Nations Credit, slash, Fairbanks -- I
12   felt there was a contributing factor
13   from both parts.
14       Q    Okay.  What do you think that
15   Fairbanks Capital did or didn't --
16       A    What I know is that Fairbanks --
17       Q    -- do that they should have done?
18       A    -- was not reporting my credit
19   correctly to update the correct modification
20   agreement.
21       Q    Okay.  Do you know -- do you have
22   any evidence to indicate that Fairbanks knew
23   that -- that --
                                    Page 141
```

35 (Pages 138 to 141)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1    A    Yes, I do. | 1    remained a couple months behind in March of |
| 2    Q    Let me finish my question. That | 2    '03; correct? |
| 3    Fairbanks knew exactly what the terms and | 3    A    I remember in February of '03. And |
| 4    conditions of this modification were until -- | 4    then I did submit a payment. That would have |
| 5    let me strike that question. | 5    made it one month. |
| 6    We all -- we both agree that in | 6    Q    Okay. |
| 7    February that things had been corrected -- | 7    A    But that payment was sent back to |
| 8    correct -- February of '03? | 8    me, so I guess I would have been. If they |
| 9    A    No. | 9    refused the payments, I would have been |
| 10   Q    What was the -- you just mentioned | 10   behind -- if they returned it back to me. |
| 11   earlier that they had corrected the payment | 11   Q    Okay. And why did you write this |
| 12   amount; the interest was correct. | 12   letter to the attorney general? What was |
| 13   A    The statements I never received. | 13   your expectation when you wrote this to them? |
| 14   Q    Well, you did receive notice of | 14   A    To address the issue and some |
| 15   default statements, didn't you? | 15   resolution. |
| 16   A    The one you listed as an exhibit, | 16   Q    Okay. On this second page -- the |
| 17   yeah. | 17   third page. I'm sorry. It has a statement |
| 18   Q    And you identified some other ones | 18   "preapproved for credit." It doesn't — and |
| 19   in October? | 19   it's a homeowner's loan by Homeowners -- I |
| 20   A    Right. | 20   can't tell you who the company is, but -- |
| 21   Q    You didn't receive statements, but | 21   A    Homeowner's Loan -- |
| 22   you received notice of default; correct? | 22   Q    Right. |
| 23   A    I didn't receive statements, but at | 23   A    -- is the name of the company. |
| Page 142 | Page 144 |

| | |
|---|---|
| 1    some point I did receive notices of default. | 1    Q    And it says that you've been |
| 2    Q    Right. And the reason you didn't | 2    preapproved for $20,000. Are you saying this |
| 3    receive statements, I presume, is because | 3    was denied? |
| 4    Fairbanks, in their records, indicated that | 4    A    It was denied. I was turned down |
| 5    you were behind on their payment, which you | 5    by Citi Financial. I got a preapproved |
| 6    disagree with; correct? | 6    letter, and I -- since it was preapproved, I |
| 7    A    I'm not agreeing with the way that | 7    thought if I would explain what was going on, |
| 8    question was worded. | 8    that I could get the refinancing. And I was |
| 9    Q    Well, instead of receiving payment | 9    denied because -- and the lady -- and I think |
| 10   notices, you were receiving default | 10   I wrote her name. She told me the same thing |
| 11   statements; correct? | 11   that the lady -- that Citi Financial told me, |
| 12   A    No. Not repeatedly. I mean, I | 12   that my credit was showing that I was in |
| 13   thought I was supposed to receive a monthly | 13   default and they couldn't approve it. |
| 14   statement, and I didn't receive that. | 14   Q    Okay. Is this your handwriting on |
| 15   Q    Okay. But you were — | 15   this document? |
| 16   A    But at some point, eventually, | 16   A    Where it said credit denied and |
| 17   prior to me filing foreclosure, I did receive | 17   denied because of false credit bureau |
| 18   a default letter. | 18   information -- |
| 19   Q    Okay. Now, we already talked about | 19   Q    Right. |
| 20   earlier -- I'm still looking at this document | 20   A    -- that's my handwriting. |
| 21   -- that you agree that you were a couple | 21   Q    So even though this says you're |
| 22   months behind in February of '03. And I | 22   preapproved and all you have to do is call, |
| 23   think in your complaint you stated you | 23   it's your statement -- |
| Page 143 | Page 145 |

36  (Pages 142 to 145)

**American Court Reporting**
**toll-free (877) 320-1050**

1    A    And I —
2    Q    — today that even though it was
3    preapproved, they denied it?
4    A    They denied it. I spoke with a
5    Bernadette York who told me why they denied
6    it.
7    Q    Tell me Bernadette York is.
8    A    She's the lady over the phone that
9    processed the loan. And she told me that
10   your credit is showing that your house is in
11   default.
12   Q    And do you know where this company
13   is located?
14   A    Atlanta.
15   Q    Okay. Did you ask Bernadette York
16   why they had preapproved your loan if they
17   were not going to extend credit?
18   A    She just informed me that based on
19   my credit, what was being reported, that they
20   could not approve the loan. And that's why I
21   couldn't believe the payments I was mailing
22   was not being posted.
23   Q    Okay.

Page 146

1    A    So I was turned down for a second
2    loan.
3    Q    And this isn't dated. Do you know
4    the date this was submitted to you?
5    A    Well, it had to be prior to my
6    filing the complaint, so it had to be prior
7    to — let's see. It's dated May 22nd, 2003.
8    Q    Where is that date?
9    A    On the letter to the attorney
10   general.
11   Q    So it would have been, obviously,
12   prior to that date?
13   A    Yeah.
14   Q    Okay. Now, again, all these
15   documents were attached. If you'll turn the
16   page and take me through the next document.
17   A    Oh, is that a question?
18   Q    Yes. I was going to ask you to
19   turn to the next page and tell me what that
20   document is.
21   A    It's acceleration of promissory
22   note and mortgage/foreclosure.
23   Q    And you're writing this letter to

Page 147

1    Ms. Erin East; is that correct?
2    A    That's correct.
3    Q    Okay. Who is Erin East?
4    A    The letter -- the lady that
5    contacted me about foreclosure.
6    Q    Okay.
7    A    And I responded by saying that it
8    was in dispute.
9    Q    Okay. And you're saying that it's
10   in dispute to avoid the foreclosure process;
11   correct?
12   A    To at least get some kind of
13   closure and resolve my dispute before going
14   through the process of foreclosure.
15   Q    And this letter is dated May 19,
16   2003, which is approximately a week or so
17   before you wrote the attorney general;
18   correct?
19   A    I'm sure. Yeah. If that's dated
20   May 5th, and I wrote May 21st. It was
21   -- yeah.
22   Q    Okay. And we were talking about --
23   you're saying that your payments had been

Page 148

1    sent back or returned to you. You do
2    understand that if you're behind, pursuant to
3    the agreement with the mortgage, more than a
4    certain amount of months, then they will not
5    accept anything less than the full amount to
6    reinstate? Do you understand that?
7    A    I understand that, when I went on
8    line and saw the charges that were brought
9    against your client —
10   Q    That's not the -- that's not the
11   question, Ms. Riley. With all do respect,
12   I'm just asking a simple question. Under the
13   note and mortgage, if you fall behind more
14   than a couple months, then the loan servicer
15   will not accept a partial payment; they only
16   accept the full amount. Is that your
17   understanding?
18   A    No.
19   Q    Okay. What is your understanding?
20   A    That they would have a good faith
21   effort to accept payments and try to set
22   arrangements to help someone to become
23   current on their loan. Before just being

Page 149

37 (Pages 146 to 149)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1  behind one payment or two payments, that they
2  would at least give a good faith effort to
3  work with the borrower.
4      Q    And that's your opinion?
5      A    Well, that was what I received from
6  your client saying that there was something
7  in documents saying that they do try to make
8  a good faith effort before foreclosing.
9      Q    And we'll get to that.
10     A    So I guess that was my
11  understanding.
12     Q    Okay.  The attorneys -- let me put
13  this in context.  You received a notice that
14  your property was going to be foreclosed
15  upon, your payments were sent back as being
16  short a payment; correct?
17     A    Yeah.  Within -- the one month.
18  That would have brought me within one month.
19  And I had the intentions of sending another
20  one at the end of the month to bring it
21  current, and it was returned.
22     Q    And all this occurred in May of
23  2003, and you, in turn, took the letters that

Page 150

1  you wrote to the attorneys who were involved
2  in the foreclosure and attached these
3  documents and mailed them to the attorney
4  general; correct?
5      A    Yes.
6      Q    Okay.  Let's turn to Bates stamp
7  number 0094.  Now, is that your handwriting?
8  It says enclosure number, two.
9      A    Yes.
10     Q    Something you would have enclosed
11  with your letter to the attorney general?
12     A    Breach of contract modification
13  agreement?
14     Q    Yeah.  Right above that, it says
15  enclosure number, two.
16     A    Enclosure number, two.  Yeah.
17     Q    Now, this is dated -- this is kind
18  of out of -- out of -- as far as sequencing
19  of time, it's a little out of order, but we
20  talked about this earlier.  This is dated
21  August 28th, 2002, which would have been a
22  few months, three months, after you signed
23  off on the settlement agreement modification

Page 151

1  with Nations Credit; correct?
2      A    Uh-huh.
3      Q    Okay.  Tell me what this letter is
4  and who it's to.
5      A    Dear Attorney and Nations Credit
6  Representative:  Reference is made to
7  modification agreement loan 7002274657
8  between us dated the month of May 2002, which
9  the agreement provides that the loan
10  documents will be modified to reflect the
11  principal amount of the loan; to amend and
12  reflect the current, present amount of
13  obligation with true amount of indebtedness
14  and the waiver of $1400.00 in insurance and
15  late fees and past due house payments.
16         The note should also reflect
17  modification to reinstate Section 3
18  "payments" as follows:  Such principal and
19  interest shall be payable in 360 successive
20  monthly installments, with the first such
21  installment in the amount of 722.05 due on
22  the 25th day of May.  See attachment --
23  May 2002.

Page 152

1      Q    Okay.
2      A    Please take notice that you are in
3  breach of your obligations under said
4  contract and the following particulars:  I
5  have faithfully submitted money order
6  payments in the amount of 722.05 before the
7  25th of each month in a timely manner since
8  May 2002; I have yet to receive any proof of
9  document, monthly statements reflecting
10  corrections, or any follow-up that reflects
11  the agreed modification terms.
12         What I have experienced was a total
13  contradiction of these terms in the form of a
14  credit bureau report regarding loan servicing
15  center showing -- well, account number --
16  showing past due 60 days late foreclosure
17  status.
18         You are further advised that we
19  shall hold you responsible for all actual and
20  consequential damages arising from such
21  breach -- from your breach.
22     Q    Okay.  And this is to -- why is
23  this directed to your attorney?

Page 153

38  (Pages 150 to 153)

**American Court Reporting**
**toll-free (877) 320-1050**

1      A   For him to submit it to the
2  attorneys and the representatives of Nations
3  Credit that --
4      Q   Okay.  Do you know if he sent this
5  letter or did he send another letter or do
6  you know?
7      A   You would have to talk to John
8  Cason.
9      Q   Okay.  But you sent this -- this
10  wasn't -- I guess I'm a little bit confused.
11  Were you -- are you saying that you wanted
12  him to take this and send it along, or what
13  did you want him to do with it?
14      A   Well, I was just letting someone
15  become aware that based on the modification
16  agreements there was a breach.  I mean,
17  everything was not modified.
18      Q   Okay.  And did you send this
19  directly to Nations Credit?
20      A   No.  Because I sent it to my
21  attorney to -- with the CC to Nations Credit.
22      Q   But you don't know sitting here
23  today whether he sent it to Nations Credit or
                                      Page 154

1  not?
2      A   You would have to ask John Cason.
3      Q   Okay.  And on this document there's
4  no reflection of Fairbanks Capital Corp, is
5  there?
6      A   No.  Not with the modification.
7      Q   Okay.  And I don't want to go into
8  your conversations with you about -- with Mr.
9  Cason, but did he respond to you or call you
10  back or write you back in response to this
11  letter?  Or do you remember?
12      A   I don't recall.  I think he said he
13  would take care of it.  I'm not sure.
14      Q   And then turn to the next page
15  please.  And that is a notice to correct
16  credit report; correct?
17      A   Yes.
18      Q   And it says to credit bureau, and
19  there's no address.  Do you know who you sent
20  this to?
21      A   All of the major credit bureaus.
22      Q   Okay.  Is there any reason there's
23  no address to all the bureaus in here?
                                      Page 155

1      A   No.
2      Q   Okay.  You're sure you sent this
3  letter?
4      A   I have documentation to prove that
5  I sent it.
6      Q   Is -- do you have it with you?  I
7  mean, is this what we're talking about?
8      A   No.  I have certified documents
9  saying that I mailed them to the credit
10  bureaus.  One sent it back because I had the
11  wrong address, and -- so I have those
12  certified.
13      Q   Well, I need all that stuff if you
14  have it.  I would appreciate it if you would
15  give me --
16      A   Okay.  I mean, I can --
17      Q   -- I mean, any documents that have
18  to do with this case at all in any respect.
19      A   Okay.
20      Q   Okay?  Okay.  I mean, you referred
21  to the mediation settlement.  And you refer
22  to Americredit has a satisfaction of
23  judgment.  Tell me about that.  Did
                                      Page 156

1  Americredit sue you?
2      A   Yes, they did.
3      Q   Okay.  Is that for the car
4  payments?
5      A   Yes, they did.
6      Q   Okay.  Where did they file suit?
7  Well, it says it right here.  In the Circuit
8  Court of Alabama, Montgomery County.  How did
9  that resolve itself?  Did you settle that
10  with them?
11      A   We had a settlement agreement.
12  They gave me a satisfaction of judgment.
13      Q   Okay.  Did you end up paying them
14  any money for the car?
15      A   No.  They satisfied the judgment
16  that was against me.
17      Q   Oh, okay.  But did they --
18      A   I gave them the car back.  They
19  satisfied the judgment.
20      Q   Okay.  And they obtained a judgment
21  against you for not making your payments on
22  the car; correct?
23      A   For not making a payment on a car
                                      Page 157

                          39 (Pages 154 to 157)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  that I had a title to --
2      Q    Right.
3      A    -- and a contract marked paid in
4  full.
5      Q    And that was from your closing with
6  Nations Credit; correct?
7      A    Yes.
8      Q    In the last paragraph you asked
9  that they provide you with a -- notify you
10  when the items have been deleted.  Is this
11  what you got back from Experian?
12      A    That's what I got back from
13  Experian.
14      Q    Did the other companies respond to
15  you?
16      A    No.
17      Q    Have you followed up with them to
18  ask them why they did not?
19      A    No.
20      Q    Any reason why you haven't done
21  that?
22      A    Because I got -- like I said, I got
23  no response.  I sent whatever it was --
                                    Page 158

1  whatever the postage was.  And when I didn't
2  get a response, I followed through with the
3  one I did get a response to.  And I wrote the
4  attorney general because I thought that was
5  the next step.  I was not going to continue
6  to waste money on someone who was not going
7  to respond to me.  I didn't have the money to
8  do that, to throw it away like that.
9      Q    I understand.  Okay.  If you'll
10  turn to the next page.  This is the postal
11  money order.  I think it's the one you
12  referred to earlier?
13      A    Yeah.
14      Q    Okay.  And it's reflecting that two
15  separate postal money orders were mailed to
16  Nations Credit at the P. O. Box in Baltimore,
17  Maryland; correct?
18      A    Yes.
19      Q    Okay.  At the top it says
20  "returned."  Were those returned to you?
21      A    Yes.
22      Q    Okay.  So this money was not
23  accepted?
                                    Page 159

1      A    Yes.
2      Q    Was it -- if you know, was it not
3  accepted because the settlement agreement had
4  not been finally -- signed and finalized?  Or
5  do you know why it was sent back to you?
6      A    I'm thinking that that was the
7  payment that I sent to bring it within one
8  month, whatever, and they denied it.
9      Q    Okay.  And this, again, would have
10  been -- this was sent approximately three
11  weeks before you signed the settlement
12  agreement and a month and a half before
13  Nations Credit signed it; correct?
14      A    I'm not sure of the dates, but I
15  would have to look at all -- everything.
16      Q    Okay.  But this was returned to
17  you?
18      A    Yes.
19      Q    Okay.  We're done with that.  Let
20  me mark as Defendant's Exhibit Number 9 --
21  and this is a document that we both produced
22  to each other.
23      A    Okay.
                                    Page 160

1          (WHEREUPON, Defendant's Exhibit 9
2          was marked for identification.
3          A copy is attached.)
4      Q    And would you tell me if you
5  recognize that document, please?
6      A    Fairbanks Capital Corporation in
7  response to Consumer Specialist Barbara D.
8  Armstrong with the attorney general's office.
9      Q    Okay.  And you were -- if you'll
10  turn to the very last page, page four of the
11  letter.  It states that you were CC'ed on
12  this; correct?
13      A    I'm sorry.  What was that again?
14      Q    Page four of the letter, that you
15  were CC'ed?
16      A    Right.
17      Q    Okay.  And you, in fact, got a copy
18  of this because you produced it to me;
19  correct?
20      A    Yes.
21      Q    Okay.  In this letter, Ms. Riley,
22  is Fairbanks' response to your complaint to
23  the attorney general; correct?
                                    Page 161

40 (Pages 158 to 161)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1    A    Yes.
2    Q    And I'm looking at the first
3    paragraph. And if you'll -- we don't have to
4    read it, but if you'll just read it to
5    yourself, and the second paragraph as well.
6    Okay?
7    A    Okay.
8    Q    And would you agree that the first
9    paragraph actually summarizes your settlement
10    and modification with Nations Credit? Is
11    there anything in that paragraph that you
12    would disagree with?
13    A    Repeat the question.
14    Q    Is there anything in that
15    paragraph, which summarizes the events of
16    your modification and settlement agreement
17    with Nations Credit in 2002 -- is there
18    anything in there you would disagree with,
19    that's incorrect?
20    A    Okay. I'm not sure if the question
21    that you're asking me pertains to what I
22    understand I'm reading because I don't see
23    anything that says Nations Credit.
                                                    Page 162

1    Q    Well, it says -- and let me just
2    look at it real quick. It says that you
3    originated a loan with Nations Credit to
4    refinance --
5    A    We're on the wrong -- wrong page,
6    aren't we?
7    Q    Oh, I'm sorry. What are you
8    looking --
9    A    Okay. Oh, you're talking about --
10    Q    I am.
11    A    Okay. Because the first paragraph
12    I'm looking at is just saying that they're in
13    receipt of my letter.
14    Q    Okay. The first paragraph, just
15    for the record, reflects acknowledgment of
16    your complaint and outlines what Fairbanks is
17    going to respond to. And it has five bullet
18    points.
19    A    Okay.
20    Q    And in the first -- the first
21    element they respond to is compliance with
22    the terms of your settlement agreement.
23    A    Okay. You're talking -- okay.
                                                    Page 163

1    You're talking about under the Fairbanks
2    compliance with the terms of this settlement
3    agreement?
4    Q    Correct.
5    A    Okay. I wasn't reading those
6    paragraphs. I'm sorry. If you would, give
7    me a chance to --
8    Q    Sure.
9    A    -- read. Okay.
10    Yes. Now, I can answer your
11    question clearer.
12    Q    And I was -- okay.
13    A    I can answer your question as being
14    yes, it's a summary of the modification.
15    Q    Okay. Is there anything in that
16    first paragraph that summarizes the
17    modification and the date it was officially
18    executed, that being June 20th, 2002, that
19    you disagree with, that they're -- that these
20    facts aren't reflected correctly?
21    A    Not to my knowledge.
22    Q    Okay. And then the second
23    paragraph has, essentially, the terms of the
                                                    Page 164

1    settlement: The modified interest rate, the
2    reduced principal balance, and the
3    amortization schedule essentially.
4    Does all that look correct?
5    A    It looks correct.
6    Q    Now, the remainder of this section
7    down to the explanation of foreclosure
8    proceedings is Fairbanks' effort to explain
9    how those payments you sent in were credited.
10    I want to look at that very closely.
11    Okay?
12    A    Okay.
13    Q    Fairbanks is stating in here that
14    although you were supposed to submit your
15    first payment May 25, '02, we didn't receive
16    the first payment until June 19, 2002. And
17    when I say "we," I mean Fairbanks.
18    A    And I disagree with that. I
19    mean -- I mean, they could have received it
20    on June 19th, but it was mailed for them to
21    receive it before June 19.
22    Q    Okay. And is that -- is that the
23    payment that we talked about earlier that
                                                    Page 165

41 (Pages 162 to 165)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1  said "returned"?
2      A   No.
3      Q   The postal --
4      A   That was 2003. This is 2002.
5      Q   Are you sure that was -- I think
6  that was 2002.
7      A   Let me --
8      Q   Let's see. Okay. You're right.
9  It was 2003. Okay. Do you have any evidence
10 that you submitted a payment in May of 2002?
11     A   Yes, I do. I don't have it with
12 me, but I'm sure I --
13     Q   Where would you have it?
14     A   I thought I sent it to you, but I
15 -- because I included it with copies that was
16 sent to the attorney general. So if I did
17 not include that, I can.
18     Q   Okay. I haven't seen all -- I'll
19 let you know that -- I could be wrong, but I
20 have not sent a payment for May 25, 2002.
21     A   I'm sure I submitted it to you
22 because --
23     Q   Let me take a look at what you're
                                    Page 166

1  looking at, please.
2      A   Okay.
3      Q   And, Ms. Riley, I'm looking at --
4  this is an unmarked document. We might mark
5  it for the record. It looks like postal
6  money order receipts, and I do not see a
7  receipt for May of 2002. I do see a receipt
8  for June of 2002.
9      A   Okay. Well --
10     Q   Would you mind providing me with
11 the originals of those or a clean copy?
12     A   If I have originals, but I could
13 give you the clear copy.
14     Q   Do you see any on there as being
15 submitted in May of 2002?
16     A   Let me -- May 24th, 2002.
17     Q   Okay. Let me see that.
18     A   May 24th, 2002.
19     Q   Is that -- I thought that reflected
20 the account number.
21     A   No. They don't put your account
22 numbers on postal service money orders. So,
23 I mean, they received it a month later.
                                    Page 167

1      Q   Okay. So the date that you --
2  that's reflected --
3      A   May 24th of 2002.
4      Q   Okay. May 24, 2002. And this
5  statement says that we received the payment
6  on June 19th, 2002.
7      A   Yes.
8      Q   And, again, let me back up a
9  second. We talked about earlier, your
10 attorney, Mr. Cason, providing information to
11 Nations Credit stating that the payment
12 should -- you should not be required to make
13 a May payment and a payment would be made in
14 June; correct?
15     A   Yes. But one was made in May.
16     Q   Okay. Understood.
17     A   And then one was made in June.
18 It's showing here June 10th, 2002.
19 July 25th.
20     Q   Right. Right. And I'm looking at
21 this letter, and it talks about receiving
22 your June payment and placing it in unapplied
23 funds; and your June 27th payment, which was
                                    Page 168

1  also placed in unapplied funds, which were
2  applied to late fees on July 31, 2002.
3          Do you see that?
4      A   Yes, I do.
5      Q   Okay. And it also states that
6  these late fees should have been waived under
7  the modification?
8      A   Okay.
9      Q   Okay. And a third payment of
10 722.10 was received on August 21, 2002 and,
11 once again, placed on unapplied funds.
12         Do you see that?
13     A   Well, I see it.
14     Q   Okay. And here's the next
15 paragraph. On August 28, 2002, Fairbanks
16 became aware of the improperly applied
17 payments and the fact that we had failed to
18 waive fees under the modification. To
19 resolve these problems, we reversed the three
20 improperly posted payments, comma, and
21 reposted them to May 2002, June 2002, and
22 July of 2002 monthly payments. We also
23 waived late fees totalling $1,221.96 on
                                    Page 169

                         42 (Pages 166 to 169)

**American Court Reporting**
**toll-free (877) 320-1050**

1   August 29, 2002.
2      On September 13, 2002, we received
3   a payment of 722.05 which was posted to
4   Ms. Riley's August 25, 2002 payment. She
5   continued to be one month behind on her
6   payments for the next three months.
7      Now, you're not disputing that
8   those corrections were made on August 28th,
9   2002, are you?
10   A   I have no idea. I did not receive
11   anything until a year later.
12   Q   And when you say "a year later,"
13   what is the first thing you received from
14   Fairbanks?
15   A   Well, actually --
16   Q   We already talked about you
17   received an April statement; correct?
18   A   I received a statement that was
19   incorrect, and that was the only statement
20   that I said I received.
21   Q   And you've also pointed me in your
22   documents to certain default notices that
23   were sent to you from Fairbanks; correct?

Page 170

1   A   Two that I can recall. Maybe
2   three.
3   Q   Okay. And it states, she continued
4   to be one month behind on her payments for
5   the next three months?
6   A   And I disagree with that.
7   Q   Okay. Do you have your — do you
8   have copies of checks from August of '02 --
9   A   I think I submitted the copies of
10   the money orders.
11   Q   I've only seen the five that you've
12   just showed me.
13   A   And I'm sure I have others.
14   Q   Okay. I need to see those.
15   A   Okay. That's no problem.
16   Q   And I specifically asked for those
17   in my discovery.
18   A   Well, I sent you what I had in my
19   presence. I'll have to look for the rest of
20   them. They're not --
21   Q   Okay. Would they all be money
22   orders, or would they be --
23   A   They would all be money orders.

Page 171

1   Yeah.
2   Q   And you keep records of the money
3   orders?
4   A   I attach them and file them. I
5   just don't know where I -- where they've
6   gotten to. I mean, I sent you what I had
7   immediate access to.
8   Q   And then the next paragraph -- I'm
9   just going to summarize it. Fairbanks
10   ultimately determined you should be rolled
11   forward one month. And this is in December
12   of 2002. In other words, because her
13   settlement agreement was not signed until
14   June, we determined that Ms. Riley should not
15   have been required to make her May 2002
16   payment. The due dates for all the payments
17   were bumped forward leaving her due for
18   December 25th, 2002, rather than November 25,
19   2002.
20      Do you see that?
21   A   Yeah. I see that.
22   Q   Okay. Okay.
23   A   Then I see that they have the final

Page 172

1   monthly payment to be due on April 25th,
2   2032.
3   Q   Which is you under the modification
4   agreement; correct?
5   A   Okay. Okay.
6   Q   Okay. Do you have any reason to
7   dispute that your payments weren't bumped
8   forward? Do you have any evidence to suggest
9   this did not happen?
10   A   Not to my recollection.
11   Q   Okay. And in the very next
12   paragraph, under explanation of foreclosure
13   proceedings, it discusses that on March 5,
14   2003, your account was two months delinquent
15   and due for her January 25, 2002 payment.
16      And we talked about this earlier.
17   And you acknowledge that you fell two months
18   behind in March or February of '03?
19   A   And then I sent the payment, and it
20   was sent back to me.
21   Q   Okay. And I think it sets forth --
22   it sets forth that in this paragraph. Let's
23   look at it. It talks about the demand letter

Page 173

43 (Pages 170 to 173)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  sent to you on March 25 requesting all
2  payments in the arrears and informing her of
3  possible foreclosure unless she submitted the
4  requested funds or contacted us about
5  establishing a repayment plan. Ms. Riley did
6  not contact us or submit the requested. As a
7  result, her account was referred to
8  foreclosure on April 24, 2003. As of today
9  Ms. Riley is seven months delinquent being
10  due for January 25, 2003. Foreclosure
11  proceedings have been placed on hold in light
12  of the current dispute.
13      Do you see that paragraph?
14      A  I see it.
15      Q  Okay. And you can see, you admit,
16  you were a couple months behind in March of
17  '03?
18      A  Two months behind. I'll agree with
19  that. And I sent a payment. That would have
20  made it one month behind, and it was returned
21  back.
22      Q  Okay. So your position is that
23  Fairbanks was required to accept less than

Page 174

1      — I made the complaint on line, and I was
2  given Attorney Underwood that was
3  representing the settlement. And he, in
4  turn, was supposed to contact Fairbanks with
5  a complaint. This right here.
6      Q  Okay.
7      A  So I could not, in all fairness,
8  contact Fairbanks when I was represented by
9  counsel.
10      Q  Okay. We'll talk about that in one
11  second. Let me get back to this letter real
12  quick. With respect to the very first
13  paragraph about -- and I understand your
14  contention. Your position is that when
15  Fairbanks fixed and credited your payments
16  properly that you had already missed out on a
17  loan opportunity or refinance opportunity?
18      A  Several.
19      Q  But won't you agree that as of the
20  point in time that this was written and the
21  dates reflected in this letter that the
22  problems with the posting had been corrected?
23      A  A year later.

Page 176

1  the full amount; correct?
2      A  It was my position that Fairbanks
3  stated that they do work with their clients.
4      Q  Okay. And your position is that
5  they should have accepted that short payment?
6      A  It is my position that I sent a
7  payment that would have brought me one month
8  behind, and I was to send the other payment
9  towards the end of the month that would get
10  me caught up, but they did not — they wanted
11  the whole payment.
12      Q  Why didn't you call Fairbanks about
13  this?
14      A  At some point I did see that there
15  was a class action and obtained an attorney
16  through their class action, so everything was
17  supposed to be handled through that attorney.
18      Q  Okay. So did you -- did you retain
19  an attorney, or did you just consult with an
20  attorney?
21      A  Actually, I did sign a contract.
22  It was when I went on line and saw the big
23  class action settlement, and they assigned me

Page 175

1      Q  Okay. But it had been corrected?
2      A  A year later. Which did not -- I
3  mean, the damage was already done.
4      Q  Okay. And that damage you're
5  referring to is the missed opportunity to
6  refinance?
7      A  Exactly.
8      Q  Okay. And we've talked about in
9  the next two paragraphs where you fell
10  behind.
11      A  And can I also just follow up with
12  that answer?
13      Q  Sure.
14      A  As I read that document, it also
15  stated that Fairbanks became aware of the
16  misapplied payments, and they were aware of
17  — well, let me read it if I can -- okay.
18  Fairbanks — on August 28th, 2002, Fairbanks
19  became aware of the improperly applied
20  payments and the fact that we failed to waive
21  late fees under the modification. And --
22      Q  Excuse me. What are you reading
23  from?

Page 177

44  (Pages 174 to 177)

**American Court Reporting**
**toll-free (877) 320-1050**

```
 1      A   I'm sorry.  For the record --
 2      Q   Is this your summary?
 3      A   Fairbanks.  It's not my summary.
 4  It's Fairbanks' letter.
 5      Q   Okay.  You're reading from Exhibit
 6  Number 9.  Okay.
 7      A   Okay.  Whereas on August 28th,
 8  2002, Fairbanks became aware of the
 9  improperly applied payments and the fact that
10  they failed to waive the late fees under the
11  modification.  And I received a letter from
12  Fairbanks on August 2003 that it was
13  corrected which would be a year later.
14          (WHEREUPON, a break was taken to
15          allow the court reporter to change
16          out supplies.)
17      Q   Okay.  I understand.  Okay.
18  Ms. Riley, we were just talking about the
19  credit reporting issue that you brought up.
20  And you were stating that the problem was
21  noted in August of 2002 and was not corrected
22  until August of 2003; correct?
23      A   Right.  I guess I wanted to point
                                    Page 178
```

```
 1  out by Fairbanks becoming aware on
 2  August 28th, 2002, the same exact date as
 3  your exhibit -- and I have to go through it.
 4  Excuse me.  Your Exhibit 7.  Which my notice
 5  to correct the credit bureau was August
 6  28th --
 7      Q   Okay.
 8      A   -- the same exact date; that when
 9  Fairbanks knew that it was improperly applied
10  and it was incorrect, that when I contacted
11  the credit bureau for correction, they were
12  aware of it during that day, but still let it
13  remain for a year.
14      Q   Now, you're assuming that the
15  credit reporting agency contacted Fairbanks
16  or that your attorney sent --
17      A   Well, that's what they said.  They
18  said they contacted your client, which was
19  you.
20      Q   Okay.  Fair enough.  I'm saying
21  you're making the assumption that they did.
22  And I don't know if they did or they didn't.
23      A   Okay.  But just making reference
                                    Page 179
```

```
 1  since dates are important that they were
 2  aware the same day that I contacted the
 3  credit bureau.
 4      Q   Okay.  And we talked about the
 5  section of the letter dealing with
 6  explanation of foreclosure proceedings which
 7  is -- and the paragraph below that is titled
 8  explanation for payment not posted to her
 9  account.  And that discusses the issue that
10  we just talked about, that Fairbanks returned
11  your payment of 7/22/05 because it was less
12  than the total amount due to reinstate the
13  loan.  And I know you disagree with that.
14      A   Well, actually, it was not -- they
15  wanted the full amount of the loan when they
16  returned it.  They didn't ask for the two
17  months.  They asked for the entire amount of
18  the loan.
19      Q   Do you have that document?
20      A   No.  But that's what was asked.
21      Q   And can you point me to what you're
22  looking at?
23      A   No.  I'm saying this is what was --
                                    Page 180
```

```
 1  why my -- I mean, I could have because I had
 2  intentions of paying the balance at the end
 3  of that month, but they did not ask.  I could
 4  have resubmitted that payment plus the one I
 5  was going to send to bring me current.  And I
 6  was -- that check was returned and asked for
 7  the full amount of the loan.  And no, I could
 8  not come up with 98- or $99,000.
 9      Q   Okay.  And that was in
10  correspondence to you?
11      A   Yes.
12      Q   So you're saying they accelerated
13  the note; correct?
14      A   Yes.
15      Q   And you're saying they didn't have
16  a right to do that under the mortgage?
17      A   No.  I'm saying that if they had a
18  fair -- if they made attempts to work with
19  their clients and not wanted to accelerate,
20  they would work with receiving my payment
21  that would have brought me one month behind.
22  I'm just saying -- I mean, I could have
23  submitted it and been current, but that one
                                    Page 181
```

45 (Pages 178 to 181)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  check that made me one month behind was
2  returned and they wanted the full amount of
3  the loan.
4      Q   Well, in fairness you were — as
5  we've already talked about, you were actually
6  two months behind; correct?
7      A   Two months. And I sent them a
8  payment which would have made it one month,
9  and it was returned back to me.
10     Q   I understand. And also at the
11  bottom of that paragraph we were just talking
12  about, it says, if after reviewing the
13  enclosed key transaction Ms. Riley continues
14  to feel that payments were not correctly
15  posted, we encourage her to send in copies of
16  the front and back of the cancelled checks
17  for the payments in dispute and we will be
18  happy to research these matters further and
19  adjust her account as warranted.
20         You didn't have any further
21  disputes at this point, did you, with respect
22  to making the payments?
23     A   I had a dispute. I mean --

Page 182

1      Q   I agree. Your dispute is primarily
2  related to credit reporting issues. And we
3  just discussed, and you admitted, that you
4  were a couple months behind. And I'm just
5  reading this paragraph saying that if you
6  would like to -- if you feel that other
7  payments were not posted correctly, please
8  send front and back of cancelled checks and
9  we will be happy to research further.
10         Did you send anything in?
11     A   As I mentioned, I was given an
12  attorney, so I turned everything over to
13  Mr. Underwood.
14     Q   You did? Okay. Fair enough. Now,
15  at some point, Ms. Riley, you stopped making
16  payments entirely. What month -- when was
17  that?
18     A   When I lost my job.
19     Q   Okay. And that would have been --
20  help me with the months.
21     A   I can't recall. I mean, I know
22  that -- when I did not have income, I could
23  not pay my payments.

Page 183

1      Q   Okay. And the very last paragraph
2  of this letter that we're looking at,
3  Ms. Riley, discusses the negative credit
4  reporting issue.
5      A   Okay.
6      Q   This is stating that they correctly
7  reported you from September of '02 through
8  August of '03, and that reflects delinquent
9  payments. I think we've already talked about
10  that. And it states, Fairbanks has requested
11  the credit reporting agencies to which we
12  report correct Ms. Riley's report to reflect
13  "good standing" for June of '02 through
14  August of '02.
15         Do you see that?
16     A   I do.
17     Q   And -- okay.
18     A   I guess -- out of do respect to
19  you, if you see someone drowning and you
20  offer them some assistance or help a year
21  later, I mean, you're defeating your purpose.
22  I mean it's -- the person is dead. At some
23  point, when they corrected it a year later, I

Page 184

1  think the damage was already done.
2      Q   Okay. You're not saying that
3  Fairbanks caused you to lose your job, are
4  you?
5      A   I'm saying stress caused me to lose
6  my job.
7      Q   Okay. But that was not solely
8  related to Fairbanks? It was other life
9  factors as well; correct?
10     A   I feel as though it contributed to
11  the loss of my job. And I guess I wrote and
12  submitted to you a letter that was given to
13  my employers --
14     Q   Right.
15     A   -- when I started being reprimanded
16  for my production record. And it should be
17  attached to one of the documents.
18     Q   Was that because you were a couple
19  months behind and Fairbanks kept sending the
20  checks back?
21     A   It was because I was going through
22  foreclosure. I was —
23     Q   But your house was not foreclosed

Page 185

46 (Pages 182 to 185)

**American Court Reporting**
**toll-free (877) 320-1050**

1 upon; correct?
2 A I was getting letters like this:
3 You could lose your home. I was doing
4 everything I could to try to correct
5 everything and better my situation, and it
6 apparently became worse and not better. And
7 the letter I made reference to is when I
8 submitted for -- August 6th, 2003 to my
9 employers.
10 Q Okay. And does that help you --
11 does that refresh your memory as to when you
12 were terminated?
13 A September, I think, of 2003. Or
14 August. No. It was August 2003 or
15 September. One or the other.
16 Q Okay.
17 A That was a factor that effected my
18 change in my work performance.
19 Q And how is that? How did Fairbanks
20 contribute to that?
21 A As my letter made reference, it
22 says, I wish to address the document
23 regarding Rose Riley's production, not
                                    Page 186

1 offered as an excuse but a factor affecting
2 any change or negative impact in my work as
3 being stress related with my legal problems
4 with my home -- or legal home pressures.
5 Q And let me stop you. And that's
6 because your loan was being referred to
7 foreclosure?
8 A Because of the whole process of
9 what I had to go through, trying to resolve
10 all these issues. And I did take advantage
11 of the Life Balance legal service that they
12 provided, and I did take approximately 30
13 days.
14 Q Okay. And at the very end of this
15 letter, it states that, you know, we have a
16 number of options available for those who are
17 behind on their payments. We encourage
18 Ms. Riley to contact us and establish a
19 repayment plan to allow her to keep her home
20 while bringing her account current.
21 A And, again, I did contact the
22 attorney that was supposed to contact you
23 because I was told I was not allowed to talk
                                    Page 187

1 to you directly when I was represented by an
2 attorney. And that was Attorney Underwood.
3 Q Attorney Underwood told you not to
4 respond to this letter directly?
5 A He said he would handle -- he was
6 representing me in the contract.
7 Q He was your attorney at that point?
8 A Yes. At that point.
9 Q I don't want to know of all your
10 conversations, but where is Mr. Underwood
11 located?
12 A Fairhope, Alabama. Earl Underwood.
13 Q Okay. How did you obtain his
14 information?
15 A I went on and registered my
16 complaint.
17 Q Okay.
18 A And I was assigned -- he was
19 assigned to the big class action. And he
20 sent me some documents to say that he would
21 represent me. And the day that I lost my
22 job, he called to take statements where he
23 was going to submit the complaint and
                                    Page 188

1 everything to you.
2 Q Okay. And he obviously did not end
3 up representing you; correct?
4 A He did not.
5 Q And you don't have a current
6 agreement with him; right?
7 A No. It was because I had to file
8 foreclosure that he refused to represent me
9 any further.
10 Q Okay.
11 A But he was representing me so --
12 Q You didn't --
13 A I called him to tell him --
14 Q About this letter?
15 A About the letter and for him to
16 contact. And he said that he would take care
17 of it, and he obviously didn't take care of
18 it because he had too much on his plate or
19 whatever reason.
20 Q Well, I don't want you to get into
21 y'all's conversations.
22 A Okay. But that was who was
23 representing me, and that was who was
                                    Page 189

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1 supposed to have done it.
2  Q  Okay. And you don't know whether
3 or not he wrote to Fairbanks or contacted
4 Fairbanks in any way? You don't know sitting
5 here today?
6  A  He told me that -- no. Not to my
7 knowledge.
8  Q  Okay. I'm sorry. Let me leave
9 those over there?
10  A  Oh, that's six.
11  Q  What letter is that?
12  A  Six, seven.
13  Q  Okay. Six?
14  A  Eighty, nine.
15  Q  Okay. I'm going to mark as.
16 10 -- and we've already talked about this,
17 but just for the record, this is a letter to
18 you August 6th, 2003, from Fairbanks, and it
19 just discusses the very same issue that we
20 just covered, which is the correction of the
21 negative report.
22       (WHEREUPON, Defendant's Exhibit 10
23       was marked for identification.
Page 190

1       A copy is attached.)
2  A  Yes.
3  Q  Okay. And that's referring to the
4 negative report that appeared on your
5 August 2002 Experian credit report; correct?
6  A  Correct.
7  Q  And they're indicating that they're
8 going to correct that?
9  A  On August 6th, 2003.
10  Q  All right. I think this is the
11 document, Ms. Riley, you were just referring
12 to. It's the Big Class Action?
13  A  Yes.
14       (WHEREUPON, Defendant's Exhibit 11
15       was marked for identification.
16       A copy is attached.)
17  Q  It looks like an Internet web site?
18  A  Yes.
19  Q  Tell me how you came about finding
20 this web site.
21  A  I was told by a neighbor going
22 through the same thing there's a big class
23 action.
Page 191

1  Q  Who's your neighbor?
2  A  Janice Leggitte, L-E-G-G-I-T-T-E.
3  Q  Okay.
4  A  And she provided the information,
5 and I went on line.
6  Q  And you registered?
7  A  My compliant on line.
8  Q  Okay. And the title, on looking at
9 page two, is -- well, first of all, the date
10 of injustice is dated May 25, 2002. Is that
11 about around the time that you entered into
12 the settlement agreement modification?
13  A  I don't know if that was the date
14 that --
15  Q  I mean, I guess my question -- let
16 me rephrase that. How did you pick that
17 date?
18  A  That's a good question. Right now
19 I can't tell you why I picked that date.
20  Q  Okay.
21  A  I got it from a document that I
22 made reference to, and I don't recall which
23 one it was.
Page 192

1  Q  Okay. And then the title of the
2 complaint is inaccurate credit bureau
3 reporting showing 60 days late, slash,
4 foreclosure on current account. And that's
5 exactly what we've been talking about;
6 correct?
7  A  (Witness nods head.)
8  Q  And then you have details that
9 we've been discussing, and then it has a
10 section which lists -- asks you to list the
11 documents you have to support your case. And
12 you state copies of money order payments as
13 proof of current status.
14       Now, I've seen four or five of
15 those, and you're going to look to see if you
16 have anymore; correct?
17  A  (Witness nods head.)
18  Q  Certified lists to credit bureaus.
19 I haven't seen those, and you were going to
20 get those for me; correct?
21  A  (Witness nods head.)
22  Q  Thank you. And at the end -- I
23 can't read the rest of this. It says copy of
Page 193

48 (Pages 190 to 193)

**American Court Reporting**
**toll-free (877) 320-1050**

1  correction letter. What is that? Is that --
2      A   The copy to correct the credit
3  bureau.
4      Q   Okay. That was the letter you
5  wrote to the credit bureau? Were there any
6  other documents that you listed in this
7  e-mail?
8      A   I sent everything in a package to
9  Earl Underwood when he contacted me.
10     Q   Okay. And, again, this printout is
11 in May of '03. Would that have been when you
12 contacted Mr. Underwood?
13     A   I didn't contact him. He contacted
14 me as a result of.
15     Q   Would that -- okay. You would have
16 logged on the web site at that date --
17 approximate date, May 23, 2003?
18     A   I would imagine. I don't know, but
19 I would imagine.
20     Q   Okay. I'm going to put this aside
21 for one second, and I'm going to mark this
22 Exhibit Number 12.
23         (WHEREUPON, Defendant's Exhibit 12
                                    Page 194

1      Q   Okay. And you note in here that a
2  balance was updated untimely and the credit
3  report was corrected a year later; correct?
4      A   Right. I'm sorry. Right.
5      Q   Did she respond to this -- Ms.
6  Armstrong?
7      A   I think something was submitted
8  that it probably needs to go to court or
9  something like that.
10     Q   Okay. Do you have a copy of that?
11     A   Not offhand. I don't know where it
12 is.
13     Q   Did you write --
14     A   But I'll look.
15     Q   And I think you've already answered
16 this question. You did not write or call SPS
17 because at the time you were either obtaining
18 counsel or thought you were being represented
19 by counsel?
20     A   Exactly.
21     Q   Okay. So instead you wrote
22 directly to the attorney general's office?
23     A   Prior to me receiving an attorney.
                                    Page 196

1  ·was marked for identification.
2      A copy is attached.)
3      Q   This is Exhibit 12. It appears to
4  be your August 15, 2003 response,
5  handwritten, to Ms. Armstrong?
6      A   Yes.
7      Q   And Ms. Armstrong was the
8  representative or individual with the
9  attorney general's office; correct?
10     A   Yes.
11     Q   Did you have any phone
12 conversations with Ms. Armstrong?
13     A   No, I did not.
14     Q   Did you have any telephone
15 conversations with anyone from the attorney
16 general's office?
17     A   No, I did not. Other than probably
18 calling, requesting to be mailed a copy of
19 the complaint form.
20     Q   Okay. What was your intent in
21 writing this letter?
22     A   To share my experiences and what I
23 went through.
                                    Page 195

1  That was before even acquiring an attorney.
2      Q   This was written before you
3  acquired --
4      A   Uh-huh. That was when I wrote --
5  well, I wrote the attorney general. She
6  responded. That was my response to her
7  response or something like that.
8      Q   Well, this is dated August 15, and
9  I was just looking back at that --
10     A   Right.
11     Q   At the thing you logged on was in
12 May. And I was wondering if you would have
13 obtained -- or spoke with Mr. Underwood
14 before writing this letter or --
15     A   I recall sending him everything.
16 So, I mean, when -- I know he called me the
17 day I was let go in September. His secretary
18 was doing a formal statement the day that I
19 got let go. And I do remember that very
20 vividly. They called that morning to take a
21 statement because they was going to draft up
22 the complaint.
23     Q   So that was in September?
                                    Page 197

49 (Pages 194 to 197)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1     A   August or September.  I think I was
2  let go in August.  I'm not sure.  August or
3  September.
4     Q   Okay.  Is there any reason why you
5  did not send this to Fairbanks?
6     A   I haven't -- I mean, I'm not sure
7  right now.  I can't recall.
8     Q   Okay.  At this point in time, this
9  is August of '03, what -- what did you
10  contend at that point in time that Fairbanks
11  had not done that it should have done
12  pursuant to the settlement that you had
13  reached with Nations Credit?
14     A   Resolve the dispute and issues that
15  I addressed.
16     Q   Okay.  So that would be the credit
17  reporting, and then we talked about being a
18  few months behind.  Are there any other
19  issues other than those two issues?
20     A   I think those are the issues.
21  Those were the issues that I had addressed.
22     Q   Okay.  And were you satisfied with
23  that August 6th response?

                                   Page 198

1  your assets -- you could liquidate them.  My
2  assets were over 50-, $60,000, and I couldn't
3  even get -- liquidate or get anything as a
4  result of what was being reported.
5     Q   Okay.  And it's your position that
6  that one negative report in 2002 caused you
7  -- did not enable you to obtain refinancing,
8  that one --
9     A   It contributed to a lot of my
10  hardships.  Yes.
11     Q   Okay.  What did the Ameriquest
12  negative reporting do?  Did that contribute
13  as well?
14     A   Yes, it did.
15     Q   Did you sue Ameriquest?
16     A   That's pending.
17     Q   Okay.  Do you have a lawsuit
18  against Ameriquest?
19     A   No.
20     Q   Have you retained an attorney?
21     A   No.  Well, I did retain one who was
22  going to represent me with Americredit and
23  Fairbanks, but at some point it did -- it did

                                   Page 200

1     A   This right here?
2     Q   Yes.
3     A   No.  The dispute was still
4  unresolved in my -- in my mind.
5     Q   Okay.  What aspect of it was
6  unresolved?
7     A   That -- that damages were done and
8  there needed to be some type of
9  accountability for those damages.
10     Q   And those damages would relate to
11  the lost opportunity to obtain financing?  Is
12  that what you're saying?
13     A   One of -- yeah.  That was one of
14  them.
15     Q   Okay.  What are the other ones?
16  Returning your payments?
17     A   Well, I guess, ultimately, having
18  to file bankruptcy because I was losing --
19     Q   Okay.
20     A   I lost my job.  I was losing
21  everything that -- that I had worked hard
22  for, and I couldn't understand why because --
23  I mean, I guess in America I thought that if

                                   Page 199

1  not happen.
2     Q   Are you contemplating filing an
3  action against Ameri --
4     A   I'll have to file a suit.  I'm
5  working on my immediate issues right now.
6     Q   Okay.  I understand.  There are a
7  couple other inquiries on the credit report.
8  Did any of those affect your credit?
9     A   Those were corrected.
10     Q   What were those?
11     A   I think the ones that --
12     Q   Okay.
13     A   Those were corrected.
14     Q   Okay.  That's Montgomery County
15  CRTDC?
16     A   Yeah.
17     Q   Do you know what that is?
18     A   A medical something.
19     Q   Okay.  What about Montgomery --
20  they're both the same, Montgomery County
21  CRTDC.
22     A   That was corrected.
23     Q   It says "remains."  What effect did

                                   Page 201

                    50  (Pages 198 to 201)

**American Court Reporting**
**toll-free (877) 320-1050**

1  that have on you?
2      A    Well, the County updated, and I
3  guess the update showed there was no balance
4  and -- but it was corrected as far as I was
5  concerned.
6      Q    Okay. But this still says remains
7  just like Fairbanks. Why is that -- why are
8  you satisfied with that when you're not
9  satisfied with these two?
10     A    Because they were reflecting a zero
11  balance -- I would assume -- so that's why it
12  remained. But Fairbanks was showing
13  something different.
14     Q    Okay. All right. So in -- just to
15  back up a little bit --
16     A    And just to answer you, it does say
17  that that account number was updated, and
18  then underneath it says "remained." If
19  Fairbanks had reflected updated and remained,
20  then I would have been satisfied. But it was
21  not updated. It just remained.
22     Q    Is Ameriquest -- is that still on
23  your credit report negatively? Do you know?
                                    Page 202

1          A copy is attached.)
2      Q    Take a look at that and tell me if
3  you recognize those documents.
4      A    These look like the documents that
5  was filed by my attorney, Sandra Lewis.
6      Q    Okay. And just to kind of put us
7  back on a time line, in May of 2003 you got
8  on the Internet and looked up Big Class
9  Action and were contemplating filing an
10  action; correct?
11     A    I did submit a complaint on the
12  Internet.
13     Q    Right. And you were put in touch
14  with -- or an attorney was to contact you?
15     A    An attorney sent me a contract to
16  sign.
17     Q    Okay. And that was the purpose of
18  bringing action against Fairbanks; correct?
19     A    Correct.
20     Q    Okay. In September of 2003, around
21  about that time is when you lost your job;
22  correct?
23     A    August or September. Yeah.
                                    Page 204

1      A    It possibly could.
2      Q    When was the last time you checked
3  -- you pulled your own credit report and
4  checked?
5      A    I couldn't afford to, so I have
6  not.
7      Q    You haven't done it since August of
8  '02?
9      A    I -- probably not.
10     Q    Okay. I'm going to, as 13 --
11  and this is. Ms. Riley, I'm going to mark as
12  Defense Exhibit Number 13 --
13     A    Okay.
14     Q    And this is a compilation. I'm not
15  representing that this is the entire file,
16  but it's the bankruptcy papers you mentioned
17  earlier filing for bankruptcy. And these are
18  publicly available, and I got them off the
19  pager system, okay, after you identified in
20  your complaint that you had filed for
21  bankruptcy.
22         (WHEREUPON, Defendant's Exhibit 13
23          was marked for identification.
                                    Page 203

1      Q    Okay. And at that point in time,
2  you stopped making payments because you
3  weren't in a position to make payments on the
4  note; correct?
5      A    Yes.
6      Q    And you fell several months behind?
7      A    Yes. As a matter of fact, I
8  couldn't afford -- well, actually, the first
9  six months I collected unemployment. I had
10  income, but --
11     Q    Okay.
12     A    After that, I mean, it was an
13  experience that I would have never believed
14  would have happened.
15     Q    Okay. And in November of 2003,
16  which is a few months after your job loss,
17  you filed for bankruptcy; correct?
18     A    Yes.
19     Q    And let me ask you this, Ms. Riley:
20  Who -- did you fill out a form and give it to
21  your attorney? How did you fill this out?
22  Or did you provide her with all the
23  information?
                                    Page 205

51 (Pages 202 to 205)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1      A   I went to her office.
2      Q   Okay.  Sat down with her?
3      A   And sat down with her.
4      Q   Okay.  And on the second page it's
5    got your electronic signature?  I guess --
6      A   Right.
7      Q   -- that's what you would call it.
8    Did you review all this before you signed off
9    on this to be filed?
10     A   To the best of my recollection.
11     Q   And, in fact, above your signature
12   on page two, it says, I declare under penalty
13   of perjury that the information provided in
14   this petition is true and correct; correct?
15     A   What page are you --
16     Q   Page -- the second page of this
17   document.
18     A   I'm sure I signed it.
19     Q   Okay.  And if you'll turn to
20   approximately the fourth page, it has your
21   residence at 901 Brookland Curve and has a
22   market value of $111,400 and a secured claim
23   in the amount of $102,000; correct?
                                    Page 206

1    out on the street around November,
2    Thanksgiving.  And I was devastated.  I mean
3    -- I'm sorry.  This is very painful for me.
4      Q   I understand.  I'm not --
5      A   -- to have to relive the experience
6    of being thrown out or forced to be thrown
7    out, me and my family, especially around
8    November.  I mean -- so, I mean --
9      Q   I understand.  I apologize.  And I
10   hope you understand I have to ask --
11     A   I understand.
12     Q   -- these types of questions.
13     A   I understand.
14     Q   Okay.  Ms. Riley, did you discuss
15   your lawsuit or potential lawsuit against
16   Fairbanks with your bankruptcy attorney?
17     A   I shared it with my attorney that
18   represented me in the bankruptcy court.
19     Q   Okay.  And what did --
20     A   And she --
21     Q   I don't need to get into details of
22   what you told her about.
23     A   Okay.  She represented me.  So, I
                                    Page 208

1      A   Okay.  You're saying the fourth
2    page?
3      Q   Yes, ma'am.  I'm sorry.
4      A   This one here?
5      Q   Yes.
6      A   Okay.  And I think she called the
7    assessment office to get the values of both
8    properties.
9      Q   And the secure claim was based on
10   the information you obtained from Fairbanks?
11     A   I would imagine.  I mean, I --
12   something that was probably sent to me.
13     Q   Okay.  And you're not disputing the
14   $102,000 amount of the secured claim, are
15   you -- the amount that was owing at the time
16   you filed this petition?
17     A   I think that was an approximation.
18   I mean, I -- at that point, filing
19   bankruptcy, I just relied on just
20   documentation that was given to me, I mean,
21   just to save my house.  I was --
22     Q   Given --
23     A   -- in the process of being thrown
                                    Page 207

1    mean, I did not -- I disclosed everything.
2      Q   Okay.  Is there any reason why you
3    did not disclose this lawsuit against
4    Fairbanks in your schedule?  If you'll
5    turn --
6      A   Because I guess I was thrown out at
7    that time.  Underwood had thrown out my case,
8    and I was not represented at the time that
9    I -- I mean -- but then in trying to secure
10   legal representation, I was told that the
11   class action was still current, but I had not
12   filed anything personally because I was
13   trying, like I said, to not be thrown out on
14   the streets.  But Underwood explained to me
15   that due to my bankruptcy complications, he
16   was unable to represent me.
17     Q   And I understand that.  And I guess
18   my question is, is there any reason why you
19   didn't disclose that you had claims against
20   Fairbanks in this bankruptcy schedule?  And
21   if you'll look with me on paragraph 20, it
22   states -- and this is on Schedule B, personal
23   property.  Yes.  Number 20 at the top, other
                                    Page 209

                                    52  (Pages  206  to  209)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320–1050**

1  contingent and unliquidated claims of every
2  nature, comma, including tax refunds,
3  counterclaims of the debtor, and rights to
4  setoff claims. Give estimated value of each.
5      And you checked "none"; correct?
6      A   I did submit some forms to my
7  attorney to say that I was going to represent
8  myself, and I did send it to the trustees.
9  So I don't know why it's not listed, but I
10  did submit that information to Sandra Lewis
11  and to the trustees.
12      Q   And when did you submit it, and
13  what was it?
14      A   Again, she can get it to you, the
15  dates and whatever, letting them know that I
16  was disputing with Fairbanks. And -- so the
17  bankruptcy trustee should have a copy of what
18  was sent to him.
19      Q   And do you know what that would be?
20  Is it a letter from you, or is it -- and
21  exactly what did it say?
22      A   Again, I would -- can get that to
23  you from Sandra Lewis because I submitted it
                                    Page 210

1      A   Well, this lawsuit didn't come
2  until after I was thrown out.
3      Q   Right. Let me rephrase that. My
4  question is not the lawsuit. That's probably
5  a poorly phrased question, but I'm reading in
6  this paragraph, any contingent or
7  unliquidated claim of every kind,
8  counterclaims of the debtor.
9      Wouldn't you agree that this
10  lawsuit would fall into a contingent and
11  unliquidated claim of every nature?
12      A   Again, I made reference to my
13  attorney, and you would have to ask her why
14  it's not listed there. But she represented
15  me as best she knows the legal system and --
16      Q   Okay. But you talked about the
17  lawsuit with her and --
18      A   I talked about my dispute. And,
19  again, she -- she did contact several
20  attorneys to try to represent me. And as a
21  matter of fact, the night I went to appear
22  before the trustee, I drafted up a document
23  stating all -- all my issues and did not get
                                    Page 212

1  to my attorney as well as CC'ed it to the
2  trustee.
3      Q   And if you remember, can you tell
4  me what that said -- what that correspondence
5  said?
6      A   Not from just the top of my head.
7  It was just letting them know that I had an
8  ongoing dispute with Fairbanks.
9      Q   Is there any reason why you didn't
10  amend your schedule to indicate that you had
11  claims against Fairbanks?
12      A   I think Ms. Lewis did amend, but I
13  did not have any legal representation. She
14  even tried to help me to get legal
15  representation. She contacted several
16  attorneys, but it -- she was aware. And,
17  again, you know, you could contact her.
18      Q   Okay. And I'm looking at -- your
19  petition was amended a few weeks later in
20  November, I guess, 17. And I haven't seen
21  any reference to where the schedule was
22  amended to disclose this lawsuit or potential
23  claims against Fairbanks in --
                                    Page 211

1  any sleep and was rushed to the hospital and
2  stayed in the hospital for four days. So
3  they had to reschedule. I mean, it has been
4  stressful. I mean, I -- I disclosed
5  everything that I could to my attorney and --
6      Q   Okay. And I'm using poor words
7  when I say "lawsuit." What I'm really asking
8  is disclosing the fact that you had claims
9  against Fairbanks that you intended to file
10  that you had sought representation for and
11  then -- and also met with your bankruptcy
12  lawyer and talked about obtaining
13  representation.
14      Was that at the beginning of the
15  filing? When did you talk with her about
16  helping you with --
17      A   I explained everything to her. And
18  I can't speak for Ms. Lewis as to why she did
19  what she did, but I disclosed everything to
20  her.
21      Q   And you disclosed these claims that
22  we're here about today?
23      A   Of course.
                                    Page 213

53 (Pages 210 to 213)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1    Q    Okay.
2    A    And, again, she tried to support me
3    in getting the legal counsel to help me with
4    my suit.
5    Q    And you don't know why your
6    schedules weren't amended to add a potential
7    suit as we sit —
8    A    Again, Ms. —
9    Q    Well, I'm asking — let me read
10   this to you.  It says, I declare under
11   penalty of perjury that I have read the
12   foregoing summary of schedules consisting of
13   13 sheets and that they are true and correct
14   to the best of my knowledge, information, and
15   belief.  It is dated November 14, 2003, and
16   your name is signed to it.
17   A    And I'm not sure where you're
18   reading from.
19   Q    Okay.  I may be reading from the
20   attended schedule.  That page entitled
21   declaration concerning debtor's schedules.
22   A    I'm lost.  Is there a reference
23   number or a reference tab or —

Page 214

1    Q    Let me see.  There it is.
2    A    Okay.  Could you reword the
3    question?
4    Q    Yes.  I was just — I mean, I was
5    asking that's your, I guess, electronic
6    signature, and you obviously gave permission
7    for this to be filed; correct?
8    A    Yes.
9    Q    And we just talked about you had
10   met with Ms. — your attorney and disclosed
11   all your information including these claims
12   you had brought in this case — subsequently
13   brought, after the fact, after the —
14   actually, during the bankruptcy against
15   Fairbanks.
16       And I'm simply asking why was that
17   not disclosed in the schedules.
18   A    You'll have to ask Ms. Lewis, but
19   everything was given to her.  And I can't
20   — I can't speak for Ms. Lewis as to why it
21   was not listed.  I'm assuming, if you want me
22   to answer you, the best of my knowledge is
23   the fact that it was not a lawsuit yet.  I

Page 215

1    did not file in federal court.
2    Q    Okay.  That was your understanding.
3    All I'm asking for is your understanding.
4    You understood there was not a lawsuit
5    pending and therefore it wasn't something
6    that would be in the schedules?
7    A    And, again, that could have been
8    what was told to me as to why it was not
9    listed.  I just don't know.  I'm sorry.
10   Q    That's all I'm asking -- for your
11   best recollection.  Okay.  And then this
12   lawsuit we're here about today was filed in
13   -- help me out -- August 25, 2004?
14   A    Right.
15   Q    Okay.  That was during this
16   bankruptcy, before the bankruptcy was
17   terminated?
18   A    I think it was terminated after.  I
19   had not filed while I was in bankruptcy.
20   Q    We can talk about that.  What
21   hap -- the bankruptcy, it's my understanding
22   that it was closed; correct?
23   A    For distress.  I couldn't get a

Page 216

1    job.
2    Q    So the bankruptcy, did you stop
3    making the planned payments?
4    A    I made the payments to the
5    bankruptcy court, but I could not make all
6    the payments because it was contingent upon
7    me finding a job in which I could not even
8    get a job at -- with a minimum wage job with
9    all my education and experience.
10   Q    And the — I'm looking at the back
11   of this package, and I've got yours because I
12   didn't have it attached to mine.  Trustees
13   motion to dismiss.  The trustee, Curtis
14   Redding, moved the court to dismiss the
15   action in that the debtor's actions have
16   caused unreasonable delay and is prejudicial
17   to creditors.
18   A    Okay.
19   Q    Okay?  And that's dated August 10,
20   2004.
21   A    Okay.
22   Q    Okay?  And here's the final order
23   of dismissal dismissing the case in

Page 217

54  (Pages 214 to 217)

**American Court Reporting**
**toll-free (877) 320-1050**

1    September 3 of 2004.
2        A    Okay.
3        Q    Okay? So your lawsuit was filed
4    after the trustee moved to dismiss the case
5    and -- but before the bankruptcy was closed;
6    correct?
7        A    I was told I was dismissed. So I
8    mean, it was dismissed, and I had gotten the
9    order that it was dismissed.
10       Q    Did you get this order dismissing
11   it on September 3?
12       A    I'd have to check.
13       Q    Have you attempted to petition
14   again for bankruptcy?
15       A    No, I have not.
16       Q    Have you ever petitioned for
17   bankruptcy before this bankruptcy filing?
18       A    No, I have not.
19       Q    Okay. Were any payments made to
20   Fairbanks under the bankruptcy? Do you know?
21       A    Yes.
22       Q    Okay. So you missed a number of
23   payments leading up to the filing of the
                                Page 218

1    year later, but the credit mark was
2    corrected; correct?
3        A    A year later.
4        Q    And you don't dispute the issue
5    that you were behind, correct, before the
6    bankruptcy?
7        A    I don't dispute that I was two
8    months behind. Well, technically one month
9    because I submitted a payment, and it was
10   returned back to me. I don't dispute that.
11       Q    And when that happened and when you
12   wrote the attorney general, you subsequently
13   fell seven months behind; correct?
14       A    I would imagine so.
15       Q    Okay. And then after the
16   bankruptcy you filed suit. Have you
17   submitted any payments to Fairbanks since
18   August of '04?
19       A    No.
20       Q    Okay. And why haven't you
21   submitted any payments?
22       A    You know what, if you have no
23   income -- and for that duration of my
                                Page 220

1    bankruptcy, and you were -- I think we
2    said -- seven or eight payments behind. You
3    made some payments during the bankruptcy;
4    correct?
5        A    I sold my house, and most of it --
6    or all of what -- less than $2,000 was given
7    to Fairbanks.
8        Q    And then the case was dismissed,
9    and within a week or two -- actually, between
10   the dismissal and the final order of
11   dismissal, you filed suit against Fairbanks.
12       What was your -- why was the timing
13   of that right after the bankruptcy? What was
14   your intent?
15       A    My intent was to get justice.
16       Q    Are you attempting to prevent
17   foreclosure again? Is that --
18       A    My attempt, in all honesty, was to
19   get justice for what I went through. And
20   during the whole time, I felt that, you know,
21   these disputes were still unresolved.
22       Q    Okay. But you don't dispute that
23   -- and I know that you're saying it was a
                                Page 219

1    experience, I had no income. I could not
2    -- I had no food. Do you hear what I'm
3    saying? I could not get a minimum paying
4    job.
5        And you know, I could not
6    understand with all my years' of experience
7    and everything that I worked so hard for that
8    at 50, 51 years old I couldn't even feed
9    myself, let alone my family. So no. I mean,
10   I couldn't. I -- there was no income.
11       Q    I understand. And -- I mean,
12   you're not attributing that to Fairbanks, are
13   you -- not having any income? That's not
14   something Fairbanks did?
15       A    I know I was ruined. When I went
16   through a modification agreement, they said I
17   would be in a better situation. And I have
18   never in my whole life experienced what I
19   have went through this whole last year:
20   Being thrown out, not being able to eat. I
21   mean --
22       Q    You've never been thrown out, have
23   you? You're still in your house even though
                                Page 221

55 (Pages 218 to 221)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  you haven't made payments for over a year;
2  correct? So I think it's unfair to say that
3  you've been thrown out.
4      A   The threat of being thrown out.
5      Q   Okay.
6      A   Okay.
7      Q   And all these problems were caused
8  by one negative report by Fairbanks; correct?
9      A   I'm saying there were situations
10 and circumstances that occurred that put me
11 in my situation.
12     Q   And it sounds like you're -- what
13 you're telling me is that all relates to
14 Fairbanks who did not timely correct a credit
15 report in 2002? And that's the only thing
16 I'm hearing you're saying my client has done
17 in this case.
18     A   Well, that's all you're hearing.
19     Q   Well, you've told me that you've
20 been behind. And I know you dispute whether
21 a payment should have been accepted, and I
22 understand your position on that -- that
23 Fairbanks should have accepted payments even

Page 222

1  situation. I mean, I understand your
2  position, and I understand your --
3      Q   And if it is, I -- I mean, if
4  that's your position, that it did, I want you
5  to explain it to me. I just don't
6  understand.
7      A   You know, I can sit here and try to
8  recollect everything that happened to me.
9  And quite honestly and with due respect, I
10 don't think with you representing your client
11 that you could understand basically what I
12 went through.
13     Q   Well, this is the only time we're
14 going to have. So if there's anything else
15 you want to tell me, you need to do it today
16 because --
17     A   Well, I'm just letting you know
18 that the fact -- the facts were, in my
19 experience, that I had to go through a
20 lawsuit that was supposed to -- and I
21 mediated a lawsuit that was supposed to put
22 me in a better situation -- credit-wise,
23 economical-wise -- and it did not happen.

Page 224

1  though you were two months behind.
2      But in addition to that and in
3  addition to not correcting your credit as
4  timely as you say we should have, what else
5  has Fairbanks done in this case?
6      A   I guess, by me not being able to
7  refinance my home, get equity out of my home,
8  and just a number of things, you know, I --
9  I'm saying that my life was ruined. I
10 mean --
11     Q   And --
12     A   And I guess this is my reality. I
13 understand your position and your reality,
14 but nobody knows what I went through unless
15 they went through my shoes. And if you would
16 have asked me two years ago, someone that has
17 a degree that has worked all her life and
18 could not get any job whatsoever -- I would
19 not wish that on anyone.
20     Q   I understand, but in fairness I
21 don't think that's something you can lay at
22 the door of Fairbanks Capital.
23     A   Okay. And I understand your

Page 223

1      I subsequently lost my job, lost
2  income, could not liquidate any of my assets,
3  forced to sell my home for pennies just to
4  make ends meet, and file bankruptcy. And I
5  feel as though Fairbanks had had -- had --
6  contributed to some of my hardships.
7      Q   And Ameriquest as well? And what
8  about Nations Credit?
9      A   Nations Credit, the mediation
10 agreement, I think I mentioned, was breached
11 because, in my experience, I did not get
12 updated statements. I did not get -- I'm
13 sending to a P. O. Box that's saying they're
14 not getting the payments and they're, you
15 know, discounting and saying that I did not
16 pay my payments on time when I know I did
17 that. And then I'm hearing that no one wants
18 to admit that they caused any of my harm or
19 my stress.
20     Q   Okay. Have you brought suit
21 against OSI for any reason?
22     A   No, I haven't.
23     Q   Okay. Have you filed a claim with

Page 225

56 (Pages 222 to 225)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1  any agency with respect to OSI?
2     A  No, I haven't.
3     Q  Okay. I'm going to mark as Exhibit
4  Number 14 the class action opt out form. If
5  you'll look at that quickly and identify it
6  for me, please.
7        (WHEREUPON, Defendant's Exhibit 14
8        was marked for identification.
9        A copy is attached.)
10     A  To Claims Administrative Center
11  request for exclusion, dated April 9th, 2004.
12     Q  Okay. If you will, turn back to
13  Exhibit Number -- let's see -- 11. I believe
14  this is the correspondence that you received
15  which precipitated your decision to opt out;
16  is that right?
17     A  Yes.
18     Q  Okay. And you received this
19  document through the mail from Fairbanks; is
20  that correct?
21     A  I have no idea.
22     Q  Okay. And it states that Fairbanks
23  has charged you for late fees and other

Page 226

1  default-related fees. It looks like six
2  hundred or five hundred and fifty-five
3  dollars and forty-seven cents; correct?
4     A  Let's see. It's five hundred --
5     Q  Yeah.
6     A  Fifty-five -- six hundred
7  fifty-five dollars and forty-seven cents.
8     Q  Okay. And what did you do when you
9  got this document? Was this -- let me back
10  up. Was this before or after you logged onto
11  the Internet?
12     A  I have no idea.
13     Q  And I see on number seven you
14  circled where "can I exclude myself from this
15  settlement."
16     A  Yes.
17     Q  Can you tell me why you decided to
18  exclude yourself from the settlement?
19     A  Because I felt like I had
20  unresolved issues that needed to be resolved.
21     Q  Okay. And you didn't think the
22  settlement would address those issues?
23     A  Just the one, the legal aid fees,

Page 227

1  but not addressing the late payments and the
2  misapplied payments and the false credit
3  reporting.
4     Q  Okay. And the opt out form, which
5  is Exhibit Number 14, did you type -- you
6  prepared this yourself --
7     A  Yes.
8     Q  -- is that correct?
9     A  Yes.
10     Q  And it's dated April 9, 2004?
11     A  Yes.
12     Q  Did you meet with an attorney to
13  talk about the settlement?
14     A  No.
15     Q  You made the decision on your own?
16     A  I was unable to obtain counsel to
17  represent me, so I had to represent myself.
18     Q  Okay. And you decided to opt out
19  of the class action?
20     A  That's correct.
21     Q  I think we talked about this
22  earlier. I'm not going to mark it. Is that
23  the right of redemption you submitted to Citi

Page 228

1  Financial?
2     A  Yes, it is.
3     Q  Okay. And they foreclosed on your
4  house in January of '05; is that correct?
5     A  January of '05, yes.
6     Q  Okay. Was this mortgage part of
7  the bankruptcy that we just talked about?
8     A  Yes.
9     Q  So after the bankruptcy was lifted
10  or dismissed, is that when Citi Financial
11  foreclosed?
12     A  Yes.
13     Q  Have you filed any lawsuit against
14  Citi Financial for --
15     A  No.
16     Q  Have you sought advice of counsel
17  with respect to Citi Financial?
18     A  No.
19     Q  Do you have any complaints against
20  Citi Financial?
21     A  No.
22     Q  Okay. I'm going to mark your
23  initial disclosures as an Exhibit Number 15.

Page 229

57 (Pages 226 to 229)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1     (WHEREUPON, Defendant's Exhibit 15 | 1  your daughter? |
| 2     was marked for identification. | 2    A  My daughter. |
| 3     A copy is attached.) | 3    Q  And then your ex-husband? |
| 4    Q  Do you recognize that document? | 4    A  Who loaned me some money |
| 5  I'll represent to you it's the initial | 5  periodically. |
| 6  disclosures you provided me a few months | 6    Q  Okay. And you mentioned Ricky and |
| 7  back. | 7  Janice Leggitte. |
| 8    A  Yes. | 8    A  Yes. They were neighbors who, I |
| 9    Q  Correct? | 9  guess, at some point were in litigation with |
| 10    A  Yes. | 10  Nations Credit. |
| 11    Q  And we talked about Mr. Cason. Who | 11    Q  Okay. What about Fred -- attorney |
| 12  are these other -- if you could, walk me | 12  Fred Gray? |
| 13  through. Who is attorney Michael Braun? | 13    A  I went to him for representation. |
| 14    A  He was co-counsel with John Cason. | 14    Q  And same with Chris Pitts? |
| 15    Q  Okay. What about Jessica Kirk? | 15    A  Yes. |
| 16    A  Co-counsel with John Cason. | 16    Q  And who is Marlene Young? |
| 17    Q  Okay. And Sandra Lewis is your | 17    A  The manager of Citi Financial who |
| 18  bankruptcy attorney? | 18  called for a payoff figure. |
| 19    A  Yes. | 19    Q  Okay. And then Reverend and |
| 20    Q  Okay. And Brent Irby? How do you | 20  Mrs. Ransome and Betty Moreland? |
| 21  know Brent Irby? | 21    A  Clergy and friends who were support |
| 22    A  I was referred to him as counsel to | 22  for me. That's all. Every time I discussed |
| 23  handle this suit. | 23  it, I just fell apart. They supplied it from |
| Page 230 | Page 232 |
| 1    Q  Okay. And the next -- you know, | 1  -- support. |
| 2  the Jacksons, Patterson, and Stewart? | 2    Q  You discussed this case with them? |
| 3    A  Those were his clients that | 3    A  Not the specifics. |
| 4  experienced the same, pretty much, | 4    Q  Okay. |
| 5  complaints. | 5    A  But they're aware of me busting out |
| 6    Q  Okay. Do you know them personally? | 6  in tears. |
| 7    A  No. | 7    Q  Have you spoken with Marlene Young |
| 8    Q  Have you talked with any of them? | 8  since — |
| 9    A  No. | 9    A  No, I have not. |
| 10    Q  Okay. And I assume that Mr. Irby | 10    Q  Let me finish my -- the three-way |
| 11  is not representing you, obviously? | 11  phone conversation? |
| 12    A  No. | 12    A  Oh, since I talked with her with |
| 13    Q  What about Zach Collins? | 13  the three-way? Yes. She had to let me know |
| 14    A  Zachary Collins? | 14  that it was -- |
| 15    Q  Yes. | 15    Q  Denied? |
| 16    A  I went to him. | 16    A  -- denied. And based on what |
| 17    Q  About this matter? | 17  information and how much -- it would be over |
| 18    A  About this matter. | 18  a thousand dollar payments based on -- |
| 19    Q  Okay. Same with Andrew Nelms? | 19    Q  They could approve it, but your |
| 20    A  Andrew Nelms, yes. | 20  payments would be a thousand dollars; is that |
| 21    Q  Okay. Who is Joseph Alon Riley? | 21  correct? |
| 22    A  My son. | 22    A  Well, it would -- she was saying it |
| 23    Q  Okay. We talked about him. And | 23  would be in excess of what my current |
| Page 231 | Page 233 |

58 (Pages 230 to 233)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1   payments were based on the figures that was | 1   did -- that it was denied. |
| 2   submitted, so they turned it down. | 2     Q   Okay. And I've asked you this all |
| 3     Q   I'm not sure -- | 3   day: Do you have that document with you? |
| 4     A   She told me it was denied based on | 4     A   I don't know where it is. |
| 5   the information that was given. She told me | 5     Q   What about attorney Marsha B. |
| 6   my payments would be much more. | 6   Scott? |
| 7     Q   Much more if she approved it? | 7     A   I spoke with her concerning |
| 8     A   Well, actually, she said that it | 8   representation. And because, I guess, I was |
| 9   could not be approved. Actually, she did -- | 9   so devastated, she did what she could to |
| 10  even though she said her corporate was giving | 10  refer me to another attorney. |
| 11  her difficulty, they did refinance the home | 11    Q   Okay. And what about attorney |
| 12  in -- the rental home, giving me a less | 12  Stuart Vance? |
| 13  interest than what I had initially, but that | 13    A   He also -- he was the one that |
| 14  once everything was corrected, I could | 14  referred me to Brent Irby. |
| 15  resubmit. Once everything was corrected on | 15    Q   And you've got Chief Justice, but |
| 16  my credit, I could resubmit an application to | 16  no name. Who was that? |
| 17  get lower. | 17    A   Oh, I thought I submitted a new |
| 18    Q   So your rental home was refinanced? | 18  one. He was the one who mediated. He was in |
| 19    A   It was refinanced even though it | 19  our mediation settlement with Nations Credit. |
| 20  took a lot through her because technically | 20  And I guess I put him down to say that I |
| 21  they would not have, but my house in the | 21  recall him specifically stating that by me |
| 22  Brookland Curve was not refinanced. | 22  signing the modification agreement, I would |
| 23    Q   The house that was refinanced, was | 23  be in a better position. And so those were |
| Page 234 | Page 236 |
| 1   that the house that was foreclosed upon? | 1   the things that stuck out in my mind. |
| 2     A   Yes. | 2    Q   Okay. And who is Bernadette -- oh, |
| 3     Q   Okay. Did you ever resubmit an | 3  Bernadette York. She's with where? |
| 4   application for -- | 4  Homeowners Loan? |
| 5     A   No. Because it took a year later | 5    A   She's -- well, I don't know if she |
| 6   to correct everything. | 6  is still there. But she was the one that |
| 7     Q   Okay. Now, what specifically did | 7  also told me, because of my credit reporting, |
| 8   Marlene Young tell you in her phone | 8  I was denied a preapproved loan. |
| 9   conversation with you about the reason why | 9    Q   Did she say anything more specific |
| 10  she could not approve a refinance of the 901 | 10  than that, or did she send you a letter? |
| 11  Brookland Curve residence? | 11    A   I'm sure they must have sent me a |
| 12    A   Because of the credit reporting. | 12  letter. I can't remember. |
| 13    Q   Did she specifically say because of | 13    Q   Okay. I'm going to mark your |
| 14  Fairbanks credit reporting, or did she say | 14  second amended complaint, Ms. Riley. |
| 15  because of your negative credit reporting? | 15      (WHEREUPON, Defendant's Exhibit 16 |
| 16    A   She said because of what Fairbanks | 16  was marked for identification. |
| 17  was reporting, that it was in foreclosure | 17  A copy is attached.) |
| 18  status. | 18    Q   I'm not going to go through it in |
| 19    Q   Okay. But she went forward and | 19  detail. It's Exhibit Number 16. If you |
| 20  refinanced the rental home. Did she provide | 20  will, identify that for me. |
| 21  you anything in writing about the denial | 21    A   Second amended complaint, Rose C. |
| 22  of -- | 22  Riley, pro se, versus Fairbanks Capital |
| 23    A   No. Well, I'm sure the company | 23  Corporation. |
| Page 235 | Page 237 |

59 (Pages 234 to 237)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1      Q    And that was filed on October 20th,
2   2004; correct? It's right here.
3      A    October 20th, 2004.
4      Q    And you had been ordered by the
5   court to re-plead your first complaint
6   -- strike that. Your original complaint and
7   first amended complaint; correct?
8      A    Correct.
9      Q    I'm looking at the complaint. It
10  has a statement of facts and has one, two,
11  three -- four counts. A count for breach of
12  contract, fraud and supression, negligence,
13  and unjust enrichment —
14     A    Okay.
15     Q    -- correct?
16     A    I'm sorry. Yes.
17     Q    And I just want to be clear because
18  you've amended twice. Are these the four
19  counts -- the four claims that you have
20  against my client?
21     A    That's the second amended
22  complaint. Yes.
23     Q    Okay. Is there -- other than these
                                        Page 238

1   four counts in this complaint, is there
2   anything else that you allege against
3   Fairbanks, slash, SPS? And the reason I ask
4   that is because we've been through two counts
5   of amending. I want to make sure this is —
6   there's nothing else out there that I'm not
7   aware of.
8      A    That's the last document I
9   submitted.
10     Q    And this document has four state
11  law claims: Breach of contract, fraud
12  negligence, and unjust enrichment?
13     A    Yes.
14     Q    Let me ask you this, Ms. Riley:
15  How has my client been unjustly enriched in
16  this transaction?
17     A    Well, as far as the $655 worth of
18  late fees and the foreclosure of the home.
19     Q    Let me back up. They haven't
20  foreclosed on your home.
21     A    No.
22     Q    Okay. And they also haven't
23  received payments on the note in a year —
                                        Page 239

1      A    Okay.
2      Q    -- approximately? So I'm just
3   asking you, how has my client been unjustly
4   enriched?
5      A    Again, I make reference to my
6   document. That -- excuse me. I'm just
7   taking a moment to make reference. I
8   guess --
9      Q    And I don't mean to ask you a legal
10  question. If you don't know, you don't know.
11     A    No. I guess -- I'm just saying
12  that I -- I'm assuming that they benefitted
13  from -- and I don't know offhand. I know
14  they benefitted from the -- the credit --
15  well, the late payments and — that was
16  received because you're saying that I didn't
17  make any payments, but I did.
18     Q    In fairness, those late payments
19  were sent back to you; correct?
20     A    No. Not all of them. Just one.
21     Q    Okay.
22     A    And I guess the cost of
23  foreclosure. I mean, it's all billed to me.
                                        Page 240

1   I'm assuming that initially the $98,000
2   balance is in excess now due to whatever
3   fees.
4      Q    But Fairbanks hasn't collected any
5   of these fees or charges or anything,
6   correct, or payments?
7      A    Not, at this -- well, I'm sure they
8   collected some because it would not be listed
9   in the class action if they had not collected
10  some. And just to be specific — I can't
11  really answer specifically right now.
12     Q    Okay. That's fine. I didn't mean
13  to -- I didn't mean it to be a trick
14  question.
15     A    Okay.
16     Q    Just a couple more. I think we can
17  take a break, and then wrap up before too
18  long.
19          (WHEREUPON, Defendant's Exhibit 17
20          was marked for identification.
21          A copy is attached.)
22     Q    I marked this as Defendant's
23  Exhibit 17. And you referenced this letter,
                                        Page 241

60 (Pages 238 to 241)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1  Ms. Riley, or this -- I call it a letter.  It
2  looks like a memo that you submitted to
3  your --
4      A   Yeah.
5      Q   -- supervisor?
6      A   Right.  Right.  Excuse me.
7      Q   Okay.  It's dated August 6th, 2003?
8      A   Right.
9      Q   Okay.  And what was the purpose of
10  submitting this letter to your employer?
11     A   Again, I can read it and explain.
12  It says --
13     Q   Well, I don't want you to have to
14  read -- read the whole thing, but if you
15  could --
16     A   But it was a factor affecting my
17  change and the impact of my work -- my
18  performance.
19     Q   Okay.  And it also mentions
20  balance-to-balance work pressures.  What were
21  your work pressures in addition to your legal
22  home pressures?
23     A   I guess the pressures of not making

Page 242

1  recall.  I was given 30 days, so it could
2  have been in September --
3      Q   And it was a year --
4      A   -- after I returned.
5      Q   And it was a year before you
6  obtained employment again; correct?
7      A   Right.  I'm thinking that I started
8  employment October the 6th.  So a month later
9  would have been September something.  So it
10  was either August or September.
11     Q   And at the bottom it says, P. S. --
12  in handwriting -- please consider this as an
13  official request for a copy of my personnel
14  file?
15     A   Right.  I did request for personnel
16  file.
17     Q   And what was the purpose of that?
18     A   For my own records.
19     Q   Okay.  And did they provide you
20  with it?
21     A   Yes, they did.
22     Q   Okay.  Let's see.  I'm just going
23  to emphasize one point, Ms. Riley, real

Page 244

1  my production.
2      Q   Okay.  And you have a plan of
3  action?
4      A   Yes.
5      Q   And at the bottom paragraph it
6  talks about one of the obvious disputes would
7  be radio used on break.  Was that -- was
8  there a problem?  Was that one of the --
9      A   That was something that was
10  referenced and I submitted.
11     Q   So that was one of the work
12  problems you were encountering; correct?
13     A   Well, that was something that was
14  brought to my attention, and I corrected it.
15     Q   Okay.  And you would have been
16  terminated approximately one month after this
17  submission, or did you take a month off and
18  go back to work before being terminated?
19     A   I used by PTO, and I guess -- and
20  my vacation time, whatever.  So I did take
21  several weeks.  So it had to be either the
22  end of August -- probably the end of August
23  or sometime in September.  I -- I can't

Page 243

1  quickly with this statement, which you
2  received, which is marked as Defendant's
3  Exhibit 4.  And I've already covered this,
4  but I just want to be clear for the record.
5      You knew when you got that that
6  this escrow negative number of twenty-two
7  eighty was incorrect; correct?
8      A   I listed it as being incorrect.
9      Q   Right.  And that's your
10  handwriting.  So you knew when you got that
11  that this was not right, when you sent it to
12  your attorney?
13     A   I requested it to be corrected.
14     Q   Besides -- and I apologize if I
15  asked you this earlier today.  Besides being
16  referred to foreclosure on this loan -- by
17  this loan, I mean the 901 Brookland Curve and
18  the Citi Financial loan on your rental
19  property.  Have you ever had any other loans
20  of any kind referred to foreclosure, whether
21  it be auto or home?
22     A   Other than the litigation with
23  Americredit.

Page 245

61  (Pages 242 to 245)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

1    Q    Okay. Have you ever had a
2 collection agency file a small claims court
3 claim or make a negative mark on your credit
4 report for not making your payments timely or
5 a department store or --
6    A    Within my history?
7    Q    Yeah.
8    A    Life history? Possibly. I just
9 don't recall. I mean, you're asking me to go
10 back 25, 30 years.
11    Q    Okay. Let me see. I mean, you're
12 not saying you have -- that before this
13 transaction you had, you know, excellent
14 credit history, are you? You're not saying
15 that Fairbanks caused --
16    A    I'm saying that I rebuilt my
17 credit. So at some point, when I did get
18 divorced, I experienced some credit problems,
19 but I worked hard to repair them.
20    Q    And were they repaired?
21    A    Obviously I did. I was able to
22 purchase a new home.
23    Q    Okay. And do you have any -- any

Page 246

1    A    I think I answered that question.
2 And if not, I did experience some setbacks in
3 my divorce.
4    Q    Let me stop you.
5    A    And I did make attempts to correct
6 my credit, and so I don't dispute that
7 they're -- I have not had credit issue.
8    Q    Okay. The reason I ask is because
9 you said after your divorce. And you told me
10 you've divorced 15 years, and this is
11 obviously four years ago.
12    A    I could have had some medical bills
13 as well.
14    Q    Okay. Fair enough. Other than
15 seeking to refinance through Citi Financial
16 and whoever Bernadette York works for -- I
17 think it was Home ---
18    A    Homeowners Loan.
19    Q    Is there anyone else you contacted,
20 sent information to, to try to get
21 refinancing?
22    A    No.
23    Q    Just those two?

Page 248

1 of your credit reports at home that you may
2 have obtained over the years?
3    A    Not that I can recall.
4    Q    Okay. If I -- and I'm not going to
5 mark this, but if I advise you I'm looking at
6 the documents I produced to you which was an
7 Equifax transaction report obtained by
8 Nations Credit in connection with your loan
9 application back in 1999 and it had a beacon
10 store of 550 for a credit score and had a
11 number of reporting documents -- accounts not
12 paid as agreed and it lists, I guess, one,
13 two, three, four, five, six, seven, eight --
14 eight accounts that were not paid as agreed
15 that appear on your credit report -- do you
16 see that?
17    A    I see that.
18    Q    Okay. You're not disputing that,
19 are you -- that you had some negative credit
20 reporting even before you entered into this
21 agreement with Nations Credit to originate
22 the mortgage of the note that we're here
23 about?

Page 247

1    A    Well, I mean, I was already denied.
2    Q    Okay. You were denied by those
3 two?
4    A    Right.
5    Q    Okay. And you don't recall
6 contacting anyone else?
7    A    If I had, I was not approved. I
8 don't know.
9    Q    But as we sit here today, you don't
10 recall it?
11    A    Those are the two that I know I
12 contacted.
13    Q    And if you had any others, you
14 would have sent them to me?
15    A    Right.
16    Q    I want to talk now a little bit,
17 Ms. Riley, about your prior claims and
18 litigations against other parties other than
19 -- we talked about Nations Credit today, and
20 we've talked about your divorce. And you
21 identified these in your interrogatories, so
22 it may be helpful for you to look at those
23 again.

Page 249

62 (Pages 246 to 249)

| | |
|---|---|
| 1      Can you tell me about your other | 1    A   Yes. |
| 2 lawsuits? And I think, to summarize, we | 2    Q   And then you list on here the |
| 3 talked about Nations Credit. We've obviously | 3 estate of George Beckham in the Probate Court |
| 4 talked about the case we're here about today, | 4 of Clarke County, Alabama? |
| 5 Fairbanks. We've talked about Ameriquest | 5    A   Yes. |
| 6 bringing a collection action against you, and | 6    Q   What is that about? |
| 7 you mentioned earlier a small suit against | 7    A   An inheritance. |
| 8 Consolidated Department Stores. | 8    Q   And how did that resolve itself? |
| 9      Why don't we start with that. Can | 9 Did you receive an inheritance? |
| 10 you tell me what that lawsuit was about? | 10    A   Partially. It's still pending. |
| 11    A   Employment discrimination. | 11    Q   Still pending? |
| 12    Q   Who represented you? | 12    A   Still in probate. |
| 13    A   Attorney Jacob. Jimmy Jacob. | 13    Q   For eight years? |
| 14    Q   And what was the discrimination | 14    A   (Witness nods head.) That's |
| 15 that you allege? | 15 another issue. |
| 16    A   There were promotion issues. | 16    Q   Are you represented in that case, |
| 17    Q   Uh-huh. | 17 or are you just -- |
| 18    A   Wage issues. And when I say | 18    A   The family. |
| 19 "issues," that blacks were not given the same | 19    Q   The family is? Okay. And I guess |
| 20 opportunities to advance to management even | 20 there's a dispute between the family members |
| 21 though they were experienced. | 21 as to who receives what? |
| 22    Q   Okay. | 22    A   No. No dispute. |
| 23    A   And working alongside the assistant | 23    Q   Just hasn't been probated? |
| Page 250 | Page 252 |

| | |
|---|---|
| 1 manager whose pay is more doing the same job | 1    A   Just not been settled. |
| 2 because I was a minority. | 2    Q   Okay. Any other lawsuits that you |
| 3    Q   Okay. And that was filed in | 3 can think of? |
| 4 federal court, I presume? | 4    A   (Witness shakes head.) |
| 5    A   I've got to make reference to it. | 5    Q   No? |
| 6    Q   Okay. And while you're looking, | 6    A   I listed everything. |
| 7 how did that resolve itself? Did you settle | 7    Q   No other bankruptcies? |
| 8 that case? | 8    A   I think I answered that. That was |
| 9    A   There was a settlement. | 9 my first experience -- |
| 10    Q   Did you receive a cash payment in | 10    Q   Okay. Any other -- |
| 11 connection with that settlement? | 11    A   -- in filing bankruptcy. |
| 12    A   I'm sure I did. | 12    Q   Any other -- any other complaints |
| 13    Q   And what year would that have been? | 13 filed with a regulatory agency like the |
| 14    A   I think I listed the year. | 14 Alabama Attorney General's Office or the |
| 15    Q   Okay. Let me see if I can find it. | 15 Equal Opportunity Commission? |
| 16 Okay. I have 1998. | 16    A   There could have been some Equal |
| 17    A   Okay. | 17 Opportunity Commissions. I just don't |
| 18    Q   Okay. And there was a lot of other | 18 recall. |
| 19 parties involved. Were they co-employees? | 19    Q   Would they have been in connection |
| 20    A   Co-employees. | 20 with your Consolidated lawsuit? |
| 21    Q   Okay. They were all plaintiffs? | 21    A   Right. There was one concern. |
| 22    A   Yes. | 22    Q   But there could have been others? |
| 23    Q   Did they settle as well? | 23    A   Possibly. |
| Page 251 | Page 253 |

63 (Pages 250 to 253)

**American Court Reporting**
**toll-free (877) 320-1050**

1      Q    I know I asked you this earlier,
2  but not against OSI?
3      A    No.
4      Q    In Number 16 I asked you to
5  identify each and every bank which you have
6  -- which you have had or now have accounts or
7  loans; right?  And you objected to that as
8  being immaterial and irrelevant?
9      A    Yes.
10     Q    Is that because -- are you not
11 making your payments to Fairbanks?  Were they
12 all made by POs?  Is that the reason you're
13 saying that?
14     A    No.
15     Q    Can you give me the reason why that
16 is to -- why that is irrelevant?
17     A    That I needed to give you my bank
18 statements?  I'm sorry.  What was the
19 question again?
20     Q    Well, I'm just trying -- obviously,
21 there's -- a central issue in this case is
22 the timing of payments; right?  Timing of
23 payments made --

Page 254

1  this question many times today.  All your
2  answers indicate you're producing what is in
3  your immediate possession.
4      A    Right.
5      Q    Okay.  And I just want to be clear
6  that these requests are asking for anything
7  that you have.
8      A    And I submitted what I had.
9      Q    Right.
10     A    But I -- I mean, things that are
11 packed up, stored -- I don't know --
12     Q    Right.  But I'm entitled to that if
13 they're responses.  So I'm just going to ask
14 you again if you'll go back, if they're
15 stored --
16     A    And I will.
17     Q    -- and look for them.  And if
18 they're responses to any of these, I'm
19 entitled to them.  Okay?
20     A    Okay.
21     Q    Or you can object if you have them
22 and don't want to give them to me.
23     A    No.

Page 256

1      A    And they're all paid by money
2  orders.
3      Q    Right.  And I've asked you to get
4  me those if you can; correct?
5      A    I'm going to get them for you.
6      Q    Yeah.  So those wouldn't be
7  reflected in your bank accounts, would they?
8      A    No.
9      Q    In 19 of the interrogatories, I
10 asked you to identify any person you obtained
11 a written or oral statement concerning the
12 events described in the lawsuit?
13     A    I have not as of this point.
14     Q    Do you have any statements?
15     A    Not at -- not to this date.  I have
16 not obtained written statements from anyone.
17     Q    I just wanted to know if you had
18 taken a written statement from someone.
19     A    (Witness shakes head.)
20     Q    Okay.  And you have not?
21     A    (Witness shakes head.)
22     Q    Okay.  And in the request for
23 productions you indicated -- and I've asked

Page 255

1      Q    But all that is important.
2      A    Right.  And I have tons of stuff
3  packed up.  I don't know where everything is.
4      Q    And in nine and ten I asked for
5  documents related to your credit history, and
6  in ten I asked for documents related to
7  credit problems or late payments.  And you
8  say that's overly broad in your objection.
9           Is there any reason I can't get
10 that?
11     A    Because I don't know where they
12 are.  I mean, to go back and look for
13 documents, some things are discarded.  I
14 mean --
15     Q    Well, if you have any of them, I
16 would appreciate it if you give them to me.
17     A    Okay.  No problem.
18     Q    And I tried to limit this to 1999.
19     A    Well, that's many years ago, and
20 I'm sure I don't hold them that far.
21     Q    Okay.  And I've also asked for any
22 documents relating to efforts for you to
23 obtain credit.  And we talked about your

Page 257

64  (Pages 254 to 257)

**www.AmericanCourtReporting.com**
**March 7, 2005**

1  attempts to obtain credit or a loan from Citi
2  Financial. And you say you may or may not
3  have those documents, you're going to look
4  for them?
5      A    Well, I know the Homeowners Loan
6  was taken over the phone. And I'm not sure
7  if Citi Financial was taken over the phone as
8  well.
9      Q    Okay.
10      A    But whatever I have -- like I said,
11  I will continue to look, but I submitted to
12  you whatever I had in my immediate
13  possession.
14      Q    Okay. Have I identified all the
15  mortgages that you've held? I mean, you
16  owned the property in Pennsylvania free and
17  clear. You've never had a mortgage on that
18  property?
19      A    (Witness shakes head.)
20      Q    And then we've talked about your
21  current home?
22      A    Yes.
23      Q    I'm just trying to make sure I'm on

Page 258

1  the same page with you. And then we talked
2  about the house you rented here in
3  Montgomery?
4      A    Yes.
5      Q    And you originally -- was that
6  house financed through Regions -- First
7  Alabama, Regions, and then you --
8      A    Yes.
9      Q    -- refinanced through Citi
10  Financial; correct?
11      A    Yes.
12      Q    Are those the only mortgage loans
13  you've had?
14      A    To my knowledge, yes.
15      Q    Have you ever had a car
16  repossessed?
17      A    Uh-huh.
18      Q    When would that have been?
19      A    Americredit.
20      Q    Okay. Besides Americredit?
21      A    I think there was a car in my
22  mother's name.
23      Q    When was the Americredit car

Page 259

1  repossessed? Was that in '99?
2      A    It could have been, but it was
3  returned back.
4      Q    And then you ultimately gave the
5  car for the satisfaction of the judgment?
6      A    For satisfaction of the judgment.
7      Q    Have you ever had a forbearance
8  agreement in connection with any of your
9  mortgage loans?
10      A    Not to my knowledge.
11      Q    Okay. Or a loan workout where you
12  agreed to make certain payments in a certain
13  amount of time?
14      A    Not to my knowledge.
15      Q    And I've asked for you to list also
16  to the extent you have any insurance policies
17  that would cover your house from 1999 until
18  2005, to the present.
19      A    I gave you everything I had in my
20  immediate possession.
21      Q    Okay. All I have is a one-page
22  declaration sheet.
23      A    Right. And I'll check.

Page 260

1      Q    Now, I'll let you know I have a dec
2  page that reflects coverage from May of '02
3  through May of '03.
4      A    Okay.
5      Q    But nothing for 1999 through '02 or
6  '05 -- '04 to '05.
7      A    Okay.
8      Q    Okay. Have you ever had your wages
9  garnished to satisfy any judgment to a
10  creditor?
11      A    Yes.
12      Q    Okay. When would that have been?
13      A    I can't recall.
14      Q    Okay. Can you narrow it down to
15  any window of time?
16      A    I was probably with Consolidated,
17  Big Lots, at the time.
18      Q    Okay. And do you remember who the
19  judgment creditor was?
20      A    Not offhand.
21      Q    Okay. Do you know how many
22  judgments were filed --
23      A    No, I don't.

Page 261

65 (Pages 258 to 261)

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1   Q   -- against you? | 1   Q   Give me like a couple minutes, and |
| 2   A   No, I don't. | 2   I'll see if I can wrap up. |
| 3   Q   I mean, can you give me an | 3   (Off the record.) |
| 4   estimate?  Was it five, ten? | 4   Q   Just a few questions, Ms. Riley, |
| 5   A   I have no earthly idea. | 5   and we'll be done. |
| 6   Q   Has it happened more than once | 6   A   Okay. |
| 7   where your wages have been garnished? | 7   Q   And I just want to try to summarize |
| 8   A   Not to my knowledge. | 8   and make sure I understand all your claims. |
| 9   Q   Since the filing of this lawsuit, | 9   I know we've been over this a few times, but |
| 10  have you filed any other lawsuits? | 10  in May of 2002 you settled that case with |
| 11  A   No. | 11  Nations Credit; correct? |
| 12  Q   Have you ever applied for Social | 12  A   On or about somewhere -- |
| 13  Security benefits? | 13  Q   Yeah.  On or about May.  And the |
| 14  A   No. | 14  agreement we looked at earlier was finally |
| 15  Q   Do you prepare your own tax | 15  executed in June -- |
| 16  returns? | 16  A   Yes. |
| 17  A   No. | 17  Q   -- correct?  And I showed you |
| 18  Q   Okay.  Do you have an accountant? | 18  documents today, earlier, where your loan |
| 19  A   I don't have an accountant, no. | 19  service transferred to Fairbanks.  There was |
| 20  Q   Do you file tax returns? | 20  a letter we looked at in March, and there was |
| 21  A   Yes. | 21  a letter in April.  And you recognized the |
| 22  Q   I mean do you know who prepares | 22  letter in April, but didn't recall getting |
| 23  them for you? | 23  the letter in March? |
| Page 262 | Page 264 |

| | |
|---|---|
| 1   A   Well, H & R Block has been | 1   A   Okay. |
| 2   preparing them for me. | 2   Q   So the transfer to Fairbanks was |
| 3   Q   Okay.  Have you ever had an IRS | 3   taking place actually a little bit before the |
| 4   lien placed against any of your property? | 4   time the negotiations were being completed |
| 5   A   Not to my knowledge. | 5   with Nations Credit; is that a fair |
| 6   Q   And I assume that you handle all | 6   statement? |
| 7   your own finances; correct? | 7   A   That's my assumption. |
| 8   A   There's nobody else to. | 8   Q   Okay.  And your assumption and what |
| 9   Q   You don't have a banker or broker | 9   you know from talking with -- well, dealing |
| 10  that does that for you? | 10  with the prior mediation in the Nations |
| 11  A   No, I don't. | 11  Credit case is that the transfer of servicing |
| 12  Q   Okay.  Where have you banked from | 12  rights to Fairbanks slowed the wheels down, |
| 13  2002 until the present time? | 13  if you will, on getting everything in place |
| 14  A   I don't see the relevance. | 14  and up and running with your new mortgage? |
| 15  Q   I mean, you're not going to answer | 15  A   That's what I believe to have |
| 16  it? | 16  happened. |
| 17  A   I mean, I object because I don't | 17  Q   Okay.  And when I say "new |
| 18  see the relevance. | 18  mortgage," I'm referring to your modification |
| 19  Q   Well, this is a case about finances | 19  agreement which had a new interest rate and |
| 20  and financial matters and dealing with a | 20  new payment terms; correct? |
| 21  financial company. | 21  A   And new servicing company. |
| 22  A   Well, I mean I can tell you.  Max | 22  Q   And a new servicing company.  Okay. |
| 23  and Community Bank. | 23  And we looked at documents from my client, |
| Page 263 | Page 265 |

66  (Pages 262 to 265)

**American Court Reporting**
**toll-free (877) 320-1050**

1  from Fairbanks, and we've seen several
2  letters. And it's your position, and you've
3  told me today, that a negative report was
4  placed on your report in August of 2002 which
5  was a few months after the transfer and the
6  mediation settlement was resolved; correct?
7      A    There was negative reporting, yes.
8      Q    And your position is that you made
9  your payments timely and that that credit --
10 negative reporting should not have been
11 placed on your credit; correct?
12     A    Within the grace period of time.
13 Yes.
14     Q    And at some point in time -- and we
15 looked at the documents today. There was a
16 letter in February of '03 and there was a
17 letter in August of '03 --
18     A    Yes.
19     Q    -- reflecting Fairbanks' attempts
20 to correct your payment history and to update
21 their records to reflect information
22 consistent with the settlement agreement;
23 correct?

                                      Page 266

1      Q    Two payments was behind.
2      A    -- documented by Fairbanks.
3      Q    And it was referred to foreclosure?
4      A    A payment was --
5      Q    Sent back.
6      A    -- sent back.
7      Q    The loan was referred to
8  foreclosure, and ultimately you filed
9  bankruptcy; correct?
10     A    Correct.
11     Q    And you fell several more payments
12 behind?
13     A    Correct.
14     Q    And we talked about the damages
15 that you claim to have incurred in this
16 action. And is there anything you haven't
17 told me already about how you've been
18 damaged? We talked about the negative credit
19 reporting and your claim of your ability to
20 not be able to obtain refinancing. And we
21 talked about your job situation and how this
22 -- the negative reporting or your dealing
23 with the company may have caused you problems

                                      Page 268

1      A    That's a general description.
2      Q    Okay.
3      A    February, to make the adjustment on
4  the balance.
5      Q    Okay.
6      A    And August 6th, 2003 to make a
7  correction on the credit.
8      Q    Okay. That's a fair statement.
9  They corrected the balance and the -- made
10 sure the interest rate was correct. And in
11 February of '03 and August of '03, they wrote
12 a letter and CC'ed you on it about correcting
13 your credit?
14     A    Correcting the credit August of
15 2003.
16     Q    Correct. Okay. And just so I have
17 -- I want to make sure I have all the
18 information correct. Following that period
19 of time -- and we talked about this -- you
20 were a few payments behind in making your
21 payments after those corrections had taken
22 place. Now, I know you --
23     A    Two payments was --

                                      Page 267

1  there.
2           Is there anything else that we
3  haven't talked about?
4      A    Well, I guess the stress resulted
5  in a lot of personal damages -- the loss of
6  my hair. I mean, I know you can't say it,
7  but it's -- my hair fell out. It's still
8  falling out. I was hospitalized for a period
9  -- a week or four days.
10     Q    When was this?
11     A    During -- and I -- it was during
12 the year that I was in foreclosure.
13     Q    Okay. Was it after you were
14 terminated from your job or before?
15     A    It was after.
16     Q    Okay. And what were you -- what
17 were you being treated for?
18     A    I'm not sure. I just know that I
19 was taken to emergency. I mean that day, I
20 was speaking with Reverend Moreland and his
21 wife, and I was in tears over what I was
22 going through. We were at IHOP, and I just
23 completely broke down. I had a loss of

                                      Page 269

                                  67 (Pages 266 to 269)

**www.AmericanCourtReporting.com**
**March 7, 2005**

**American Court Reporting**
**toll-free (877) 320-1050**

| | |
|---|---|
| 1  appetite. I went home, and I experienced | 1  JEFFERSON COUNTY) |
| 2  some complications and had to be taken to the | 2      I hereby certify that the |
| 3  emergency. I went to emergency, and I was | 3  above and foregoing deposition was |
| 4  admitted to the hospital. | 4  taken down by me in stenotype and the |
| 5      Q  Okay. And was there a diagnosis | 5  questions and answers thereto were |
| 6  that you received? | 6  transcribed by means of computer-aided |
| 7      A  All I know is I was there for four | 7  transcription, and that the foregoing |
| 8  days. I had IVs. I guess I lost some blood. | 8  represents a true and correct |
| 9  I had to receive some blood. I don't know | 9  transcript of the testimony given by |
| 10  what the technical terms of what had | 10  said witness upon said hearing. |
| 11  happened, but I know I was stressed. | 11      I further certify that I am |
| 12      Q  Okay. And the doctors told you it | 12  neither of counsel, nor of kin to the |
| 13  was stress related? | 13  parties to the action, nor am I in |
| 14      A  No. | 14  anywise interested in the result of |
| 15      Q  Did they tell you what -- they | 15  said cause. |
| 16  didn't tell you what caused it? | 16 |
| 17      A  No. | 17 |
| 18      Q  Did you ask them? | 18 |
| 19      A  No. | 19  Melissa S. Lee, CSR |
| 20      Q  Any reason why you didn't? | 20  Notary Public |
| 21      A  To tell you the truth, I did not | 21  My Commission Expires 9/16/2006 |
| 22  know whether I was going to live or die. I | 22 |
| 23  was about ready to give up. No income; no | 23 |

Page 270

```
1   job. I'm in the hospital, can't afford
2   medical attention. I filed for welfare. I'm
3   sorry.
4       Q   That's okay. I'm just trying to
5   make sure I know everything because this is
6   the only chance I get to ask you these
7   questions. And a apologize. I know it's
8   very personal.
9       A   And I guess I'm just saying I
10  didn't work all my life and go to college to
11  be in this situation.
12      Q   Okay.
13      A   I'm sorry.
14      Q   That's fine. That's all I have.
15  Thank you, Ms. Riley.
16          (FURTHER DEPONENT SAITH NOT.)
17
18
19
20
21
22          C E R T I F I C A T E
23  STATE OF ALABAMA)
```

Page 271

68  (Pages 270 to 272)

**www.AmericanCourtReporting.com**
**March 7, 2005**



I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY
THE ORIGINAL INSTRUMENT.

Space Above Line For Recorder's Use

146908  700227465 7002274857

62553 / 7002274857

# MORTGAGE

THIS MORTGAGE (herein "Security Instrument") is made this   20th   day of October, 1999   .
The Grantor   is,  Rose C. Riley, an unmarried woman                                              (herein
"Borrower"). This Security Instrument is given to   NationsCredit Financial Services Corporation of Alabama   , a
corporation organized and existing under the laws of  Alabama                                whose address is
 2248 Eastern Blvd., , Montgomery, AL  36117                                          (herein "Lender").

Borrower owes Lender the principal sum of
NINETY EIGHT THOUSAND NINE HUNDRED FIFTY SEVEN and 00/100                                      U.S.
$ 98,957.00                  , which indebtedness is evidenced by Borrower's note dated  10/20/1999           and
extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of
the indebtedness, if not sooner paid, due and payable on  10/25/2029   .

This Security Installment secures to Lender: (a) The repayment of the indebtedness evidenced by the Note, with interest
thereon and all renewals, extensions and modifications; (b) The payment of all other sums, with interest theron, advanced in
accordance herewith to protect the security of this Security Instrument; and (c) The performance of the covenants and
agreements of Borrower herein contained. Borrower does hereby mortgage, grant and convey to Lender and Lender's successors
and assigns, with power of sale, the following described property located in the County of   MONTGOMERY   , State of
Alabama:

Lot 11, Block E, according to the map of Dexter Ridge, Plat No. 5, as said Map
appears of record in the Office of the Judge of Probate of Montgomery County,
Alabama, in Plat Book 43, at Page 159.

which has the address of  901 Brookland Curve, Montgomery, AL  36117                             ,
                         (Street, City, State, Zip Code)              (herein "Property Address");

To have and to hold this property unto Lender and Lender's successors and assigns, forever, together with all the
improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which
shall be deemed to be and remain a part of the property covered by this Security Instrument; and of all the foregoing,
together with said property (or the leasehold estate if this Security Instrument is on a leasehold) are hereinafter referred to as the
"Property;"

AL0191NC 4/99                                                              Page 1 of 5



DEFENDANT'S
EXHIBIT
1

SPS/RILEY  0202

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, late charges and other charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Security Instrument and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Borrower and Lender may agree in writing at the time of execution of this Security Instrument that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender shall exceed the amount permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 23 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Security Instruments and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property ("Property Taxes") which may attain a priority over this Security Instrument, and leasehold payments or ground rents, if any. In the event Borrower fails to pay any due and payable Property Taxes, Lender may, in its sole discretion, pay such charges and add the amounts thereof to the principal amount of the loan secured by the Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. In the event Borrower fails to maintain hazard insurance (including any required flood insurance) in an amount sufficient to satisfy all indebtedness, fees, and charges owed Lender (in addition to payment of all liens and charges which may have priority over Lender's interest in the property), Lender may, in its sole discretion, obtain such insurance naming Lender as the sole beneficiary (single interest coverage). Lender may add any premiums paid for such insurance to the principal amount of the loan secured by this Security Instrument on which interest shall accrue at the contract rate set forth in the Note.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Security Instrument.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 23 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sum secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair, shall not destroy or damage the Property, and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Security Instrument is on a leasehold. If this Security Instrument is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture

AL0191NC 4/99

Page 2 of 5

SPS/RILEY 0203

of the Property or a new payment and relia... as provided in paragraph 19, by causing... on or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of Borrower's interest in the Property or other material impairment on the lien created by this Security Instrument or Lender's security interest.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, (including without limitation a proceeding in bankruptcy, probate or condemnation) then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. In addition, Borrower covenants at all times to do all things necessary to defend the title to all of the said property, but the Lender shall have the right at any time to intervene in any suit affecting such title and to employ independent counsel in connection with any suit to which it may be a party by intervention or otherwise, and upon demand Borrower agrees either (1) to pay Lender all reasonable expenses paid or incurred by it in respect to any such suit affecting title to any such property, or affecting the Lender's liens or rights hereunder, including, reasonable fees to the Lender's attorneys or (2) to permit the addition of such expenses, costs, and attorney's fees to the principal balance of the Note(s) secured by this Security Instrument on which interest shall accrue at the Note rate as additional indebtedness.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Security Instrument Insurance.** If Lender required Security Instrument insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

9. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or of otherwise afforded by the applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note, (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Security Instrument, (b) is not personally liable on the Note or under this Security Instrument, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent and without releasing that Borrower or modifying this Security Instrument as to that Borrower's interest in the Property.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing such notice by first class addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

15. **Governing Law; Severability.** The state and local laws applicable to this Security Instrument shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Security Instrument. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Security Instrument and the Note are declared to be severable. If any provision of this Security Instrument is found to be in violation of any law, rule or regulation which affects the validity and/or enforceability of the Note and/or Security Instrument, that provision shall be deemed modified to comply with applicable law, rule, or regulation.

16. **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Security Instrument at the time of execution or after recordation hereof.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice to or demand on Borrower.

LLD191NC 4/99

Page 3 of 5

SPS/RILEY 0204

18. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

19. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Security Instrument due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Security Instrument discontinued at any time prior to entry of a judgment enforcing this Security Instrument if Borrower does all of the following: (a) Borrower pays Lender all sums which would be then due under this Security Instrument and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Security Instrument; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Security Instrument, and in enforcing Lender's remedies as provided in paragraph 23 hereof, including, but not limited to, reasonable attorneys' fees; and court costs; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unimpaired. Upon such payment and cure by Borrower, this Security Instrument and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

20. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 23 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 23 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument. The receiver shall be liable to account only for those rents actually received.

21. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to the Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There may also be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

22. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or Hazardous Substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive elements. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

23. Acceleration; Remedies. Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Security Instrument, including the covenants to pay when due any sums secured by this Security Instrument, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 14 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Security Instrument to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect in such proceeding all expenses incurred in pursuing the remedies provided in this paragraph 23, including, but not limited to, reasonable attorneys' fees and costs of evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 14. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in _____MONTGOMERY_____ County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the county courthouse of this county. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

24. Release: Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay all costs of recordation, if any.

25. Waivers: Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of courtesy and dower in the Property.

26. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ 1-4 Family Rider

☐ Planned Unit Development Rider  ☐ Balloon Rider  ☐ Other(s) (specify):

1L0191NC 4/99

Page 4 of 5

REQUEST FOR NOTICE OF DEFAULT

AND FORECLOSURE UNDER SUPERIOR

MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give Notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

In Witness Whereof, Borrower has executed this Security Instrument.

**NOTICE TO BORROWER**

Do not sign this Security Instrument if it contains blank spaces. All spaces should be completed before you sign.

Signed, sealed and delivered in the presence of:

| | |
|---|---|
| Name: | _____ (Seal) |
|  | Name:    Borrower |
|  | Address:   901 Brookland Curve |
|  |           Montgomery, AL 36117 |
| Name: | _____ (Seal) |
|  | Name:    Borrower |
|  | Address: |
| Name: | _____ (Seal) |
|  | Name    Borrower |
|  | Address |

State of **ALABAMA** _____

County of **Montgomery** _____

I, _____ **the undersigned** _____ a Notary Public in and for said County and State, hereby certify that **Rose C. Riley, an unmarried woman** _____ whose name(s) is/are signed to the foregoing conveyance and who is/are personally known to me or who has produced **Driver's License** _____ as identification, did acknowledge before me on this day that, being informed of the contents of the conveyance, he/she/they did execute the same voluntarily on the day the same bears date. Given under my name this _____ 20th _____ day of _____ October, 1999

(Seal)

Notary Public
Name:    Michael D. Morgan
My Commission Expires   7/16/2001

PREPARED BY & RETURN TO:
Nations Credit Financial Services Corporation of Alabama
2246 Eastern Blvd.
Montgomery, AL 36117

AL0191NC 4/99

Page 5 of 5

**NOTE**

10/20/1999                                  901 Brookland Curve, Montgomery, AL. 36117                              Alabama
(Date)                                       (Property Address)                          (City)

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 98,957.00 _____ (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is NationsCredit Financial Services Corporation of Alabama. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of __ 10.9900 %.

Interest will be charged on that part of principal which has not been paid
10/25/1999 _____ and continuing until the full amount of principal has been p

Subject to applicable law, the Note Holder shall be entitled to interest at th 145908  700227485 .700227457 7658 (amount past due) including, without limitation, circumstances in which a petition in bankruptcy, wage-earner, or other insolvency proceeding is filed designating me as debtor.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(C) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law.

## 3. PAYMENTS

Such principal and interest shall be payable in __ 360 __ successive monthly installments with the first such installment in the amount of $ 941.64 _____ due on the __ 25th __ day of __ November, 1999 _____, and subsequent monthly installments of $ 941.64 _____ shall be due on the _____ 25th _____ day of each succeeding month thereafter. A final payment of $ 949.42 _____ will be due on _____ 10/25/2029 _____, I will make these payments every month until I have paid all the principal and interest and any other charges, described below, that I may owe under this Note. If, on _____ 10/25/2029 _____, I still owe amounts under this Note, I will pay all those amounts, in full, on that date. Time is of the essence of this Note.

I will make my monthly payments at ____ P.O. Box 650200, Dallas, TX 75265-0200 _____ or at a different place if required by the Note Holder.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment I will tell the Note Holder in writing that I am doing so.

I may make a full or partial prepayment without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If any charge for required insurance is returned to Note Holder, it may be credited to my loan amount or used to buy similar insurance or insurance which covers only the Note Holder's interest in the property securing this loan. Any refund on optional insurance obtained by the Note Holder will be credited to my loan amount. Credits to my loan amount will be applied as partial payments.

## 5. LOAN CHARGES AND FEES

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges, or fees collected or to be collected in connection with this loan exceed the permitted limits or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge For Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of ____ 15 __ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____ 5.00 % of the unpaid amount of my overdue payment of principal and interest; however, the charge will never be less than $10 nor greater than $100. I will pay this late charge promptly but only once on each late payment.

**(B) Returned Check Charge**

In the event that a check, negotiable order of withdrawal, share draft or other instrument used to make any payment required by this Note is returned unpaid, I agree to pay you a check collection charge of $ 26.00 _____ for your additional costs incurred in processing such check. This charge will be required whether or not the returned check causes my payment to be late.

**(C) Default**

If I do not pay the full amount of each monthly payment on the date it is due I will be in default.

**(D) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least thirty (30) days after the date on which the notice is delivered to me or is deposited in the United States mail, postage prepaid, and addressed to me at my last known address as shown on the records of the Note Holder.

**(E) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will have the right to do so if I am in default at a later time.

**(F) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees of not greater than 15% of the unpaid debt after default and referral of the note to an attorney who is not a salaried employee of the Note Holder.

AL0188NC 12/98                                                                                    Page 1 of 2

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 above or at a different address if I am given a notice of that different address.

**8. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety, or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. THIS NOTE SECURED BY REAL PROPERTY**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Trust Deed, or Deed to Secure Debt ("Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or an interest therein is sold or transferred by Borrower (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. APPLICABLE LAW**

This Note shall be governed by the laws of the State of Alabama and any applicable federal laws, including federal laws which may preempt portions of state law relating to loan terms, interest rates, and fees. In the event of a conflict between any provision of this Note and applicable law, the applicable law shall control to the extent of such conflict, and the conflicting provisions contained in this Note shall be modified to the extent necessary to comply with applicable law. All other provisions of this note will remain fully effective and enforceable.

**12. NO TAX ADVICE**

I agree that it is my responsibility to determine any and all aspects of federal tax considerations related to interest deductibility for my loan. Lender has not provided any tax advice to me.

If the proceeds of this loan are applied in whole or in substantial part to a purchase of goods or services from a seller who referred the Borrower to the Lender and the goods or services are purchased for personal, family or household use, then the following notice is applicable:

**NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Caution-it is important that you thoroughly read the contract before you sign it.**

_____
Borrower

_____
Borrower

_____
Borrower

AL01B8NC  12/99

Page 2 of 2

AUG 20 2002 17:42 FR BANKOFAMERICA LEGAL  214 209 3120 TO 918012930929      P.02/12

7002274657

## MODIFICATION AGREEMENT 

Loan No. 7002274657

THIS MODIFICATION AGREEMENT, made this 21st day of May, 2002 modifies the Promissory Note (the "Note") and the Mortgage recorded at Book 2047, Page 0998 – Book 2048, Page 0003 of the Montgomery County Probate Court (the "Security Instrument"), each dated October 20, 1989 (collectively, the "Loan Documents"), previously executed by the undersigned Rose G. Riley aka Rosemary G. Riley (the "Borrower") in favor of NationsCredit Financial Services Corporation of Alabama. NationsCredit Financial Services Corporation (the "Lender" or "Note Holder") is the lawful successor in interest to NationsCredit Financial Services Corporation of Alabama. The Loan Documents evidence a loan (the "Loan") in the original principal amount of $98,957.00 (the "Principal Amount") at a yearly interest rate of 10.9900% (the "Interest Rate"). The Loan is secured by a Mortgage on the property located at 901 Brookland Curve, Montgomery, Alabama 36117.

This Modification Agreement modifies the Loan Documents (1) to change the Principal Amount of the Loan, (2) to change the Interest Rate, (3) to restate the number and amount of monthly payments of Principal and Interest under the Note, and (4) to make the Mortgage assumable.

In consideration of the mutual promises and agreements exchanged, with the intent to be legally bound, Borrower and Lender agree as follows:

1.  **Principal.** The Loan is modified to change the Principal Amount from $98,957.00 to $98,402.85.

2.  **Interest.** The Note is modified to restate Section 2 "Interest" as follows:

    I will pay interest at a yearly rate of 8.00%.
    Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning May 1, 2002 and continuing until the full amount of principal has been paid.
    Subject to applicable law, the Note Holder shall be entitled to interest at the yearly rate on any mortgage arrearage (amount past due) including, without limitation, circumstances in which a petition in bankruptcy, wage-earner, or other insolvency proceeding is filed designating me as debtor.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(C) of this Note. It is agreed that the total of all interest and other charges that constitute interest under applicable law shall not exceed the maximum amount of interest permitted by applicable law.

3.  **Payments.** The Note is modified to restate Section 3 "Payments" as follows:

    Such principal and interest shall by payable in 360 successive monthly installments with the first such installment in the amount of $722.05 due on the 25th day of May, 2002, and subsequent installments of $722.05 shall be due on the 25th day of each succeeding month thereafter. A final payment of $722.05 will be due on April 25, 2032. I will make these payments every month until I have paid off the principal and interest and any other charges, described below, that I may owe under this Note. If on April 25, 2032, I still owe amounts under this Note, I will pay all of those amounts, in full, on that date. Time is of the essence of this Note.
    I will make my monthly payments at NationsCredit Corporation, Post Office Box 17285, Baltimore, Maryland 21297-1285 or at a different place if required by the Note Holder.

5.  **Security Instrument.** The Security Instrument is modified as follows:

17025.1

DEFENDANT'S
EXHIBIT

2

The Security Instrument is hereby amended to reflect that the amount of present obligations secured is NINETY EIGHT THOUSAND, FOUR HUNDRED TWO and 85/100 DOLLARS U.S. ($98,402.85) with the balance of indebtedness, if not sooner paid, due and payable on April 25, 2032.

6.      **Assumption of Mortgage.** The Security Agreement is further modified as follows under "Non-Uniform Covenants:"

27. Assumption of the Mortgage. If Borrower sells or transfers all or part of the Property or any rights in the Property, any person to whom Borrower sells or transfers the Property may take over all of Borrower's rights and obligations under this Security Instrument (known as "assumption of the Mortgage") if (A) Borrower gives Lender written notice of the sale or transfer; (B) Lender agrees that the person's credit is satisfactory; (C) the person agrees to pay interest on the amount owed to the Lender under the Note and under this Security Instrument at the rate indicated in the Modification Agreement and incorporated in the Note; and (D) the person signs an assumption agreement that is acceptable to Lender and that obligates the person to keep all the promises and agreements made in the Note, Security Instrument and Modification Agreement.

7.      **Other Terms Unchanged.** Except as provided in this Modification Agreement, the terms of the Note and Security Agreement remain unchanged and the Borrower and Lender by this Agreement ratify, confirm and agree to the Loan Documents as modified and changed by this Modification Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and/or Security Instrument.

By signing this Modification Agreement, Lender and Borrower agree to all of the above. This Modification Agreement is not binding, in whole or in part, until executed by Lender and Borrower.

**NATIONSCREDIT FINANCIAL SERVICES CORPORATION**, as successor in interest to NationsCredit Financial Services Corporation of Alabama

By: _____

NAME: _Susannah Braswell_

ITS: _A.V.P._

x _Rose C. Riley_ (Seal)
Name: Rose C. Riley   Borrower
Address: 901 Brookland Curve
         Montgomery, Alabama 36117

17839.1                                   2

SPS/RILEY 0036

AUG 28 2002 17:43 FR BANKOFAMERICA LEGAL  214 209 3120 TO 919012903929    P.04/12

STATE OF _Alabama_ )

COUNTY OF _Montgomery_ )

On this _21st_ day of _May_, 2002, before me the subscriber personally appeared _Rose C. Riley_ to me known and known to me to be the same person described in and who executed the foregoing instrument, and (s)he duly acknowledged to me that (s)he executed the same.

_Amanda Martin_
Notary Public
Name: AMANDA MARTIN
My Commission Expires: 9-11-02                              (Seal)

STATE OF _Texas_ )

COUNTY OF _Collins_ )

On this _4th_ day of _June_, 2002, before me the subscriber personally appeared _Arthur L. Burwell_ to me known and known to me to be the same person described in and who executed the foregoing instrument, and (s)he duly acknowledged to me that (s)he executed the same.

_Cathedral Adams_
Notary Public
Name:
My Commission Expires:                                     (Seal)

CASEDRAL ADAMS
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 01-17-05

PREPARED BY & RETURN TO:
NationsCredit Financial Services Corporation
225 East John Carpenter Freeway
Suite 1000
Irving, Texas 76062

17629.1                              3·

SPS/RILEY 0037

Sep-01-04  '13:30  From-

T-405  P.009/010  F-928

**NATIONSCREDIT**  10401 Deerwood Park Blvd.  
Jacksonville FL 32256



Fairbanks Capital Corp.  
Loan Servicing Center  
10401 Deerwood Park Blvd.  
Jacksonville, FL 32256

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

RE:  NationsCredit Loan No:  7002274657  
Fairbanks Loan No:  7002274657

03/11/2002

**AUTO**ALL FOR AADC 360  
ROSEMARY C RILEY  
904 BROOKLAND CURV  
MONTGOMERY AL 36117-4550

130-115

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from NationsCredit Corporation to Fairbanks Capital Corp. effective April 1, 2002.

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instrument, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. In this case, all necessary information is contained in this new servicer notice.

Your present servicer is NationsCredit Corporation. If you have any questions relating to the transfer of servicing from your present servicer call (800) 944-1212 between 8:30 a.m. and 7:30 p.m. Eastern Time, Monday through Friday. This is a toll free number.

Your new servicer will be Fairbanks Capital Corp.

The business address for your new servicer is:

Fairbanks Capital Corp.  
Loan Servicing Center  
10401 Deerwood Park Blvd.  
Jacksonville, FL 32256

Please do not send payments to this address

The toll-free telephone number of your new servicer is (800) 944-1212. If you have any questions relating to the transfer of servicing to your new servicer call Customer Service at (800) 944-1212 between 8:30 a.m. and 7:30 p.m. Eastern Time, Monday through Friday.

The date that your present servicer will stop accepting payments from you is March 31, 2002. The date that your new servicer will start accepting payments from you is April 1, 2002. Send all payments due on or after that date to your new servicer. If you currently allow the automatic payment withdrawal option, your mortgage payment will continue to be withdrawn from your bank account without interruption. This service is not available for discharged or active bankruptcy accounts.

IF YOU HAVE FILED BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY: Please be advised that this statement does not represent and is not intended to be a demand for payment. This section is for informational purposes only. You should consult legal counsel regarding your obligations, if any, to pay on this mortgage loan.

** PLEASE SEE IMPORTANT NOTICE REGARDING YOUR CONSUMER RIGHTS ON THE REVERSE SIDE **

NATIONSCREDIT CORPORATION  
03/11/2002

FAIRBANKS CAPITAL CORP.  
03/11/2002

---

 **Fairbanks Capital Corp.**  
Loan Servicing Center

ROSEMARY C RILEY

FAIRBANKS CAPITAL CORP.  
REMITTANCE PROCESSING  
PO BOX 78165  
PHOENIX AZ 85062-8165

## PAYMENT COUPON

| | | |
|---|---|---|
| LOAN NUMBER | 7002274657 | NUMBER OF PAYMENTS ____ |
| PAYMENT DUE DATE | 12/25/2000 | |
| LATE CHARGE DUE DATE | 01/09/2001 | |
| PAYMENT AMOUNT | $941.64 | |
| LATE PAYMENT AMOUNT | $988.72 | |
| TOTAL LATE CHARGES DUE | $1,174.53 | $_____ |
| ADDITIONAL PRINCIPAL | | $_____ |
| ADDITIONAL ESCROW | | $_____ |
| TOTAL | | $_____ |

2771 7002274657 00094164 00098872 5



DEFENDANT'S  
EXHIBIT

3

Sep-01-04  19:39   From-

T-405  P.010/010  F-926

**IMPORTANT NOTICE**

This should state the amount of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC § 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 USC § 2605) gives you certain consumer rights. If you send a "qualified written request" to your servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

> Fairbanks Capital Corp.
> Loan Servicing Center
> Customer Service Department
> 10401 Deerwood Park Blvd.
> Jacksonville, FL 32256

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business-Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A Business Day is any day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

For Bank Use Only

| HAS YOUR ADDRESS CHANGED? |
| IF SO, PLEASE COMPLETE THIS FORM |

MAILING ADDRESS _____

CITY _____  STATE _____  ZIP _____

HOME PHONE _____  BUSINESS PHONE _____

ALL BORROWERS SIGNATURES ARE REQUIRED FOR ADDRESS CHANGE

BORROWER SIGNATURE _____  CO-BORROWER SIGNATURE _____



**Fairbanks Capital Corp.**
Loan Servicing Center
P.O. Box 551170
Jacksonville, FL 32255-1170

Page 1 of 1

# MORTGAGE LOAN STATEMENT

| | |
|---|---|
| Statement Date: | 04/16/02 |
| Loan Number: | 7002274657 |
| Interest Rate: | 8.000% |

98729    0018256
ROSEMARY C RILEY
901 BROOKLAND CURV
MONTGOMERY AL 36117-4550

| | |
|---|---|
| YTD Interest Paid: | .00 |
| YTD Date Taxes Paid: | .00 |
| YTD Principal Paid: | .00 |
| New Principal Balance: | 98,402.85 |
| New Escrow Balance: | 2,280.00- |
| New Unapplied Balance: | .00 |

※ Correct information
✗ incorrect information

## ACTIVITY SINCE YOUR LAST STATEMENT
(Payments received after the statement date do not appear.)

| DATE | DESCRIPTION | PRINCIPAL | INTEREST | ESCROW | OTHER | LATE CHARGE | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

## IMPORTANT MESSAGES

This monthly billing statement is not intended to be a payoff quote or a reinstatement figure.

The information on this statement is subject to reversal of previous payments made that may not be honored by your bank. Returned checks/drafts are subject to a processing fee unless prohibited by State Law.

**DEFENDANT'S EXHIBIT**
4

# JOHN C. CASON
## ATTORNEY AT LAW
### 4215 CARMICHAEL ROAD
### MONTGOMERY, ALABAMA 36106

**Phone: (334) 271-4543**                    **Fax: (334) 277-3628**

Number of pages in this transmission: 3 (including cover)        205 251-6773

TO: John W. Scott
RE: Rose Riley v Nations Credit, et al.

FROM: John Cason

DATE: May 13, 2002

**Dear John:**
        The following attachments were received by Rose Riley as to her new house payment. Please note the negative escrow needs to be deleted as agreed. Also since it is so late into May and the Modification has not been settled please establish the payment date to commence now on June 25,2002.
        Please let me hear when the final numbers are established

                        Sincerely

                        John C.Cason, Esq.

The communication which follows this Cover Sheet is forwarded and intended only for the use by the designated recipient. It may contain privileged information not subject to disclosure under State or Federal law. If the person or entity reading the communication is not the intended recipient, you are notified that any publication, copying or distribution of the information or message is unauthorized and prohibited. If you have received the communication in error, please contact this firm immediately and return the original message to us at the address shown above.


DEFENDANT'S EXHIBIT
5

# **Fairbanks Capital Corp.**

February 6, 2003

Rosemary C. Riley
901 Brookland Curve
Montgomery, AL 36117

Re: Account Number 7002274657

Dear Rosemary C. Riley:

Fairbanks Capital Corp. is in receipt of your inquiry regarding the above referenced account.

After reviewing our records, we have found that your account has been adjusted. As of today your principal balance is $98,003.13, your interest rate is 8.0%, there are no legal fees, and your payments have been adjusted. As of today your account is due for December 25, 2002.

Pursuant to the terms of your mortgage, the borrower is responsible for providing evidence of insurance coverage on an annual basis or as needed/requested from the Lender. If proof of coverage is not received, our Insurance Center will begin the process to secure a policy to protect our interest in the property.

Currently, you have an outstanding balance due in escrow/corporate advance for force placed insurance, in the amount of $1,710.00. This balance corresponds to the periods from November 15, 2000 to November 15, 2001, in the amount of $1,084.00, and from November 15, 2001 to May 25, 2002, in the amount of $626.00.

If you have homeowner's insurance coverage for the time periods above referenced, please fax them to the Insurance Department at 904-470-2348, attention: Sandra. Upon providing proof that you did have insurance coverage, any adjustments necessary to update your account will be made.

We appreciate the opportunity to serve your mortgage needs. If you have any questions, please do not hesitate to call our Customer Service Department at 1(800) 944-1212, Monday through Friday between the hours of 8:00 a.m. and 8:00 p.m., Eastern Standard Time.

Sincerely,
Customer Advocate Unit

**10401 DEERWOOD PARK BLVD**
**P.O. BOX 551170 • JACKSONVILLE, FL 32256**
**TELEPHONE (800) 944-1212**

**DEFENDANT'S EXHIBIT**

6

SPS/RILEY 0012

JUN 23 2003 15:54 FR NSK JAX BLVD MAIL SVC904 457 2003 TO 918012787874    P.04

54956
BDH
CG

**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**
**CONSUMER AFFAIRS SECTION**

## CONSUMER COMPLAINT FORM

11 South Union Street
Montgomery, Alabama 36130

Phone: (334) 242-7334
Fax: (334) 242-2433
(Toll Free in AL) 1-800-392-5658

(Please type or print in ink)

NATIONS CREDIT / FAIR BANKS
Name of Person or Firm Complained Against

ROSEMARY C. RILEY    49
Your Name    Age

P.O. BOX 17286
Address

901 BROOKLAND CURVE
Your Address

Baltimore, Maryland 21297-1286
City and State    Zip Code

MONTHOMERY AL. 36117
City and State    Zip Code

205-730-5169 (FAIR BANKS)
Telephone

334-273-9119  334-394-4975
Telephone (Home)    Telephone (work)

Did You Sign a Contract? YES

Date of Transaction OCTOBER 20, 1999

Name of
Salesperson LAW OFC. HUCKABY, SCOTT and DUKES for
Nations Credit

Have you told the firm of your Complaint? YES (SEE ENCLOSURES)

Product or Service
Involved MORTGAGE - refinance

Estimate of dollars Involved $ 103,615.47

How were you first contacted -- at your premises ( ); at the firm's premises ( );
telephone ( ); radio/t.v. ( ); newspaper/magazine ( ); mail solicitation ( )?

Have you consulted an attorney? YES Who? ATTORNEY JOHN CASON

Is there a court action pending? No Where? #CV-2000-2931
mediation settlement

** TOTAL PAGE.04 **

DEFENDANT'S
EXHIBIT

7

JUL-08-2003 TUE 03:58 PM    ATTORNEY GENERAL        334 353 8235            P. 20

Please explain the entire circumstances surrounding your complaint. (Attach additional sheets if necessary). Include copies of all pertinent documents such as contract, cancelled check, warranty, etc.

On Nov. 2000 I refinanced my mortgage with Nations Credit and was required to pay more than contracted. There was litigation as a result of this negligence, and a mediation agreement settlement issued. Additional complications, hardships and personal losses developed during the entire mediation process causing a breach of the mediation agreement (see enclosures). Nations Credit controlled the entire mediation process with unethical and discriminatory practices. A brief summary of the breached contract includes: No statements, Incorrect adjustments and inaccurate reporting of payments to Credit Bureaus reflecting false foreclosure status. Comments were made by attorney that they anticipated foreclosure and never changed status to update. Because of this retaliation, I am now in foreclosure status and request stay and will litigate for the unethical practices (see 8th Class Act of AFTER REVIEWING YOUR COMPLAINT AND THE STEPS YOU HAVE TAKEN TO RESOLVE IT, YOU MAY BE REFERRED    enclosed) TO A PRIVATE ATTORNEY, SMALL CLAIMS COURT OR SOME OTHER METHOD OF RESOLVING YOUR COMPLAINT.    Others

I understand that the Office of the Attorney General normally provides copies of the complaint forms or information regarding    Disparities or complaints to the business complained about and other private and public agencies. I authorize the Office of the Attorney General to    the same give copies or any information on the form to anyone deemed advisable.                                    treat-                                                                                        PCR        ment.

P.S. Additional supporting Documentation is    _____    Initial
available upon request. Thank You.
I wish to file this complaint with your office. I understand that your office does not conduct litigation for individuals in matters which involve purely private controversies. I also understand that I may lose the right to file a lawsuit because of this matter due to the possible expiration of the statute of limitation, if I wait to be acted on by the Attorney General's office. I am, however, filing this complaint to notify your office of the activities of this party and to seek any assistance you may be able to render.

Rosemary C. Riley                        MAY 24 2003
Signature of person filing complaint            Date

**PLEASE RETURN COMPLETED COMPLAINT FORM TO:**
Office of the Attorney General    MR. JEFF LONG, CHIEF DIRECTOR
Consumer Affairs Section
11 South Union Street.
Montgomery, AL 36130

JUL 08 2003 17:47                    334 353 8235        PAGE.20

SPS/RILEY 0090

*✗ Credit Denied*

Homeowners Loan
4501 Circle 75 Parkway, Suite F-6300
Atlanta, GA 30339

**You're Pre-approved! Call 1-800-813-5174 for the money and credit you deserve...**

Priority Code: 02-P26-A-385

You are one of a select group of homeowners who have been pre-approved for $20,000. See back of letter concerning pre-approved status. Actual amount of pre-approval may be more or less.

\*\*\*\*\*\*\*\*\*\*\*\*\*ECRLOT\*\*R022      *✗ Denied because of false credit bureau information.*

To the Order of     Rosemary C Riley
901 Brookland Curv
Montgomery, AL 36117-4550

for: **$20,000.00 or more**

*David Lowery*

---

Rosemary C Riley
901 Brookland Curv
Montgomery, AL 36117-4550

1-888-475-994

**You're pre-approved and we may be able to save you as much as $500 per month!**

Dear Rosemary C Riley,          Priority Code: 02-P26-A-385



Congratulations! You've been pre-approved for $20,000 or more from Homeowners Loan. Call 1-800-813-5174 and use this money to do whatever you want:

- <u>Consolidate bills</u> including high interest credit card or finance company debt to reduce your monthly payments.
- Complete <u>home improvement</u> projects you've been planning.
- Receive <u>cash out</u> for a major purchase – such as a boat, truck, car, education, a vacation, or any other reason.
- <u>Purchase</u> a new home.
- <u>Refinance</u> your mortgage and save.

What's even more exciting is that we may be able to reduce your monthly payments by $200, $300, or even $500 per month! We offer some of the <u>lowest payments</u> available.

It's simple. Just call 1-800-813-5174 now for your FREE, <u>no obligation loan consultation</u>. Our loan officers are waiting to take your calls Monday – Friday, 7:30 am to 5:30 pm.

Not only is there no cost to apply, but when you call Homeowners Loan <u>we'll make it easy for you to get your money</u>:

- <u>Regardless of your prior credit history or employment status</u> (retired, self-employed, or recent job change), we have a wide variety of programs designed to fit your specific needs;
- You can get your money with little or <u>no out of pocket expense</u>; and
- You can usually <u>get your money in less than 10 days</u>.

<u>So call 1-800-813-5174 now – this offer is only good through 1/9/03.</u> You'll be glad you called.

Sincerely,

*David Lowery*

David Lowery
Branch Manager

P.S.  Your $20,000 or more is here for the taking – call 1-800-813-5174 between 7:30 am and 5:30 pm Monday – Friday and we'll handle it from there. This is a limited time offer, so call now, or visit us on our website at www.homeownersloan.com.

EQUAL OPPORTUNITY LENDER

*"Helping homeowners achieve their dreams"*

# EXHIBIT 2
# PART 2

May 19, 2003
    Rosemary C. Riley
    901 Brookland Curve
    Montgomery, Alabama 36117
    RE: NOTICE OF ACCELERATION OF PROMISSORY NOTE AND
MORTGAGE /FORCLOSURE

    Dear Ms. Erin East,
    According to our verbal communication on May 19, 2003, I am in dispute
of the total amount $103,615.47 of loan #7002274657 and I understand that I
have thirty days upon receipt of notice dated May 5, 2003 (see enclosure#1).
Since the litigation of Riley vs. Nations Credit case # CV-01-770-R, the
Mediation Settlement Agreement was breached (see enclosure#2). As a result,
there were many discrepancies, inaccuracies, and incorrect reporting with
unresolved issues or proper closure to the mediation agreement (see enclosure#3).
As a result, there has been undue hardships and loss of funds to refinance this loan
and the publication of forclosure on May 21, 2003 in the Montgomery Advertiser
will add to the maliciousness & humiliation my family has experienced until this
dispute can be resolved. I am forwarding copies of this letter to the State of
Alabama Attorney General's office in addition to the Alabama State Bar
Association with a complaint and request to conduct a fair & thorough
investigation to follow-up and assist in bringing closure to these unresolved
differences. Your prompt attention and respond will be appreciated.
    Sincerely,
    Rosemary C. Riley

ENCLOSURE # 1

SIROTE
&
PERMUTT
A PROFESSIONAL CORPORATION

JERRY E. HELD
Attorney at Law
(205) 930-5169

May 5, 2003

Rosemary Riley
901 Brookland Curve
Montgomery, AL 36117

RE:    NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE

YOU ARE HEREBY NOTIFIED that, pursuant to the terms of the Promissory Note and Mortgage dated the 20th day of October, 1999, to NationsCredit Financial Services Corporation of Alabama, and by virtue of default in the terms of said Note and Mortgage, Nationscredit Financial Services Corporation hereby accelerates to maturity the entire remaining unpaid balance of the debt, including attorney's fees, accrued interest, and other lawful charges, and the amount due and payable as of this date is $103,615.47. This payoff amount may change on a daily basis. If you wish to pay off your mortgage, please call our office to obtain the updated figure. We are at this time commencing foreclosure under the terms of the Mortgage.

We will assume this debt to be valid unless it is disputed within thirty days after you receive this letter. If you do dispute this debt or any portion thereof, we will obtain and mail you a verification of the debt or a copy of any judgment if you send us a written request within this thirty-day period. Also, upon written request within this thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor. This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

FOR:   Nationscredit Financial Services Corporation

BY: _____
   /Jerry E. Held
   FOR THE FIRM

JRY/gbp

cc:    Fairbanks Capital Corp./Loan #7002274657

LAW OFFICES AND MEDIATION CENTERS
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727

B i r m i n g h a m    I    H u n t s v i l l e    I    M o b i l e

SPS/RILEY  0093

*EN CLOSURE #2*

BREACH OF CONTRACT MODIFICATION AGREEMENT

Date: August 28,2002
To: Attorney John C. Cason
    c.o. Nations Credit Corporation
    P. O Box 17285
    Baltimore, Maryland 21297-1285

Dear Attorney & Nations Credit Representative

Reference is made to a MODIFICATION AGREEMENT Loan # 7002274657 between us dated the month of May 2002 which the agreement provides that:

Loan Documents would be modified to reflect the Principle Amount of the Loan, to amend and reflect the current present amount of obligation with true balance of indebtedness, and the waiver of $1400.00 in insurance and late fees, and past due house payments. The note should also reflect Modification to restate Section 3 "Payments" as follows: Such principal and interest shall be payable in 360 successive monthly installments with the first such installment in the amount of $722.05 due on the 25th day of May 2002. See attachment.

PLEASE TAKE NOTICE that you are in breach of your obligations under said contract in the following particulars:
I have faithfully submitted Money Order payments in the amount of $722.05 before the 25th of each month in a timely manner since May 2002. I have yet to receive any proof of documentation, monthly statements reflecting corrections, or any follow-up that reflects the Agreed Modification Terms. What I have experienced was a total contridiction of these terms in the form of a Credit Bureau report Re: Loan Service Center, Account # 27777002274657 showing past due 60 days late foreclosure status.

You are further advised that we shall hold you responsible for all actual and consequential damages arising from your breach.

Very truly yours,

Rose C. Riley
901 Brookland Curve
Montgomery, Alabama 36117

SPS/RILEY 0094

ENCLOSURE #3

NOTICE TO CORRECT CREDIT REPORT

Date: August 28, 2002
To: Credit Bureau

Dear Manager:

I formally request that the following inaccurate items be immediately investigated. They must be removed in order to show my true credit history, as these items should not be on my report. By the provisions of 15 USC section 168Ii of the Fair Credit Reporting Act of 1997, I demand that these items be reverified and deleted from my record.

| ITEM # | COMPANY NAME | ACCOUNT # | COMMENTS |
|---|---|---|---|
| 1. | Loan Service Center | #27777002274657 | Showing 60 days late/foreclosure status. |
| 2. | Americredit | #405112004 | P&L/ repo status. |

*NOTE: There was a Mediation Settlement Agreement with both accounts, see attachments to dismiss all claims. Americredit has a Satisfaction of Judgement in the Circuit Court of Montgomery County State of Alabama Case No.: CV-01-770-R. Also, A Mediation Settlement Agreement with Riley vs. Nation Credit/Loan Service Center Civil Action No.: CV-2000-2931.

Under the Fair Credit Reporting Act, you have thirty (30) days from your receipt of this letter to reverify these entries. It should be understood that failure to reverify these items within 30 days constitutes reason to promptly drop the information from my file according to Section 168Ii (a).

Also, pursuant to 15 USC section 168Ii (d) of the Fair Credit Reporting Act, please notify me when the items have been deleted. You may send an updated copy of my credit report to the below address. According to the provisions of 15 USC section 168j, there should be no charge for this notification. Also, please send me the names and addresses of individuals you contacted so I may follow up.

Sincerely,

Rose C. Riley
901 Brookland Curve
Montgomery, Alabama 36117
S.S.# 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
D.O.B. September 11, 1953

returned

**UNITED STATES POSTAL SERVICE**     **POSTAL MONEY ORDER**

91522368450     MAY 0 6 2003     FILE  484753

SERIAL NUMBER     YEAR, MONTH, DAY     POST OFFICE     U.S. DOLLARS AND CENTS

PAY TO  Nation Credit     CHECKWRITER IMPRINT AREA     .1.622 ..

ADDRESS  P.O. Box 17285     FROM  R.C. Riley

Baltimore, Maryland 21297-1285     ADDRESS  961 Brookland Curve

C.O.D. NO.  Acct # 70622-74657     Mon. Al. 36117

SEE REVERSE WARNING     NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑈00000800⑈:     91522368450⑈     1 of 2

---

**UNITED STATES POSTAL SERVICE**     **POSTAL MONEY ORDER**

91522370384     MAY 0 6 2003

SERIAL NUMBER     YEAR, MONTH, DAY     POST OFFICE     U.S. DOLLARS AND CENTS

PAY TO  Nation Credit     CHECKWRITER IMPRINT AREA     $100 .0 .

ADDRESS  PE Box 17285     FROM  R.C. Riley

Curve, Maryland 21297-1285     ADDRESS  901 Brookland Curve

Acct # 70622741657     Mon. Al. 36117

SEE REVERSE WARNING     NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑈0800⑈:     91522370384⑈     2 of 2

SPS/RILEY 0096

*Anne*

Jerry E. Held
Attorney at Law

*May*

May 15, 2003

*206. - 930 - 5374*

**SIROTE**
— & —
**PERMUTT**
A PROFESSIONAL CORPORATION

Rosemary Riley
901 Brookland Curve
Montgomery, AL 36117

RE:    Foreclosure on Property Located at 901 Brookland Curve, Montgomery, AL 36117

We represent Nationscredit Financial Services Corporation. The mortgage loan with them is currently in default. Due to the default in the terms of the note and mortgage, we have been instructed to foreclose on the above-described property.

Enclosed is a copy of the Mortgage Foreclosure Sale publication notice to be published in the Montgomery Advertiser. The foreclosure sale is scheduled for June 17, 2003. If you wish to avoid losing the subject property, you must contact us; otherwise, the foreclosure sale will take place as set forth in the publication notice, and we will take legal action to obtain possession of the subject property.

This communication is from a debt collector.

For any information regarding this matter, please call (205) 930-5169.

Yours very truly,

Jerry E. Held
FOR THE FIRM

JRY/gbp

Enclosure

cc:    Fairbanks Capital Corp./Loan #7002274657

LAW OFFICES AND MEDIATION CENTER

2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727

Birmingham    |    Huntsville    |    Madison    |    Mobile

PUBLICATION DATES: May 21, 2003, May 28, 2003, and June 4, 2003
NEWSPAPER: The Montgomery Advertiser

## MORTGAGE FORECLOSURE SALE

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Rose C. Riley, an unmarried woman, to NationsCredit Financial Services Corporation of Alabama, on the 20th day of October, 1999, said mortgage recorded in the Office of the Judge of Probate of Montgomery County, Alabama, in Book 2047 Page 999; the undersigned NationsCredit Financial Services Corporation, as Mortgagee/Transferee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Courthouse at Montgomery, Montgomery County, Alabama, on June 17, 2003, during the legal hours of sale, all of its right, title, and interest in and to the following described real estate, situated in Montgomery County, Alabama, to-wit:

Lot 11, Block E, according to the Map of Dexter Ridge, Plat No. 5, as said Map appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 43, at Page 158.

Property street address: 901 Brookland Curve, Montgomery, AL 36117

THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, SUBJECT TO ANY EASEMENTS, ENCUMBRANCES, AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF THE JUDGE OF PROBATE OF THE COUNTY WHERE THE ABOVE-DESCRIBED PROPERTY IS SITUATED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The Mortgagee/Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate.

SPS/RILEY 0098

This sale is subject to postponement or cancellation; contact Jerry E. Held at the phone number shown below prior to attendance at sale.

Nationscredit Financial Services Corporation, Mortgagee/Transferee
Jerry E. Held
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, AL. 35255-5727
Attorney for Mortgagee/Transferee
(205) 930-5169

SPS/RILEY  0099

experian

DEFENDANT'S EXHIBIT

## Correction Summary

Prepared for:
Report number:
395246 6704

Experian
NCAC
P.O. Box 9595
Allen TX 75013

Page 1 of 2

### About our verification process

The following shows the revision(s) made to your file as a result of our verification.

If you still question an item, then you may want to contact the source of the information personally.

The federal Fair Credit Reporting Act states that you may:

-- request a description of how we verified the information, including the business name and address contacted and the telephone number, if reasonably available;
-- add a statement disputing the accuracy or completeness of the information; and
-- request that we send these results to organizations who have reviewed your report in the past two years for employment purposes or six months for any other purpose (twelve months for residents of Colorado, Maryland, and New York).

If no information follows, our response appeared on the previous page.

|||.|I..||.||..||.|II.|.|.|....|IIII.I.I....|IIIII...|II.I..II.||.I|
••••••••••••••• MIXED AADC 683
0025800  1 MB 0.309 L 434
ROSE C RILEY
901 BROOKLAND CURV
MONTGOMERY AL 36117-4550
|..||.I|I...||..II...|II|..I.|.I.|.|.I.|.|.I|I...|I...|||..|I

### Items we Investigated

**Items**      **Outcome**

**Public records**

MONTGOMERY COUNTY CRT DC    *Updated*
5YY9800....

MONTGOMERY COUNTY CRT DC    *Remains*
5YY9800....

**Credit items**

AMERICREDIT      *Remains*
4051 /....

FAIR BANKS CAPITAL COR    *Remains*
277700227....

### If you have questions

Locate your Report Number, then contact us in one of the following ways:

For efficient, self-directed service, log on to www.experian.com/consumer and select **Request an Investigation.**

For assistance, call **800-583-4080** M - F 9am - 5pm in your time zone.

Information is updated frequently, so you should **contact us within 90 days** from the date on this report.

**To order a copy of your Experian Credit Score Report, call 1 888 322 5583.**

**Protect and manage your credit with Credit Manager** ℠ www.creditexpert.com/protect.

700 2274 657

# FAIRBANKS CAPITAL CORP.

August 6, 2003

Ms. Barbara D. Armstrong
Consumer Specialist
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130

    Re:   Fairbanks Loan No. 7002274657
         Rosemary Riley
         File No. 54956

Dear Ms. Armstrong:

Fairbanks is in receipt of your June 19, 2003, letter, regarding an inquiry submitted by Rosemary Riley. We understand Ms. Riley has authorized us to communicate directly with you regarding her mortgage loan. In her inquiry, Ms. Riley raised issues regarding:

- Fairbanks' compliance with the terms of her settlement agreement.
- Explanation for foreclosure proceedings.
- Explanation for payment not posted to her account.
- Explanation for fees and charges to her account.
- Concern about negative credit reporting.

Fairbanks appreciates Ms. Riley's concerns, and we want you to know that we take this matter very seriously. We have investigated the matters she raised, and would like to present the results of our research of her account.

## Fairbanks' compliance with the terms of her settlement agreement

On October 20, 1999, Ms. Riley originated a loan with Nations Credit in the amount of $98,957.00, in order to refinance her home. At the time of the origination, a number of problems arose, leading to litigation between Nations Credit and Ms. Riley. To resolve these problems, Nations Credit proposed a settlement agreement with Ms. Riley in February 2002. Under this agreement, the terms of Ms. Riley's Note would be modified. On April 1, 2002, Ms. Riley's loan transferred from Nations Credit to Fairbanks. Under the settlement agreement mentioned above, Ms. Riley's first payment was to be submitted in May 2002. However, the settlement agreement was not officially executed until June 28, 2002, resulting in the issues that will be discussed below.

The settlement agreement provided for a modification of Ms. Riley's Note, a copy of which is enclosed for your review. The modification included the following terms: (1) principal balance reduced from $98,957.00 to $98,402.85; (2) interest rate reduced from 10.99% to 8.00%; (3) 360 successive monthly installments at $722.05 each, beginning with her May 25, 2002

3815 SOUTH WEST TEMPLE · SALT LAKE CITY, UTAH 84115-4412
P.O. Box 65250 · SALT LAKE CITY, UTAH 84165-0250
TELEPHONE (801) 293-1883 · FACSIMILE (801) 293-1297

DEFENDANT'S
EXHIBIT

9

Ms. Barbara D. Armstrong
August 6, 2003
Page 2

payment; (4) final payment of $722.05 to be due on April 25, 2032. In addition, the modification stated that Ms. Riley's loan will be assumable. These modifications were completed on June 28, 2002.

As stated in the settlement agreement, Ms. Riley was to submit her first payment on May 25, 2002. Fairbanks did not receive this payment until June 19, 2002, at which time we placed this amount in unapplied funds. On June 24, 2003, these funds were applied to existing escrow advances on Ms. Riley's account. On June 27, 2002, we received Ms. Riley's payment of $722.05, which was also placed in unapplied funds. These funds were applied to late fees on July 31, 2002. These late fees should have been waived under the modification. A third payment of $722.10 was received on August 21, 2002, and once again placed in unapplied funds.

On August 28, 2002, Fairbanks became aware of the improperly applied payments, and the fact that we had failed to waive late fees under the modification. To resolve these problems, we reversed the three improperly posted payments, and reposted them as the May 2002, June 2002 and July 2002 monthly payments. We also waived late fees totaling $1,221.96 on August 29, 2002. On September 13, 2002, we received a payment of $722.05, which was posted as Ms. Riley's August 25, 2002 payment. She continued to be a month behind on her payments for the next three months.

On December 10, 2002, Fairbanks determined that Ms. Riley's payments should be "rolled" forward one month. In other words, because the settlement agreement was not signed until June 2002, we determined that Ms. Riley should not have been required to make her May 2002 payment. The due dates for all of the payments were bumped forward, leaving her due for her December 25, 2002 payment, rather than her November 25, 2002 payment. Ms. Riley's maturity date did not change as a result of this action, and her final monthly payment is still due on April 25, 2032.

Explanation for foreclosure proceedings

As of March 5, 2003, Ms. Riley's account was two months delinquent, and due for her January 25, 2002 payment. Fairbanks sent Ms. Riley a demand letter on March 5, 2003, requesting all payments in arrears and informing her of possible foreclosure unless she submitted the requested funds or contacted us about establishing a repayment plan. Ms. Riley did not contact us or submit the requested funds. As a result, her account was referred to foreclosure on April 24, 2003. As of today, Ms. Riley's is seven months delinquent, being due for her January 25, 2003 payment. Foreclosure proceedings have been placed on hold as a result of the current dispute.

Explanation for payment not posted to her account

As discussed above, Ms. Riley's account was referred to foreclosure on April 24, 2002. On May 6, 2002, we received a payment in the amount of $722.05, which was subsequently returned because it was less than the total amount due to reinstate her loan. Fairbanks does not accept payments that are less than the total reinstatement amount, unless the customer has previously made repayment arrangements. If, after reviewing the enclosed Key Loan Transactions summary, Ms. Riley continues to feel that payments were not correctly posted to

SPS/RILEY 0064

Ms. Barbara D. Armstrong
August 6, 2003
Page 3

her account, we encourage her to send in copies of the front and back of the cancelled checks for the payments in dispute and we will be happy to research these matters further and adjust her account as warranted.

## Explanation for fees and charges to her account

As a result of the improperly posted payments discussed above, Ms. Riley's account was showing as three months delinquent in August 2002. As a result, a Broker Price Opinion ("BPO") was automatically ordered on her property on August 22, 2002, in the amount of $105.00. Fairbanks waived this charge on August 5, 2003. After "rolling" her payments on December 10, 2002, we also waived a late charge that accrued to her account on November 11, 2002. A second late charge that was assessed on December 10, 2002 was waived on August 5, 2003.

Finally, I have contacted Ms. Riley's insurance company and they are going to fax a copy of the declaration page for the period of May 25, 2002 through May 25, 2003; upon receipt, the escrow advances for that period will be reimbursed to her account. Currently, we have Ms. Riley's proof of insurance coverage during the period from May 25, 2003 through May 25, 2004, and funds are not being escrowed on her account.

## Concern about negative credit reporting

A review of Ms. Riley' account confirms that we correctly reported her account status to the credit reporting agencies during the period from September 2002 through August 2003. Many of these months reflect delinquencies because Ms. Riley was not making her payments in a timely manner. However, Fairbanks has requested that the credit reporting agencies to which we report correct Ms. Riley's credit report to reflect "good standing" for the months of June 2002, July 2002 and August 2002.

As noted above, Ms. Riley is currently due for her January 25, 2003 payment. Fairbanks' goal is to help as many customers as possible maintain ownership of their homes. We have a number of options available to those that are behind on their payments. We encourage Ms. Riley to contact us to establish a repayment plan that will allow her to keep her home while bringing her account current. She may contact me directly at (800) 293-5117 ext. 46134.

We appreciate this opportunity to respond to Ms. Riley's concerns. However, should you have any further questions, please contact me at (800) 293-5117 ext. 46134.

Sincerely,

Travis Turley/mc

**Travis Turley**
Consumer Advocate

## THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

Ms. Barbara D. Armstrong
August 6, 2003
Page 4

Enclosures:    Key Loan Transactions summary
               Settlement Agreement
               Modification Agreement
               Credit Correction letter

cc:            Ms. Rosemary Riley
               901 Brookland Curvo
               Montgomery, AL 36117

SPS/RILEY 0066

Key Loan Transactions
Between RILEY
Loan No. 7002274467

SPS/RILEY 0079



# Fairbanks Capital Corp.

August 6, 2003

Rosemary Riley
901 Brookland Curve
Montgomery, AL 36117

Re: Account Number: 7002274657

Dear Rosemary Riley:

Thank you for contacting Fairbanks Capital Corp. about information contained in your
credit bureau report that was provided by Fairbanks Capital Corp. We have reviewed your
account information, and we have requested that each credit bureau reporting agency to
which we report (Transunion, Experian, Equifax, and Innovis) update your file as
follows:

Remove delinquencies for June through August 2002

Please allow 30 to 60 days for the corrected information to reflect on your credit bureau
file. Please keep this letter for your file. If the need arises, this letter may be shown to a
prospective lender to confirm the correction to the above referenced account number
being taken by Fairbanks Capital Corp. Fairbanks Capital Corp. does business as the
Loan Servicing Center and LSC and reports to the four major reporting agencies using the
trade line The Loan Servicing Center or LSC. If you have further questions or need
assistance, please send inquiry to Fairbanks Capital Corp. at the address below.

Sincerely,
Diane Bailey
Credit Bureau Liaison

10401 Deerwood Park Blvd
Jacksonville, FL 32256
1-800-258-8602

DEFENDANT'S
EXHIBIT

/0

SPS/RILEY 0013




## Thank you

Homepage

Frequently asked
Questions

Terms of Service

Privacy Policy

About the Company

Thank you for submitting your complaint to Online Legal Services Ltd.

Your case number is **231157**. You can track the status of your complaint at any time by visiting http://www.bigclassaction.com/mycase.html and entering your case number.

If you know of anyone else with a similar complaint, **please encourage them to register** it at www.BigClassAction.com.

Please note that we are not offering any opinion whatsoever concerning the merits of any claim you might have.

We encourage you to also contact other counsel if you intend to pursue any claims, and you should do so promptly to avoid having your case barred by the statute of limitations.

**World Health Survey**

If you take prescription drugs and wish to register any side effects you have experienced, or if you wish to register to participate in a paid clinical trial, please visit WorldHealthSurvey.com.

© 2001-2003 BigClassAction.com. All Rights Reserved.



DEFENDANT'S
EXHIBIT

11

http://www.bigclassaction.com/cgi/complaint.cgi

5/23/2003

Possible Class Action: Submit your complaint.





Homepage ‣ Register

## Register

Email this page friend.

Homepage

Search

About the Company

Frequently Asked
Questions

Terms of Service

Privacy Policy

Fairbanks Capital, Alleged unethical business practices.

If you feel you qualify for damages or remedies that might be
awarded in this possible class action please fill out the form below.

**If your injustice does not match the complaint described
above, please <u>click here</u> to register your complaint. Thank
you.**

**Your Injustice**
Fields marked ˙ are required.

| | |
|---|---|
| Defendant: | **Fairbanks Capital** |
| Date of injustice: | May 25, 2002 |
| ˙ Title: (describe the nature of your complaint in one short sentence) | Inaccurate credit bureau reporting showing 60 days late/foreclosure status on a current account. |
| ˙ Details of complaint (briefly describe the damages you have suffered) | Undo hardships & stress resulted in loss of funds to refinance this loan with several mortgage companies.    Forced Mortgage Forclosure with no payment statements and an untimely notice. |
| Please list the documents you have to support your case: | 1.Copies of money order payments as proof of current status. 2.Certified letters to major credit bureaus requesting correction with no success. 3.Copy of correction letter |
| Know others with similar complaint? | ⦿ Yes   ○ No |

**Your information**
Fields marked ˙ are required.

| | |
|---|---|
| ˙ First name: | Rosemary |
| ˙ Last name: | Riley |
| Email address: | roserier@knology.net |
| ˙ Confirm email: | roserier@knology.net |

Possible Class Action: Submit your complaint...

| | |
|---|---|
| * Day time phone: | 334-394-4975 - work |
| Evening phone: | 334-273-9119 - home |
| Fax: | cell-334-467-3215 |
| * Address: | 901 Brookland Curve |
| * City: | Montgomery |
| * State/Prov: | Alabama ▾ |
| * Country: | United States ▾ |
| Zip/Postal Code: | 36117 |
| How did you find this website? | Referral from a friend ▾ |

**DISCLAIMER:**
**By submitting this form you are agreeing to the following:**

1. You confirm that the information you have provided is true and accurate, and not given for the purpose of harassment.
2. You acknowledge that you are not engaging Online Legal Services Ltd. to give you legal advice.
3. You agree that Online Legal Services Ltd. may forward this information to an attorney or law firm, and that they may contact you at the address and contact numbers that you have supplied.
4. You agree that Online Legal Services Ltd. is in no way responsible for the advice, actions or inactions of the attorneys or law firms that may contact you.
5. You understand that registering a complaint on this website in no way implies an attorney-client relationship or attorney-client privilege.
6. You understand that use of the information you submit on this site is governed by our Privacy Policy.
7. You understand that Online Legal Services Ltd. in no way guarantees any satisfaction, justice or compensation for your complaint.
8. You understand that Online Legal Services Ltd. does not offer any opinion whatsoever concerning the merits of any claim you might have, and encourages you to also contact other counsel if you intend to pursue any claims, which you should do promptly to avoid having your case barred by the statute of limitations.

Please read our complete Terms of Service.

* ☑ I have read and agree to the Disclaimer and Terms of Service.

Submit

© 2001-2003 Online Legal Services Ltd. All Rights Reserved.



Possible Litton Loan ServicesClass Action. Submit your complaint...





Homepage → Register

## Register

Homepage

Search

About the Company

Frequently Asked
Questions

Terms of Service

Privacy Policy

*2nd FAIRBANKS*

Litton Loan Services in Texas is allegedly forcing people into foreclosure even though they have paid their mortgage payments regularly. Among other things, they allegedly return payments in order to add fees and court costs and force foreclosure.

If you feel you qualify for damages or remedies that might be awarded in this possible class action please fill out the form below.

**If your injustice does not match the complaint described above, please click here to register your complaint. Thank you.**

Email this page friend.

**Your injustice**
Fields marked * are required.

Defendant:  **Litton Loan Services**

Date of injustice:

* Title:
(describe the nature
of your complaint
in one short sentence)

* Details of complaint
(briefly describe the
damages you have
suffered)

Please list the documents
you have to support your
case:

Know others with similar       ○ Yes    ○ No
complaint?

**Your information**
Fields marked * are required.

* First name:

* Last name:



### USA v. Fairbanks Capital Corp.

Alanna L. Curry, et al. v. Fairbanks Capital Corp.
Claims Administration Center, c/o Gilardi & Co. LLC
P.O. Box 808054, Petaluma, CA 94975-8054

### CLAIM FORM – LATE FEES/DEFAULT RELATED FEES

**Please Do Not Use Red Ink, Pencil or Staples**

232903      FTCFBK-13257301-6

ROSEMARY C RILEY
901 BROOKLAND CURY
MONTGOMERY AL 36117-4550

**Claim No.:**   **13257301**

Fairbanks has charged you    **$555.47**
for late fees and certain other
default-related fees

|..||..||....||....|||....|..|.|.|.|.|.|...||....||....|||....|||....||

As described in the Notice of Proposed Class Action Settlement, you are eligible to receive a settlement payment that will refund some of the late fees and other default-related fees you paid in connection with your mortgage loan(s) serviced by Fairbanks on or after January 1, 1999. As the Notice explains, the court has not yet given final approval to the settlement; if the court does not approve the settlement, there will be no refunds issued.

The amount shown above is the total amount of late fees and other default-related fees Fairbanks has charged you in this time period, less the amount of any refunds of those fees. Not all of these fees were illegal, but the lawsuits alleged that some of the fees were illegal. For example, Fairbanks allegedly charged late fees even when borrowers made their mortgage payments on time, or charged duplicative or unnecessary default-related fees. Your settlement payment will be a portion of the total amount Fairbanks has charged you. The amount you will receive will depend on the number of claim forms submitted and will reflect a percentage of the amount you paid.

To receive a settlement payment, you and any co-borrowers on the loan(s) must sign this form below. **In addition, you must return this form to the Claims Administration Center at the above address, postmarked no later than April 24, 2004.** A return envelope is enclosed for your convenience.

By signing below, you and any co-borrowers on your loan(s) affirm that you believe that some of the late fees or other default-related fees that Fairbanks charged you were improper, and that you would like to receive a settlement payment. As consideration for a settlement payment, you and any co-borrowers on your loan(s) agree to release Fairbanks and related entities from all claims with respect to the servicing of your loan(s) through December 10, 2003, as set forth in the Settlement Agreement in the *Curry* action.

**IMPORTANT: You and all co-borrowers on the loan(s) must sign here to make a claim.**

_____

(Signed)

_____

(Signed)

If your address is different from what appears above, please write any changes in the boxes provided below:

Address

_____

_____

City                                 State     Zip Code

If you have any questions regarding the claims process, please call Gilardi toll-free at 800-377-1287, or visit its website at www.gilardi.com/fairbanks.

**IMPORTANT INFORMATION ON THE OTHER SIDE OF THIS DOCUMENT.**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

FAIRBANKS CAPITAL CORP. and
FAIRBANKS CAPITAL HOLDING CORP.,

        Defendants.

Civil Action No. 03-12219-DPW

ALANNA L. CURRY, *et al.*, individually and on behalf
of all others similarly situated,

        Plaintiffs,

        v.

FAIRBANKS CAPITAL CORP.,

        Defendant.

Civil Action No. 03-10895-DPW

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND SETTLEMENT HEARING

TO    CERTAIN PERSONS WHOSE MORTGAGE LOANS WERE SERVICED BY FAIRBANKS CAPITAL CORP.

### THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY!

Usted puede ser elejible para recibir una compensacion.
Para obtener informacion en espanol, llame sin cargo al 877-377-1287.

| | | | |
|---|---|---|---|
| 1 | Why should I read this Notice? | 9. | Who represents the Plaintiffs? |
| 2 | What are these lawsuits about? | 10. | What are the Counsels' reasons for Settlement? |
| 3. | Who is covered by the proposed Settlement? | 11. | Will Plaintiffs' Counsel or Other Borrowers Receive Compensation? |
| 4. | What are the terms of the proposed Settlement? | 12. | What claims will be released under the Settlement? |
| 5. | How will the Settlement Fund be Distributed? | 13. | What if the Settlement is not approved by the Court? |
| 6. | What do I need to do to participate in the Settlement? | 14. | Where do I get additional information? |
| 7. | Can I exclude myself from the Settlement? | 15. | What are the relevant dates? |
| 8. | Why, when and where will a Fairness Hearing be held? | | |

## 1. WHY SHOULD I READ THIS NOTICE?

This Notice has been mailed to you because Fairbanks' records show that you had a home mortgage loan that was serviced by Fairbanks between January 1, 1999 and December 10, 2003 (the "class period"), and that you fall within the proposed class of consumers in this case. The proposed class of consumers is further discussed in Section 3 of this Notice. Therefore, you (and any co-borrowers on your loans) may be eligible to receive money from a proposed settlement (the "Settlement") of a Federal Trade Commission (the "FTC") lawsuit and class action lawsuit filed against Fairbanks. Please share this Notice with any co-borrowers on your loans.

This Notice describes the FTC and private lawsuits against Fairbanks, your rights under the proposed Settlement, and the date and time of a public Fairness Hearing that will be held by the United States District Court in Boston to consider the fairness of the proposed Settlement. Although the Fairness Hearing will be held in a Massachusetts court, the proposed Settlement covers persons nationwide.

## 2. WHAT ARE THESE LAWSUITS ABOUT?

These lawsuits concern Fairbanks' conduct in handling mortgage loans, a process known as servicing the loan. The major focus of these lawsuits involves how Fairbanks serviced loans that were in default or that it treated as being in default. If borrowers do not make their mortgage payments on time, or otherwise do not perform their duties under the loan, the mortgage company frequently takes various actions in response, such as imposing late fees and other charges, obtaining insurance on the property securing the mortgage, and foreclosing on the property itself. The lawsuits generally allege that Fairbanks assessed late fees and other charges even though borrowers' monthly payments were not late; charged fees that were not authorized; obtained property insurance at the borrower's expense when the borrower already had insurance in place; engaged in improper collection practices; and took actions to foreclose on borrowers' properties when not warranted by law or contract.

The lawsuits also involve allegedly improper "prepayment penalties." These are fees provided for in the borrower's mortgage or note that a lender can impose when a borrower pays off his or her loan (usually because of a refinancing) before a specified period of time has elapsed. Some state laws restrict when and how a lender may impose prepayment penalties on borrowers. The lawsuits allege that Fairbanks violated those state laws or the mortgage terms in certain circumstances. The lawsuits also concern certain other alleged misconduct by Fairbanks.

The lawsuits were filed by the FTC and various individual borrowers, including representative borrowers suing on behalf of statewide or nationwide classes (the "Plaintiffs"). The lawsuits seek money damages and other relief from Fairbanks and certain companies that Plaintiffs believe have responsibility for Fairbanks' conduct.

There are now two main cases. First, on November 12, 2003, the United States, acting on authority of the FTC and the Department of Housing and Urban Development, filed a complaint ("FTC Complaint" or "FTC Case") against Fairbanks and an affiliate. The FTC Complaint charges that Fairbanks' loan servicing practices violated Section 5 of the Federal Trade Commission Act, the Fair Debt Collection Practices Act and other laws.

Second, at about the same time, the Plaintiffs filed a Consolidated Class Action Complaint in the Curry case ("National Class Case"). The National Class Case alleges that Fairbanks violated the Fair Debt Collection Practices Act and engaged in other wrongdoing in loan servicing. The National Class Case includes various claims previously made in a number of other class action lawsuits filed in various courts.

Fairbanks has agreed to settle both the National Class Case and the FTC Case, on certain terms that are summarized in this Notice. On November 12 and 14, 2003, the FTC and Plaintiffs submitted to the Court separate but related proposed settlements. The complete details of the proposed settlement of the National Class Case are contained in a "Settlement Agreement and Release" (the "Settlement Agreement"), on file in the National Class Case. The complete details of the proposed settlement of the FTC Case are contained in a "Stipulated Order" (the "FTC Order") that the Court has preliminarily approved and which is on file in the FTC Case. The proposed Settlement of the National Class Case must be finally approved by the Court, and, subject to the terms of the Settlement Agreement and the FTC Order, the proposed Settlement will become effective only if the settlement of the National Class Case and the FTC Case are both finally approved by the Court.

The Court has preliminarily approved the Settlement as fair, reasonable and adequate. At the Fairness Hearing on May 12, 2004, the Court will consider whether the Settlement should be finally approved.

## 3. WHO IS COVERED BY THE PROPOSED SETTLEMENT?

According to Fairbanks' records, you are a member of the Class and you are covered by the Settlement. The Class includes all persons whose loans were serviced by Fairbanks during the class period that meet any one or more of these criteria: (a) the borrowers' loans were in default or Fairbanks treated their loans as in default, and the borrowers were charged late fees and/or default-related fees or were affected by default-related conduct; (b) Fairbanks imposed a prepayment penalty in violation of law or contract; or (c) Fairbanks took other actions affecting the borrowers' loans, such as mailing in tax payments late but charging borrowers a penalty, all as listed in the Consolidated Class Action Complaint. The actual class definition may be found in the Complaint and Settlement Agreement in the National Class Case.

## 4. WHAT ARE THE TERMS OF THE PROPOSED SETTLEMENT?

The following is only a summary of the terms and conditions of the proposed Settlement. For more information, you may obtain a copy of the Settlement Agreement and/or the FTC Order by writing to the Claims Administration Center, whose name and address is listed in Section 6 of this Notice.

The Settlement involves three forms of relief:

A. There will be a $40 million redress fund for the benefit of certain members of the Class (the "Redress Fund"). The FTC will be in charge of administering the Redress Fund. Under the Settlement Agreement and the Stipulated Order, the Redress Fund will be distributed among Fairbanks borrowers (1) whose loans were in default (or treated incorrectly by Fairbanks as if in default) and the borrowers were charged late fees and/or default-related fees or were affected by

2

fault-related conduct, or (2) who paid a prepayment penalty in violation of law or contract. Section 5 of this Notice sc   details of how the Fund is to be distributed.

B. Fairbanks will provide automatic loan credits or make refunds in order to reverse certain charges on loan counts (the "Reverse or Reimburse Program"). The charges that will be reversed are: charges for forced placed hazard surance where the borrower already had insurance on the home (together with resulting late charges and default-related es); charges for penalties (or excess interest) on property taxes where Fairbanks made a late payment from escrowed ids (together with resulting late charges and default related fees); charges for inspections and appraisals that were not mpleted; and certain interest charges that were wrongly calculated. It is estimated that the value of these payments d account credits will be approximately $7 million.

C. Fairbanks will implement a number of significant changes in how it operates, and Fairbanks has agreed to expand d improve its programs for resolving disputes and for assisting borrowers with plans to resolve loan delinquencies in der to avoid foreclosure. The FTC and Plaintiffs believe that these changes will improve Fairbanks' business practices provide significant benefits and protections for consumers whose loans are serviced by Fairbanks.

The proposed Settlement will only become effective if approved by the Court. If the proposed Settlement is approved, Court will enter a judgment that releases and discharges Fairbanks and certain other persons from certain claims ich were or could have been asserted against them. The release is further discussed in Section 12 of the Notice.

## 5. HOW WILL THE SETTLEMENT FUNDS BE DISTRIBUTED?

**A. Redress Fund.** The Redress Fund will be distributed to Class Members who make timely, valid claims and do not iely exclude themselves from the Settlement. The formula for distribution will be determined by the FTC. In summary, Redress Fund will be divided into two components.

(1) One component, which is estimated to involve $35 million, will be paid out as follows: If you are a Class Member ose loan was ever in default (or Fairbanks treated it that way), you will be eligible to receive money from the Redress nd in proportion to the amount of money in late fees and default-related fees that you paid or were assessed to ur loan account or other harm that you suffered from Fairbanks' default-related conduct. These fees will not include is that will be separately reimbursed through the Reverse or Reimburse Program (see below).

The amount of money you receive from this part of the Redress Fund will depend on the amount of late fees and other fa  ated fees you paid or was charged to you, or other harm, less any refunds, and on the number of consumers o pu icipate in the Redress Fund. Every Class Member who was harmed and that files a timely, valid claim will eive at least some distribution from the Redress Fund. The FTC expects that the total amount paid or charged Class mbers who choose to participate in the Redress Fund, plus the amount of harm alleged as a result of wrongful eclosures, will exceed the amount in the Redress Fund. In that case, Class Members will be paid on a pro rata basis; t is, the money you receive will be equal to only a portion of your loss. For example, if the charges paid or assessed all consumers who participate in the Redress Fund (and do not make a claim for wrongful foreclosure) totals twice the e of the Redress Fund, a borrower who paid $200 in fees would expect to receive a redress payment of only $100, or % of the full amount. (This is only an example; the amount you receive from the Redress Fund could be greater or aller).

In addition, if you are a Class Member who paid an improper prepayment penalty, you will be eligible to receive a refund of ortion of any amount of the prepayment penalty that was in violation of law or contract from this redress fund. If your claim an improper prepayment penalty is accepted, the amount you will receive will depend on the number of valid claims mitted, but it will be at least $200 (or the amount that you paid for your prepayment penalty, if it is less than $200).

(2) The second component, which is estimated to involve $5 million, will be distributed to persons whom it is ermined have lost their homes to foreclosure as a result of improper loan servicing conduct by Fairbanks. Class mbers who have lost their homes to foreclosure may make a claim against both portions of the Redress Fund.

In order to receive any money from the Redress Fund, you may not exclude yourself from the Settlement and I will need to submit a claim form and execute a release as enclosed in this mailing. You may have received re than one claim form depending on your circumstances. If so, you should complete and submit each form which you want to make a claim. Further details on how to make a claim are in Section 6 of this Notice. Joint rowers, such as a husband and wife, will receive only a single redress payment per loan. Borrowers who had more n one loan will be eligible for a redress payment for each loan.

Ultimately, class members who make timely, valid claims will receive their money by check. The check will come from Redress Fund and not Fairbanks directly.

**B. Reverse or Reimburse.** If the Settlement is approved, Fairbanks has agreed to reimburse certain charges in full or  sly paid) or to reverse such charges (to the extent they remain pending on consumers' accounts without ment). Reimbursement, where applicable, will be in cash, regardless of whether the loan is still serviced by Fairbanks. "Reverse or Reimburse" Program applies to: 1) hazard insurance charges imposed by Fairbanks when the borrower

3

had an existing policy of hazard insurance. "Follow on" charges, such as late payment fees and other delinquency-related fees that resulted from the improper insurance charges will also be "reversed or reimbursed"; 2) tax penalties and/or interest and follow on charges resulting from Fairbanks' failure to make timely tax payments from escrowed funds; 3) property appraisal and inspection fees for brokers' price opinions and inspections that were not completed due to reinstatement or payoff; 4) excess interest collected at payoff and not previously refunded; and 5) excess interest collected due to rounding errors. **The benefits of the Program will not be given to persons who choose to exclude themselves from the Settlement.**

If you are eligible for these benefits, and if the Settlement is approved, you will receive separate correspondence or notice of the benefit from Fairbanks. In connection with items no. 1 and no. 2 listed above, Fairbanks may have information sufficient to determine that you were charged improperly and will therefore reverse or reimburse such improper charges without further action by you. If necessary information is not available to Fairbanks, Fairbanks will allow you an opportunity to submit additional information about your property insurance coverage or real estate tax penalties during the relevant period. If you do so, the appropriate amount will be reimbursed. **There is no claim form for this process.**

*C. Practice Changes.* If the Settlement is approved, the practice changes will be put into effect by Fairbanks and will apply to all borrowers whose loans are serviced by Fairbanks.

# 6. WHAT DO I NEED TO DO TO PARTICIPATE IN THE SETTLEMENT?

If you want to apply for a share of the Redress Fund, you need to complete the Claim Form(s) attached to this notice and mail it (or them) to the Claims Administration Center, Gilardi & Co., P.O. Box 808054, Petaluma, CA 94975-8054. **All Claim Forms must be postmarked by April 24, 2004; if you submit a Claim Form that is postmarked after April 24, 2004, it will be denied but you will still be bound by the Settlement.**

If you believe you are eligible to participate in the Redress Fund and you did not receive a claim form and wish to make a claim, contact the Claims Administration Center by writing to them at Gilardi & Co., P.O. Box 808011, Petaluma, CA 94975-8011, and they will provide you a claim form to submit. As noted above, there is no claim form for the Reverse and Reimburse Program.

If you do not submit a claim form (and the Settlement is approved), you will still benefit from the changes in Fairbanks' future practices. You will also benefit automatically if your loan falls within the Reverse or Reimburse Program described in Section 5 of this Notice.

If you change your address, please notify the Claims Administration Center by writing to them at Gilardi & Co., P.O. Box 808011, Petaluma, CA 94975-8011.

**NOTE:** YOUR OBLIGATION TO MAKE PAYMENTS ON YOUR CURRENT LOAN IS NOT AFFECTED BY THIS SETTLEMENT.

# 7. CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?

Yes. If you exclude yourself from the Class, you will not receive any payment from the Redress Fund, you will not receive anything through the Reverse or Reimburse Program, and you will not be bound by the Final Order and Judgment which may be entered in these cases. You will be free to pursue whatever legal rights you may have by pursuing your own lawsuit arising out of Fairbanks' practices at your own risk and expense.

To exclude yourself from the Class, you must send a Request for Exclusion by first-class mail, postage prepaid, to the Claims Administration Center, Gilardi & Co., P.O. Box 808011, Petaluma, CA 94975-8011. Your Request for Exclusion must be in writing and postmarked by April 9, 2004. The Request for Exclusion must include: (a) your name, address, telephone number and the last four digits of your social security number; (b) your Fairbanks loan number(s); (c) a statement that you and all other borrowers named on your promissory note are seeking exclusion; and (d) your signature and the signature of all other borrowers named on the promissory note. If you are acting on behalf of another person or entity, your Request for Exclusion also needs to include documentation (such as a power of attorney) sufficient to show your authority to act on behalf of that person or entity. If the Request for Exclusion is not timely submitted, you will be included in the Class and you will be eligible to receive settlement benefits. You also will be legally bound by the proposed Settlement (if it is approved), including the provisions releasing Fairbanks and certain parties, as more fully described in the Settlement Agreement.

# 8. WHY, WHEN AND WHERE WILL THE FAIRNESS HEARING BE HELD?

A hearing on whether to grant final approval of the Settlement will be held before the Honorable Douglas P. Woodlock of the United States District Court for the District of Massachusetts, on May 12, 2004 at 2:30 P.M. in Courtroom One, John Joseph Moakley Courthouse, One Courthouse Way, Boston, Massachusetts (the "Fairness Hearing"). There is no need for you to attend the Fairness Hearing if you simply wish to benefit from the proposed Settlement. The purpose of the Fairness Hearing shall be to determine, among other things: (a) whether the terms and conditions of the Settlement are fair, reasonable and adequate, (b) whether the National Class Case should be certified as a class action and the individual representative plaintiffs in the National Class Case (the "Named Plaintiffs") are adequate representatives of the Class, (c) whether Plaintiffs' Counsel are

entitled to attorneys' fees and, if so, how much, and (d) whether the Final Order and Judgment should be entered dismissing ᵗᴴᵉ National Class Case with prejudice and on the merits against the Plaintiffs and all Class Members of the Class (except for ʲˢᵉ persons who timely and properly request to be excluded from the settlement).

The Court has the power to adjourn or reschedule the Fairness Hearing from time to time without further notice of any kind.

At the hearing, the Court will consider the statements of the parties and the FTC, and any objections that have been made. Any Class Member who has not filed a timely written Request for Exclusion has the right to object to the proposed Settlement. If you want to object, you must file a written objection with the Court not later than April 9, 2004 with the Civil Clerk's Office, United States District Court for the District of Massachusetts, John Joseph Moakley Courthouse, One Courthouse Way, Boston, MA 02110. All persons wishing to object must also send a copy of their written objection to Plaintiffs' Co-Lead Counsel, Defendants' Counsel, and FTC Counsel (listed below). The objection must contain your name, address and telephone number; a statement that you object; a specific statement explaining why you object to the Settlement; and copies of all documents you wish the Court to consider.

Any Class Member or his/her attorney intending to appear at the Fairness Hearing must (i) file a notice of appearance with the Clerk of Court no later than April 9, 2004, and (ii) serve same on Plaintiffs' Co-Lead Counsel, Defendants' Counsel, and FTC Counsel. Any subjects to be raised at the Hearing must also be contained in a written objection that has been filed with the Court.

More than twenty-five law firms and organizations are counsel in the National Class Case, as set forth in First Amended and Consolidated Complaint filed with the Court. The pertinent addresses for those lawyers who need to receive copies from you of anything you file in court are as follows:

(i)  Plaintiffs' Co-Lead Counsel:

Gary Klein, Esq.
John Roddy, Esq.
Grant & Roddy
44 School Street, Suite 400
Boston, MA 02108

Kelly M. Dermody, Esq.
Lieff, Cabraser, Heimann &
Bernstein, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111

Niall P. McCarthy, Esq.
Cotchett, Pitre, Simon & McCarthy LLP
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
San Francisco, CA 94010

Daniel Mulligan, Esq.
Jenkins & Mulligan
660 Market Street, 3rd Floor
San Francisco, CA 94104

(ii)  Defendant's Counsel:

Thomas M. Hefferon, Esq.
Goodwin Procter LLP
Suite 500
1717 Pennsylvania Avenue, N.W.
Washington, DC 20006

(iii)  FTC Counsel:

Lucy E. Morris, Esq.
Division of Financial Practices
Bureau of Consumer Protection
Federal Trade Commission
600 Pennsylvania Ave., NW, Mail Drop NJ-3158
Washington, DC 20580

Any Class Member who does not comply with these requirements shall be deemed to have waived such objection and shall be forever foreclosed from making any objection to the proposed Settlement.

## 9.  WHO REPRESENTS THE PLAINTIFFS?

The Class is represented by Co-Lead Counsel and a number of other attorneys. The FTC is a federal law enforcement agency acting in the public interest.

## 10.  WHAT ARE COUNSELS' REASONS FOR SETTLEMENT?

The FTC and Plaintiffs' Counsel have agreed to the Settlement after considering, among other things, (i) the substantial benefits available to the Class under the terms of the FTC Order and the Settlement Agreement; (ii) the attendant risks and uncertainty of litigation, especially in complex litigation such as this, as well as the difficulties and delays inherent in such litigation; and (iii) the desirability of consummating the Settlement promptly to provide effective relief to the Class. The FTC and Plaintiffs' Counsel also believe that the practice changes in the Settlement should provide substantial ongoing benefits to consumers.

The Court has not ruled on the merits of the claims or defenses in this case, and Fairbanks has denied and continues to deny each and all of the claims and contentions alleged by the FTC and by Plaintiffs. Fairbanks has denied and continues to deny all charges of wrongdoing or liability against it arising out of or relating to any of the conduct, statements, acts or omissions alleged, or that could have been alleged. Nonetheless, Fairbanks has concluded that further litigation would be protracted and expensive and would not be in the best interest of Fairbanks, and that it is

5

desirable that the FTC Case and the National Class Case be fully and finally settled in the manner and upon the terms nd conditions set forth in the FTC Order and the Settlement Agreement.

## 11. WILL PLAINTIFFS' COUNSEL OR OTHER BORROWERS RECEIVE COMPENSATION?

Plaintiffs' Counsel will make an application to the Court for approval of an award of attorneys' fees and expenses in the National Class Case. The fees and expenses will be no more than $8.25 million, plus reimbursement of certain expenses estimated to be approximately $135,000 - $150,000. Counsel fees and expenses will be shared among many law firms that had pursued class action cases against Fairbanks. Reasonable incentive awards may be paid to the Named Plaintiffs, in an amount not to exceed $3,500 each. The attorneys' fees and expenses, and incentive awards, will be paid by Fairbanks separately and not from the Redress Fund. These payments will in no way reduce the money available to the Class.

## 12. WHAT CLAIMS WILL BE RELEASED UNDER THE SETTLEMENT?

If approved by the Court, the proposed Settlement will be legally binding upon all Class Members who did not timely request exclusion from the Class. The Settlement will release all known and unknown claims for damages and other relief as to any Class Member for acts in connection with Fairbanks' servicing practices, as set forth in the Settlement Agreement. The Settlement will release and discharge Fairbanks; related persons and entities; the owners of the loans; persons and companies that assisted Fairbanks or were hired by Fairbanks in connection with servicing the loans; and certain others. The release also will include claims related to the benefits given under the Reverse or Reimburse Program, and claims that are alleged in the National Class Case. The release will not affect your ability to defend against a pending or future individual foreclosure action, and, even if you participate in the Settlement, you will retain all rights you have today to defend yourself and your home from an improper foreclosure. The release also does not affect any claims you may have relating to the origination of your mortgage loan and unrelated to Fairbanks' servicing of the loan.

If you or someone acting on your behalf are currently litigating similar claims against Fairbanks, either individually or as part of a Class, you may be barred from pursuing such claims if you do not timely exclude yourself from the Class. You should consult with an attorney concerning your rights.

## 13. WHAT IF THE SETTLEMENT IS NOT APPROVED BY THE COURT?

If the proposed Settlement is not approved by the Court as being fair, reasonable, and adequate, the Settlement Agreement will be null and void and Plaintiffs will proceed with their lawsuits. In that event, your rights will not be affected in any way, and no refunds will be issued. The FTC Order will also be nullified, and the FTC may proceed in its investigation. Fairbanks, the FTC and the Plaintiffs could also attempt to enter into another Settlement.

## 14. WHERE DO I GET ADDITIONAL INFORMATION?

This Notice is only a summary of the proposed Settlement and does not describe all of the details of the FTC Order or of the Settlement Agreement. Accordingly, Class Members are referred to the FTC Order and the Settlement Agreement and the other documents filed with the Court in the FTC Case and the National Class Case, all of which are available for inspection at the Civil Clerk's Office, United States District Court for the District of Massachusetts, John Joseph Moakley U.S. Courthouse, One Courthouse Way, Boston, MA 02210. The Settlement is also available on the FTC website at www.ftc.gov/fairbanks.

## 15. WHAT ARE THE RELEVANT DATES?

If you wish to participate in the proposed Settlement, please fill out and return the enclosed claim form as soon as possible. It must be postmarked no later than April 24, 2004. You will receive further notification (probably within the next eight months) if the proposed Settlement is approved and the Redress Fund is to be distributed. If you wish to request exclusion from the Class or appear at the Fairness Hearing, these are the relevant dates:

- **Deadline for mailing request for exclusion (postmarked by): April 9, 2004**
- **Deadline for filing a claim (postmarked by): April 24, 2004**
- **Deadline for filing and serving notice of appearance or objection (received by the court by): April 9, 2004**
- **Date of Fairness Hearing: May 12, 2004**

PLEASE DO NOT CONTACT THE COURT, THE CLERK'S OFFICE OR FAIRBANKS FOR INFORMATION. This Notice provides only a summary of matters about these lawsuits. You may seek the advice and guidance of your own private attorney, at your own expense, if you wish. You may also contact Plaintiffs' Co-Lead Counsel at the address listed in Section 8 of this Notice.

BY ORDER OF THE COURT

The Honorable Douglas P. Woodlock
United States District Judge
Boston, Massachusetts

Dated: December 10, 2003

6

**PRIVACY ACT NOTICE**

This information is being collected in order to make a distribution of funds paid to the Federal Trade Commission in connection with an order entered by the United States District Court for the District of Massachusetts pursuant to 15 U.S.C. §§ 45(a) and 53(b).  This information may also be disclosed to the counsel listed in the court's preliminary approval order in the related class action.  In addition, this information may be disclosed for other purposes authorized by the Privacy Act, 5 U.S.C. § 552a and 47 Fed. Reg. 32,622, including disclosure to other government agencies.  Submission of the requested information is voluntary, but failure to provide the requested information could delay processing or, in some cases, make it impossible for us to process your claim.

AUGUST 15, 2003

*Give thanks unto the Lord for
He is good. His mercy endures forever.*

1 Chronicles 16:34

Dear Ms. Armstrong,

I am in receipt of FAIRBANKS CAPITAL detailed investigation and with all due respect, I strongly feel there was a hidden agenda to retiate by foreclosing on my home due to the Nations credit negligence litigation. They failed to explain their accountibility. The modification was to update balance (untimely); credit report (one year later); direct payment address (never); corrected statements (never received). Payments were due the 25th of the month with a (10) day grace period before interest's applied. I was within the grace period and not months behind as stated. The indirect Nations Credit P.O. Box shares responsibilit

DEFENDANT'S
EXHIBIT

12

(2)                          August 15, 2003

*Give thanks unto the Lord for*
*He is good. His mercy endures forever.*

I Chronicles 16:34

for untimely payment applications
when the improperly applied
payments were discovered on
August 28, 2002 to resolve these
problems why was the credit
report not corrected in 2002
instead of August 2003. I was
denied equity home loans and
threatened with the possibility
of losing everything in life I
worked so hard for due to
these improperly mis applied
and mis appropriate actions.
To further add insult to injury,
FAIRBANKS casually mentions
my option to share this untimely
corrected report to lenders as if
I can recapture time lost to
regain denied home equity loans
where's the relief? I dedicated
many long hard years of my life

(3)                          August 15, 2003

*Give thanks unto the Lord for*
*He is good. His mercy endures forever.*

1 Chronicles 16:34

to provide a safe, loving and
better life for my children as a
single African American parent
just to give it all away to the
unethical and improper business
practises of FAIRBANKS &
NATIONS CREDIT. I am a
responsible professional individual
going into this contract with
(3) homes, one mortgage free,
which resulted in all my
options limited and completely
removed thanks to FAIRBANKS.
My life has been devasted. Please
help me to understand the good
faith efforts of these giant
corporations who profits and
gains from the losses and
mistakes of good, honest,
hard workers people.

(4)                     AUGUST 15, 2003

*Give thanks unto the Lord for*
*He is good. His mercy endures forever.*

I Chronicles 16:34

In closing, I wish to THANKYOU for your time and your sincere efforts to bring my family closure. To also share my admiration and to say I look up to you as a personal mentor. My daughter, CLASSY ROIAL RILEY, a junior @ ALABAMA STATE UNIVERSITY is fulfilling my aspirations of becoming an attorney. MAY GOD continue to BLESS you and your family. THANKS AGAIN for your understanding and interventions.

Respectfully Submitted,

Rose Chapman Riley

Re: FAIRBANKS LOAN NO. 7002274657
ROSEMARY RILEY
FILE NO. 54956

(Official Form 1) (9/01)

| FORM B1 | United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Riley, Rosemary** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**901 Brookland Curve**<br>**Montgomery, AL 36117** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Montgomery** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |

| Location of Principal Assets of Business Debtor<br>(if different from street address above): |
|---|

**Information Regarding the Debtor (Check the Applicable Boxes)**

Venue (Check any applicable box)
- ☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed** (Check one box) | |
|---|---|---|---|
| ■ Individual(s) | ☐ Railroad | ☐ Chapter 7 | ☐ Chapter 11 | ■ Chapter 13 |
| ☐ Corporation | ☐ Stockbroker | ☐ Chapter 9 | ☐ Chapter 12 | |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding | | |
| ☐ Other_____ | ☐____ | | | |

| **Nature of Debts** (Check one box) | **Filing Fee** (Check one box) |
|---|---|
| ■ Consumer/Non-Business    ☐ Business | ■ Full Filing Fee attached |

| **Chapter 11 Small Business** (Check all boxes that apply) |
|---|
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101 |
| ☐ Debtor is and elects to be considered a small business under<br>11 U.S.C. § 1121(e) (Optional) |

- ☐ Filing Fee to be paid in installments (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

| Statistical/Administrative Information (Estimates only) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Assets | | | | | | |
|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | | | | | | |
|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

DEFENDANT'S EXHIBIT
13

(Official Form 1) (9/01)

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **Riley, Rosemary** | **FORM B1, Page 2** |
|---|---|---|

| **Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**
I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Rosemary Riley**
Signature of Debtor **Rosemary Riley**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**November 14, 2003**
Date

**Signature of Attorney**

X **/s/ Sandra Lewis**
Signature of Attorney for Debtor(s)
**Sandra Lewis ASB-1335-W52SW**
Printed Name of Attorney for Debtor(s)
**Law Office of Sandra Lewis, P. C.**
Firm Name
**207 Montgomery Street Suite 1010 Montgomery, Alabama.**
Address
**(334) 269-5930  Fax: (334) 269-5931**
Telephone Number
**November 14, 2003**
Date

**Signature of Debtor (Corporation/Partnership)**
I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

**Exhibit A**
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)
☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)
I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X **/s/ Sandra Lewis**        **November 14, 2003**
Signature of Attorney for Debtor(s)        Date
**Sandra Lewis**

**Exhibit C**
Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?
☐ Yes, and Exhibit C is attached and made a part of this petition.
■ No

**Signature of Non-Attorney Petition Preparer**
I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Rosemary Riley**

_____,

Debtor

Case No._____

Chapter_____**13**_____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
|---|---|---|---|---|---|
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 155,200.00 | | |
| B - Personal Property | Yes | 3 | 4,775.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 13,100.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 2,101.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 1,875.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 1,552.00 |
| Total Number of Sheets of ALL Schedules | | 12 | | | |
| Total Assets | | | 159,975.00 | | |
| Total Liabilities | | | | 15,201.00 | |

In re    **Rosemary Riley**                                          Case No._____
_____
                                                Debtor

## SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **901 Brookland Curve**<br>**Montgomery, AL  36117** | **homestead** | - | **111,400.00** | **102,000.00** |
| **5122 E. Linda Circle**<br>**ʃ    ʒomery, AL  36117** | **warranty deed** | - | **43,800.00** | **47,822.00** |

|  |  |
|---|---|
| Sub–Total > | **155,200.00** | (Total of this page) |
| Total > | **155,200.00** |

__**0**__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re   **Rosemary Riley**                                         Case No. _____

_____
                        Debtor

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Community Bank & Max Federal Credit Union** | - | 25.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | **Household goods and furnishings** | - | 2,000.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | **Clothing** | - | 250.00 |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

|  | Sub-Total > | 2,275.00 |
|---|---|---|
|  | (Total of this page) | |

  **2**   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re   **Rosemary Riley**                                                   Case No._____

                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >                                             **0.00**
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re     **Rosemary Riley**                                    Case No. _____
                                          Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2000 Kia Sephia | - | 2,500.00 |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

| | |
|---|---|
| Sub-Total > (Total of this page) | 2,500.00 |
| Total > | 4,775.00 |

Sheet  **2**  of  **2**  continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Rosemary Riley**                                          Case No. _____
                                                    ,
                              Debtor

## SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
*[Check one box]*
☐ 11 U.S.C. §522(b)(1):   Exemptions provided in 11 U.S.C. §522(d). Note: These exemptions are available only in certain states.
■ 11 U.S.C. §522(b)(2):   Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has
                          been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day
                          period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest
                          is exempt from process under applicable nonbankruptcy law.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Other Exemptions**<br>**901 Brookland Curve**<br>**Montgomery, AL  36117** | **Ala. Code § 6-10-2, Const. Art. X, § 205** | **5,000.00** | **111,400.00** |
| **2000 Kia Sephia** | **Ala. Code § 6-10-6** | **1,400.00** | **1,100.00** |
| **household goods** | **Ala. Code § 6-10-6** | **1,000.00** | **2,000.00** |

___0___  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                          Best Case Bankruptcy

In re    **Rosemary Riley**                                              Case No. _____

_____
                        Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding claims secured by property of the debtor as of the date of filing of the petition. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | | |
| Account No. 607011634820 **CitiFinancial** 1~ ~1 Perry Hill Road · gomery, AL 36106 | | - | | | **1st Mortgage** (47,827.00 balance) <br><br><br> Value $         43,800.00 | | | | 0.00 | 0.00 |
| Account No. 7002274657 **Nations Credit** **P.O. Box 17285** **Baltimore, MD 21297-1285** | | - | | | **1st Mortgage Arrears** (102,546.00 balance) <br><br><br> Value $        111,400.00 | | | | 12,000.00 | 0.00 |
| Account No. **TitleMax** **3328 Atlanta Hwy** **Montgomery, AL 36109** | | - | | | **2000 Kia Sephia** <br><br><br> Value $          2,500.00 | | | | 1,100.00 | 0.00 |
| Account No. | | | | | <br><br><br> Value $ | | | | | |

|  |  | Subtotal (Total of this page) | 13,100.00 |
|---|---|---|---|
| _ continuation sheets attached | | Total (Report on Summary of Schedules) | 13,100.00 |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        · Best Case Bankruptcy

In re    **Rosemary Riley**                                          Case No._____
_____
                              Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name and mailing address, including zip code, and account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of this petition.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**0**    continuation sheets attached

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

In re  **Rosemary Riley**

Case No. _____

_____,
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 5291071641478357; 529107143404 | | | | | | | |
| Capital One Box 390846 Minneapolis, MN 55439 | | - | | | | | 866.00 |
| Account No. 8050101968330 | | | | | | | |
| Fingerhut 53 McLeland Avenue Saint Cloud, MN 56395 | | - | | | | | 485.00 |
| Account No. | | | | | | | |
| Frazer & Gardner Elec. 333 E. Jeff Davis Avenue Montgomery, AL 36104 | | - | | | | | 750.00 |
| Account No. | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| _ continuation sheets attached | Subtotal (Total of this page) | 2,101.00 |
| | Total (Report on Summary of Schedules) | 2,101.00 |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

S/N:27640-031002   Best Case Bankruptcy

In re    **Rosemary Riley**                                                    Case No. _____
_____
                                    Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:    A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate
         schedule of creditors.

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code,<br>of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest.<br>State whether lease is for nonresidential real property.<br>State contract number of any government contract. |
|---|---|

___0___  continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re  **Rosemary Riley**
_____
                    Debtor

Case No._____

# SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

■ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|

___**0**___ continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    **Rosemary Riley**                                                    Case No._____
_____,
                                            Debtor

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| | NAMES<br>None. | AGE | RELATIONSHIP |
| Single | | | |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | Unemployed | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average monthly income) | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly) | $ 0.00 | $ N/A |
| Estimated monthly overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| SUBTOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| b. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| c. Union dues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| d. Other (Specify)_____ . . . . . . . . | $ 0.00 | $ N/A |
| _____ . . . . . . . . | $ 0.00 | $ N/A |
| SUBTOTAL OF PAYROLL DEDUCTIONS . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| TOTAL NET MONTHLY TAKE HOME PAY . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Regular income from operation of business or profession or farm (attach detailed statement) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Income from real property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 475.00 | $ N/A |
| Interest and dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Social security or other government assistance (Specify) _____ . . . . . . . . . . . . | $ 0.00 | $ N/A |
| _____ . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Pension or retirement income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ N/A |
| Other monthly income (Specify) **Unemployment** . . . . . . . . . . . . | $ 800.00 | $ N/A |
| **Daughter's Room & Board** . . . . . . . . . . . . | $ 600.00 | $ N/A |
| TOTAL MONTHLY INCOME | $ 1,875.00 | $ N/A |
| TOTAL COMBINED MONTHLY INCOME    $ 1,875.00 | (Report also on Summary of Schedules) | |

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:

In re    **Rosemary Riley**                                           Case No. _____
                                    Debtor

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---|
| Rent or home mortgage payment (include lot rented for mobile home) | $ | 722.00 |
| Are real estate taxes included?    Yes_____    No____X____ | | |
| Is property insurance included?    Yes_____    No____X____ | | |
| Utilities: Electricity and heating fuel | $ | 130.00 |
|      Water and sewer | $ | 40.00 |
|      Telephone | $ | 40.00 |
|      Other_____ | $ | 0.00 |
| Home maintenance (repairs and upkeep) | $ | 0.00 |
| Food | $ | 60.00 |
| Clothing | $ | 0.00 |
| Laundry and dry cleaning | $ | 0.00 |
| Medical and dental expenses | $ | 0.00 |
| Transportation (not including car payments) | $ | 40.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 0.00 |
| Charitable contributions | $ | 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
|      Homeowner's or renter's | $ | 0.00 |
|      Life | $ | 0.00 |
|      Health | $ | 0.00 |
|      Auto | $ | 0.00 |
|      Other_____ | $ | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
|      (Specify)_____ | $ | 0.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan.) | | |
|      Auto | $ | 0.00 |
|      Other_____rent_____ | $ | 480.00 |
|      Other_____storage_____ | $ | 40.00 |
|      Other_____ | $ | 0.00 |
| Alimony, maintenance, and support paid to others | $ | 0.00 |
| Payments for support of additional dependents not living at your home | $ | 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| Other_____ | $ | 0.00 |
| Other_____ | $ | 0.00 |
| **TOTAL MONTHLY EXPENSES** (Report also on Summary of Schedules) | $ | **1,552.00** |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]
Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | | |
|---|---|---|
| A. Total projected monthly income | $ | 1,875.00 |
| B. Total projected monthly expenses | $ | 1,552.00 |
| C. Excess income (A minus B) | $ | 323.00 |
| D. Total amount to be paid into plan each ___**Monthly**___ | $ | 330.00 |
|              (interval) | | |

# United States Bankruptcy Court
## Middle District of Alabama

In re   **Rosemary Riley**                                          Case No. _____
                                    Debtor(s)                Chapter      **13**   _____

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of **13** sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **November 14, 2003** _____        Signature   **/s/ Rosemary Riley** _____
                                                              **Rosemary Riley**
                                                              Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Form 7
('00)

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Rosemary Riley** _____     Case No. _____

_____          Chapter    **13** _____
                              Debtor(s)

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|
| **$16,704.00** | **2002-OSI** |
| **$6,000.00** | **2003-OSI** |

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                          SOURCE

2

**3. Payments to creditors**

None
■

a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within **90 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
■

b. List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
■

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None
■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**5. Repossessions, foreclosures and returns**

None
■

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**6. Assignments and receiverships**

None
■

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
■

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

3

### 7. Gifts

**None**
☑
List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8. Losses

**None**
☑
List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

**None**
☐
List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Sandra Lewis P.O. Box 686 Montgomery, AL 36105 | 11/14/03 | $350.00 |

### 10. Other transfers

**None**
☑
List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

### 11. Closed financial accounts

**None**
☑
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

4

**12. Safe deposit boxes**

None ■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None ■

If the debtor has moved within the **two years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the **six-year period** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■    a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■    b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None ■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

### 18 . Nature, location and name of business

None ■    a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

     If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the **six years** immediately preceding the commencement of this case.

     If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NUMBER | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None ■    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ■    a. List all bookkeepers and accountants who within the **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

None ■    b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

6

None ■    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                                              ADDRESS

None ■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the **two years** immediately preceding the commencement of this case by the debtor.

NAME AND ADDRESS                                      DATE ISSUED

**20. Inventories**

None ■    a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

|  |  | DOLLAR AMOUNT OF INVENTORY |
| --- | --- | --- |
| DATE OF INVENTORY | INVENTORY SUPERVISOR | (Specify cost, market or other basis) |

None ■    b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

|  | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY |
| --- | --- |
| DATE OF INVENTORY | RECORDS |

**21 . Current Partners, Officers, Directors and Shareholders**

None ■    a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| IAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
| --- | --- | --- |

None ■    b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

|  |  | NATURE AND PERCENTAGE |
| --- | --- | --- |
| NAME AND ADDRESS | TITLE | OF STOCK OWNERSHIP |

**22 . Former partners, officers, directors and shareholders**

None ■    a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
| --- | --- | --- |

None ■    b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
| --- | --- | --- |

**23 . Withdrawals from a partnership or distributions by a corporation**

None ■    If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

7

**24. Tax Consolidation Group.**

None    If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated
■       group for tax purposes of which the debtor has been a member at any time within the **six-year period** immediately preceding the
        commencement of the case.

NAME OF PARENT CORPORATION                                         TAXPAYER IDENTIFICATION NUMBER

**25. Pension Funds.**

None    If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as
■       an employer, has been responsible for contributing at any time within the **six-year period** immediately preceding the commencement
        of the case.

NAME OF PENSION FUND                                               TAXPAYER IDENTIFICATION NUMBER

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto
and that they are true and correct.

Date   **November 14, 2003**              Signature   **/s/ Rosemary Riley**
                                                       **Rosemary Riley**
                                                       Debtor

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Rosemary Riley**                                                                    Case No.

                                         Debtor(s)                    Chapter    **13**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.    Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 1,600.00 |
| Prior to the filing of this statement I have received | $ | 156.00 |
| Balance Due | $ | 1,444.00 |

2.    The source of the compensation paid to me was:

        ■ Debtor    ☐ Other (specify):

3.    The source of compensation to be paid to me is:

        ■ Debtor    ☐ Other (specify):

4.    ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

        ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

    In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d.  [Other provisions as needed]
        **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6.    By agreement with the debtor(s), the above-disclosed fee does not include the following service:
        **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:   **November 14, 2003**               **/s/ Sandra Lewis**
                                              **Sandra Lewis**
                                              **Law Office of Sandra Lewis, P. C.**
                                                **207 Montgomery Street**
                                                **Suite 1010**
                                                **Montgomery, Alabama,**
                                                 **(334) 269-5930  Fax: (334) 269-5931**

## United States Bankruptcy Court
### Middle District of Alabama

In re  **Rosemary Riley**

Case No. _____

_____  Debtor(s)

Chapter  **13**  _____

## VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:  **November 14, 2003** _____

**/s/ Rosemary Riley** _____
**Rosemary Riley**
Signature of Debtor

Rosemary Riley
901 Brookland Curve
Montgomery, AL 36117


Capital One
P.O. Box 390846
Minneapolis, MN 55439


CitiFinancial
1641 Perry Hill Road
Montgomery, AL 36106


Fingerhut
53 McLeland Avenue
Saint Cloud, MN 56395


Frazer & Gardner Elec.
333 E. Jeff Davis Avenue
Montgomery, AL 36104


Nations Credit
P.O. Box 17285
Baltimore, MD 21297-1285


TitleMax
3328 Atlanta Hwy
Montgomery, AL 36109

**United States Bankruptcy Court**
Middle District of Alabama

In re   Rosemary Riley

_____
Debtor

Case No._____
Chapter   13 _____

## DECLARATION REGARDING ELECTRONIC FILING OF DOCUMENTS

### PART I – DECLARTION OF DEBTOR(S) OR PARTIES

I hereby declare that my signature on this document represents the signature on the electronically filed document(s) titled:

Voluntary Petition
Application to Pay Filing Fees in Installments (if applicable)
Declaration Concerning Debtor's Schedules
Statement of Financial Affairs
Chapter 7 Individual Debtor's Statement of Intention (if applicable)
Verification of Creditor Matrix
Notice to Individual Consumer Debtor
Disclosure of Compensation of Attorney for Debtor
Chapter 13 Plan (if applicable)

I understand that this document will be electronically filed with the Office of the Clerk, U. S. Bankruptcy Court.

_____11/14/03_____
Dated

_____
Debtor

_____11/14/03_____
Dated

_____
Attorney for Debtor

(Official Form 1) (12/02)

| FORM B1 | United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition<br>AMENDED |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Riley, Rosemary** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**901 Brookland Curve**<br>**Montgomery, AL 36117** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Montgomery** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

## Information Regarding the Debtor (Check the Applicable Boxes)

Venue (Check any applicable box)
- ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| Type of Debtor (Check all boxes that apply) | | Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) | |
|---|---|---|---|
| ■ Individual(s) | ☐ Railroad | ☐ Chapter 7    ☐ Chapter 11    ■ Chapter 13 | |
| ☐ Corporation | ☐ Stockbroker | ☐ Chapter 9    ☐ Chapter 12 | |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding | |
| ☐ Other_____ | ☐ Clearing Bank | | |

| Nature of Debts (Check one box) | | Filing Fee (Check one box) |
|---|---|---|
| ■ Consumer/Non-Business | ☐ Business | ☐ Full Filing Fee attached<br>■ Filing Fee to be paid in installments (Applicable to individuals only.) |

**Chapter 11 Small Business (Check all boxes that apply)**
- ☐ Debtor is a small business as defined in 11 U.S.C. § 101
- ☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

| Statistical/Administrative Information (Estimates only) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (12/02)

| Voluntary Petition - AMENDED<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Riley, Rosemary** | FORM B1, Page 2 |
|---|---|---|

| Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed: **- None -** | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X  **/s/ Rosemary Riley**
Signature of Debtor Rosemary Riley

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**November 17, 2003**
Date

**Signature of Attorney**

X  **/s/ Sandra Lewis**
Signature of Attorney for Debtor(s)

**Sandra Lewis ASB-1335-W52SW**
Printed Name of Attorney for Debtor(s)

**The Law Office of Sandra Lewis**
Firm Name

**207 Montgomery Street, Suite 1010**
**Montgomery, AL 36104**
Address

**(334) 269-5930  Fax: (334) 269-5931**
Telephone Number

**November 17, 2003**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X  **/s/ Sandra Lewis**            **November 17, 2003**
     Signature of Attorney for Debtor(s)          Date
     **Sandra Lewis**

**Exhibit C**

Does the debtor own or have possession of any property that poses a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

## United States Bankruptcy Court
### Middle District of Alabama

In re   **Rosemary Riley**                                          Case No. _____

_____          Chapter   **13**
                           Debtor(s)

## CHAPTER 13 PLAN

1. <u>Payments to the Trustee</u>: The future earnings or other future income of the Debtor is submitted to the supervision and control of the trustee. The Debtor (or the Debtor's employer) shall pay to the trustee the sum of **$330.00** per month . Total of plan payments: **$19,800.00**

2. <u>Plan Length</u>: This plan is estimated to be for **60** months.

3. Allowed claims against the Debtor shall be paid in accordance with the provisions of the Bankruptcy Code and this Plan.

   a. Secured creditors shall retain their mortgage, lien or security interest in collateral until the amount of their allowed secured claims have been fully paid or until the Debtor has been discharged. Upon payment of the amount allowed by the Court as a secured claim in the Plan, the secured creditors included in the Plan shall be deemed to have their full claims satisfied and shall terminate any mortgage, lien or security interest on the Debtor's property which was in existence at the time of the filing of the Plan, or the Court may order termination of such mortgage, lien or security interest.

   b. Creditors who have co-signers, co-makers, or guarantors ("Co-Obligors") from whom they are enjoined from collection under 11 U.S.C. § 1301, and which are separately classified and shall file their claims, including all of the contractual interest which is due or will become due during the consummation of the Plan, and payment of the amount specified in the proof of claim to the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor.

   c. All priority creditors under 11 U.S.C. § 507 shall be paid in full in deferred cash payments.

4. From the payments received under the plan, the trustee shall make disbursements as follows:

   a. Administrative Expenses
      (1) Trustee's Fee:    **6.5%**
      (2) Attorney's Fee (unpaid portion):   **1,444.00 to be paid through in monthly installments**
      (3) Filing Fee (unpaid portion):   **$0.00**

   b. Priority Claims under 11 U.S.C. § 507

| Name | Amount of Claim | Interest Rate (If specified) |
|------|-----------------|------------------------------|
| -NONE- | | |

   c. Secured Claims
      (1) Secured Debts Which Will Not Extend Beyond the Length of the Plan

| Name | Value of Collateral | Proposed Amount of Allowed Secured Claim | Monthly Payment (If fixed) | Interest Rate (If specified) |
|------|---------------------|------------------------------------------|----------------------------|------------------------------|
| **TitleMax** | **2,500.00** | **1,100.00** | **50.00** | **11.0** |

      (2) Secured Debts Which Will Extend Beyond the Length of the Plan

| Name | Amount of Claim | Monthly Payment | Interest Rate (If specified) |
|------|-----------------|-----------------|------------------------------|
| -NONE- | | | |

   d. Unsecured Claims
      (1) Special Nonpriority Unsecured Debts which are co-signed or are non-dischargeable shall be paid in full (100%).

| Name | Amount of Claim | Interest Rate (If specified) |
|------|-----------------|------------------------------|
| -NONE- | | |

      (2) General Nonpriority Unsecured: Other unsecured debts shall be paid 100 cents on the dollar and paid pro rata, with no interest if the creditor has no Co-obligors, provided that where the amount or balance of any unsecured claim is less than $10.00 it may be paid in full.

4. The Debtor proposes to cure defaults to the following creditors by means of monthly payments by the trustee:

| Creditor | Value of Collateral | Monthly Payment | Amount of Default to be Cured |
|---|---|---|---|
| -Nations Credit- | 111,400.00 | 250.00 | 12,000.00 |

5. The Debtor shall make regular payments directly to the following creditors:

| Name | Value of Collateral | Amount of Claim | Monthly Payment | Interest Rate (If |
|---|---|---|---|---|
| NationsCredit | 111,400.00 | 102,547.00 | 722.00 | |

6. The employer on whom the Court will be requested to order payment withheld from earnings is: NONE. Payments to be made directly by debtor without wage deduction.

7. The following executory contracts of the debtor are rejected:

| Other Party | Description of Contract or Lease |
|---|---|
| -NONE- | |

9. Property to Be Surrendered to Secured Creditor

| Name | Amount of Claim | Description of Property |
|---|---|---|
| -NONE- | | |

10. The following liens shall be avoided pursuant to 11 U.S.C. § 522(f), or other applicable sections of the Bankru

| Name | Amount of Claim | Description of Property |
|---|---|---|
| -NONE- | | |

11. Title to the Debtor's property shall revest in debtor on confirmation of a plan.

12. As used herein, the term "Debtor" shall include both debtors in a joint case.

13. Other Provisions:

Date: November 14, 2003                    Signature ~~Rosemary Riley~~

Rosemary Riley.
Debtor

### United States Bankruptcy Court
#### Middle District of Alabama

re    Rosemary Riley                                                                    Case No.
                                          Debtor(s)                          Chapter    13

## AMENDED CHAPTER 13 PLAN

**Payments to the Trustee:** The future earnings or other future income of the Debtor is submitted to the supervision and the trustee. The Debtor (or the Debtor's employer) shall pay to the trustee the sum of **$330.00** per month .
Total of plan payments: **$19,800.00**
**Plan Length:** This plan is estimated to be for 60 months.
Allowed claims against the Debtor shall be paid in accordance with the provisions of the Bankruptcy Code and this P

a.    Secured creditors shall retain their mortgage, lien or security interest in collateral until the amount of their all claims have been fully paid or until the Debtor has been discharged. Upon payment of the amount allowed by t secured claim in the Plan, the secured creditors included in the Plan shall be deemed to have their full claims shall terminate any mortgage, lien or security interest on the Debtor's property which was in existence at the tim of the Plan, or the Court may order termination of such mortgage, lien or security interest.

b.    Creditors who have co-signers, co-makers, or guarantors ("Co-Obligors") from whom they are enjoined from co 11 U.S.C. § 1301, and which are separately classified and shall file their claims, including all of the contractual : is due or will become due during the consummation of the Plan; and payment of the amount specified in the pro the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor.

c.    All priority creditors under 11 U.S.C. § 507 shall be paid in full in deferred cash payments.
From the payments received under the plan, the trustee shall make disbursements as follows:

a.    Administrative Expenses.
    (1) Trustee's Fee:    6.5%
    (2) Attorney's Fee (unpaid portion):    1,444.00 to be paid through monthly payments
    (3) Filing Fee (unpaid portion):   $0.00

b.    Priority Claims under 11 U.S.C. § 507

| Name | | Amount of Claim | Interest Rate (I |
|------|--|------------------|------------------|
| -NONE- | | | |

c.    Secured Claims
    (1) Secured Debts Which Will Not Extend Beyond the Length of the Plan

| Name | Value of Collateral | Proposed Amount of Allowed Secured Claim | Monthly Payment (If fixed) | Interest Rate ( |
|------|---------------------|------------------------------------------|----------------------------|-----------------|
| TitleMax | 2,500.00 | 1,100.00 | 50.00 | 11.0% |

    (2) Secured Debts Which Will Extend Beyond the Length of the Plan

| Name | Amount of Claim | Monthly Payment | Interest Rate |
|------|-----------------|-----------------|---------------|
| -NONE- | | | |

d.    Unsecured Claims
    (1) Special Nonpriority Unsecured Debts which are co-signed or are non-dischargeable shall be paid in full (100

| Name | Amount of Claim | Interest Rate (I |
|------|-----------------|------------------|
| -NONE- | | |

    (2) General Nonpriority Unsecured: Other unsecured debts shall be paid 100 cents on the dollar and paid pro rati
    interest if the creditor has no Co-obligors, provided that where the amount or balance of any unsecured claim
    $10.00 it may be paid in full.

re Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Debtor proposes to cure defaults to the following creditors by means of monthly payments by the trustee:

| Creditor | Value of Collateral | Monthly Payment | Amount of Default to be Cured | In |
|---|---|---|---|---|
| -Nations Credit- | 111,400.00 | 250.00 | 12,000.00 | |

Debtor shall make regular payments directly to the following creditors:

| Name | Value of Collateral | Amount of Claim | Monthly Payment | Interest Rate (If spe |
|---|---|---|---|---|
| Citi Financial | 43,800.00 | 47,827.00 | 480.00 | |
| Nations Credit | 111,400.00 | 102,547.00 | 722.00 | |

Employer on whom the Court will be requested to order payment withheld from earnings is:
E. Payments to be made directly by debtor without wage deduction.

Following executory contracts of the debtor are rejected:

| Other Party | Description of Contract or Lease |
|---|---|
| -NONE- | |

Property to Be Surrendered to Secured Creditor

| Name | Amount of Claim | Description of Property |
|---|---|---|
| -NONE- | | |

Following liens shall be avoided pursuant to 11 U.S.C. § 522(f), or other applicable sections of the Bankruptcy

| Name | Amount of Claim | Description of Property |
|---|---|---|
| -NONE- | | |

To the Debtor's property shall revest in debtor on confirmation of a plan.

Used herein, the term "Debtor" shall include both debtors in a joint case.

Provisions:

17/03                          Signature: *Sandra Lewis*
                                          Sandra Lewis

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                       Case No. 03-33526-DHW
ROSEMARY RILEY                              Chapter 13

       Debtor.

### TRUSTEE'S SUMMARY OF CONFIRMED CHAPTER 13 PLAN

    The debtor's plan was filed on Mon Nov 17, 2003.  A summary of the plan or the final modification was transmitted to  the  creditors under Fed R Bankr P 3015. The Confirmation hearing for the debtor(s) plan was held on Mon Jan 05, 2004, and the Court ordered the plan confirmed.

    Following is a Summary of the plan as confirmed by the Court:

1. Payment:
   Amount of debtor(s) plan payment: $    330.00  monthly.
   Period of payments: 056 months or until 100.00 % is paid on allowed
   unsecured claims or a "pot" of $          .00  is paid to unsecureds.

   Payable to:    CHAPTER 13 TRUSTEE
                  P O BOX 830529
                  BIRMINGHAM AL  35283
   Payroll deduction:  No Payroll deduction is ordered.

2. Senior expenses and Administrative claims to be paid:

ADMINISTRATIVE EXPENSES

| | | | |
|---|---|---|---|
| Debtor's Attorney | Attorney's fee allowed | $ | 1,444.00 |
| Clerk of Court | Filing fee | $ | .00 |
| Chapter 13 Trustee | Trustee administrative fee | $ | .00 |
| Chapter 13 Trustee | Notice fee @ $.50 per copy. | $ | 6.50 |
| Insurance | | $ | .00 |

SECURED, PRIORITY, AND SPECIAL CLAIMS

| | | | | |
|---|---|---|---|---|
| TITLE MAX | $  2,500.00 | 11.00 % | $ | 50.00 |
| NATIONS CREDIT | $ 12,000.00 | .00 % | $ | 250.00 |

3. Payments on allowed unsecured claims (including undersecured claims)
   will be made after senior expenses and claims are paid.

Dated this the 06th day of January, 2004.

                                / s /
                                Curtis C. Reding
                                Chapter Thirteen Trustee

In re
ROSEMARY RILEY

Case No. 03-33526-DHW
Chapter 13

      Debtor.

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing document on all parties in interest, by placing them in the United States Mail, postage prepaid, and properly addressed, this 06th day of January, 2004.

                         / S /
                    Curtis C. Reding, Trustee

UNITED STATES BANKRUPTCY COURT
# Middle District of Alabama

In Re a *Petition for Relief under Chapter 13 of Title 11, U.S. Code* , filed by or against the below named Debtor(s) on 11/14/03.

IN RE:
**Rosemary Riley** , Debtor(s)

Case No.: 03–33526

Chapter: 13
Judge: Dwight H. Williams Jr.

## ORDER CONFIRMING PLAN

The debtor's plan was filed on  11/17/03. The plan or a summary of the plan was transmitted to creditors pursuant to Bankruptcy Rule 3015.  The court finds that the plan meets the requirements of 11 U.S.C. Section 1325.

**It is ORDERED that:**

The debtors chapter 13 plan, as amended, if applicable, is **confirmed** .

Dated:  1/8/04

Dwight H. Williams Jr.
United States Bankruptcy Judge

C:
Debtor
Attorney for Debtor
Trustee
All Creditors
Bankruptcy Administrator

In re   **Rosemary Riley**                                                  Case No.   **03-33526**
                                                     Debtor

# SCHEDULE A. REAL PROPERTY – AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C – Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **901 Brookland Curve**<br>**Montgomery, AL  36117** | **homestead** | - | **111,400.00** | **102,000.00** |
| **51?? E. Linda Circle**<br>**gomery, AL  36117** | **warranty deed** | - | **43,800.00** | **47,822.00** |
| **922 Penney Street**<br>**Chester, PA 19013** | **warranty deed** | - | **25,000.00** | **0.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **180,200.00** | (Total of this page) |
| Total > | **180,200.00** | |

**0**   continuation sheets attached to the Schedule of Real Property       (Report also on Summary of Schedules)

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                             Best Case Bankruptcy

In re    **Rosemary Riley**                                          Case No.    03-33526
                                          Debtor

# SCHEDULE A. REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all prope
cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers
the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C"
labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Locatic

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts
Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule
claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedu
Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | A Sec |
|---|---|---|---|---|
| 901 Brookland Curve Montgomery, AL  36117 | homestead | - | 111,400.00 | |
| 5122 E. Linda Circle Montgomery, AL  36117 | warranty deed | - | 43,800.00 | |
| 922 Penney Street Chester, PA 19013 | warranty deed | - | 18,000.00 | |
| | | Sub-Total > | 173,200.00 | (Tot |
| | | Total > | 173,200.00 | |

__0__ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best C

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 03-33526-DHW
                                         Chapter 13
ROSEMARY RILEY
Soc. Sec. No. XXX-XX-0782

                    Debtor.

PURSUANT TO LBR 1017-1, THIS CASE MAY BE DISMISSED, WITHOUT FURTHER NOTICE OR HEARING,
UNLESS A RESPONSE IS FILED WITH THE COURT AND SERVED UPON THE PARTY SERVING THIS NOTICE
WITHIN 20 DAYS OF SERVICE.

### TRUSTEE'S MOTION TO DISMISS

    Comes now  Curtis C. Reding,  Chapter 13 Standing Trustee for
this district, and moves the  Court to  dismiss  the above entitled
case pursuant to 11 U.S.C.,   §1307 (and LBR 1017-1), in  that the
debtor's actions have caused unreasonable delay that is prejudicial
to creditors.  As grounds for said motion,  the  Trustee states as
follows:

    The debtor failed to make payments to the Trustee pursuant
    to the terms of the debtors confirmed plan.

Dated: August 10, 2004

Office of the Chapter 13 Trustee
P. O. Box 173                       /S/ Curtis C. Reding
Montgomery, AL  36101-0173          Curtis C. Reding, Trustee
Phone: (334)262-8371
Fax: (334)262-8599
email: Ch13Trustee@ch13mdal.com

### CERTIFICATE OF SERVICE
    I hereby certify that I have served a copy of the foregoing
Motion to Dismiss on the debtor(s) and the debtor's attorney, by
placing them in the  United States Mail,  postage prepaid,  and
properly addressed, or by electronic mail.

    Done, this the 10th day of August, 2004.


                                    /S/ Curtis C. Reding
                                    Curtis C. Reding, Trustee


cc: SANDRA LEWIS
    207 MONTGOMERY ST STE 1010
    P O BOX 686
    MONTGOMERY AL  36101-0686

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama

In re:                                              Case No.: 03–33526
**Rosemary Riley**
   Debtor

                                      Judge: Dwight H. Williams Jr.
                                      Chapter: 13

### ORDER OF DISMISSAL

A notice of dismissal was filed in this case pursuant to LBR 1017–1 informing the debtor that this case may be dismissed without further notice unless the indicated deficiencies were cured, or a response was filed within 20 days of service of the notice. No such action has been taken by the debtor or the debtor's counsel.

It is therefore **ORDERED** that this case is **DISMISSED** without prejudice.

Dated:  9/3/04

                                      Dwight H. Williams Jr.
                                      United States Bankruptcy Judge

*TO: CLAIMS ADMINISTRATION CENTER*
   *GILARDI & CO.*
   *P.O. BOX 808011*
   *PETALUMA, CA. 94975-8011*

*FROM: ROSEMARY C. RILEY*

*DATE: APRIL 9, 2004*

*RE: REQUEST FOR EXCLUSION*

*THIS IS AN OFFICIAL REQUEST FROM:*

*NAME: ROSEMARY C. RILEY*

*ADDRESS: 901 BROOKLAND CURVE*
          *MONTGOMERY, ALABAMA 36117*

*TELEPHONE#: (334) 273-9119*

*SOCIAL SECURITY #: XXX-XX-0782*

*FAIRBANKS LOAN#: 7002274657*

*I, ROSEMARY C. RILEY, FORMALLY REQUEST EXCLUSION FROM THE SETTLEMENT*

*AGREEMENT OF ALANNA L. CURRY vs. FAIRBANKS CAPITAL CORP. CIVIL CLASS ACTION.*

*(SIGNATURE)*

4-9-04
*(DATE)*

**DEFENDANT'S EXHIBIT**

14

IN THE UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROSEMARY C. RILEY, Pro Se          )
    Plaintiff,                     )  **Civil Action No.**
                                  )    **2:04CV797-A**
v.                                )
                                  )
FAIRBANKS CAPITAL CORPORATION      )
    Defendant.                    )

## PLAINTIFFS' INITIAL DISCLOSURES

    **COMES NOW,** the plaintiff, Rosemary C. Riley, pro se, and pursuant to the Court's Scheduling Order submits this, its initial disclosures as follows:

    (A) Provide to other parties the name, and if known, the address of each individual/agency believed by it to have discoverable, non-privileged personal knowledge concerning any significant factual issue in this case appropriately indicating the subjects about which the person has such knowledge.

        Attorney John Cason
        4215 Carmichael Road
        Montgomery, Alabama 36106

        Attorney Michael F. Braun
        4252 Carmichael Road
        Montgomery, Alabama 36106

        Attorney Jessica Kirk
        4121 Carmichael Road, Ste. 304
        Montgomery, Alabama 36106

        Attorney Sandra Holston Lewis
        207 Montgomery Street
        Bell Bldg., Suite 1010
        Montgomery, Alabama



DEFENDANT'S EXHIBIT

/5

Ms. Barbara D. Armstrong
Consumer Specialist
Office of the Attorney General
11 South Union Street
Montgomery, Alabama 36130

Attorney R. Brent Irby
2062 Columbiana Road
Vestavia Hills, Alabama 35216

Rozelle & Bertha L. Jackson
Barbour County, Alabama

Vera L. Patterson
Barbour County, Alabama

Gene Stewart
Barbour County, Alabama

Attorney Pamela Higgins
Montgomery, Alabama

Attorney Zachery Collins
207 Montgomery Street
Bell Bldg., Suite
Montgomery, Alabama

Attorney Andrew Nelms
Montgomery, Alabama

Joseph Alon Riley
901 Brookland Curve
Montgomery, Alabama 36117

Classy Roial Riley
901 Brookland Curve
Montgomery, Alabama 36117

Joe Riley
2662 Burkelaun Drive
Montgomery, Alabama 36111

Ricky & Janice Leggitte
P.O. Box 242033
Montgomery, Alabama 36124-2033

Attorney Fred Gray, Jr.
Tuskegee, Alabama

Attorney Chris Pitts
Carmichael Road
Montgomery, Alabama 36106

Marlene Young, Manager
Citi- Financial Corporation
1641 Perry Hill Road
Montgomery, Alabama 36106

Rev. & Mrs. Ransome & Betty Moreland
Cambridge Apts.
Montgomery, Alabama 36111

Attorney Marsha B. Scott
100 Commerce Street, Suite 1000
Montgomery, Alabama 36104

Attorney  Stuart Vance
Montgomery, Alabama

Chief Justice
Birmingham, Alabama

Janice Simmons
Montgomery, Alabama

Bernadette York
Homeowners Loan
4501 Circle 75 Parkway, Suite F-6300
Atlanta, Ga. 30339

These individuals have personal knowledge about the facts and circumstances surrounding the note and mortgage with Fairbanks Capital Corporation, including the defendant's failure to follow federal law, the plaintiffs' repeated attempts to remedy this matter, the mental anguish, physical conditions and emotional distress caused by the defendants and may have knowledge of the alleged default, collections efforts, settlement efforts, foreclosure proceedings, and the continued pattern of complaints, lawsuits and the defendants practice of disregarding adherence to applicable federal laws which make the basis of this lawsuit.

(B) Make available to other parties for inspection and photocopying, as required under Fed. R. Civ. P. 34, all documents, data, compilations and tangible things in its possession, custody or control that may be used by it to support its contentions with respect to any significant factual issues in this case.

The following documents were exchanged on December 27, 2004 by first class mail hereto:

(1) Letter dated December 23, 2004 to Attorney John David Collins, Esq. re: Pre-Discovery, Confirmation, & Settlement Negotiations.

(2) PRE-DISCOVERY DISCLOSURES WITH BRIEF DESCRIPTION OF CASE.

(3) Proposed SETTLEMENT AGREEMENT AND RELEASE.

(4) Big Class Action Register.

(5) USA v. FAIRBANKS CAPITAL CORP. Claim Form & Notice of Proposed Class Action Settlement Hearing.

(6) Request for Exclusion by Rosemary C. Riley dated April 9, 2004.

(7) State of Alabama Office of the Attorney General Consumer Affairs Section Consumer Complaint Form dated May 21, 2003.

(8) Notice to Correct Credit Report by Rose C. Riley dated August 28, 2002.

(9) Letter addressed to Ms. Barbara Armstrong by Rose C. Riley
  Dated August 15, 2003.

(10) Fairbanks Capital Corp. response to Ms. Barbara Armstrong
  with the Attorney General Office dated August 6, 2003.

(11) Fairbanks Capital Corp. Credit Bureau Correction dated
  August 6, 2003.

(12) Fairbanks Capital Corp. Demand Letter to Rosemary Riley
  dated 10/29/2002.

(13) Homeowners Loan Pre-Approved Loan Letter denied due to
  false credit report to credit bureaus.

(14) Experian Credit Correction Summary listing the results to
  remain as listed as per Fairbanks Capital Corp.

(15) Money Order Copies of Payments made to Nations Credit Corp.
  as ordered in Mediation Settlement Agreement by Plaintiff as
  proof of payments.

(16) OSI Employment Document re: Rose Riley's production
  resulting in the plaintiff's employment termination due to legal
  home pressures and stress.

(17) CERTIFICATION OF SERVICE dated December 27, 2004.

(C) Provide to other parties a computation of any category of damages claimed
  by it making available for inspetion and copying, as under Fed. R. Civ. P.
  34, all documents or other evidentiary materials, not privileged or
  protected from disclosure, on which such computation is based, including
  materials bearing on the nature and extent of injuries suffered.

The Defendants are aware of their noncompliance as per their own admission
to the Attorney General's Office dated August 6, 2003. They admitted to improperly
applied payments; after two months delinquency fraudulently returning or refusing to
accept payments in order to generate defaults; & correcting false credit reporting in an
untimely manner which was nearly one year later dated August 6, 2003. For a period of
years Fairbanks Capital Corp. has engaged in a pattern of fraudulent and misleading
practices causing the Plaintiff great economic hardship. Also, the Plaintiff's physical

conditions caused by or aggravated by the stress resulted in an excess of over $10,000 in hospital expenses,employment termination, and ultimately filing bankruptcy. The amount of emotional distress, embarrassment and psychological damage cannot be assessed at this time and for that which the Plaintiff have requested a trial by a jury of her peers in establishing a claim for punitive and compensatory damages to exceed over $150,000.00.

RECEIVED **IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
2008 OCT 20  P 2: 42 **NORTHERN DIVISION**

MIDDLE DISTRICT ALA

| | |
|---|---|
| **ROSEMARY C. RILEY, Pro Se** | ) |
| **Plaintiff,** | ) **Civil Action No.** |
| | ) **2:04CV797-A** |
| | ) |
| **FAIRBANKS CAPITAL CORPORATION** | ) **DEMAND FOR JURY TRIAL** |
| **Defendant,** | ) |

## SECOND AMENDED COMPLAINT

**COMES NOW,** Plaintiff Rosemary C. Riley hereby files this amended complaint Against Defendant Fairbanks Capital Corporation. The petitioner aver the Defendant, Fairbanks Capital Corp., NA, et al., has violated Section 5 of the Federal Trade Commission Act, the Fair Debt Collection Practices Act and other laws and engaged in other wrongdoing in loan servicing.

### I.   PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Rosemary C. Riley, an adult resident citizen of Montgomery County, Alabama, whose home-secured loan was serviced by Defendant Fairbanks at all material times herein.

2.      Defendant Fairbanks Capital Corporation (hereafter "Fairbanks") is a Utah Corporation with its principal place of business at 3815 Southwest Temple Street, Salt Lake City, Utah 84115.

3.      This Court has jurisdiction over Plaintiff federal claims under RESPA, the FDCPA & TILA pursuant to 28 U. S. C. Sec. 1331, 1343 and 15 U. S. C. Sec. 1692k, 2614, 1640(e). The Court has jurisdiction over Plaintiff state law claims 28 U. S. C. Sec. 1367.

4.      Venue is proper in this Court pursuant to 28 U. S. C. Sec. 139(b).

### II.   STATEMENT of the FACTS

5.      For a period of years, Fairbanks has engaged in several fraudulent and misleading practices in the servicing of subprime mortgage loans. At all times material herein, the Plaintiff held a home-secured loan serviced by Fairbanks. These fraudulent practices of Fairbanks were played on the Plaintiff in this action.

**DEFENDANT'S EXHIBIT**

*16*

6.      In 1999, Plaintiff originated a loan with Nations Credit in the amount of 98,957.00 in order to refinance home.

7.      At the time of the origination, a number of problems arose between Nations Credit and Plaintiff, leading to litigation and mediation between Nations Credit and Plaintiff in February 2002.

8.      On April 1, 2002 Plaintiffs loan was transferred from Nations Credit to Fairbanks with the agreed modification settlement terms to be applied to Plaintiff's loan.

9.      The modification agreement also ordered the Plaintiff to make payments to Nations Credit at a P.O.Box pending updates and corrections of the settlement to be incorporated and transferred to Fairbanks regularly monthly statements.

10.      On or about April 16, 2002, Plaintiff received the first and only partially corrected statement from Fairbanks. Fairbanks failed to provide Plaintiff with timely and And truthful information about the timing and amounts of payments owed by Plaintiff.

11.      On May 24, 2002 Plaintiff purchased a money order in the amount of $722.10 and postage at the United States Postal Service for the first payment due May 25, 2002 with late charge date June 6, 2002 according to the modification agreement. Fairbanks ascertained the payment was received June 19, 2002 and placed monies in unapplied funds.

12.      Late fees should have been waived under the modification and additional payments of $722.10 continued to be misapplied.  In collecting and processing the loan payments of the Plaintiff, named herein, Fairbanks systematically and purposely failed to post and credit Plaintiff mortgage payments in a timely and appropriate manner to the correct account, and then failed to disclose these material facts to Plaintiff.  As a result of taking these actions and then failing to disclose these facts to Plaintiff, Fairbanks then charged Plaintiff certain bogus late fees, delinquency fees, additional interest, and other improper fees for the Plaintiff alleged failure to make timely payment, and that Plaintiff payments were, in fact, not delinquent.  As a result, Plaintiff purportedly, "fell behind" on mortgage payments, according to Fairbanks.

13.      When Fairbanks assessed these improper fees, such as the late fees mentioned above and other purported "fees" mentioned herein, it assessed them to Plaintiff's account.  These improper fees were wrongfully obtained from Plaintiff's monthly payments.  At no time did Fairbanks disclose to Plaintiff that these fees were improper, and these fees were applied to Plaintiff's account based on Fairbanks' fraudulent misrepresentation that Plaintiff's payments were "untimely". In fact, in the course of servicing Plaintiff's loan, Fairbanks represented that the fees collected by

Fairbanks were allowed under the mortgage contract and permitted by law when, in truth, they were not.

14.     Fairbanks knew or should have known according to agreed terms of the modification agreement, insurance was required. However, Fairbanks also engaged in fraudulent conduct by force-placing certain unnecessary and excessive property insurance when Fairbanks knew that sufficient property insurance was already in place, or while failing to take any reasonable actions to determine whether appropriate insurance was in place. Fairbanks received substantial commissions and compensation when it force-placed insurance on homes in this manner. As a result of paying premiums for this force-placed insurance, Plaintiff's regular mortgage payments had been deemed insufficient, and fees them improperly assessed by Fairbanks. These material facts were not disclosed to Plaintiff.

15.     Fairbanks submitted false credit reporting and incorrect information on Plaintiff's account to all major Credit Bureaus. On August 28, 2002, Plaintiff requested a correction of the inaccurate information with no success. Plaintiff submitted a formal complaint to the Attorney Generals Office to intervene on May 21, 2003. Fairbanks responded by acknowledging their mistakes and took no action for correction until nearly a year later on or about August 6, 2003. This conduct committed towards the Plaintiff was intentional, gross, wanton, malicious, oppressive and negligent. Fairbanks engages in a myriad of other fraudulent practices including, but not limited to assessing and collecting other bogus and unwarranted fees and charges; failure to disclose material facts to Plaintiff by not providing regular monthly statements; treating Plaintiff's account as in default even though timely payments had been made; miscalculating, seeking, and collecting excessive interests from Plaintiff, improperly administrating Plaintiff's escrow accounts; and fraudulently returning or refusing to accept payments in order to generate defaults and impose fees.

16.     Fairbanks attempted to foreclose on certain real property that it had no legal entitlement to. On or about October 29, 2002 Plaintiff received a Demand Letter and harassing collection calls on an account that was not in default. Approximately March 5, 2003 Plaintiff's account was two months delinquent, and a good faith payment was rejected and returned by Fairbanks with Foreclosure proceedings initiated.

17.     Fairbanks also routinely files foreclosure actions without proper notices and defective foreclosure complaints. As a result of the harassment and stress, Plaintiff's employment was terminated on September 26, 2003. Plaintiff could not afford her financial obligations and was forced to file Bankruptcy in November 2003.

18.     Defendants' conduct in dealing with the Plaintiff was consistent with a pattern and practice of fraudulent conduct committed toward others similarly situated. The damages suffered by the Plaintiff are sufficient to invoke the minimum jurisdiction of this Court.

## COUNT ONE
### Breach of Contract

19.     Plaintiff adopt and incorporate all previous allegations in full.

20.     Fairbanks services loans evidenced by the provisions contained in the note and mortgage of Plaintiff.

21.     On or about April 16, 2002, Defendants entered into a scheme to defraud Plaintiff by imposing or collecting amounts in violation of the contract including, interest, late fees, default related fees, force-placed insurance, and other impermissible fees, costs, and charges.

22.     Fairbanks misapplied or failed to apply payments, and imposed late fees and other charges not due, all in breach of contract with Plaintiff.

23.     Fairbanks also took actions inconsistent with the provisions contained in the note and mortgage of Plaintiff, thus violating any contract held.

24.     The Defendants did breach their contractual obligations by falsely reporting information to the major Credit Bureaus.

25.     As a proximate result, Plaintiff was injured and damaged as follows: that Plaintiff was caused to impair her credit standing; that Plaintiff loss refinancing and home equity loans with Citifinancial and Homeowners Loan: that these lost monies and other hardships caused the Plaintiff to ultimately to file bankruptcy; and as a result Plaintiff suffered mental anguish, physical distress, loss of employment due to stress; and other, further and different injuries and damages.

WHEREFORE, Plaintiff demands judgment against all Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT TWO
### Fraud and Suppression

26.      Plaintiff adopt and incorporate all previous allegations in full.

27.      On or about April 16, 2002, Fairbanks misrepresented to Plaintiff that Fairbanks was entitled to collect various charges that were not legally due and owing. Said representations concerning the right to collect such fees and charges were false and known to have been false when made. Moreover, Fairbanks made false representations to Plaintiff regarding the timeliness of Plaintiff's payments, which Fairbanks knew were false. Also, Fairbanks made false representations regarding its foreclosure on property unlawfully.

28.      Fairbanks has also suppressed and concealed those material facts previously described herein, including the material fact that Plaintiff's mortgage payments were, in truth, not delinquent; that Fairbanks had no right to assess and collect the bogus fees described herein; that Fairbanks' purported fees were unlawful and bogus; that Fairbanks force-placed insurance was unnecessary, excessive and profitable to Fairbanks' benefit; that at times payments were improperly placed to Fairbanks's benefit; and Fairbanks failure to disclose material facts by not providing Plaintiff with regularly monthly statements.

29.      These facts either suppressed by, or misrepresented by, Fairbanks were material and Plaintiff relied to her detriment as a result thereof. Plaintiff was injured and damaged as follows: that Plaintiff was caused to impair her credit standing; that Plaintiff loss refinancing and home equity loans with Citifinancial and Homeowners Loan; that these lost monies and other hardships caused the Plaintiff to ultimately file bankruptcy; and as a result Plaintiff suffered mental anguish, physical distress, loss of employment due to stress; and other, further and different injuries and damages.

WHEREFORE, Plaintiff demands judgment against all Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT THREE
### Negligence

30.      Plaintiff adopt and incorporate all previous allegations in full.

31.          Fairbanks owed the Plaintiff a duty of care with respect to servicing her mortgage loan for the reasons including, without limitation, that the loan was secured by an interest in the homeowner's family residence and that lack of care would result in overpayments causing great economic hardship.

32.          On or about April 16, 2002 Fairbanks breached that duty of care and diligence owed to Plaintiff by engaging in those practices and actions described in this Complaint.

33.          As a proximate result, Plaintiff was injured and damaged as follows: that Plaintiff was caused to impair her credit standing; that Plaintiff loss refinancing and home equity loans with Citifinancial and Homeowners Loan; that these lost monies and other hardships caused the Plaintiff to ultimately file bankruptcy; and as a result Plaintiff suffered mental anguish, physical distress, loss of employment due to stress; and other, further and different injuries and damages.

WHEREFORE, Plaintiff demands judgment against all Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

### COUNT FOUR
### Unjust Enrichment

34.          Plaintiff adopt and incorporate all previous allegations in full.

35.          As a result of the fraudulent and improper conduct described herein on and about April 16, 2002, Fairbanks has been unjustly enriched at the expense of the unknowing Plaintiff. Under these circumstances, and pursuant to the equitable principles recognized by Alabama Law, Fairbanks should not be allowed to obtain its ill-gotten gain, which was obtained through Fairbanks' fraudulent and improper conduct.

36.          As a proximate result, Plaintiff was injured and damaged as follows: that Plaintiff was caused to impair her credit standing; that Plaintiff loss refinancing and home equity loans with Citifinancial and Homeowners Loan; that these lost monies and other hardships caused the Plaintiff to ultimately file bankruptcy; and as a result Plaintiff suffered mental anguish, physical distress, loss of employment due to stress; and other, further and different injuries and damages.

WHEREFORE, Plaintiff demands judgment against all Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff request that this Honorable Court provide the following injunctive relief: actual and general damages according to proof; statutory damages and penalties; punitive damages according to proof; reasonable court and attorney's fees; and all such other and further relief as the Court deems just.

## PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY

DATED THIS October 20, 2004
RESPECTFULLY SUBMITTED:


BY: _Rosemary C. Riley_
Rosemary C. Riley, Pro Se


Rosemary C. Riley, Pro Se
901 Brookland Curve
Montgomery, Alabama 36117
(334) 273-9119

I wish to address the document re: Rose Riley production.  I offer not as an excuse but a factor affecting any change or negative impact in my work performance as being stress related legal home pressures.  In a good faith effort to deal with and balance work pressures along with any legal home pressures, I submit the following Plan of Action.  Given a reasonable 30 day period to allow an equal opportunity for improvement, below you will find the following Plan of Action:

1. To personally take advantage of the Life Balance Legal Services OSI provides troubled associates.
2. Use scheduled PTO for medical and legal appointments and counseling to address health and wellness issues.
3. To report to Keith Taylor, QA Supervisor to clearly define and address any errors of mistakes and to mutually set a positive plan and supportive corrective action.
4. With exception of any computer problems, to gradually increase personal number of daily monitors by 20% and to network with fellow teammates & QA supervisor for suggestions and ideas that are presently used successfully.
5. To set a mid-range appointment with QA supervisor for follow-up, direction, suggestions and support.

To address one of the obvious disputes would be the radio used on break.  Associates in the QA dept. rarely take 15 minute breaks and during a 15 minute period the radio was used.  This radio was present during a almost two year period with no prior complaints or issues.  I have always pride myself as a positive professional associate, and I will put forth a good faith effort to resolve any negative issues that has currently been brought to my attention.  Thank you for the understanding, coaching, additional training and support given. God Bless. Respectfully Submitted,

Rose C. Riley
August 6, 2003

P.S. Please consider this an official request for a copy of my personnel file.

Thanks again.
Rose

DEFENDANT'S
EXHIBIT

17

# EXHIBIT
# 3

# U.S. Bankruptcy Court
## Middle District of Alabama (Montgomery)
### Bankruptcy Petition #: 03-33526

Assigned to: Dwight H. Williams Jr.
Chapter 13
Voluntary
Asset

Date Filed: 11/14/2003
Date Terminated: 09/21/2004
Date Dismissed: 09/03/2004

Rosemary Riley
01 Brookland Curve
Montgomery, AL 36105
SSN: xxx-xx-0782
Debtor

represented by **Sandra H. Lewis**
Law Offices of Sandra Lewis, P
PO Box 686
Montgomery, AL 36101
334-269-5930
Fax : 334-269-5931
Email: atty1396@bellsouth.net

**Teresa R. Jacobs**
U. S. Bankruptcy Administrator
One Church Street
Montgomery, AL 36104
U.S.A.
334 954-3900
Bankruptcy Admin.

**Curtis C. Reding**
P. O. Box 173
Montgomery, AL 36101
334 262-8371
Trustee

| Filing Date | # | Docket Text |
|---|---|---|
| 11/14/2003 | 1 | Chapter 13 Voluntary Petition. Receipt Number cc03-9493, Fee Amount $194. Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) Modified receipt on 11/17/2003 (LO, ). (Entered: 11/14/2003) |
| 11/14/2003 | 2 | Declaration re: Electronic Filing Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 11/14/2003) |
| 11/17/2003 | | Curtis C. Reding added to case (Non-Image Entry). (DY, ) (Entered: 11/17/2003) |
| 11/17/2003 | 3 | Amended Petition Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 11/17/2003) |
| 11/17/2003 | 4 | Meeting of Creditors Chapter 13 and Notice of Confirmation Hearing (Non-Image Entry). Section 341(a) Meeting of Creditors to be held on 12/18/2003 at 09:00AM at Courtroom 4E U.S. Bankruptcy Court, One Church Street, Montgomery, AL. Confirmation hearing to be held on 1/5/2004 at 10:00 AM at Courtroom 4C, U.S. Bankruptcy Court, One Church Street Montgomery, AL. (LB, ) (Entered: 11/17/2003) |
| 1/17/2003 | 5 | Chapter 13 Plan Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Attachments: # 1 |

| | | second page to plan)(Lewis, Sandra) (Entered: 11/17/2003) |
|---|---|---|
| 1/25/2003 | 6 | Trustee's Certificate of Service for 341 Notice and Deadlines. (Reding, Curtis-EC) (Entered 11/25/2003) |
| 2/03/2003 | 7 | Notice of Appearance and Request for Notice Filed by Susannah R Walker on behalf of FAIRBANKS CAPITAL CORP.. (Walker, Susannah) (Entered: 12/03/2003) |
| 2/17/2003 | 8 | Amended/Modified Chapter 13 Plan Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Attachments: # 1 Page 2 of Plan)(Lewis, Sandra) (Entered: 12/17/2003) |
| 2/19/2003 | 9 | Proceeding Memo - Hearing Held (Non-Image Entry) Filed by Trustee Curtis C. Reding (RE: related document(s)[4] Mtg of Creditors Chapter 13 and Notice of Confirmation Hrg, ). (Reding, Curtis-MM) (Entered: 12/19/2003) |
| 01/06/2004 | 10 | Trustee's Summary of Confirmed Ch 13 Plan and Request for Order Confirming Plan. (Reding, Curtis-EC) (Entered: 01/06/2004) |
| 01/08/2004 | 11 | Order Confirming Chapter 13 Plan (Certificate of Service will be filed within 5 days) Entered On 1/8/2004 (RE: related document(s)10 Trustee's Summary of Confirmed Ch 13 Plan, [4] Mtg of Creditors Chapter 13 and Notice of Confirmation Hrg, ). (CO, ) (Entered: 01/08/2004) |
| 01/10/2004 | 12 | BNC Certificate of Service - Order Confirming Ch 13 Plan - No. of Notices: 14. Service Date 01/10/2004. (Related Doc # 11) (Admin.) (Entered: 01/11/2004) |
| 01/28/2004 | 13 | Notice of Appearance and Request for Notice Filed by Alice L. Whitten on behalf of AmeriCredit. (Whitten, Alice) (Entered: 01/28/2004) |
| 02/03/2004 | 14 | Amended Schedules. A Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 02/03/2004) |
| 02/03/2004 | 15 | Submission of Documents: *Debtor's Notice of Intent To Sell Property* Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 02/03/2004) |
| 02/13/2004 | 16 | Amended Schedules. A Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 02/13/2004) |
| 2/13/2004 | 17 | Submission of Documents: *Amended Debtor's Notice of Intent To Sell Property* Filed by Sandra H. Lewis on behalf of Rosemary Riley. (Lewis, Sandra) (Entered: 02/13/2004) |
| 3/18/2004 | 18 | Motion for Relief from Stay. Fee Amount $150. Filed by Susannah R Walker on behalf of FAIRBANKS CAPITAL CORP.. Responses due by 4/12/2004. (Walker, Susannah) (Entered: 03/18/2004) |
| 3/18/2004 | 19 | Receipt of Motion for Relief From Stay(03-33526) [motion,mrlfst13] ( 150.00) filing fee. Receipt number 1127B846888, amount $ 150.00. (U.S. Treasury) (Entered: 03/18/2004) |
| 3/18/2004 | 20 | Notice of Hearing Set (RE: related document(s)18 Motion for Relief From Stay). Hearing scheduled for 4/12/2004 at 10:30 AM at Courtroom 4C, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (GW, ) (Entered: 03/18/2004) |
| 3/20/2004 | 21 | BNC Certificate of Service - Hearing - No. of Notices: 4. Service Date 03/20/2004. (Related Doc # 20) (Admin.) (Entered: 03/21/2004) |

| 04/12/2004 | 22 | Hearing Continued on matter filed by Susannah R Walker of Sirote & Permutt, Alice L. Whitten of AmeriCredit Financial Services on behalf of FAIRBANKS CAPITAL CORP. (RE: related document(s)18 Motion for Relief From Stay). Hearing scheduled for 4/26/2004 at 10:30 AM at Courtroom 4C, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (GW, ) (Entered: 04/12/2004) |
|---|---|---|
| 04/29/2004 | 23 | Motion for Relief from Stay. Fee Amount $150. Filed by Susannah R Walker on behalf of CitiFinancial Mortgage Company, Inc.. Responses due by 5/24/2004. (Walker, Susannah) (Entered: 04/29/2004) |
| 04/29/2004 | 24 | Receipt of Motion for Relief From Stay(03-33526) [motion,mrlfst13] ( 150.00) filing fee. Receipt number 1127B902648, amount $ 150.00. (U.S. Treasury) (Entered: 04/29/2004) |
| 04/30/2004 | 25 | Notice of Hearing Set (RE: related document(s)23 Motion for Relief From Stay). Hearing scheduled for 5/24/2004 at 10:30 AM at Courtroom 4C, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (GW, ) (Entered: 04/30/2004) |
| 05/02/2004 | 26 | BNC Certificate of Service - Hearing - (RE: related document(s)25 Hearing (Bk)). No. of Notices: 4. Service Date 05/02/2004. (Admin.) (Entered: 05/03/2004) |
| 05/10/2004 | 27 | Consent Order Conditionally Denying Motion For Relief From Stay (Related Doc # 18) Entered On 5/10/2004. (Williams, Dwight) (Entered: 05/10/2004) |
| 05/12/2004 | 28 | BNC Certificate of Service - See Image Attached - (RE: related document(s)27 Order on Motion For Relief From Stay). No. of Notices: 3. Service Date 05/12/2004. (Admin.) (Entered: 05/13/2004) |
| 05/25/2004 | 29 | Hearing Continued on matter filed by Susannah R Walker of Sirote & Permutt on behalf of CitiFinancial Mortgage Company, Inc. (RE: related document(s)23 Motion for Relief From Stay). Hearing scheduled for 6/7/2004 at 10:30 AM at Courtroom 4C, U.S. Bankruptcy Court, One Church Street, Montgomery, AL. (JV, ) (Entered: 05/25/2004) |
| 06/08/2004 | | An Order Is Due To Be Filed By Susannah Walker (Non-Image Entry) (RE: related document(s)23 Motion for Relief from Stay). Order Due by 7/7/2004. (JV, ) (Entered: 06/08/2004) |
| 06/23/2004 | 30 | Order Conditionally Granting Motion For Relief From Stay Filed by Citifinancial Mortgage (Related Doc # 23) Entered On 6/23/2004. (CO, ) (Entered: 06/23/2004) |
| 06/25/2004 | 31 | BNC Certificate of Service - See Image Attached - (RE: related document(s)30 Order on Motion For Relief From Stay). No. of Notices: 2. Service Date 06/25/2004. (Admin.) (Entered: 06/26/2004) |
| 08/10/2004 | 32 | Trustee's Motion to Conditionally Dismiss Case (ExParte). Responses due by 09/2/2004. (Reding, Curtis-EC) (Entered: 08/10/2004) |
| 09/03/2004 | 33 | Order Of Dismissal (RE: related document(s)32 Trustee's Motion to Conditionally Dismiss Case (ExParte)). (CO, ) (Entered: 09/03/2004) |
| 09/05/2004 | 34 | BNC Certificate of Service - See Image Attached - (RE: related document(s)33 Order Of Dismissal). No. of Notices: 15. Service Date 09/05/2004. (Admin.) (Entered: 09/06/2004) |
| 09/20/2004 | 35 | Final Report and Final Account of Ch 13 Trustee (Payments to Creditors). (Reding, Curtis-EC) (Entered: 09/20/2004) |

| 09/21/2004 | 36 | Order Discharging Standing Trustee,Releasing Bond Liability and Closing Case: It appearing to the Court that the trustee in this case has performed all of the duties required o him in the administration of this case; that he has made distribution by order of this Court, and has rendered a full and complete account thereof, and no adverse interest being represented; It is therefore ORDERED that the Ch 13 trustee be discharged and relieved of his trust, and that he and the sureties on this bond be released from further liability thereunder; It is further Ordered that this case be, and the same is hereby CLOSED. U.S. Bankruptcy Judge (Non-Image Entry). (CO, ) (Entered: 09/21/2004) |
| --- | --- | --- |
| 09/21/2004 | 37 | Bankruptcy Case Closed (Non-Image Entry). (CO, ) (Entered: 09/21/2004) |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 04/11/2005 13:45:20 | | |
| **PACER Login:** | ma0070 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 03-33526 Fil or Ent: Fil Doc From: 0 Doc To: 99999999 Term: y Links: n Format: HTMLfmt |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

(Official Form 1) (9/01)

| FORM B1 | United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Riley, Rosemary** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**901 Brookland Curve**<br>**Montgomery, AL 36117** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Montgomery** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

**Information Regarding the Debtor (Check the Applicable Boxes)**

Venue (Check any applicable box)
- ☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| Type of Debtor (Check all boxes that apply) | | Chapter or Section of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ■ Individual(s) | ☐ Railroad | ☐ Chapter 7      ☐ Chapter 11      ■ Chapter 13 |
| ☐ Corporation | ☐ Stockbroker | ☐ Chapter 9      ☐ Chapter 12 |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding |
| ☐ Other_____ | ☐ | |

| Nature of Debts (Check one box) | Filing Fee (Check one box) |
|---|---|
| ■ Consumer/Non-Business      ☐ Business | ■ Full Filing Fee attached |
| **Chapter 11 Small Business (Check all boxes that apply)**<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor is and elects to be considered a small business under<br>   11 U.S.C. § 1121(e) (Optional) | ☐ Filing Fee to be paid in installments (Applicable to individuals only.)<br>   Must attach signed application for the court's consideration<br>   certifying that the debtor is unable to pay fee except in installments.<br>   Rule 1006(b). See Official Form No. 3. |

Statistical/Administrative Information (Estimates only)
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (9/01)

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Riley, Rosemary** | FORM B1, Page 2 |
|---|---|---|

| **Prior Bankruptcy Case Filed Within Last 6 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X    **/s/ Rosemary Riley**
Signature of Debtor **Rosemary Riley**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**November 14, 2003**
Date

**Signature of Attorney**

X    **/s/ Sandra Lewis**
Signature of Attorney for Debtor(s)

**Sandra Lewis ASB-1335-W52SW**
Printed Name of Attorney for Debtor(s)

**Law Office of Sandra Lewis, P. C.**
Firm Name

**207 Montgomery Street**
**Suite 1010**
**Montgomery, Alabama,**
Address

**(334) 269-5930  Fax: (334) 269-5931**
Telephone Number

**November 14, 2003**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X    **/s/ Sandra Lewis**          **November 14, 2003**
Signature of Attorney for Debtor(s)          Date
**Sandra Lewis**

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.
■ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

_____
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _____
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Rosemary Riley**

_____
                         Debtor

Case No. _____

Chapter _____ **13** _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 155,200.00 | | |
| B - Personal Property | Yes | 3 | 4,775.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 13,100.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 2,101.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 1,875.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 1,552.00 |
| Total Number of Sheets of ALL Schedules | | 12 | | | |
| Total Assets | | | 159,975.00 | | |
| Total Liabilities | | | | 15,201.00 | |

In re    **Rosemary Riley**

Case No._____

_____

Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **901 Brookland Curve**<br>**Montgomery, AL  36117** | **homestead** | - | **111,400.00** | **102,000.00** |
| **5122 E. Linda Circle**<br>**Montgomery, AL  36117** | **warranty deed** | - | 43,800.00 | 47,822.00 |

| | | |
|---|---|---|
| Sub-Total > | **155,200.00** | (Total of this page) |
| Total > | **155,200.00** | |

**0**
_____ continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    **Rosemary Riley**                                           Case No. _____
_____
                          Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Community Bank & Max Federal Credit Union** | - | 25.00 |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | | **Household goods and furnishings** | - | 2,000.00 |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | | **Clothing** | - | 250.00 |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

|  | Sub-Total > (Total of this page) | 2,275.00 |
|---|---|---|

__2__  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

In re    **Rosemary Riley**                                          Case No. _____
                                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY
## (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

|  | Sub-Total > (Total of this page) | 0.00 |
|---|---|---|

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

In re      **Rosemary Riley**                                              Case No. _____
                                                                    ,
                                      Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2000 Kia Sephia** | - | **2,500.00** |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

|  | |
|---|---|
| Sub-Total > (Total of this page) | **2,500.00** |
| Total > | **4,775.00** |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

In re    **Rosemary Riley**                                                    Case No. _____

_____
                                    Debtor

# SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
*[Check one box]*

☐ 11 U.S.C. §522(b)(1):    Exemptions provided in 11 U.S.C. §522(d). Note: These exemptions are available only in certain states.

■ 11 U.S.C. §522(b)(2):    Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Market Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Other Exemptions** | | | |
| **901 Brookland Curve** **Montgomery, AL 36117** | **Ala. Code § 6-10-2, Const. Art. X, § 205** | **5,000.00** | **111,400.00** |
| **2000 Kia Sephia** | **Ala. Code § 6-10-6** | **1,400.00** | **1,100.00** |
| **household goods** | **Ala. Code § 6-10-6** | **1,000.00** | **2,000.00** |

___0___  continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

In re    **Rosemary Riley**                          Case No. _____

Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding claims secured by property of the debtor as of the date of filing of the petition. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS, INCLUDING ZIP CODE | C O D E B T O R | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | H W | J | C | | | | | | |
| Account No. 607011634820<br><br>CitiFinancial<br>1641 Perry Hill Road<br>Montgomery, AL 36106 | - | | | | 1st Mortgage<br>(47,827.00 balance) | | | | | |
| | | | | | Value $      43,800.00 | | | | 0.00 | 0.00 |
| Account No. 7002274657<br><br>Nations Credit<br>P.O. Box 17285<br>Baltimore, MD 21297-1285 | - | | | | 1st Mortgage Arrears<br>(102,546.00 balance) | | | | | |
| | | | | | Value $      111,400.00 | | | | 12,000.00 | 0.00 |
| Account No.<br><br>TitleMax<br>3328 Atlanta Hwy<br>Montgomery, AL 36109 | - | | | | 2000 Kia Sephia | | | | | |
| | | | | | Value $      2,500.00 | | | | 1,100.00 | 0.00 |
| Account No. | | | | | | | | | | |
| | | | | | Value $ | | | | | |

**0**    continuation sheets attached

| | |
|---|---|
| Subtotal<br>(Total of this page) | 13,100.00 |
| Total<br>(Report on Summary of Schedules) | 13,100.00 |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                        Best Case Bankruptcy

In re     **Rosemary Riley**                                                            Case No. _____

_____

Debtor

## SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name and mailing address, including zip code, and account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of this petition.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____**0**_____ continuation sheets attached

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                                          Best Case Bankruptcy

In re    **Rosemary Riley**                                                                Case No. _____

_____ ,

                                                Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. 5291071641478357; 529107143404 | | | | | | | |
| **Capital One** **P.O. Box 390846** **Minneapolis, MN 55439** | | - | | | | | 866.00 |
| Account No. 8050101968330 | | | | | | | |
| **Fingerhut** **53 McLeland Avenue** **Saint Cloud, MN 56395** | | - | | | | | 485.00 |
| Account No. | | | | | | | |
| **Frazer & Gardner Elec.** **333 E. Jeff Davis Avenue** **Montgomery, AL 36104** | | - | | | | | 750.00 |
| Account No. | | | | | | | |
| | | | | | | | |

|  | Subtotal (Total of this page) | **2,101.00** |
|---|---|---|
| __0__   continuation sheets attached | Total (Report on Summary of Schedules) | **2,101.00** |

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                                S/N:27640-031002   Best Case Bankruptcy

In re    **Rosemary Riley**                                                    Case No. _____
_____,
                                    Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests.
State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease.
Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:    A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate
         schedule of creditors.

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

  **0**     continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

In re    **Rosemary Riley**                                                    Case No. _____
                                                                            ,
                                            Debtor

## SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

■  Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |
|  |  |

__0__  continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2000 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

In re    **Rosemary Riley**                                    Case No. _____
                                              ,
                          Debtor

# SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| **Single** | NAMES<br>None. | AGE | RELATIONSHIP |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Unemployed** | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average monthly income) | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly) | $ **0.00** | $ **N/A** |
| Estimated monthly overtime | $ **0.00** | $ **N/A** |
| SUBTOTAL | $ **0.00** | $ **N/A** |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ **0.00** | $ **N/A** |
| b. Insurance | $ **0.00** | $ **N/A** |
| c. Union dues | $ **0.00** | $ **N/A** |
| d. Other (Specify)_____ | $ **0.00** | $ **N/A** |
| _____ | $ **0.00** | $ **N/A** |
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ **0.00** | $ **N/A** |
| TOTAL NET MONTHLY TAKE HOME PAY | $ **0.00** | $ **N/A** |
| Regular income from operation of business or profession or farm (attach detailed statement) | $ **0.00** | $ **N/A** |
| Income from real property | $ **475.00** | $ **N/A** |
| Interest and dividends | $ **0.00** | $ **N/A** |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ **0.00** | $ **N/A** |
| Social security or other government assistance (Specify) _____ | $ **0.00** | $ **N/A** |
| _____ | $ **0.00** | $ **N/A** |
| Pension or retirement income | $ **0.00** | $ **N/A** |
| Other monthly income (Specify) **Unemployment** | $ **800.00** | $ **N/A** |
| **Daughter's Room & Board** | $ **600.00** | $ **N/A** |
| TOTAL MONTHLY INCOME | $ **1,875.00** | $ **N/A** |

TOTAL COMBINED MONTHLY INCOME    $ **1,875.00**        (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:

In re    **Rosemary Riley**                                           Case No. _____
_____,
                              Debtor

# SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."

| | | | |
|---|---|---|---|
| Rent or home mortgage payment (include lot rented for mobile home) | $ | 722.00 |
| Are real estate taxes included? | Yes_____ | No___X___ |
| Is property insurance included? | Yes_____ | No___X___ |
| Utilities:  Electricity and heating fuel | $ | 130.00 |
|      Water and sewer | $ | 40.00 |
|      Telephone | $ | 40.00 |
|      Other_____ | $ | 0.00 |
| Home maintenance (repairs and upkeep) | $ | 0.00 |
| Food | $ | 60.00 |
| Clothing | $ | 0.00 |
| Laundry and dry cleaning | $ | 0.00 |
| Medical and dental expenses | $ | 0.00 |
| Transportation (not including car payments) | $ | 40.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 0.00 |
| Charitable contributions | $ | 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
|      Homeowner's or renter's | $ | 0.00 |
|      Life | $ | 0.00 |
|      Health | $ | 0.00 |
|      Auto | $ | 0.00 |
|      Other_____ | $ | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
|      (Specify)_____ | $ | 0.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan.) | | |
|      Auto | $ | 0.00 |
|      Other___rent___ | $ | 480.00 |
|      Other___storage___ | $ | 40.00 |
|      Other_____ | $ | 0.00 |
| Alimony, maintenance, and support paid to others | $ | 0.00 |
| Payments for support of additional dependents not living at your home | $ | 0.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| Other_____ | $ | 0.00 |
| Other_____ | $ | 0.00 |
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ | 1,552.00 |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]
Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | | |
|---|---|---|
| A. Total projected monthly income | $ | 1,875.00 |
| B. Total projected monthly expenses | $ | 1,552.00 |
| C. Excess income (A minus B) | $ | 323.00 |
| D. Total amount to be paid into plan each ___Monthly___ | $ | 330.00 |
|                              (interval) | | |

Form 7
(9/00)

# United States Bankruptcy Court
## Middle District of Alabama

In re    **Rosemary Riley**

_____    Case No. _____

Debtor(s)    Chapter    **13**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
o

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|---|---|
| **$16,704.00** | **2002-OSI** |
| **$6,000.00** | **2003-OSI** |

**2. Income other than from employment or operation of business**

None
n

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                SOURCE

2

### 3. Payments to creditors

None
☐

a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within **90 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐

b. List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

### 4. Suits and administrative proceedings, executions, garnishments and attachments

None
☐

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None
☐

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 5. Repossessions, foreclosures and returns

None
☐

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 6. Assignments and receiverships

None
☐

a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None
☐

b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

3

### 7. Gifts

None
n

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

### 8. Losses

None
n

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

### 9. Payments related to debt counseling or bankruptcy

None
o

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| Sandra Lewis P.O. Box 686 Montgomery, AL 36105 | 11/14/03 | $350.00 |

### 10. Other transfers

None
n

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

### 11. Closed financial accounts

None
n

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

4

**12. Safe deposit boxes**

None
n

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None
n

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
n

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None
n

If the debtor has moved within the **two years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
n

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the **six-year period** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

5

| None n | a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law: |

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |

| None n | b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice. |

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |

| None n | c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number. |

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                          DOCKET NUMBER                    STATUS OR DISPOSITION

### 18 . Nature, location and name of business

| None n | a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.
If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the **six years** immediately preceding the commencement of this case.
If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case. |

| NAME | TAXPAYER I.D. NUMBER | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |

| None n | b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101. |

NAME                                          ADDRESS

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

| None n | a. List all bookkeepers and accountants who within the **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor. |

NAME AND ADDRESS                                          DATES SERVICES RENDERED

| None n | b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor. |

NAME                          ADDRESS                          DATES SERVICES RENDERED

6

None
n

c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

NAME                                                                              ADDRESS

None
n

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the **two years** immediately preceding the commencement of this case by the debtor.

NAME AND ADDRESS                                                   DATE ISSUED

### 20. Inventories

None
n

a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

|  | | DOLLAR AMOUNT OF INVENTORY |
| DATE OF INVENTORY | INVENTORY SUPERVISOR | (Specify cost, market or other basis) |

None
n

b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

|  | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY |
| DATE OF INVENTORY | RECORDS |

### 21 . Current Partners, Officers, Directors and Shareholders

None
n

a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |

None
n

b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

|  | | NATURE AND PERCENTAGE |
| NAME AND ADDRESS | TITLE | OF STOCK OWNERSHIP |

### 22 . Former partners, officers, directors and shareholders

None
n

a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |

None
n

b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |

### 23 . Withdrawals from a partnership or distributions by a corporation

None
n

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |

7

**24. Tax Consolidation Group.**

None ☐

If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within the **six-year period** immediately preceding the commencement of the case.

NAME OF PARENT CORPORATION                                 TAXPAYER IDENTIFICATION NUMBER

**25. Pension Funds.**

None ☐

If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within the **six-year period** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                         TAXPAYER IDENTIFICATION NUMBER

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date **November 14, 2003**              Signature  **/s/ Rosemary Riley**
                                                    **Rosemary Riley**
                                                    Debtor

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Rosemary Riley**

Debtor(s)

Case No. _____

Chapter  **13**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 1,600.00 |
| Prior to the filing of this statement I have received | $ | 156.00 |
| Balance Due | $ | 1,444.00 |

2.  The source of the compensation paid to me was:

    n  Debtor    o  Other (specify):

3.  The source of compensation to be paid to me is:

    n  Debtor    o  Other (specify):

4.  n  I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    o  I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
    a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
    b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
    c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
    d. [Other provisions as needed]
       **Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.**

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:
    **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:  **November 14, 2003**

**/s/ Sandra Lewis**
**Sandra Lewis**
**Law Office of Sandra Lewis, P. C.**
**207 Montgomery Street**
**Suite 1010**
**Montgomery, Alabama,**
**(334) 269-5930  Fax: (334) 269-5931**

# United States Bankruptcy Court
## Middle District of Alabama

In re  **Rosemary Riley**

Debtor(s)

Case No.

Chapter  **13**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtor hereby verifies that the attached list of creditors is true and correct to the best of his/her knowledge.

Date:  **November 14, 2003**

**/s/ Rosemary Riley**
**Rosemary Riley**
Signature of Debtor

Rosemary Riley
901 Brookland Curve
Montgomery, AL 36117

Capital One
P.O. Box 390846
Minneapolis, MN 55439

CitiFinancial
1641 Perry Hill Road
Montgomery, AL 36106

Fingerhut
53 McLeland Avenue
Saint Cloud, MN 56395

Frazer & Gardner Elec.
333 E. Jeff Davis Avenue
Montgomery, AL 36104

Nations Credit
P.O. Box 17285
Baltimore, MD 21297-1285

TitleMax
3328 Atlanta Hwy
Montgomery, AL 36109

**United States Bankruptcy Court**
Middle District of Alabama

In re    Rosemary Riley                          Case No
                              Debtor            Chapter    13

## DECLARATION REGARDING ELECTRONIC FILING OF DOCUMENTS

## PART I - DECLARATION OF DEBTOR(S) OR PARTIES

I hereby declare that my signature on this document represents the signature on the electronically filed document(s) titled:

Voluntary Petition
Application to Pay Filing Fee in Installments (if applicable)
Declaration Concerning Debtor's Schedules
Statement of Financial Affairs
Chapter 7 Individual Debtor's Statement of Intention (if applicable)
Verification of Creditor Matrix
Notice to Individual Consumer Debtor
Disclosure of Compensation of Attorney for Debtor
Chapter 13 Plan (if applicable)

I understand that this document will be electronically filed with the Office of the Clerk, U.S. Bankruptcy Court.

Dated: 11/14/03

Debtor

Dated: 11/14/03

Attorney for Debtor

(Official Form 1) (12/02)

| FORM B1 | United States Bankruptcy Court<br>Middle District of Alabama | Voluntary Petition<br>AMENDED |
|---|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Riley, Rosemary** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 6 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years<br>(include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>**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** | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>**901 Brookland Curve**<br>**Montgomery, AL 36117** | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:    **Montgomery** | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Information Regarding the Debtor (Check the Applicable Boxes)** |
|---|

Venue (Check any applicable box)
- ■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** (Check all boxes that apply) | | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** (Check one box) | |
|---|---|---|---|
| ■ Individual(s) | ☐ Railroad | ☐ Chapter 7 | ☐ Chapter 11 | ■ Chapter 13 |
| ☐ Corporation | ☐ Stockbroker | ☐ Chapter 9 | ☐ Chapter 12 | |
| ☐ Partnership | ☐ Commodity Broker | ☐ Sec. 304 - Case ancillary to foreign proceeding | | |
| ☐ Other_____ | ☐ Clearing Bank | | | |

| **Nature of Debts** (Check one box) | | **Filing Fee** (Check one box) |
|---|---|---|
| ■ Consumer/Non-Business | ☐ Business | ☐ Full Filing Fee attached |

| **Chapter 11 Small Business** (Check all boxes that apply) |
|---|
| ☐ Debtor is a small business as defined in 11 U.S.C. § 101 |
| ☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional) |

■ Filing Fee to be paid in installments (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

| Statistical/Administrative Information (Estimates only) | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Assets | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
| ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

(Official Form 1) (12/02)

| **Voluntary Petition – AMENDED**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Riley, Rosemary** | FORM B1, Page 2 |

| **Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet)** |||
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor (If more than one, attach additional sheet)** |||
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X    **/s/ Rosemary Riley**
Signature of Debtor **Rosemary Riley**

X
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

**November 17, 2003**
Date

**Signature of Attorney**

X    **/s/ Sandra Lewis**
Signature of Attorney for Debtor(s)
**Sandra Lewis ASB-1335-W52SW**
Printed Name of Attorney for Debtor(s)
**The Law Office of Sandra Lewis**
Firm Name
**207 Montgomery Street, Suite 1010
Montgomery, AL 36104**
Address
**(334) 269-5930  Fax: (334) 269-5931**
Telephone Number
**November 17, 2003**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X
Signature of Authorized Individual

Printed Name of Authorized Individual

Title of Authorized Individual

Date

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts)
I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X  **/s/ Sandra Lewis**          **November 17, 2003**
Signature of Attorney for Debtor(s)         Date
**Sandra Lewis**

**Exhibit C**

Does the debtor own or have possession of any property that poses a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.
■ No

**Signature of Non-Attorney Petition Preparer**

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Printed Name of Bankruptcy Petition Preparer

Social Security Number

Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X
Signature of Bankruptcy Petition Preparer

Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both.  11 U.S.C. § 110; 18 U.S.C. § 156.

# United States Bankruptcy Court
## Middle District of Alabama

In re    Rosemary Riley

Debtor(s)

Case No.

Chapter    13

## CHAPTER 13 PLAN

1. **Payments to the Trustee.** The future earnings or other future income of the Debtor is submitted to the supervision and control of the trustee. The Debtor (or the Debtor's employer) shall pay to the trustee the sum of **$330.00** per month.
   Total of plan payments **$19,800.00**
2. **Plan Length.** This plan is estimated to be for 60 months.
3. **Allowed claims** against the Debtor shall be paid in accordance with the provisions of the Bankruptcy Code and this Plan.
   a. Secured creditors shall retain their mortgage lien or security interest in collateral until the amount of their allowed secured claims have been fully paid or until the Debtor has been discharged. Upon payment of the amount allowed by the Court as a secured claim in the Plan, the secured creditors included in the Plan shall be deemed to have their full claims satisfied and shall terminate any mortgage, lien or security interest on the Debtor's property which was in existence at the time of the filing of the Plan, or the Court may order, termination of such mortgage, lien or security interest.

   b. Creditors who have co-signers, co-makers or guarantors ("Co-Obligors") from whom they are enjoined from collection under 11 U.S.C. § 1301 and which are separately classified and shall file their claims, including all of the contractual interest which is due or will become due during the consummation of the Plan, and payment of the amount specified in the proof of claim to the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor. All priority creditors under 11 U.S.C. § 507 shall be paid in full in deferred cash payments.
4. From the payments received under the plan, the trustee shall make disbursements as follows:

   a. Administrative Expenses
      (1) Trustee's Fee    6.5%
      (2) Attorney's Fee (unpaid portion)    **1,444.00 to be paid through in monthly installments**
      (3) Filing Fee (unpaid portion)    **$0.00**

   b. Priority Claims under 11 U.S.C. § 507

   | Name<br>NONE | Amount of Claim | Interest Rate (If specified) |
   |---|---|---|

   c. Secured Claims
      (1) Secured Debts Which Will Not Extend Beyond the Length of the Plan

   | Name<br>TitleMax | Value of Collateral<br>2,500.00 | Proposed Amount of Allowed Secured Claim<br>1,700.00 | Monthly Payment (If fixed)<br>50.00 | Interest Rate (If specified)<br>11.0 |
   |---|---|---|---|---|

      (2) Secured Debts Which Will Extend Beyond the Length of the Plan

   | Name<br>NONE | Amount of Claim | Monthly Payment | Interest Rate (If specified) |
   |---|---|---|---|

   d. Unsecured Claims
      (1) Special Nonpriority Unsecured Debts which are co-signed or are non-dischargeable shall be paid in full (100%).

   | Name<br>NONE | Amount of Claim | Interest Rate (If specified) |
   |---|---|---|

      (2) General Nonpriority Unsecured. Other unsecured debts shall be paid 100 cents on the dollar and paid pro rata, with no interest if the creditor has no Co-obligors; provided that where the amount or balance of any unsecured claim is less than $10.00 it may be paid in full.

The Debtor proposes to cure default to the following creditors by means of monthly payments by the trustee.

| Creditor | Value of Collateral | Monthly Payment | Amount of Default to be Cured |
|---|---|---|---|
| Nations Credit | 111,400.00 | 250.00 | 12,000.00 |

The Debtor shall make regular payments directly to the following creditors:

| Name | Value of Collateral | Amount of Claim | Monthly Payment | Interest Rate |
|---|---|---|---|---|
| Nations Credit | 111,400.00 | 109,000.00 | 782.00 | |

The employer of the Debtor(s) _____ will be requested to make payments while the debtor earnings is:
NONE  Payment to be made directly by debtor without wage deduction.

The following executory contracts of the debtor are rejected:

| Name | | Description of Contract or Lease |
|---|---|---|
| NONE | | |

Property not surrendered to secured creditors:

| Name | Amount of Claim | Description of Property |
|---|---|---|
| NONE | | |

10. The following liens shall be avoided pursuant to 11 U.S.C. § 522(f) or other applicable sections of the Bankr.

| Name | Amount of Claim | Description of Property |
|---|---|---|
| NONE | | |

11. Title to the Debtor's property shall revest in debtor on confirmation of a plan.

12. As used herein the term "Debtor" shall include both debtors in a joint case.

13. Other Provisions:

Date: November 14, 2003

Signature: _____
Rosemary Riley
Debtor

# UNITED STATES BANKRUPTCY COURT    Middle District of Alabama

## Notice of
## Chapter 13 Bankruptcy Case Meeting of Creditors & Deadlines

[The debtor(s) listed below filed a chapter 13 bankruptcy case on November 14, 2003 (date). ]
or  [A bankruptcy case concerning the debtor(s) listed below was originally filed under chapter _____ on _____ (date) and was converted to a case under chapter 13 on _____ .]
You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE: The staff of the bankruptcy clerk's office cannot give legal advice.

## See Reverse Side For Important Explanations.

| Debtor(s) (name(s) and address):<br>ROSEMARY RILEY<br><br>901 BROOKLAND CURVE<br><br>MONTGOMERY AL 36105 | Case Number<br>03-33526-DHW-C13 |
|---|---|
| Attorney for Debtor(s) (name and address):<br>SANDRA LEWIS<br>207 MONTGOMERY ST STE 1010<br>P O BOX 686<br>MONTGOMERY AL 36101-0686<br>Telephone number: (334) 269-5930 | Bankruptcy Trustee (name and address):<br>Curtis C. Reding<br>Chapter 13 Trustee<br>P.O. Box 173<br>Montgomery, AL 36101-0173<br>Telephone number: (334) 262-8371 |

## Meeting of Creditors

Date: **December 18, 2003**    Time: **9:00 AM**    Location: COURTROOM 4E, 1 CHURCH STREET
MONTGOMERY AL 36104

## Deadlines

Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

**Deadline to File a Proof of Claim:**
For all creditors (except a governmental unit):    **March 17, 2004**    For a governmental unit:    **May 12, 2004**

**Deadline to Object to Exemptions:**
Thirty (30) days after the *conclusion* of the meeting of creditors.

**Filing of Plan, Hearing on Confirmation of Plan**
[The debtor has filed a plan. The plan or a summary of the plan is enclosed. The hearing on confirmation will be held:
Date: **January 5, 2004**    Time: **10:00 AM**    Location: COURTROOM 4C, 1 CHURCH STREET, MONTGOMERY, AL 36104    ]
or  [The debtor has filed a plan. The plan or a summary of the plan and notice of confirmation hearing will be sent separately.]
or  [The debtor has not filed a plan as of this date. You will be sent separate notice of the hearing on confirmation of the plan.]

## Creditors May Not Take Certain Actions

The filing of the bankruptcy case automatically stays certain collection and other actions against the debtor, debtor's property, and certain codebtors. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.

## DISMISSAL AT CONFIRMATION

THE DEBTOR IS HEREBY NOTIFIED THAT FAILURE TO OBEY ORDERS OF THE COURT, INCLUDING FAILURE TO APPEAR FOR COURT HEARING DATES OR FAILURE TO COMMENCE PAYMENTS TO TRUSTEE, MAY RESULT IN THE DEBTOR(S) CASE BEING DISMISSED AT CONFIRMATION.

| Address of the Bankruptcy Clerk's Office:<br>P.O. Box 1248<br>Montgomery, AL 36102<br>Telephone number: (334) 954-3800 | For the Court<br><br>Clerk of the Bankruptcy Court:<br>Richard S. Oda |
|---|---|
| Hours Open: 8 A.M. to 5 P.M. | Date: November 24, 2003 |

000000
RICHARD S ODA
CLERK OF BANKRUPTCY COURT

P O BOX 1248
MONTGOMERY AL 36104

# EXPLANATIONS

FORM B9I (9/97)

| | |
|---|---|
| **Filing of Chapter 13 Bankruptcy Case** | A bankruptcy case under chapter 13 of the Bankruptcy Code (title 11, United States Code) has been filed in this court by the debtor(s) listed on the front side, and an order for relief has been entered. Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts pursuant to a plan. A plan is not effective unless confirmed by the bankruptcy court. You may object to confirmation of the plan and appear at the confirmation hearing. A copy or summary of the plan [is included with this notice] or [will be sent to you later], and the confirmation hearing will be held on the date indicated on the front of this notice. The debtor will remain in possession of the debtor's property and may continue to operate the debtor's business, if any, unless the court orders otherwise. |
| **Creditors May Not Take Certain Actions** | Prohibited collection actions against the debtor and certain codebtors are listed in Bankruptcy Code § 362 and §1301. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. |
| **Meeting of Creditors** | A meeting of creditors is scheduled for the date, time and location listed on the front side. *The debtor (both spouses in a joint case) must be present at the meeting to be questioned under oath by the trustee and by creditors.* Creditors are welcome to attend, but are not required to do so. The meeting may be continued and concluded at a later date without further notice. |
| **Claims** | A Proof of Claim is a signed statement describing a creditor's claim. If a Proof of Claim form is not included with this notice, you can obtain one at any bankruptcy clerk's office. If you do not file a Proof of Claim by the "Deadline to File a Proof of Claim" listed on the front side, you might not be paid any money on your claim against the debtor in the bankruptcy case.    **To be paid you must file a Proof of Claim even if your claim is listed in the schedules filed by the debtor.** |
| **Discharge of Debts** | The debtor is seeking a discharge of most debts, which may include your debt. A discharge means that you may never try to collect the debt from the debtor. |
| **Exempt Property** | The debtor is permitted by law to keep certain property as exempt. Exempt property will not be sold and distributed to creditors, even if the debtor's case is converted to chapter 7. The debtor must file a list of all property claimed as exempt. You may inspect that list at the bankruptcy clerk's office. If you belive that an exemption claimed by the debtor is not authorized by law, you may file an objection to that exemption. The bankruptcy clerk's office must receive the objection by the "Deadline to Object to Exemptions" listed on the front side. |
| **Bankruptcy Clerk's Office** | Any paper that you file in this bankruptcy case should be filed at the bankruptcy clerk's office at the address listed on the front side. You may inspect all papers filed, including the list of the debtor's property and debts and the list of property claimed as exempt, at the bankruptcy clerk's office. |
| **Legal Advice** | The staff of the bankruptcy clerk's office cannot give legal advice. You may want to consult an attorney to protect your rights. |

## — Refer To Other Side For Important Deadlines and Notices —

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

In re
ROSEMARY RILEY                          )
                                        )    Chapter 13
                                        )    Case No. 03-33526-DHW

CHAPTER 13 PLAN OR SUMMARY

1. PAYMENTS TO TRUSTEE: The debtor(s) shall pay $    330.00  to the Chapter 13
      trustee monthly                beginning Sun Dec 14, 2003.

2. DISTRIBUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:

First:    ADMINISTRATIVE CLAIMS under 11 USC §503(b).  The debtor's attorney's
          fee is $    1,444.00 .

Second:   SECURED CLAIMS:

     a. Secured claims being paid through the trustee.

| Creditor | Debt Amount | Collat. Val. | Int. | Monthly Pmt. |
|---|---|---|---|---|
| CITIFINANCIAL | 1.00 | 43,800.00 | .00 % | .00 |
| TITLE MAX | 1,100.00 | 2,500.00 | 11.00 % | 50.00 |

     b. Prepetition defaults being cured through the trustee.

| Creditor | Arrears Amount | Annual Int | Monthly Payment |
|---|---|---|---|
| NATIONS CREDIT | 12,000.00 | .00 % | 250.00 |

     c. Secured claims to be paid directly by the debtor or other party
        to the creditor.

| Creditor | Debt Amount | Collat. Value | Monthly Payment |
|---|---|---|---|
| NATIONS CREDIT | 102,547.00 | 111,400.00 | 722.00 |

Fifth:    UNSECURED CLAIMS, including the unsecured portion of secured claims,
          a pro rata amount equal to 100.00 % of the claim.  If unsecured
          creditors are to receive less than 100% of their claims, the
          debtor(s) will pay all projected income to the trustee for at least
          36 months.

3. OTHER PROVISIONS:

Chapter 13                    341 Letter Certification Report   11/24/2003   Page 001
                                             For:

          ROSEMARY RILEY                                    03-33526-DHW


                          SANDRA LEWIS
                          COURT
                          TRUSTEE
                          ROSEMARY RILEY

                          CITIFINANCIAL
                          NATIONS CREDIT
                          TITLE MAX
                          CAPTIAL ONE
                          FINGERHUT
                          FINGERHUT MFG CO
                          FRAZER & GARDNER ELEC
                          US ATTORNEY
                          NATIONS CREDIT

CERTIFICATE OF MAILING   The undersigned hereby certifies that a copy of this document was mailed this date to all parties in interest herein as required by
the Bankruptcy Code and Rules of Bankruptcy Procedure.

_____/s/_____        Date: ___November 24, 2003___

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE:<br>Rosemary Riley | } | CASE NO:    03-33526-DHW |
| | } | |
| | } | CHAPTER:    13 |
| Debtor | } | |
| | } | |
| SSN:    xxx-xx-0782 | } | |

### NOTICE OF APPEARANCE AND REQUEST FOR SERVICE OF COPIES

Comes now and requests all to take note, **FAIRBANKS CAPITAL CORP.**, a creditor and party

in interest in the above captioned title 11 petition, by and through the undersigned counsel of record,

Sirote & Permutt, P.C., be and hereby appears and requests copies of all pleadings, including but not

limited to, all notices, motions, applications, lists, schedules, statements, and all other matters arising

herein, be duly served on Fairbanks Capital Corp., by and through its legal counsel of record, at the

address set forth below, pursuant to Bankruptcy Rule 2002 and 9010(b).

Thomas G. Tutten, Jr. (TUT-003)
Susannah R Walker (WAL-278)
J Steven Wilkes (WIL-158)

**SIROTE & PERMUTT, P.C.**
P.O. Box 55887
Birmingham, AL  35255-5887
205-930-5257/ fax 205-930-5101
swilkes@sirote.com
Attorney for Fairbanks Capital Corp.

### CERTIFICATE OF SERVICE

I hereby certify that on this the __2__ day of __Dec__, 2003 a copy of the
foregoing pleading was served upon the following parties to this proceeding by placing a copy of same in
the U. S. Mail, properly addressed and first-class postage prepaid, to the following:

Sandra H Lewis, Esq.                    Curtis C. Reding, Bankruptcy. Trustee
P O Box 686                             P.O. Box 173
Montgomery, AL  36104                   Montgomery, AL  36101

OF COUNSEL

**United States Bankruptcy Court**
**Middle District of Alabama**

re Rosemary Riley

Debtor(s)

Case No.
Chapter    13

## AMENDED CHAPTER 13 PLAN

**Payments to the Trustee.** The future earnings or other future income of the Debtor is submitted to the supervision and control of the Trustee. The Debtor (or the Debtor's employer) shall pay to the trustee the sum of **$330.00 per month**
Total of plan payments: **$19,800.00**
**Plan Length.** This plan is estimated to be for 60 months.
**Allowed claims** against the Debtor shall be paid in accordance with the provisions of the Bankruptcy Code and this Plan.

a. Secured creditors shall retain their mortgage, lien or security interest in collateral until the amount of their allowed claims have been fully paid or until the Debtor has been discharged. Upon payment of the amount allowed by the secured claim in the Plan, the secured creditors included in the Plan shall be deemed to have their full claims. shall terminate any mortgage, lien or security interest on the Debtor's property which was in existence at the time of the Plan, or the Court may order termination of such mortgage, lien or security interest.

b. Creditors who have co-signers, co-makers or guarantors ("Co-Obligors") from whom they are enjoined from collecting 11 U.S.C. § 1301 and who are separately classified and shall file their claims, including all of the contractual amounts is due or will become due during the consummation of the Plan, and payment of the amount specified in the plan. the creditor shall constitute full payment of the debt as to the Debtor and any Co-Obligor.

c. All priority creditors under 11 U.S.C. § 507 shall be paid in full in deferred cash payments.

From the payments received under the plan, the trustee shall make disbursements as follows:

a. Administrative Expenses
   (i) Trustee's Fee:    **6.5%**
   (ii) Attorney's Fee (unpaid portion)    1,444.00 to be paid through monthly payments
   (iii) Filing Fee (unpaid portion)    **$0.00**

b. Priority Claims under 11 U.S.C. § 507

| Name | Amount of Claim | Interest Rate ( |
|------|-----------------|-----------------|
| NONE | | |

c. Secured Claims
   (1) Secured Debts Which Will Not Extend Beyond the Length of the Plan

| Name | Value of Collateral | Proposed Amount of Allowed Secured Claim | Monthly Payment (if fixed) | Interest Rate ( |
|------|---------------------|------------------------------------------|----------------------------|-----------------|
| TitleMax | 2,500.00 | 1,100.00 | 50.00 | 11.00 |

   (2) Secured Debts Which Will Extend Beyond the Length of the Plan

| Name | Amount of Claim | Monthly Payment | Interest Rate |
|------|-----------------|-----------------|---------------|
| NONE | | | |

d. Unsecured Claims
   (1) Special, Nonpriority Unsecured Debts which are co-signed or are non-dischargeable shall be paid in full (100

| Name | Amount of Claim | Interest Rate ( |
|------|-----------------|-----------------|
| NONE | | |

   (2) General Nonpriority Unsecured. other unsecured debts shall be paid 100 cents on the dollar and paid pro rata interest if the creditor has no Co-obligors, provided that where the amount or balance of any unsecured claim $10.00 or may be paid in full.

Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston IL - (800) 492-8037



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re
ROSEMARY RILEY

Case No. 03-33526-DHW
Chapter 13

Debtor.

TRUSTEE'S SUMMARY OF CONFIRMED CHAPTER 13 PLAN

The debtor's plan was filed on Mon Nov 17, 2003.  A summary of the plan or the final modification was transmitted to  the  creditors under Fed R Bankr P 3015. The Confirmation hearing for the debtor(s) plan was held on Mon Jan 05, 2004, and the Court ordered the plan confirmed.

Following is a Summary of the plan as confirmed by the Court:

1.  Payment:
    Amount of debtor(s) plan payment: $    330.00  monthly.
    Period of payments: 056 months or until 100.00 % is paid on allowed unsecured claims or a "pot" of $         .00  is paid to unsecureds.

    Payable to:    CHAPTER 13 TRUSTEE
                   P O BOX 830529
                   BIRMINGHAM AL  35283
    Payroll deduction:  No Payroll deduction is ordered.

2.  Senior expenses and Administrative claims to be paid:

| | ADMINISTRATIVE EXPENSES | | |
|---|---|---|---|
| Debtor's Attorney | Attorney's fee allowed | $ | 1,444.00 |
| Clerk of Court | Filing fee | $ | .00 |
| Chapter 13 Trustee | Trustee administrative fee | $ | .00 |
| Chapter 13 Trustee | Notice fee @ $.50 per copy. | $ | 6.50 |
| Insurance | | $ | .00 |

| SECURED, PRIORITY, AND SPECIAL CLAIMS | | | | |
|---|---|---|---|---|
| TITLE MAX | $  2,500.00 | 11.00 % | $ | 50.00 |
| NATIONS CREDIT | $ 12,000.00 | .00 % | $ | 250.00 |

3.  Payments on allowed unsecured claims (including undersecured claims) will be made after senior expenses and claims are paid.

Dated this the 06th day of January, 2004.

                              / s /
                         _____
                         Curtis C. Reding
                         Chapter Thirteen Trustee

In re
ROSEMARY RILEY

Case No. 03-33526-DHW
Chapter 13

      Debtor.

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing document on all parties in interest, by placing them in the United States Mail, postage prepaid, and properly addressed, this 06th day of January, 2004.

                                 / S /
                         Curtis C. Reding, Trustee

UNITED STATES BANKRUPTCY COURT
# Middle District of Alabama

In Re a *Petition for Relief under Chapter 13 of Title 11, U.S. Code* , filed by or against the below named Debtor(s) on 11/14/03.

IN RE:
**Rosemary Riley** , Debtor(s)

Case No.: 03–33526

Chapter: 13
Judge: Dwight H. Williams Jr.

## ORDER CONFIRMING PLAN

The debtor's plan was filed on 11/17/03. The plan or a summary of the plan was transmitted to creditors pursuant to Bankruptcy Rule 3015. The court finds that the plan meets the requirements of 11 U.S.C. Section 1325.

**It is ORDERED that:**

The debtors chapter 13 plan, as amended, if applicable, is **confirmed** .

Dated:  1/8/04

Dwight H. Williams Jr.
United States Bankruptcy Judge

C:
Debtor
Attorney for Debtor
Trustee
All Creditors
Bankruptcy Administrator

## UNITED STATES BANKRUPTCY COURT
# Middle District of Alabama

In Re a *Petition for Relief under Chapter 13 of Title 11, U.S. Code* , filed by or against the below named Debtor(s) on 11/14/03.

| | |
|---|---|
| IN RE:<br>**Rosemary Riley** , Debtor(s) | Case No.: 03–33526<br><br>Chapter: 13<br>Judge: Dwight H. Williams Jr. |

### ORDER CONFIRMING PLAN

The debtor's plan was filed on  11/17/03. The plan or a summary of the plan was transmitted to creditors pursuant to Bankruptcy Rule 3015.  The court finds that the plan meets the requirements of 11 U.S.C. Section 1325.

**It is ORDERED that:**

The debtors chapter 13 plan, as amended, if applicable, is **confirmed** .

Dated:  1/8/04

Dwight H. Williams Jr.
United States Bankruptcy Judge

C:
Debtor
Attorney for Debtor
Trustee
All Creditors
Bankruptcy Administrator

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

District/off: 1127-2          User: cosborne          Page 1 of 1                    Date Rcvd: Jan 08, 2004
Case: 03-33526               Form ID: van297a         Total Served: 14

```
The following entities were served by first class mail on Jan 10, 2004.
db      +Rosemary Riley,    901 Brookland Curve,    Montgomery, AL 36117-4550
aty      Sandra H. Lewis,    Law Offices of Sandra Lewis, PC,    PO Box 686,    Montgomery, AL  36101
aty      Susannah R Walker,    Sirote & Permutt,    P.O. Box 55727,    Birmingham, AL  35255
tr       Curtis C. Reding,    P. O. Box 173,    Montgomery, AL  36101
ust      Teresa R. Jacobs, BA,    U. S. Bankruptcy Administrator,    One Church Street,    Montgomery, AL  36104
832294   Capital One,    P.O. Box 390846,    Minneapolis, MN 55439
832295   CitiFinancial,    1641 Perry Hill Road,    Montgomery, AL 36106
849130   Citifinancial Inc.,    P.O. Box 649,    Hanover, MD 21076
844006   FAIRBANKS CAPITAL CORP.,    c/o SUSANNAH R. WALKER,    SIROTE & PERMUTT, P.C.,    PO BOX 55887,
          BIRMINGHAM, AL 35255-5887
832296   Fingerhut,    53 McLeland Avenue,    Saint Cloud, MN 56395
832297   Frazer & Gardner Elec.,    333 E. Jeff Davis Avenue,    Montgomery, AL 36104
832298   Nations Credit,    P.O. Box 17285,    Baltimore, MD 21297-1285
832299   TitleMax,    3328 Atlanta Hwy,    Montgomery, AL 36109
840855   Titlemax 2,    3328 Atlanta Hwy.,    Montgomery, AL 36109
```

The following entities were served by electronic transmission.
NONE.                                                                                        TOTAL: 0

```
         ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
cr       FAIRBANKS CAPITAL CORP.
```
                                                                                   TOTALS: 1, * 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jan 10, 2004                    Signature:        *Joseph Speetjens*

100-0000129529    236

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

4Ц511ХЦЦ
8УУ

IN RE: Rosemary Riley

Debtor(s)

Case Number:    03-33526--13

Chapter:    13

### REQUEST FOR NOTICE
#### PURSUANT TO BANKRUPTCY RULE 2002 AND 9010

PLEASE TAKE NOTICE THAT AmeriCredit hereby gives notice as follows:

Pursuant to Bankruptcy Rule 2002 and 9010, AmeriCredit
hereby requests that:

(i)    all notices given or required to be given in the case; and
(ii)    all pleadings and correspondence served or required to be served in this case,

regarding AmeriCredit should be directed to AmeriCredit at the following mailing address effective immediately:

AmeriCredit
Attn: AmeriCredit Department
Account : 405112004
P.O. Box 183853
Arlington, TX 76096

This request encompasses all notices, copies and pleadings referred to in Rules 2002, 9007 or 9010 of the Bankruptcy Rules, including, without limitation, notices of any Orders, Motions, Demands, Complaints, Petitions, Pleadings, Requests, Applications Schedules, Statements, Plans, and any other documents brought before this court in this case, whether formal or informal, written or oral, or transmitted or conveyed by mail, delivery, telephone, telecopier, telex, or otherwise which effects or seeks to effect the above case.

Respectfully submitted,

Alice Whitten
AmeriCredit
P.O. Box 183853
Arlington, TX 76096
(888) 755-8646
File #:    129529
Attorney(s) for AmeriCredit

### CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and correct copy of the above and foregoing Request for Notice was forwarded to all parties of interest as listed below or attached hereto via First Class, U.S. Mail, postage prepaid (unless otherwise indicated) on this 23rd day of January, 2004.

Alice Whitten

Trustee:
Curtis Reding
Trustee of the U.S. Bankruptcy Court
P.O. Box 173
Montgomery, AL 36101

Company:
AmeriCredit
4000 Embarcadero
Arlington, TX 76014

Attorney for Debtor:
Sandra H Lewis
Po Box 686
Montgomery, AL 361010686

In re  **Rosemary Riley**                                        Case No.____**03-33526**_____
_____
                              Debtor

## SCHEDULE A. REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **901 Brookland Curve** <br> **Montgomery, AL  36117** | **homestead** | - | **111,400.00** | **102,000.00** |
| **5122 E. Linda Circle** <br> **Montgomery, AL  36117** | **warranty deed** | - | **43,800.00** | **47,822.00** |
| **922 Penney Street** <br> **Chester, PA 19013** | **warranty deed** | - | **25,000.00** | **0.00** |

|  |  |  |
|---|---|---|
| Sub-Total > | **180,200.00** | (Total of this page) |
| Total > | **180,200.00** | |
| | (Report also on Summary of Schedules) | |

__**0**____ continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996-2003 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE: ROSEMARY RILEY                          CHAPTER 13 CASE
           Debtor(s)                           NO: 03-33526

Debtor's Notice of Intent To Sell Property

TO TRUSTEE, ALL CREDITORS, AND ALL PARTIES IN INTEREST

Please take notice that the debtor proposes to sell the property located at 922 Penney Street, Chester, PA 19013.

The purchase price of the property is $28,000.00.

There is no mortgage balance.

The date the sale is to take place is February 25, 2004.

If not objection to such sale is filed with the Court and served on the debtor's attorney before fifteen days from the date of this Notice, no hearing will be held and the above described property will be sold by the debtor.

_____
Sandra Lewis
Attorney for Debtor

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Debtor's Notice Of Intent To Sell Property on Curtis C. Reding, P.O. Box 173, Montgomery, AL 36101 and all creditors on the matrix via United States Mail, postage paid and properly addressed on this 23rd day of February, 2004.

_____
SANDRA LEWIS
Attorney For Debtor

OF COUNSEL:
Sandra Lewis
Attorney at Law
P.O. Box 686
Montgomery, Alabama 36101-0686
(334) 269-5930





**KINDER & FURMAN, INC**
VALENTINE W. SPANIEL JR., President
REALTOR AND INSURANCE
726 Chester Pike, P.O. Box 243
Prospect Park, PA 19076
(610) 532-4331
*WE ARE PERSONALIZED NOT FRANCHISED*

Al-Bappa Diff. CHU
Associate Broker

**SELLER'S ESTIMATE OF CLOSING COSTS**      DATE 1/24/04

ASKING/SELLING PRICE $ 55,000

PROPERTY ADDRESS 922 Pierce St. Chester PA. 19013

OWNER Rosemary C. Riley

|     |     |     |     |
|-----|-----|-----|-----|
| 1.) TRANSFER TAX | (1% of sale price) | $ | 180 |
| 2.) NOTARY FEE | | $ | 20.00 |
| 3.) R.E. TAX ADJUSTMENT | | $ | (CREDIT AT SETTLEMENT) |
| 4.) WOOD INFESTATION REPORT | | $ | 0 |
| 5.) BROKERAGE COMMISSION | (list) | $ | 2000 |
| 6.) BROKERAGE PROCESSING FEE | | $ | 400.00 0 |
| 7.) USE & OCCUPANCY CERTIFICATE | | $ | |
| 8.) REAL ESTATE TAX CERTIFICATIONS | | $ | 0 |
| 9.) FIRST MORTGAGE PAYOFF | | $ | 60.00 |
| 10.) SECOND MORTGAGE PAYOFF | | $ | 0 |
| 11.) TITLE COMPANY CLOSING FEE | | $ | 0 |
| 12.) CERTIFICATION (water, sewer, plumb, heat) | | $ | 35.00 |
| 13.) SELLER ASSIST (credit towards buyer's CC) | | $ | 0 |
| 14.) REPAIRS Back Taxes Tax C/o R | | $ | 0 |
| 15.) MISCELLANEOUS 2004 RE Taxes | | $ | 2280 |
| | | $ | 1037 |
| | TOTAL | $ | 5532 |
| | | | + Chesters Bills |

WITNESS _____          SELLER _____

(6/00) _____          SELLER _____

Member
Delaware Valley Board Assoc. Association
National Association of Realtors

In re:   Rosemary Riley
                                                            Case No.      03-33526
                         Debtor

## SCHEDULE A: REAL PROPERTY - AMENDED

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a co-tenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| 901 Brookland Curve Montgomery, AL 36117 | homestead | | 111,400.00 | |
| 5122 E. Linda Circle Montgomery, AL 36117 | warranty deed | | 43,800.00 | |
| 922 Penney Street Chester, PA 19013 | warranty deed | | 18,000.00 | |
| | | Sub-Total > | 173,200.00 | (Total of this page) |
| | | Total > | 173,200.00 | |

___ continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996

(Report also on Summary of Schedules)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

IN RE: ROSEMARY RILEY                          CHAPTER 13 CASE
        Debtor(s)                               NO. 03-33526

Amended Debtor's Notice To Sell Property

TO TRUSTEE, ALL CREDITORS, AND ALL PARTIES IN INTEREST

Please take notice that the debtor proposes to sell the property located at c
Pennell Street, Chester, PA 19013.

1.    The purchase price of the property is $18,000.00.

2.    There is no mortgage balance.

3.    The date the sale is to take place is February 25, 2004.

4.    The net proceeds of the sale shall be paid to the trustee.

If no objection to such sale is filed with the Court and served on the debto
attorney before fifteen days from the date of this Notice, no hearing will be held and
above described property will be sold by the debtor.

                                          Sandra Lewis
                                          Attorney for Debtor

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Debtor's Notice Of Intent
Sell Property on Curtis C. Reding, P.O. Box 173, Montgomery, AL 36101 and
creditors on the matrix via United States Mail postage paid and properly addressed
this 22th day of February, 2004.

                                          SANDRA LEWIS
                                          Attorney For Debtor

OF COUNSEL:
Sandra Lewis
Attorney at Law
P.O. Box 686
Montgomery, Alabama 36101-0686
(334) 269-5930

UNITED STATES BANKRUPTCY COURT
# Middle District of Alabama

In re:

**Rosemary Riley**
   Debtor

Case No.: 03–33526

Judge: Dwight H. Williams Jr.
Chapter: 13

### NOTICE

PLEASE TAKE NOTICE that a hearing will be held at

U.S. Bankruptcy Court, One Church Street, Courtroom 4C, Montgomery, AL

on 4/12/04 at 10:30 AM

to consider and act upon the following:

*18* – Motion for Relief from Stay. Fee Amount $150. Filed by Susannah R Walker on behalf of FAIRBANKS CAPITAL CORP.. Responses due by 4/12/2004. (Walker, Susannah)

The automatic stay shall remain in effect until final disposition of this motion.

Dated:  3/18/04

RO
Clerk, U.S. Bankruptcy Court

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

IN RE:                          }    CASE NO:    03-33526-DHW
                                }
Riley, Rosemary                 }    CHAPTER:  13
                                }
                                }
                Debtor(s)       }
Soc.Sec.No(s).:     xxx-xx-0782 }

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY CITIFINANCIAL MORTGAGE COMPANY

Comes now CITIFINANCIAL MORTGAGE COMPANY, its principals, investors, successors, and/or assigns, if any, (hereinafter "Creditor"), by and through its undersigned counsel of record, Sirote & Permutt, P.C., and moves this Honorable Court to lift the automatic stay in the above-referenced Debtor(s)' Chapter 13 bankruptcy and in support thereof, Creditor avers as follows:

1.    This Honorable Court has jurisdiction to hear these matters and enter final orders pursuant to 28 U.S.C. §§ 157 and 1334; and 11 U.S.C. § 362. The Motion for Relief from Automatic Stay constitutes a core proceeding and is a contested matter pursuant to Fed. R. Bankr. P. 4001(a) and 9014.

2.    The Creditor holds a mortgage lien on the property commonly referred to as 5122 E Linda Circle, Montgomery, AL 36108, and legally described in the Mortgage and Note.

3.    The Creditor has not received post-petition regular monthly routine maintenance mortgage payment(s). The mortgage and loan held by the Creditor is in post-petition default under the terms and conditions stated upon the face of the mortgage and loan documents. The Debtor(s) is/are in post-petition default for

DOCSBHM\1168133\1\ **DRAFT 4/7/04  12:00 PM**

the mortgage payments due for the months of December, 2003 through the current date, plus late fees, attorneys fees and costs.

4.    The Debtor(s)' failure to make regular monthly routine maintenance mortgage payments unto the Creditor as they become due post-petition results in a unilateral modification of the mortgage and note between the parties in violation of 11 U.S.C. § 1322(b)(2).

5.    The Debtor(s) has/have not made a good faith effort to provide for and make the regular monthly routine maintenance mortgage payments as they become due in a manner to ensure that the Creditor receives the regular monthly routine maintenance mortgage payments consistent with the terms of the mortgage and mortgage loan documents.

6.    The Debtor(s) has/have willfully violated the terms and provisions of his/her/their Chapter 13 plan, and if applicable the order confirming said plan.

7.    The Debtor(s)' actions have caused unreasonable delay that is prejudicial to the Creditor. Further, the Creditor is not adequately protected.

8.    The Creditor desires to protect its interests and proceed with taking possession of the property.

## WAIVER OF FED. R. BANKR. P. 4001(a)(3)

9.    This is a Chapter 13 bankruptcy case. The Debtor(s) either know, should know, or have been informed by Debtor(s)' Counsel of the rules of this Bankruptcy Court and the potential penalties for non-compliance. Therefore, the Creditor requests this court waive the ten day "stay" in accordance with Fed. R. Bankr. P. 4001(a)(3).

## FUTURE DEFAULT

10.    Should this Honorable Court deny the Creditor's Motion for Relief from Automatic Stay, the Creditor would request that this Honorable Court direct that

the stay shall be immediately lifted, without further order or notice, as to the Creditor in the event that the Debtor should default on any future payments.

### ATTORNEYS FEE

11.    The Creditor has had to incur additional expense in order to collect this post-petition debt in the form of attorneys fees and costs and requests this Court to award the Creditor reasonable attorneys fees and court costs associated with this matter.

**WHEREFORE, ABOVE PREMISES CONSIDERED,** the Creditor herein prays that this Honorable Court will lift, modify, or terminate the automatic stay now in force and effect in order that the Creditor may obtain possession of its collateral and may foreclose or liquidate its collateral under state law; grant said Creditor reasonable attorneys fees and costs associated with the filing of this Motion; waive the effect of Fed. R. Bankr. P. 4001(a)(3); or IN THE ALTERNATIVE, order an appropriate cure of the post-petition arrearage and default; grant said Creditor reasonable attorneys fees and costs associated with the filing of this Motion; and grant said Creditor future relief, modification, termination, or lifting of the automatic stay now in force and effect, should the Debtor(s) default on any future payments to be made unto said Creditor, in order that the Creditor may obtain possession of its collateral, may foreclose, or liquidate its collateral under state law.

Respectfully submitted,

_SRWalker_
Thomas G. Tutten, Jr.    (TUT003)
J. Steven Wilkes         (WIL278)
Susannah R. Walker    (WAL158)
Attorney for Creditor

OF COUNSEL:

SIROTE & PERMUTT, P.C.
P. O. Box 55887
Birmingham, Alabama 35255-5887
205-930-5424/ fax 205-930-5101
swalker@sirote.com

DOCSBHM\1168133\1\ DRAFT 4/7/04 12:00 PM

## CERTIFICATE OF SERVICE

I hereby certify in accordance with Fed. R. Bankr. P. 4001(a), 9014, and 7004 that a copy of the above and foregoing Motion for Relief from the Automatic Stay was mailed, first class postage prepaid or served via electronic case management to:

Sandra H Lewis              Rosemary Riley              Curtis C. Reding
P. O. Box 686               901 Brookland Curve         P. O. Box 173
Montgomery, AL  36104       Montgomery, AL  36105       Montgomery, AL  36101

On this the ___ day of _____, 2004.

_____
OF COUNSEL

STATE OF MARYLAND              )

COUNTY OF ANNE ARUNDEL         )

## AFFIDAVIT

BEFORE ME, the undersigned, Notary Public, personally appeared Pamela Turley, who is known to me and after being by me first duly sworn, deposes and says the following:

My individual responsibility is to administer mortgage loans in bankruptcy. Specifically, this includes monitoring loan payments. I hereby certify and state that said records were made in the regular course of business, and that it was in the regular course of said office for such records to be made at the time of the events, transactions, or occurrences to which they refer or within a reasonable time thereafter. My personal knowledge of this mortgage loan shows the following:

| | | |
|---|---|---|
| 1. | Loan No: | 20-0051-0219516 |
| 2. | Debtor: | Rosemary Riley |
| 3. | Bankruptcy Case No: | 03-33526-DHW-13 |
| 4. | Property Description: | 5122 E Linda Circle, Montgomery, AL 36108 |
| 5. | Net Principal Balance as of 04/07/2004 | 32,601.81 |
| 6. | Delinquent Status as of 04/07/2004 | Due for payment |
| | 5 payments of 389.15 each for Dec 1, 2003 through Apr 1, 2004 | 1,945.75 |
| | Bankruptcy Attorney Fees for MFR | 650.00 |
| | Total Post-petition Mortgage Arrearage | $2,595.75 |

The facts stated herein are true. In verification of the same, I subscribed my signature hereto.

Sworn to and subscribed before me on this the 27TH day of APRIL, 2004.

_____
Affiant

Sworn to and subscribed before me on this the 27TH day of APRIL, 2004.

_____
Notary Public
My Commission Expires: 5/20/06

# Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| ROSE 'C RILEY<br>5122 E LINDA CIRCLE<br>MONTGOMERY AL 36108 | CITIFINANCIAL<br>CORPORATION, LLC<br>1641 PERRY HILL RD  SUITE-102<br>MONTGOMERY  AL  36106 | 205591<br>Date of Loan<br>09/12/2002 |

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 10.00 % | $ 95,930.78 | $ 44,345.45 | $ 140,276.23 |

**Payment Schedule:**

| Number of Payments | Amount of Payments * | When Payments Are Due |
|---|---|---|
| 1 | $ 571.38 | 11/01/2002 |
| 359 | $ 389.15 | MONTHLY BEGINNING  12/01/2002 |
|  | $ |  |
|  | $ |  |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**Security:** If checked, Borrower has a security interest in:

☐ Motor Vehicle   ☐ Mobile Home
☒ Real Property   ☐ Other:

**Late Charge:** If a payment is in default 10 days or more after the scheduled payment date, Borrower will be charged 5.0 % of the unpaid amount of the payment or $ 10.00, whichever is more, but in no event to exceed $ 100.00 .

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty and will not be entitled to a refund of part of the finance charge.

\* Does not include any insurance premium.

**Additional Information:**

| Total amount of first month's payment including insurance premiums, if any. | PRINCIPAL AMOUNT | POINTS | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 653.59 | $ 44,345.45 | $ NONE | 09/17/2002 |

**Required Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender.

**Optional Insurance Disclosure:**
Borrower is not required to purchase optional insurance products, such as: Credit Life, Credit Disability, Involuntary Unemployment Insurance or any other optional insurance products. Lender's decision to grant credit will not be affected by Borrower's decision to purchase or decline to purchase optional insurance.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly premium in addition to the monthly loan payment disclosed above.

Borrower should refer to the terms contained in the applicable certificate or policy of insurance issued for the exact description of benefits, exclusions and premium rates.

If Borrower purchases insurance, Borrower's monthly payment will include both the monthly loan payment disclosed above and the applicable monthly premiums.

I/We request the following insurance:

| Premium Due with the First Month's Loan Payment | First Year's Premium * | Insurance Type: |  |  |
|---|---|---|---|---|
| $ 54.54 | $ 652.89 | SINGLE CREDIT LIFE | First Borrower's Signature | 9/12/02 |
| $ 27.67 | $ 332.03 | SINGLE CREDIT DISAB | | |
| $ NONE | $ | | Second Borrower's Signature   Date | |

(\* First year's premiums are calculated on the assumption that monthly loan payments are timely made. Accrued but unpaid premium, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay premiums may result in termination of insurance as described below.

**Termination of Insurance:**
Borrower may cancel any of the optional insurance products offered at any time. The optional insurance will terminate upon the earliest of the following occurrences:
(1) the Lender's receipt of Borrower's written request for termination;
(2) on the date when the sum of past due premiums equal or exceed four times the first month premium;
(3) termination pursuant to the provisions of the insurance certificate;
(4) payment in full of Borrower's Loan;
(5) death of Borrower.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the Lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the rate of interest of 09.9996 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest applicable to the remaining unpaid principal balance shall decrease to N/A % per annum.

Any amount shown above as Points has been paid by Borrower as Points. This amount is considered a prepaid charge and is in addition to interest calculated at the above Rate(s) of Interest. Any Points are earned prior to any other interest on the loan balance. In the event of prepayment of the loan, prepaid Points will not be refundable to Borrower.

(Intentionally left blank)

CitiFinancial Corporation, LLC
AL 25738-16 5/2002

Original (Branch)    Copy (Customer)

Borrower's Initials: RCR

Page 1 of

ROSE C RILEY                                    205591          09/12/2002

Principal and interest shall be payable in the monthly installments shown above, except that any appropriate adjustments will be made to the first and final payments, beginning on the first payment date shown above and continuing on the same day in each following month until paid in full unless this loan is subject to a call provision as indicated, in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal and interest evidenced by this Disclosure Statement, Note and Security Agreement shall be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines.

Each payment shall be applied as follows: (1) monthly loan payments due (first to interest, then principal), (2) insurance premiums due, (3) unpaid interest to the date of payment, if any, then (4) principal. Lender may collect interest from and after maturity upon the unpaid Principal balance at the maximum rate permitted under the then applicable law or the rate of interest prevailing at the time of maturity under this Disclosure Statement, Note and Security Agreement.

PREPAYMENT: Borrower may prepay this loan in whole or in part at any time without penalty. However, upon partial prepayment, interest will continue to accrue on any remaining Principal balance. Partial prepayment and the application of a Refund to the unpaid balance of the loan will not affect the amount or due date of subsequent scheduled payments on the loan, but may reduce the number of such payments.

SECURITY AGREEMENT:

A. To protect Lender if Borrower defaults on this loan, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all of which will be called "Property". See below for additional terms applicable to this security interest.

1. Motor vehicle/mobile home:

| Make, No. Cylinders | Year/Model | Model No. Or Name | Body Type | Identification Number |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

2. Other Property:

B. If this line is completed, the loan is secured by either a Deed of Trust or a Mortgage on real property located at 5122 E LINDA CIRCLE    MONTGOMERY AL 36108                    . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a motor vehicle or a mobile home, Borrower will, upon request, deliver the certificate of title to the motor vehicle or mobile home to Lender.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives unless the Property is a motor vehicle, in which case it will be used outside the state only in the course of Borrower's normal use of the Property. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

INSURANCE: If the original amount of the loan is $300.00 or more, not including insurance charges, and if the Property includes a motor vehicle or a mobile home worth $300.00 or more, Borrower will keep the motor vehicle or mobile home insured with collision and comprehensive casualty insurance, as required by Lender, protecting Lender and Borrower as their interests may appear, for the amount of the unpaid balance of the loan or the value of the motor vehicle or mobile home, whichever is less, until the loan is fully paid. If Borrower purchases any insurance at Lender's office Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance. If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan.

FINANCING STATEMENTS: Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

LATE CHARGE: Borrower understands that there is a charge for late payments as shown in the Disclosure Statement on page 1 of this Disclosure Statement, Note and Security Agreement.

NSF CHECKS: Lender may charge the greater of either a $ 20.00 fee or an amount equal to the actual charge by the depository institution if check, draft, negotiable order of withdrawal or like instrument is not paid or is dishonored.

LOAN CHARGES: If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

DEFAULT: Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
2. Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
3. Any of the Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
4. Borrower fails to fulfill any promise made under this agreement; or
5. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust or the real property.

If Borrower defaults, Lender may require Borrower to repay the entire unpaid balance and any accrued interest at once. If the debt is referred for collection to an attorney who is not Lender's employee, and the original amount financed is over $300.00, Borrower agrees to pay reasonable attorney's fees not to exceed 15% of the unpaid balance upon default, and court costs.

EFFECTS OF DEFAULT: If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of any sale, minus the expenses incurred in collecting on the debt, will be credited to the unpaid balance of Borrower's loan. The expenses that will be deducted from the proceeds of the sale include: the costs of taking, removing, holding, repairing, and selling the Property; fees (if the original amount of the loan is $300.00 or more) not to exceed 15% of the unpaid balance paid to an attorney who is not Lender's salaried employee; and the costs of removing any superior liens or claims on the Property. If Borrower has left other property in the repossessed Property Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

CitiFinancial Corporation, LLC                                          Borrower's Initials: ____
AL 25738-16  5/2002            Original (Branch)    Copy (Customer)

ROSE C RILEY                                                    205591        09/12/2002

If the proceeds of sale are not sufficient to satisfy the unpaid balance, earned interest, and expenses subject to applicable Alabama law, Borrower agrees to pay the remaining amount upon demand.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

LAW THAT APPLIES: Alabama law and federal law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

OTHER RIGHTS: Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Lender may waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular. References to the masculine gender may be read to apply to the feminine gender.

OTHER TERMS: Each Borrower under this Disclosure Statement, Note and Security Agreement, if more than one, agrees that Lender may obtain approval from one Borrower to change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement, without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

---

### NOTICE OF ARBITRATION PROVISION

**THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND LENDER, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

Definitions for Arbitration Provision. As used in this Arbitration Provision ("Provision"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors assigns, and representatives.
"We" or "Us" means the Lender under this Disclosure Statement, Note and Security Agreement, American Health & Life Insurance Company, Triton Insurance Company, and any assignee of Lender, together with all of their respective corporate parents, subsidiaries, affiliates, predecessors assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

* This Provision, its enforceability, and the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of this Provision;
* Any Credit Transaction;
* Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
* Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
* Any act or omission by any of Us;
* Fraud or misrepresentation, including claims for failing to disclose material facts;
* Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
* Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
* Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

Agreement to Arbitrate Claims. Upon written request by either party that is submitted according to the applicable rules for arbitration, any Claim except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Financial Services Arbitration Rules and Procedures of JAMS/Endispute, Inc. ("Administrator"), and (iii) this Provision, unless we both agree in writing to forgo arbitration. The terms of this Provision shall control any inconsistency between the rules of the Administrator and this Provision. You may obtain a copy of the arbitration rules by calling (800) 448-1660 or by accessing the Administrator's internet site including a form Demand for Arbitration. Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. Pursuant to this Provision, You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons or entities involved with any Credit Transaction or any other matter covered by this Disclosure Statement, Note and Security Agreement, (ii) all persons who signed or execute any document relating to any Credit Transaction or Claim, and (iii) all persons or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

Judgment. Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

(Intentionally left blank)

CitiFinancial Corporation, LLC
AL 25738-16  5/2002                  Original (Branch)    Copy (Customer)        Borrower's Initials: _____

Page 3 of

ROSE C RILEY                                                                                    205591        09/12/2002

Claims Excluded from Arbitration. The following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate:

- Any action to effect a foreclosure to transfer title to the property being foreclosed, or exercise of extra-judicial or self-help repossession under applicable law; or
- Any matter where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages; restitution; disgorgement; costs and fees (including attorneys' fees), or any Claims brought in a small claims court. In the event You attempt to assert any of Your Claims on behalf of a putative class of persons, in violation of other terms in this Provision, the value of Your Claims will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00.

However, should either party initiate arbitration, the other party, at its option, may seek injunctive and monetary relief in arbitration. Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

Additional Terms.

Administration of Arbitration. Arbitration shall be administered by the Administrator, but if it is unable or unwilling to administer the arbitration, then the American Arbitration Association will administer any arbitration required under this Provision pursuant to its Commercial Arbitration Rules and Expedited Procedures. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

Appeal. Either You or We may appeal the arbitrator's award in accordance with the Optional Appeals Procedures of the Administrator, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Provision.

Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Costs. The cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay the initial filing fee up to $125.00 to the Administrator when the demand is made. We will pay any balance.
- We will pay to the Administrator all other costs for the arbitration proceeding up to a maximum of one day (eight hours) of hearings.
- All costs of the arbitration proceeding that exceed one day of hearings will be advanced by the party that initiated the arbitration. To the extent allowed by the applicable arbitration rules and applicable law, the arbitrator may tax or assess costs of the arbitration to any party.
- In the case of an appeal, the appealing party will advance any costs of initiating an appeal. The non-prevailing party shall pay all costs, fees, and expenses of the appeal proceeding and, if applicable, shall reimburse the prevailing party for the cost of filing an appeal.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law or by other terms of this Disclosure Statement, Note and Security Agreement.

Governing Law. This Provision is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

Severability. If the arbitrator or any court determines that one or more terms of this Provision or the arbitration rules are unenforceable, or would make this Provision unenforceable, only such term(s) shall be deemed unenforceable and shall be deemed stricken from this Provision, but such determination shall not impair or affect the enforceability of this Provision or the arbitration rules.

Special Acknowledgments. You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will not hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from source outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1-9, (iii) discovery in an arbitration proceeding can be much more limited than is a court proceeding, (iv) rights to appeal an arbitration award are very limited, and (v) the rights of the parties hereunder may not be exactly mutual in all respects.

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF
YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

_Rose C. Riley_ _____ (Sea
ROSE C RILEY                                      -Borrower

_____ (Sea
                                                 -Borrower

The following notice applies only if this box is checked. ☐

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes d disbursements stated therein.

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THIS CONTRACT BEFORE YOU SIGN IT.**

WITNESSES: _Marlene Young_                 SIGNED: _Rose C. Riley_ (Sea
                                                    ROSE C RILEY                       -Borrower
           _Cindy H Bun_
                                                    _____ (Sea
                                                                               -Borrower

                                                    _____ (Sea
                                                                               -Borrower

                                                    CITIFINANCIAL CORPORATION, LLC

                                                    By: _Marlene Young BM_
                                                        (Name and Title)

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal) _____   _____ (Seal) _____
Signature                      Date           Signature                       Date

CitiFinancial Corporation, LLC
AL 25738-16  5/2002              **Original (Branch)    Copy (Customer)**                   Page 4 of

After recording return to:
CITIFINANCIAL
CORPORATION, LLC
1641 PERRY HILL RD   SUITE-102
MONTGOMERY  AL  36106

RLPY2479·PAGE0259·
258

# MORTGAGE

THIS MORTGAGE is made this  12th  day of       September       , 2002   , between the Grantor,
ROSEMARY  C RILEY A/K/A  ROSEMARY CHAPMAN A SINGLE WOMAN

(herein "Borrower"),

and the Mortgage,   CITIFINANCIAL CORPORATION, LLC
a corporation organized and existing       under the laws of       Delaware                    ,
is 1641 PERRY HILL RD  SUITE-102 MONTGOMERY  AL  36106                    , whose address
(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $       44,345.45       ,
which indebtedness is evidenced by Borrower's note dated      09/12/2002       and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the
indebtedness, if not sooner paid, due and payable on  10/01/2032   ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment
of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby grant and convey to
Lender and Lender's successors and assigns with power of sale, the following described property located in the County of
MONTGOMERY            , State of Alabama:

LOT 5, BLOCK G, ACCORDING TO THE MAP OF SOUTHLAWN PLAT NO. 3, AS
SAID MAP APPEARS OF RECORD IN THE OFFICE OF THE JUDGE OF PROBATE
OF MONTGOMERY COUNTY, ALABAMA, IN PLAT BOOK 20, AT PAGE 42.
SUBJECT TO EASEMENTS, RESERVATIONS, RESTRICTIONS AND RIGHTS OF WAY
OF RECORD.
ADDRESS: 5122 E. LINDA CIR; MONTGOMERY, AL 36108 TAX MAP OR PARCEL
ID NO.: 03-14-02-03-04-007-005.000

TO HAVE AND TO HOLD such property unto Lender and Lender's successors and assigns, forever, together with
all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of
which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing,
together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the
"Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower
covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal and Interest.  Borrower shall promptly pay when due the principal and interest
indebtedness evidenced by the Note and late charges as provided in the Note.

Alabama 1596-6 01/98     Original (Recorded)     Copy (Branch)     Copy (Customer)          Page 1 of 4

ROSE C RILEY                                    RLPY 2 4 7.9 · PAGE 0 2 5 9        09/12/2002

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage and deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

ROSE C i. &Y                                    BCI'i 4 1 y· ·PAGE 0 2 6 0                    09/12/2002

**10. Borrower-Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the U. S. Postal address of the Property or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall mail a copy of a notice of sale to Borrower in the manner provided in paragraph 12 hereof. Lender shall publish the notice of sale once a week for three consecutive weeks in some newspaper published in MONTGOMERY            County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of said County. Lender shall deliver to the purchaser Lender's deed conveying the Property so sold. Lender or Lender's designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in the Mortgage or (ii) entry of a judgment enforcing the Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall

ROSE C RILEY                RLPY2479 PAGE 0261                    09/12/2002

continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead, Dower and Curtesy. Borrower hereby waives all rights of homestead exemption in the Property and relinquishes all right of dower and curtesy in the Property.

22. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

---

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Signed, sealed and delivered in the presence of :

_____    Rosemary C. Riley A/K/A Rosemary Chapman    (Seal)
                           ROSEMARY C RILEY A/K/A ROSEMARY CHAPMAN      -Borrower

_____                                                (Seal)
                                                                       -Borrower

STATE OF ALABAMA,           MONTGOMERY                    County ss:

On this  12TH  day of  SEPTEMBER  ,  2002  , I,  MARLENE N YOUNG
a Notary Public in and for said county and in said state, hereby certify that  ROSEMARY C RILEY A/K/A ROSEMARY
CHAPMAN   A SINGLE WOMAN  , whose name(s)  IS  signed to the foregoing
conveyance, and who  IS  known to me, acknowledged before me that, being informed of the contents of
the conveyance,  She  executed the same voluntarily and as  HER
act on the day the same bears date.

Given under my hand and seal of office this the  12  day of  SEPTEMBER  2002
My Commission expires:  NOTARY PUBLIC STATE OF ALABAMA AT LARGE
                        MY COMMISSION EXPIRES: Dec 1, 2005
                        BONDED THRU NOTARY PUBLIC UNDERWRITERS    _____
                                                                  Notary Public

This instrument was prepared by:  GRADY BRANNON

|  |  |
|---|---|
| INDEX | 3.0 |
| RECORD FEE | 1.0 |
| RECORD FEE | 10.0 |
| MORTRAGE(s) 4 of 4 | 64.5 |
| CASH | 82.6 |

Alabama 1596-6 1/98    Original (Recorded)    Copy (Branch)    Copy (Customer)
                       ─── (Space Below This Line Reserved For Lender and Recorder) ───

|  |  |  |
|---|---|---|
| 09-13-2002 #1 | ITEM 4 | |
| | 1CL | 1575 15:15 |

STATE OF ALA
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON

2002 SEP 13  PM 3: 20

REESE McKINNEY, JR.
JUDGE OF PROBATE

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama

In re:

**Rosemary Riley**
Debtor

Case No.: 03–33526

Judge: Dwight H. Williams Jr.
Chapter: 13

NOTICE

PLEASE TAKE NOTICE that a hearing will be held at

U.S. Bankruptcy Court, One Church Street, Courtroom 4C, Montgomery, AL

on 5/24/04 at 10:30 AM

to consider and act upon the following:

*23* – Motion for Relief from Stay. Fee Amount $150. Filed by Susannah R Walker on behalf of CitiFinancial Mortgage Company, Inc.. Responses due by 5/24/2004. (Walker, Susannah)

The automatic stay shall remain in effect until final disposition of this motion.

Dated: 4/30/04

Richard S. Oda
Clerk, U.S. Bankruptcy Court

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama

In re:

**Rosemary Riley**
   Debtor

Case No.: 03–33526

Judge: Dwight H. Williams Jr.
Chapter: 13

### NOTICE

PLEASE TAKE NOTICE that a hearing will be held at

U.S. Bankruptcy Court, One Church Street, Courtroom 4C, Montgomery, AL

on 5/24/04 at 10:30 AM

to consider and act upon the following:

*23* – Motion for Relief from Stay. Fee Amount $150. Filed by Susannah R Walker on behalf of CitiFinancial Mortgage Company, Inc.. Responses due by 5/24/2004. (Walker, Susannah)

The automatic stay shall remain in effect until final disposition of this motion.

Dated: 4/30/04

Richard S. Oda
Clerk, U.S. Bankruptcy Court

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 1127-2          User: gweaver          Page 1 of 1              Date Rcvd: Apr 30, 2004
Case: 03-33526               Form ID: nh13mrfs      Total Served: 4
```

```
The following entities were served by first class mail on May 02, 2004.
db          Rosemary Riley,   901 Brookland Curve,   Montgomery, AL  36105
aty         Sandra H. Lewis,   Law Offices of Sandra Lewis, PC,   PO Box 686,   Montgomery, AL  36101
aty         Susannah R Walker,   Sirote & Permutt,   P.O. Box 55727,   Birmingham, AL  35255
tr          Curtis C. Reding,   P. O. Box 173,   Montgomery, AL  36101
```

```
The following entities were served by electronic transmission.
NONE.                                                                         TOTAL: 0
```

```
        ***** BYPASSED RECIPIENTS *****
NONE.                                                                         TOTAL: 0
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: May 02, 2004                              Signature:  _Joseph Speetjens_

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:                              }
                                    }
RILEY, ROSEMARY,                    }    CASE NO:    03-33526-DHW-13
SSN xxx-xx-0782,                    }
        Debtor.                     }
                                    }

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY FAIRBANKS CAPITAL CORPORATION

This matter coming before the Court on the Motion for Relief from Automatic Stay filed by FAIRBANKS CAPITAL CORPORATION (hereinafter "Creditor"), and this Court being informed of the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1.  The Debtor shall pay $1,700.00 directly to FAIRBANKS CAPITAL CORPORATION.
2.  The Chapter 13 plan is hereby amended to provide for a fixed payment and add the post-petition mortgage payments through April, 2004 plus the attorneys fees and costs in connection with Creditor's Motion for Relief from Stay. The Creditor shall file a claim for that amount.

    | | |
    |---|---:|
    | 6 payments @ $722.05 for 11/03 through 04/04: | $4,332.30 |
    | 6 late charges @ $36.10 for 11/03 through 04/04: | $ 216.60 |
    | Minus $1,700.00 to be paid by Debtor: | -$1,700.00 |
    | Attorney Fees and Costs for MFR: | $ 650.00 |
    | Total: | $3,498.90 |

3.  The Chapter 13 plan payments are hereby increased to $971.00 MONTHLY.
4.  The fixed payments to the Creditor are increased to $576.00 per month.
5.  The Motion for Relief from Stay filed by FAIRBANKS CAPITAL CORPORATION is hereby conditionally denied. However, should the Debtor fail to make the payment required in paragraph #1, or default under the mortgage agreement between the parties beginning May, 2004, the Motion for Relief from Stay is granted if the Creditor gives the Debtor and the Debtor's attorney fifteen (15) days written notice of opportunity to cure. If the default is not cured at the expiration of the notice, then the stay shall lift without further order of the Court.

Done this the 10th day of May, 2004.

                              /s/ Dwight H. Williams, Jr.
                              United States Bankruptcy Judge

Prepared by:
SUSANNAH WALKER, Esquire
SIROTE & PERMUTT, P.C.
P.O. Box 55887
Birmingham, Alabama 35255-5887
Telephone: 205/930-5424

This order was approved by Debtor's attorney and CurtisC. Reding, Trustee.

DOCSBHM\173142\1\ DRAFT 5/10/04 3:26 PM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |  |
|---|---|---|---|
| IN RE: | } | | |
| | } | | |
| **RILEY, ROSEMARY,** | } | **CASE NO:** | **03-33526-DHW-13** |
| SSN xxx-xx-0782, | } | | |
| Debtor. | } | | |
| | } | | |

## ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY
## FILED BY FAIRBANKS CAPITAL CORPORATION

This matter coming before the Court on the Motion for Relief from Automatic Stay filed by FAIRBANKS CAPITAL CORPORATION (hereinafter "Creditor"), and this Court being informed of the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Debtor shall pay $1,700.00 directly to FAIRBANKS CAPITAL CORPORATION.
2. The Chapter 13 plan is hereby amended to provide for a fixed payment and add the post-petition mortgage payments through April, 2004 plus the attorneys fees and costs in connection with Creditor's Motion for Relief from Stay. The Creditor shall file a claim for that amount.

   | | |
   |---|---|
   | 6 payments @ $722.05 for 11/03 through 04/04: | $4,332.30 |
   | 6 late charges @ $36.10 for 11/03 through 04/04: | $ 216.60 |
   | Minus $1,700.00 to be paid by Debtor: | -$1,700.00 |
   | Attorney Fees and Costs for MFR: | $ 650.00 |
   | Total: | $3,498.90 |

3. The Chapter 13 plan payments are hereby increased to $971.00 MONTHLY.
4. The fixed payments to the Creditor are increased to $576.00 per month.
5. The Motion for Relief from Stay filed by FAIRBANKS CAPITAL CORPORATION is hereby conditionally denied. However, should the Debtor fail to make the payment required in paragraph #1, or default under the mortgage agreement between the parties beginning May, 2004, the Motion for Relief from Stay is granted if the Creditor gives the Debtor and the Debtor's attorney fifteen (15) days written notice of opportunity to cure. If the default is not cured at the expiration of the notice, then the stay shall lift without further order of the Court.

Done this the 10th day of May, 2004.


/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

Prepared by:
SUSANNAH WALKER, Esquire
SIROTE & PERMUTT, P.C.
P.O. Box 55887
Birmingham, Alabama 35255-5887
Telephone: 205/930-5424

This order was approved by Debtor's attorney and Curtis C. Reding, Trustee.


DOCSBHM\173142\1\DRAFT 5/10/04 3:26 PM

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 1127-2        User: dhwilliam        Page 1 of 1           Date Rcvd: May 10, 2004
Case: 03-33526             Form ID: pdfSOME        Total Served: 3
```

```
The following entities were served by first class mail on May 12, 2004.
db         Rosemary Riley,   901 Brookland Curve,   Montgomery, AL  36105
aty        Sandra H. Lewis,   Law Offices of Sandra Lewis, PC,   PO Box 686,   Montgomery, AL  36101
intp       Susannah R Walker,   P.O. Box 55887,   Birmingham, AL  35255
```

```
The following entities were served by electronic transmission.
NONE.                                                                              TOTAL: 0
```

```
           ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
864756     Fairbanks Capital Corp.
                                                                          TOTALS: 1, * 0
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: May 12, 2004                    Signature:    _Joseph Speetjens_

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| IN RE: | } |
| | } |
| **RILEY, ROSEMARY ,** | } CASE NO:    03-33526-DHW-13 |
| **SSN xxx-xx-0782,** | } |
| | } |
| | } |
| | } |
| Debtor. | } |

**ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY**
**FILED BY CITIFINANCIAL MORTGAGE COMPANY**

     This matter coming before the Court on the Motion for Relief from Automatic Stay filed by CITIFINANCIAL MORTGAGE COMPANY (hereinafter "Creditor"), and this Court being informed of the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

     The Motion for Relief from Stay filed by CITIFINANCIAL MORTGAGE COMPANY is granted as of August 7, 2004 if the Debtor has not provided payment to pay off the subject mortgage. If the mortgage debt of CITIFINANCIAL MORTGAGE COMPANY has not been paid in full by that date, the Motion for Relief From Stay is GRANTED.

     Done this June 22, 2004

                                      Dwight H. Williams, Jr.
                                      United States Bankruptcy Judge

Prepared by:
SUSANNAH WALKER, Esquire
SIROTE & PERMUTT, P.C.
P.O. Box 55887
Birmingham, Alabama  35255-5887
Telephone: 205/930-5424

This order was approved by Debtor's attorney.

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

IN RE:                                    }
                                          }
**RILEY, ROSEMARY ,**                     }    **CASE NO:    03-33526-DHW-13**
SSN xxx-xx-0782,                          }
                                          }
                                          }
        Debtor.                           }

### ORDER ON MOTION FOR RELIEF FROM AUTOMATIC STAY
### FILED BY CITIFINANCIAL MORTGAGE COMPANY

This matter coming before the Court on the Motion for Relief from Automatic Stay filed by CITIFINANCIAL MORTGAGE COMPANY (hereinafter "Creditor"), and this Court being informed of the agreement of the parties hereto, it is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

The Motion for Relief from Stay filed by CITIFINANCIAL MORTGAGE COMPANY is granted as of August 7, 2004 if the Debtor has not provided payment to pay off the subject mortgage. If the mortgage debt of CITIFINANCIAL MORTGAGE COMPANY has not been paid in full by that date, the Motion for Relief From Stay is GRANTED.

Done this June 22, 2004

_Dwight H. Williams, Jr._

Dwight H. Williams, Jr.
United States Bankruptcy Judge

Prepared by:
SUSANNAH WALKER, Esquire
SIROTE & PERMUTT, P.C.
P.O. Box 55887
Birmingham, Alabama 35255-5887
Telephone: 205/930-5424

This order was approved by Debtor's attorney.

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 1127-2          User: cosborne          Page 1 of 1            Date Rcvd: Jun 23, 2004
Case: 03-33526               Form ID: pdfSOME          Total Served: 2
```

```
The following entities were served by first class mail on Jun 25, 2004.
aty     +Sandra H. Lewis,   Law Offices of Sandra Lewis, PC,   PO Box 686,   Montgomery, AL 36101-0686
intp    +Susannah R Walker,   P.O. Box 55887,   Birmingham, AL 35255-5887
```

```
The following entities were served by electronic transmission.
NONE.                                                                          TOTAL: 0
```

```
        ***** BYPASSED RECIPIENTS *****
NONE.                                                                          TOTAL: 0
```

```
Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jun 25, 2004                    Signature:    _Joseph Speetjens_

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 03-33526-DHW
                                         Chapter 13
ROSEMARY RILEY
Soc. Sec. No. XXX-XX-0782


                    Debtor.

┌─────────────────────────────────────────────────────────────────────┐
│ PURSUANT TO LBR 1017-1, THIS CASE MAY BE DISMISSED, WITHOUT FURTHER NOTICE OR HEARING, │
│ UNLESS A RESPONSE IS FILED WITH THE COURT AND SERVED UPON THE PARTY SERVING THIS NOTICE │
│ WITHIN 20 DAYS OF SERVICE.                                             │
└─────────────────────────────────────────────────────────────────────┘


                    TRUSTEE'S MOTION TO DISMISS

        Comes now  Curtis C. Reding,  Chapter 13 Standing Trustee for
this district, and moves the  Court to  dismiss  the above entitled
case pursuant to 11 U.S.C.,   §1307 (and LBR 1017-1), in  that the
debtor's actions have caused unreasonable delay that is prejudicial
to creditors.  As grounds for said motion, the  Trustee states as
follows:

    The debtor failed to make payments to the Trustee pursuant
    to the terms of the debtors confirmed plan.

Dated: August 10, 2004

Office of the Chapter 13 Trustee
P. O. Box 173                        /S/ Curtis C. Reding
Montgomery, AL  36101-0173           Curtis C. Reding, Trustee
Phone: (334)262-8371
Fax: (334)262-8599
email: Ch13Trustee@ch13mdal.com

                    CERTIFICATE OF SERVICE
    I hereby certify that I have served a copy of the foregoing
Motion to Dismiss on the debtor(s) and the debtor's attorney, by
placing them in the  United States Mail,  postage  prepaid,  and
properly addressed, or by electronic mail.

    Done, this the 10th day of August, 2004.



                        /S/ Curtis C. Reding
                        Curtis C. Reding, Trustee



cc: SANDRA LEWIS
    207 MONTGOMERY ST STE 1010
    P O BOX 686
    MONTGOMERY AL  36101-0686

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama

In re:

**Rosemary Riley**
    Debtor

Case No.: 03–33526

Judge: Dwight H. Williams Jr.
Chapter: 13

### ORDER OF DISMISSAL

A notice of dismissal was filed in this case pursuant to LBR 1017–1 informing the debtor that this case may be dismissed without further notice unless the indicated deficiencies were cured, or a response was filed within 20 days of service of the notice. No such action has been taken by the debtor or the debtor's counsel.

It is therefore **ORDERED** that this case is **DISMISSED** without prejudice.

Dated:  9/3/04

Dwight H. Williams Jr.
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## Middle District of Alabama

In re:                                    Case No.: 03–33526

**Rosemary Riley**
  Debtor

                                         Judge: Dwight H. Williams Jr.
                                              Chapter: 13

### ORDER OF DISMISSAL

A notice of dismissal was filed in this case pursuant to LBR 1017–1 informing the debtor that this case may be dismissed without further notice unless the indicated deficiencies were cured, or a response was filed within 20 days of service of the notice. No such action has been taken by the debtor or the debtor's counsel.

It is therefore **ORDERED** that this case is **DISMISSED** without prejudice.

Dated:  9/3/04

Dwight H. Williams Jr.
United States Bankruptcy Judge

**BAE SYSTEMS**

Enterprise Systems Incorporated
11487 Sunset Hills Road
Reston, Virginia 20190-5234

# CERTIFICATE OF SERVICE

```
District/off: 1127-2        User: cosborne        Page 1 of 1              Date Rcvd: Sep 03, 2004
Case: 03-33526             Form ID: odsmneg      Total Served: 15
```

```
The following entities were served by first class mail on Sep 05, 2004.
db        +Rosemary Riley,    901 Brookland Curve,    Montgomery, AL 36117-4550
aty       +Sandra H. Lewis,    Law Offices of Sandra Lewis, PC,    PO Box 686,    Montgomery, AL 36101-0686
tr         Curtis C. Reding,    P. O. Box 173,    Montgomery, AL  36101
ust       +Teresa R. Jacobs,    U. S. Bankruptcy Administrator,    One Church Street,    Montgomery, AL 36104-4018
867230    +AmeriCredit,    PO Box 183853,    Arlington, TX 76096-3853
832294    +Capital One,    P.O. Box 390846,    Minneapolis, MN 55439-0846
832295    +CitiFinancial,    1641 Perry Hill Road,    Montgomery, AL 36106-2729
849130    +Citifinancial Inc.,    P.O. Box 649,    Hanover, MD 21076-0649
844006     FAIRBANKS CAPITAL CORP.,    c/o SUSANNAH R. WALKER,    SIROTE & PERMUTT, P.C.,    PO BOX 55887,
            BIRMINGHAM, AL 35255-5887
832296    +Fingerhut,    53 McLeland Avenue,    Saint Cloud, MN 56395-2076
832297    +Frazer & Gardner Elec.,    333 E. Jeff Davis Avenue,    Montgomery, AL 36104-5014
886109    +Frazier & Gardner Electric Co. Inc.,    333 E. Jeff Davis Ave.,    Montgomery, AL 36104-5014
832298     Nations Credit,    P.O. Box 17285,    Baltimore, MD 21297-1285
832299    +TitleMax,    3328 Atlanta Hwy,    Montgomery, AL 36109-2702
840855    +Titlemax 2,    3328 Atlanta Hwy.,    Montgomery, AL 36109-2702

The following entities were served by electronic transmission.
NONE.                                                                              TOTAL: 0


          ***** BYPASSED RECIPIENTS (undeliverable, * duplicate) *****
864756     Fairbanks Capital Corp.
                                                                                  TOTALS: 1, * 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.
USPS regulations require that automation-compatible mail display the correct ZIP.
```

I, Joseph Speetjens, declare under the penalty of perjury that I have served the attached document on the above listed entities in the manner shown, and prepared the Certificate of Service and that it is true and correct to the best of my information and belief.

First Meeting of Creditor Notices only (Official Form 9): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Sep 05, 2004                    Signature:    _Joseph Speetjens_

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                    Case No. 03-33526-DHW
                                         Chapter 13
ROSEMARY RILEY
901 BROOKLAND CURVE
MONTGOMERY AL  36105

Soc. Sec. No. XXX-XX-0782

                    Debtor.

### FINAL REPORT

     The Chapter 13 Trustee, Curtis C. Reding, respectfully
reports to the Court as follows:

     The costs of administration and  all claims filed and allowed
in this case have been paid according  to the records of my office
as evidenced by the attached final account.

     The Trustee requests  that notice of the  account be given to
the debtor, the attorney for the debtor,  and any other parties in
interest.

     The Trustee further requests that the account be approved and
that the Trustee be  released  and relieved of his trust.

     This the 20th day of September, 2004.

Office of the Chapter 13 Trustee
P. O. Box 173
Montgomery, AL  36101-0173
Phone: (334)262-8371          */S/ Curtis C. Reding*
Fax: (334)262-8599           Curtis C. Reding, Trustee
email: Ch13Trustee@ch13mdal.com

cc: Debtor
    Attorney for Debtor
    All Creditors

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                Case No. 03-33526-DHW
                                     Chapter 13
ROSEMARY RILEY
901 BROOKLAND CURVE
MONTGOMERY AL  36105


              Debtor.

### FINAL ACCOUNT OF TRUSTEE

     I, Curtis C. Reding, respectfully  file this my final account
disclosing receipts and disbursements in this case.

#### RECEIPTS

| | |
|---|---:|
| **GROSS RECEIPTS** | 9,401.34 |
| Less Refunds While Case Active | 2,000.00 |
| Less Refunds to Debtor at Closing | .00 |
| **NET RECEIPTS** | 7,401.34 |

#### DISBURSEMENTS

| | | |
|---|---:|---:|
| Payments to Creditors (see attached) | | 5,541.11 |
| Secured Creditors | 5,464.57 | |
| Interest | 76.54 | |
| Unsecured Creditors | .00 | |
| Interest | .00 | |
| Priority Creditors | .00 | |
| Interest | .00 | |
| Filing Fee | | .00 |
| Trustee Expense and Commission Fee | | 409.73 |
| Attorney Fee | | 1,444.00 |
| Insurance | | .00 |
| Notice Fee | | 6.50 |
| **TOTAL DISBURSEMENTS** | | 7,401.34 |

     I,  Curtis  C.  Reding,  certify  that  the  above  record  of
receipts  and  disbursements  in this  case is true and complete, and
the estate has been fully administered.

                              /S/_____
                              Curtis C. Reding, Trustee


     Sworn to and subscribed before me
     this 20th day of September, 2004.
                              /LS/_____
                              Phyllis A. Womack, Notary Public

## PAYMENTS TO CREDITORS

Case Number - 03-33526

**SECURED CREDITORS**

| Clm# | Cred# | | Interest | | Principal |
|------|-------|---|---|---|---|
| 0001 | 389867 | CITIFINANCIAL | $ | .00 | $ | .00 |
| 0002 | 325551 | FAIRBANKS CAPITAL CORP | $ | .00 | $ | .00 |
| 0003 | 269895 | TITLE MAX | $ | 76.54 | $ | 475.49 |
| 0009 | 325551 | FAIRBANKS CAPITAL CORP | $ | .00 | $ | 4,989.08 |
| 0015 | 389867 | CITIFINANCIAL | $ | .00 | $ | .00 |

           TOTAL PAYMENTS TO SECURED CREDITORS   $     5,541.11

**UNSECURED CREDITORS**

| Clm# | Cred# | | Interest | | Principal |
|------|-------|---|---|---|---|
| 0004 | 233478 | CAPTIAL ONE | $ | .00 | $ | .00 |
| 0005 | 137093 | FINGERHUT | $ | .00 | $ | .00 |
| 0006 | 002609 | FINGERHUT MFG CO | $ | .00 | $ | .00 |
| 0007 | 146213 | FRAZER & GARDNER ELEC | $ | .00 | $ | .00 |
| 0008 | 163471 | US ATTORNEY | $ | .00 | $ | .00 |
| 0010 | 389903 | FAIRBANKS CAPITAL CORP | $ | .00 | $ | .00 |
| 0011 | 062529 | AMERICREDIT FINANCIAL SVC | $ | .00 | $ | .00 |
| 0012 | 184347 | AMERICREDIT | $ | .00 | $ | .00 |
| 0013 | 023929 | CITIFINANCIAL | $ | .00 | $ | .00 |
| 0014 | 122904 | NATIONS CREDIT | $ | .00 | $ | .00 |

           TOTAL PAYMENTS TO UNSECURED CREDITORS   $     .00

```
03-33526    ROSEMARY RILEY                                        PAGE:    1

C L A I M    R E C O R D S
========================================================================
CITIFINANCIAL              SCHD :    47,827.00   INT %:        .00   SECURED
P O BOX 649                VALUE:    43,800.00   INTPD:        .00   S21 O
HANOVER MD                 CLAIM:    45,481.03   INTDU:        .00
                           TOTPD:          .00   CRED%:     100.00   0002/1ST MORT/
              21076-0868   BAL   :          .00   PERMO:     480.00   20-0051-021951
CRED:389867   CLAIM:0001   FILED:Dec 15, 2003                PDUE:          .00
========================================================================
FAIRBANKS CAPITAL CORP     SCHD : 102,547.00   INT %:        .00   SECURED
P O BOX 65450              VALUE: 111,400.00   INTPD:        .00   S21 O
SALT LAKE CITY UT          CLAIM:  97,934.43   INTDU:        .00
                           TOTPD:          .00   CRED%:     100.00   0003/1ST MORT/
              84165        BAL   :          .00   PERMO:     722.00   7001674657
CRED:325551   CLAIM:0002   FILED:Jan 22, 2004                PDUE:          .00
========================================================================
TITLE MAX                  SCHD :     1,100.00   INT %:      11.00   SECURED
3328 ATLANTA HWY           VALUE:     2,500.00   INTPD:      76.54   S21
MONTGOMERY AL              CLAIM:     1,355.13   INTDU:      80.26
                           TOTPD:       475.49   CRED%:     100.00   0001/00 KIA SE
              36109        BAL   :       879.64   PERMO:      50.00   9572
CRED:269895   CLAIM:0003   FILED:Dec 01, 2003                PDUE:       368.54
========================================================================
CAPTIAL ONE                SCHD :       866.00   INT %:        .00   UNSECURED
P O BOX 390846             VALUE:          .00   INTPD:        .00   U40
MINNEAPOLIS MN             CLAIM:          .00   INTDU:        .00
                           TOTPD:          .00   CRED%:     100.00
              55439        BAL   :          .00   PERMO:        .00   52910716414783
CRED:233478   CLAIM:0004   FILED:                            PDUE:          .00
========================================================================
FINGERHUT                  SCHD :       485.00   INT %:        .00   UNSECURED
53 MCLELAND AVE            VALUE:          .00   INTPD:        .00   U40
ST CLOUD MN                CLAIM:          .00   INTDU:        .00
                           TOTPD:          .00   CRED%:     100.00
              56395        BAL   :          .00   PERMO:        .00   8050101968330
CRED:137093   CLAIM:0005   FILED:                            PDUE:          .00
========================================================================
FINGERHUT MFG CO           SCHD :          .00   INT %:        .00   UNSECURED
11 MCLELAND RD             VALUE:          .00   INTPD:        .00   U40
ST CLOUD MN                CLAIM:          .00   INTDU:        .00
                           TOTPD:          .00   CRED%:     100.00   NOTICES
              56395        BAL   :          .00   PERMO:        .00   8050101968330
CRED:002609   CLAIM:0006   FILED:                            PDUE:          .00
========================================================================
```

03-33526     ROSEMARY RILEY                                                    PAGE:     2

C L A I M     R E C O R D S

| | | | | | |
|---|---|---|---|---|---|
| FRAZER & GARDNER ELEC | SCHD : | 750.00 | INT %: | .00 | UNSECURED |
| 333 E JEFF DAVIS AVE | VALUE: | .00 | INTPD: | .00 | U40 |
| MONTGOMERY AL | CLAIM: | 893.23 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | 0005 |
| 36104 | BAL : | 893.23 | PERMO: | .00 | |
| CRED:146213     CLAIM:0007 | FILED:Mar 01, 2004 | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| US ATTORNEY | SCHD : | .00 | INT %: | .00 | UNSECURED |
| MIDDLE DISTRICT OF ALABAM | VALUE: | .00 | INTPD: | .00 | U40 |
| P O BOX 197 | CLAIM: | .00 | INTDU: | .00 | |
| MONTGOMERY AL | TOTPD: | .00 | CRED%: | 100.00 | NOTICES |
| 36101-0197 | BAL : | .00 | PERMO: | .00 | |
| CRED:163471     CLAIM:0008 | FILED: | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| FAIRBANKS CAPITAL CORP | SCHD : | 12,000.00 | INT %: | .00 | ARREARS |
| P O BOX 65450 | VALUE: | 28,768.25 | INTPD: | .00 | L21 |
| SALT LAKE CITY UT | CLAIM: | 25,269.35 | INTDU: | .00 | |
| | TOTPD: | 4,989.08 | CRED%: | 100.00 | 0003/ARREARS |
| 84165 | BAL : | 20,280.27 | PERMO: | 576.00 | 4657 |
| CRED:325551     CLAIM:0009 | FILED:Jan 22, 2004 | | | PDUE: | 3,787.99 |

| | | | | | |
|---|---|---|---|---|---|
| FAIRBANKS CAPITAL CORP | SCHD : | .00 | INT %: | .00 | UNSECURED |
| C/O SIROTE & PERMUTT PC | VALUE: | .00 | INTPD: | .00 | U40 |
| P O BOX 55887 | CLAIM: | .00 | INTDU: | .00 | |
| BIRMINGHAM AL | TOTPD: | .00 | CRED%: | 100.00 | NOTICES |
| 35255-5887 | BAL : | .00 | PERMO: | .00 | |
| CRED:389903     CLAIM:0010 | FILED: | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| AMERICREDIT FINANCIAL SVC | SCHD : | .00 | INT %: | .00 | UNSECURED |
| P O BOX 183853 | VALUE: | .00 | INTPD: | .00 | U40 |
| ARLINGTON TX | CLAIM: | .00 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | NOTICES |
| 76096-3853 | BAL : | .00 | PERMO: | .00 | 405112004 |
| CRED:062529     CLAIM:0011 | FILED: | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| AMERICREDIT | SCHD : | .00 | INT %: | .00 | UNSECURED |
| P O BOX 183853 | VALUE: | .00 | INTPD: | .00 | U40 |
| ARLINGTON TX | CLAIM: | 13,893.03 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | 0004 |
| 76096 | BAL : | 13,893.03 | PERMO: | .00 | 405112004/1295 |
| CRED:184347     CLAIM:0012 | FILED:Jan 28, 2004 | | | PDUE: | .00 |

```
03-33526   ROSEMARY RILEY                                    PAGE:    3

C L A I M   R E C O R D S
```

| | | | | | |
|---|---|---|---|---|---|
| CITIFINANCIAL | SCHD : | .00 | INT %: | .00 | UNSECURED |
| 1641 PERRY HILL RD STE 10 | VALUE: | .00 | INTPD: | .00 | U40 |
| MONTGOMERY AL | CLAIM: | .00 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | NOTICES |
| 36106 | BAL : | .00 | PERMO: | .00 | |
| CRED:023929   CLAIM:0013 | FILED: | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| NATIONS CREDIT | SCHD : | .00 | INT %: | .00 | UNSECURED |
| P O BOX 17285 | VALUE: | .00 | INTPD: | .00 | U40 |
| BALTIMORE MD | CLAIM: | .00 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | NOTICES |
| 21297 | BAL : | .00 | PERMO: | .00 | |
| CRED:122904   CLAIM:0014 | FILED: | | | PDUE: | .00 |

| | | | | | |
|---|---|---|---|---|---|
| CITIFINANCIAL | SCHD : | .00 | INT %: | .00 | ARREARS |
| P O BOX 649 | VALUE: | .00 | INTPD: | .00 | L21 Y |
| HANOVER MD | CLAIM: | 1,371.45 | INTDU: | .00 | |
| | TOTPD: | .00 | CRED%: | 100.00 | 0002/NO PROV |
| 21076-0868 | BAL : | 1,371.45 | PERMO: | .00 | 2000510219516 |
| CRED:389867   CLAIM:0015 | FILED:Dec 15, 2003 | | | PDUE: | .00 |

| | | | | |
|---|---|---|---|---|
| TOTAL PRIORITY | SCHEDULED       : | .00 | INTEREST PAID    : | .00 |
| | VALUE           : | .00 | INTEREST DUE     : | .00 |
| | CLAIM AMOUNT    : | .00 | MONTHLY PAYEMNT: | .00 |
| | PRINCIPAL PAID: | .00 | PRINCIPAL DUE    : | .00 |
| | BALANCE         : | .00 | | |

| | | | | |
|---|---|---|---|---|
| TOTAL SECURED | SCHEDULED       : | 163,474.00 | INTEREST PAID    : | 76.54 |
| | VALUE           : | 186,468.25 | INTEREST DUE     : | 80.26 |
| | CLAIM AMOUNT    : | 171,411.39 | MONTHLY PAYMENT: | 1,828.00 |
| | PRINCIPAL PAID: | 5,464.57 | PRINCIPAL DUE    : | 4,156.53 |
| | BALANCE         : | 22,531.36 | | |

| | | | | |
|---|---|---|---|---|
| TOTAL UNSECURED | SCHEDULED:       : | 2,101.00 | INTEREST PAID    : | .00 |
| | VALUE           : | .00 | INTEREST DUE     : | .00 |
| | CLAIM AMOUNT    : | 14,786.26 | MONTHLY PAYMENT: | .00 |
| | PRINCIPAL PAID: | .00 | PRINCIPAL DUE    : | .00 |
| | BALANCE         : | 14,786.26 | | |

| | | | | |
|---|---|---|---|---|
| TOTAL OTHER | SCHEDULED       : | .00 | INTEREST PAID    : | .00 |
| | VALUE           : | .00 | INTEREST DUE     : | .00 |
| | CLAIM AMOUNT    : | .00 | MONTHLY PAYMENT: | .00 |
| | PRINCIPAL PAID: | .00 | PRINCIPAL DUE    : | .00 |
| | BALANCE         : | .00 | | |

# EXHIBIT
# 4



4501 Circle 75 Parkway, Suite D-4100
Atlanta, GA  30339
Office: (678) 742-6470
Fax: (770) 850-8423

# Facsimile Transmittal Sheet

| TO: | FROM: |
|---|---|
| John David Collins, Esq. | Stephen B. Kaplan, Esq. |

| COMPANY: | DATE: |
|---|---|
| Maynard, Cooper & Gale, PC | 4/8/2005 |

| FAX NUMBER: | TOTAL NO. OF PAGES INCLUDING COVER: |
|---|---|
| (205) 254-1999 | 6 |

| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
|---|---|
| (205) 254-1000 | |

| RE: | YOUR REFERENCE NUMBER: |
|---|---|
| Rosemary Riley v. Fairbanks Capital Corp. | |

NOTES/COMMENTS:

Mr. Collins,

Homeowners Loan Corp. does not possess any records indicating any application or a closing of a mortgage transaction with the above referenced individual.

Steve Kaplan

**PRIVILEGE NOTICE:**  The information contained in this facsimile is PRIVILEGED AND CONFIDENTIAL information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the above address via the U.S. Postal Service. Thank you.

Issued by the
## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

### SUBPOENA DUCES TECUM IN A CIVIL CASE

| | |
|---|---|
| ROSEMARY C. RILEY,                                )<br><br>       Plaintiff,                                )<br>                                )<br>v.                                )<br>                                )<br>FAIRBANKS CAPITAL CORPORATION                                )<br>                                )<br>       Defendant.                                ) | CASE NO: 2:04CV797-A |

TO:    Homeowners Loan
       4501 Circle 75 Parkway, Suite F-6300
       Atlanta, GA 30339

_____ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

PLACE OF TESTIMONY          COURTROOM                    DATE    AND
TIME

_____YOU ARE COMMANDED to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.

PLACE OF DEPOSITION                               DATE AND TIME

____X__YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

### ANY AND ALL DOCUMENTS LISTED ON "EXHIBIT A" HERETO.

01155809.1

PLACE                                              DATE AND TIME

Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400  Birmingham, AL  35203        April 4, 2005; 12:00 noon


_____YOU ARE COMMANDED to permit inspection of the following premises at the date
and time specified below.

PREMISES                                           DATE AND TIME


Any organization not a party to this suit that is subpoenaed for the taking of a deposition
shall designate one or more officers, directors, or managing agents, or other persons who consent
to testify on its behalf, and may set forth, for each person designated, the matters on which the
person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

ISSUING OFFICER SIGNATURE AND TITLE
(INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)

_____        Date:  March 21, 2005
Attorney for Defendant Fairbanks Capital Corporation
ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
John David Collins, Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama  35203-2602
Telephone No. (205) 254-1054

---

## PROOF OF SERVICE

|  | Certified U.S. Mail |  |
| Homeowners Loan | #7004-1160-0004-9765-4130 | March 21, 2005 |
| SERVED ON | MANNER OF SERVICE | DATE |

---

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the
foregoing information contained in the Proof of Service is true and correct.


01155809.1

Executed on __3/21/05__

SIGNATURE OF SERVER
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North
Suite 2400 AmSouth/Harbert Plaza
Birmingham, AL 35203

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection may, within 14 days after service or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provision of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

01155809.1

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO A SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A
## DOCUMENTS TO BE PRODUCED

All documents relating to notes, loans, credit agreement, or mortgages with <u>Rosemary Riley</u> (SSN: 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) including, without limitation, credit applications, credit inquiries, correspondence with Rosemary Riley (or any third party) relating to the loan or credit agreement, underwriting files, credit committee reports, and any internal memoranda regarding the credit application.

## IN LIEU OF PERSONAL APPEARANCE:

Please mail a copy of the requested records to John David Collins at Maynard, Cooper & Gale, P.C., 1901 Sixth Avenue North, Suite 2400 AmSouth/Harbert Plaza, Birmingham, Alabama 35203, prior to the date on the subpoena.

01155809.1